**RECORD NO. 21-4242**

In The

# United States Court Of Appeals

## For The Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff – Appellee,*

**v.**

**SHANNON MICHELLE DRAKE,**

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO**

---

**JOINT APPENDIX**
**Volume I of XIV**
**(Pages 1 – 407)**

---

**Claire J. Rauscher**
**WOMBLE BOND DICKINSON (US) LLP**
**301 South College Street**
**1 Wells Fargo Center**
**Suite 3500**
**Charlotte, NC 28202**
**(704) 331-4961**

*Counsel for Appellant*

**S. Robert Lyons**
**CHIEF, CRIMINAL APPEALS & TAX ENFORCEMENT POLICY SECTION**
**Katie Bagley**
**Joseph B. Syverson**
**Gregory S. Knapp**
**ATTORNEYS**
**TAX DIVISION**
**DEPARTMENT OF JUSTICE**
**P.O. Box 972**
**Washington, DC 20044**
**(202) 616-3854**

*Counsel for Appellee*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS
## Volume I of XIV

**Page:**

**Docket Entries.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Superceding Indictment**
**filed August 29, 2017.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **99**

**Transcript of Motions Hearing Before**
**The Honorable William L. Osteen, Jr.**
**on November 9, 2017.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **150**

**Testimony of Bruce Ashley:**

**Direct Examination by Ms. Barbier.** . . . . . . . . . . . . . . . . . . . . . . . . . . **201**
**Cross Examination by Ms. Rauscher.** . . . . . . . . . . . . . . . . . . . . . . . . . **241**
**Cross Examination by Mr. Chut.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **245**
**Redirect Examination by Ms. Barbier.** . . . . . . . . . . . . . . . . . . . . . . . . **248**
**Recross Examination by Ms. Rauscher.** . . . . . . . . . . . . . . . . . . . . . . . **254**

**Testimony of Laura Dildine:**

**Direct Examination by Ms. Barbier.** . . . . . . . . . . . . . . . . . . . . . . . . . . **256**
**Cross Examination by Mr. Chut.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **316**
**Redirect Examination by Ms. Barbier.** . . . . . . . . . . . . . . . . . . . . . . . . **317**

**Transcript of Motions Hearing Before The Honorable William L. Osteen, Jr. on November 9, 2017, Continued:**

**Testimony of Stephen Petersen:**

**Direct Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . . . . 320**
**Cross Examination by Ms. Rauscher. . . . . . . . . . . . . . . . . . . . . . . . . . 334**
**Cross Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 348**
**Redirect Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . 355**
**Recross Examination by Ms. Rauscher. . . . . . . . . . . . . . . . . . . . . . . . 360**

**Defendant's Supplemental Memorandum in Support of Her Motion to Join Defendant Earnest's Motion for *Ex Parte* Hearing, (*Drake*) with Exhibit, filed November 16, 2017.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 381**

**Exhibit:**

**A. Letter to Frank Chut from Bruce Ashley dated September 18, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . 389**

**Defendant's Motion to Dismiss for Insufficient Allegations and Duplicitous and Multiplicitous Charges (*Drake*) filed December 13, 2017. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 392**

**Defendant's Reply to Government's Response to Defendant's Motion to Dismiss for Insufficient Allegations and Duplicitous and Multiplicitous Charges (*Drake*) filed February 2, 2018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 394**

**Defendant's Reply to Government's Response to Defendant's Motion to Dismiss and Suppress Grand Jury Testimony (*Drake*) filed February 2, 2018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 401**

# TABLE OF CONTENTS
## Volume II of XIV

Page:

**Transcript of Motions Hearing Before The Honorable William L. Osteen, Jr. on February 8, 2018. . . . . 408**

**Testimony of James Schwiers:**

**Direct Examination by Mr. Chut. . . . . 428**
**Cross Examination by Mr. Howard. . . . . 450**
**Redirect Examination by Mr. Chut. . . . . 461**
**Cross Examination by Ms. Rauscher. . . . . 462**
**Redirect Examination by Mr. Chut. . . . . 468**

**Testimony of Nathan Crystal:**

**Direct Examination by Ms. Barbier. . . . . 472**
**Cross Examination by Ms. Rauscher. . . . . 524**
**Cross Examination by Mr. Chut. . . . . 538**
**Redirect Examination by Ms. Barbier. . . . . 571**
**Recross Examination by Ms. Rauscher. . . . . 582**
**Recross Examination by Mr. Chut. . . . . 586**

**Testimony of Michael Knapp:**

**Direct Examination by Ms. Barbier. . . . . 588**
**Cross Examination by Ms. Rauscher. . . . . 602**
**Cross Examination by Mr. Chut. . . . . 604**
**Redirect Examination by Ms. Barbier. . . . . 605**

**Defendant's Motion to Join and Adopt Co-Defendant Ronald Earnest's Motion to Dismiss (*Drake*) filed March 6, 2018. . . . . 656**

**Transcript of Motions Hearing Excerpt Before The Honorable William L. Osteen, Jr. on March 7, 2018.** . . . . . 659

**Testimony of Mary Blackberry:**

**Direct Examination by Ms. Barbier.** . . . . . 662
**Cross Examination by Mr. O'Rourke.** . . . . . 682
**Cross Examination by Mr. Brooks.** . . . . . 684
**Redirect Examination by Ms. Barbier.** . . . . . 687

**Testimony of Kyle Myers:**

**Direct Examination by Ms. Barbier.** . . . . . 693

**Defendant's Supplemental Memorandum in Support of Her Motion to Dismiss (*Drake*) filed March 15, 2018.** . . . . . 707

**Transcript of Motions Hearing Before The Honorable William L. Osteen, Jr. on April 13, 2018.** . . . . . 716

**Memorandum and Opinion filed April 18, 2018.** . . . . . 812

**Government's Trial Brief, with Attached Appendices, filed December 28, 2018.** . . . . . 881

**Transcript Pretrial Conference Before The Honorable William L. Osteen, Jr. on December 28, 2018.** . . . . . 927

# TABLE OF CONTENTS
## Volume III of XIV

**Page:**

**Transcript of Trial Proceedings of Before The Honorable William L. Osteen, Jr. on January 8, 2019:**

**Opening Statement by Mr. Chut .. 982**

**Opening Statement by Mr. Howard. 991**

**Opening Statement by Mr. O'Rourke.. 1001**

**Opening Statement by Mr. Camden. 1020**

**Testimony of Julie Akers:**

**Direct Examination by Mr. Chut. 1036**

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 9, 2019. 1174**

**Testimony of Julie Akers:**

**Continued Direct Examination by Mr. Chut. 1180**
**Cross Examination by Ms. Barbier. 1209**
**Cross Examination by Mr. O'Rourke. 1262**
**Cross Examination by Mr. Camden.. 1296**
**Redirect Examination by Mr. Chut. 1310**
**Recross Examination by Ms. Barbier.. 1326**
**Redirect Examination by Mr. Chut. 1334**

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 9, 2019, Continued:**

**Testimony of Mickey Jolly:**

**Direct Examination by Mr. McLellan. . . . . . . . . . 1342**
**Cross Examination by Mr. Bannister.. . . . . . . . . . 1377**
**Cross Examination by Mr. Howard. . . . . . . . . . 1399**
**Redirect Examination by Mr. McLellan. . . . . . . . . . 1405**
**Recross Examination by Mr. Bannister.. . . . . . . . . . 1409**

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 10, 2019. . . . . . . . . . 1414**

**Testimony of Virginia Linke:**

**Direct Examination by Mr. Montague. . . . . . . . . . 1417**
**Cross Examination by Mr. Howard. . . . . . . . . . 1460**
**Cross Examination by Ms. Rauscher. . . . . . . . . . 1465**
**Cross Examination by Ms. Poe. . . . . . . . . . 1476**
**Redirect Examination by Mr. Montague. . . . . . . . . . 1476**
**Recross Examination by Mr. Howard. . . . . . . . . . 1478**

# TABLE OF CONTENTS
## Volume IV of XIV

Page:

Transcript of Trial Proceedings Before
The Honorable William L. Osteen, Jr.
on January 10, 2019, Continued:

Testimony of Matthew Medaloni:

Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1483
Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . . 1522
Cross Examination by Ms. Rauscher. . . . . . . . . . . . . . . . . . . . . . . . . 1560
Redirect Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . 1562

Testimony of Matt Carpenter:

Direct Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . . . . 1569
Cross Examination by Ms. Poe. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1612
Cross Examination by Mr. Howard. . . . . . . . . . . . . . . . . . . . . . . . . . 1615
Redirect Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . 1623

Transcript of Trial Proceedings Before
The Honorable William L. Osteen, Jr.
on January 11, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1626

Testimony of Douglas Corriher:

Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1630
Voir Dire Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . 1760
Voir Dire Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . 1765
Voir Dire Examination by Mr. O'Rourke. . . . . . . . . . . . . . . . . . . . 1769
Continued Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . 1793

**Transcript of Trial Proceedings Before**
**The Honorable William L. Osteen, Jr.**
**on January 14, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1836**

**Testimony of Douglas Corriher: (Continued)**

**Continued Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . 1843**
**Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . . 1977**

**TABLE OF CONTENTS**
**Volume V of XIV**

**Page:**

Transcript of Trial Proceedings Before
The Honorable William L. Osteen, Jr.
on January 15, 2019. . . . . . . . . 2019

Testimony of Douglas Corriher:

Continued Cross Examination by Ms. Barbier. . . . . . . . 2022
Cross Examination by Mr. O'Rourke. . . . . . . . 2084
Cross Examination by Mr. Camden.. . . . . . . . 2088
Redirect Examination by Mr. Chut. . . . . . . . 2113
Recross Examination by Ms. Barbier.. . . . . . . . 2126
Recross Examination by Mr. Camden.. . . . . . . . 2128
Redirect Examination by Mr. Chut. . . . . . . . 2129

Testimony of Elizabeth Byrd:

Direct Examination by Mr. Chut. . . . . . . . 2135
Cross Examination by Ms. Poe. . . . . . . . 2165
Cross Examination by Mr. Howard. . . . . . . . 2169
Redirect Examination by Mr. Chut. . . . . . . . 2182

Testimony of Lesley Cannon:

Direct Examination by Mr. Montague. . . . . . . . 2186

Transcript of Trial Proceedings Before
The Honorable William L. Osteen, Jr.
on January 16, 2019. . . . . . . . . 2243

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 16, 2019, Continued:**

**Testimony of Lesley Cannon:**

Continued Direct Examination by Mr. Montague. . . . . . . . . . . . . 2249
Cross Examination by Ms. Rauscher. . . . . . . . . . . . . . . . . . . . . . . . 2269
Cross Examination by Mr. Bannister.. . . . . . . . . . . . . . . . . . . . . . . 2315
Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . 2340
Redirect Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . . 2347

**Testimony of William McDaniel:**

Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2354
Cross Examination by Mr. Howard. . . . . . . . . . . . . . . . . . . . . . . . . 2377
Redirect Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . 2386

**Testimony of Patricia Elliott:**

Direct Examination by Mr. McLellan. . . . . . . . . . . . . . . . . . . . . . . . 2392
Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . 2399

**Testimony of Randall Howell:**

Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2405
Cross Examination by Mr. Howard. . . . . . . . . . . . . . . . . . . . . . . . . 2426

**Testimony of Mark Gleason:**

Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2436
Cross Examination by Mr. Howard. . . . . . . . . . . . . . . . . . . . . . . . . 2478
Redirect Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . 2485

# TABLE OF CONTENTS
## Volume VI of XIV

Page:

Transcript of Trial Proceedings Before
The Honorable William L. Osteen, Jr.
on January 17, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2488

Testimony of Catherine Smith:

Direct Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . . . . 2493
Cross Examination by Mr. Bannister.. . . . . . . . . . . . . . . . . . . . . . . 2539
Cross Examination by Ms. Rauscher.. . . . . . . . . . . . . . . . . . . . . . . 2558
Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . 2562
Redirect Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . . 2572
Recross Examination by Ms. Rauscher.. . . . . . . . . . . . . . . . . . . . . 2572

Testimony of Sue Robinson:

Direct Examination by Mr. McLellan. . . . . . . . . . . . . . . . . . . . . . . 2578

Testimony of Peter Pappas:

Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . 2623
Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . 2641
Redirect Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . 2656

Transcript of Trial Proceedings Before
The Honorable William L. Osteen, Jr.
on January 22, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2665

Testimony of Michael Brooks:

Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . 2659
Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . 2688
Redirect Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . 2718

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 22, 2019, Continued:**

**Testimony of Teresa Driver:**

**Direct Examination by Mr. McLellan. . . . . . . . . . . . . . . . . . . . . . . . 2725**
**Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . 2762**
**Redirect Examination by Mr. McLellan. . . . . . . . . . . . . . . . . . . . . 2783**
**Recross Examination by Ms. Barbier.. . . . . . . . . . . . . . . . . . . . . . . 2784**

**Testimony of Lawrence Gibney:**

**Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . 2791**
**Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . 2814**

**Testimony of Angela Holland:**

**Direct Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . . . 2846**

**Testimony of Erick Hoffman:**

**Direct Examination by Mr. McLellan. . . . . . . . . . . . . . . . . . . . . . . . 2869**
**Cross Examination by Mr. Howard. . . . . . . . . . . . . . . . . . . . . . . . . . 2900**
**Redirect Examination by Ms. Poe. . . . . . . . . . . . . . . . . . . . . . . . . . 2911**
**Recross Examination by Mr. McLellan.. . . . . . . . . . . . . . . . . . . . . . 2914**

**Testimony of Katherine Miller:**

**Direct Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . . . 2921**
**Cross Examination by Ms. Rauscher.. . . . . . . . . . . . . . . . . . . . . . . 2935**
**Redirect Examination by Mr. Howard. . . . . . . . . . . . . . . . . . . . . . . 2942**
**Recross Examination by Mr. Montague.. . . . . . . . . . . . . . . . . . . . . 2945**

**TABLE OF CONTENTS**
**Volume VII of XIV**

**Page:**

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 23, 2019.** . . . . . **2947**

**Testimony of David Switzer, III:**

**Direct Examination by Mr. Chut.** . . . . . **2950**
**Cross Examination by Mr. Bannister..** . . . . . **2962**
**Cross Examination by Ms. Barbier.** . . . . . **2974**
**Redirect Examination by Mr. Chut.** . . . . . **2980**

**Testimony of Cyndy Ayers:**

**Direct Examination by Mr. Montague.** . . . . . **2985**
**Cross Examination by Ms. Rauscher..** . . . . . **2994**
**Cross Examination by Ms. Barbier.** . . . . . **2996**
**Cross Examination by Mr. Bannister..** . . . . . **2996**
**Redirect Examination by Mr. Montague.** . . . . . **3005**

**Testimony of Remonia Felix:**

**Direct Examination by Mr. McLellan.** . . . . . **3011**
**Cross Examination by Mr. Bannister..** . . . . . **3035**
**Cross Examination by Ms. Barbier.** . . . . . **3046**
**Redirect Examination by Mr. McLellan.** . . . . . **3054**

**Testimony of Jeffrey L. Burgess:**

**Direct Examination by Mr. McLellan.** . . . . . **3060**
**Cross Examination by Mr. Howard.** . . . . . **3072**
**Cross Examination by Ms. Poe.** . . . . . **3078**

**Transcript of Trial Proceedings Before**
**The Honorable William L. Osteen, Jr.**
**on January 23, 2019, Continued:**

**Testimony of Kyle Myers:**

**Direct Examination by Mr. McLellan. . . . . . . . . . . . . . . . . . . . . . . . 3085**
**Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . . 3160**

**Excerpt of Transcript Proceedings Before**
**The Honorable William L. Osteen, Jr.**
**on January 24, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3164**

**Testimony of James Schweirs:**

**Voir Dire Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . 3181**
**Voir Dire Examination by Ms. Rauscher. . . . . . . . . . . . . . . . . . . . . 3187**
**Voir Dire Examination by Mr. Camden. . . . . . . . . . . . . . . . . . . . . . 3189**
**Voir Dire Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . 3196**

**Transcript of Trial Proceedings Before**
**The Honorable William L. Osteen, Jr.**
**on January 24, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3239**

**Testimony of Kyle Myers:**

**Continued Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . 3243**
**Redirect Examination by Mr. McLellan. . . . . . . . . . . . . . . . . . . . . 3267**

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 24, 2019, Continued:**

**Testimony of William Timanus:**

Direct Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . . . . 3273
Cross Examination by Mr. Bannister.. . . . . . . . . . . . . . . . . . . . . . . 3288
Cross Examination by Mr. Howard. . . . . . . . . . . . . . . . . . . . . . . . . 3310
Cross Examination by Mr. O'Rourke. . . . . . . . . . . . . . . . . . . . . . . . 3322
Redirect Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . . 3327
Recross Examination by Mr. Bannister.. . . . . . . . . . . . . . . . . . . . . . 3330
Recross Examination by Mr. Howard. . . . . . . . . . . . . . . . . . . . . . . . 3332

**Testimony of James Schweirs:**

Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . 3339
Cross Examination by Mr. Bannister.. . . . . . . . . . . . . . . . . . . . . . . 3406
Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . 3411
Redirect Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . 3449

**Testimony of Julia Pace:**

Direct Examination by Mr. Montague. . . . . . . . . . . . . . . . . . . . . . . 3459

**TABLE OF CONTENTS**
**Volume VIII of XIV**

**Page:**

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 25, 2019. . . . 3499**

**Testimony of Julia Pace:**

**Continued Direct Examination by Mr. Montague. . . . 3502**
**Cross Examination by Mr. Bannister.. . . . 3506**
**Cross Examination by Ms. Barbier. . . . 3545**
**Redirect Examination by Mr. Montague. . . . 3561**
**Recross Examination by Mr. Bannister.. . . . 3565**

**Testimony of David Switzer, III: (Recalled)**

**Direct Examination by Mr. Chut. . . . 3578**
**Cross Examination by Ms. Barbier. . . . 3590**

**Testimony of Donna Hench:**

**Direct Examination by Mr. McLellan. . . . 3597**
**Cross Examination by Ms. Poe. . . . 3667**
**Cross Examination by Mr. Howard. . . . 3672**

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 28, 2019. . . . 3694**

**Testimony of Donna Hench:**

**Redirect Examination by Mr. McLellan. . . . 3697**
**Recross Examination by Mr. Howard. . . . 3712**

**Transcript of Trial Proceedings Before**
**The Honorable William L. Osteen, Jr.**
**on January 28, 2019, Continued:**

**Testimony of David Switzer, III: (Recalled)**

**Direct Examination by Mr. Chut. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3723**
**Cross Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . . . 3728**

**Testimony of Donna Hench: (Recalled)**

**Direct Examination by Mr. McLellan. . . . . . . . . . . . . . . . . . . . . . . . . 3736**
**Cross Examination by Mr. Camden.. . . . . . . . . . . . . . . . . . . . . . . . . . 3776**
**Cross Examination by Ms. Rauscher. . . . . . . . . . . . . . . . . . . . . . . . . 3778**

**Excerpt of Transcript Proceedings Before**
**The Honorable William L. Osteen, Jr.**
**on January 29, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3785**

**Transcript of Ruling on Rule 29 Motions Hearing Before**
**The Honorable William L. Osteen, Jr.**
**on January 29, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3901**

**Transcript of Trial Proceedings Before**
**The Honorable William L. Osteen, Jr.**
**on January 29, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3916**

**Testimony of Ronald Earnest:**

**Direct Examination by Ms. Barbier. . . . . . . . . . . . . . . . . . . . . . . . . . 3919**

**TABLE OF CONTENTS**
**Volume IX of XIV**

**Page:**

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 30, 2019. . . . . . . . . . 3961**

**Testimony of Ronald Earnest:**

**Continued Direct Examination by Ms. Barbier.. . . . . . . . . 3964**
**Cross Examination by Mr. Chut. . . . . . . . . . 4095**

**Excerpt of Transcript Proceedings Before The Honorable William L. Osteen, Jr. on January 31, 2019. . . . . . . . . . 4183**

**Transcript of Trial Proceedings Before The Honorable William L. Osteen, Jr. on January 31, 2019. . . . . . . . . . 4227**

**Testimony of Ronald Earnest:**

**Continued Cross Examination by Mr. Chut. . . . . . . . . . 4234**

**Judgment (*Drake*) filed February 4, 2019. . . . . . . . . . 4260**

**Defendant's Motion for Attorneys' Fees and Expenses (*Drake*) filed March 6, 2019. . . . . . . . . . 4261**

**Defendant's Memorandum in Support of Her Motion for Attorneys' Fees and Expenses, (*Drake*) with Exhibits,**
**filed April 8, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4266**

**Exhibits:**

**A. Excerpt of Transcript of Motions Hearing Before The Honorable William L. Osteen, Jr.**
**on April 30, 2018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4285**

**B. Email from Frank Chut**
**dated May 5, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4289**

**B1. Excerpt of Transcript of Motions Hearing Before The Honorable William L. Osteen, Jr.**
**on March 7, 2018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4291**

**D. Email from Claire Rauscher to Jeffrey McLellan and Frank Chut**
**dated March 6, 2018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4297**

**E. Excerpt of Transcript of Ruling on Rule 29 Motions Hearing Before The Honorable William L. Osteen, Jr.**
**on January 29, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4300**

**G. Excerpt of Transcript of Sentencing Hearing Before The Honorable James A. Beaty, Jr.**
**on March 7, 2018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4310**

**H. Defendant's Subpoena to Testify Before a Grand Jury, with Attachment,**
**dated September 11, 2012. . . . . . . . . . . . . . . . . . . . . . . . . 4338**

**I. Excerpt of Transcript of Trial Proceedings Before The Honorable James A. Beaty, Jr. (*Vol. III*)**
**on March 7, 2018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4345**

**Defendant's Motion for Discovery (*Drake*)**
**filed May 14, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4349**

**Defendant's Reply to Government's Response to**
**Defendant's Motion for Attorneys' Fees and Expenses (*Drake*)**
**filed May 27, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4359**

**Government's Objection to Defendant's**
**Motion for Discovery (*Drake*)**
**filed May 30, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4371**

**Defendant's Reply to Government's Response to**
**Defendant's Motion for Discovery (*Drake*)**
**filed June 7, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4377**

**Defendant's Notice of Appeal (*Drake*)**
**filed May 17, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4382**

**TABLE OF CONTENTS**
**Volume X of XIV - Under Seal**

**Page:**

**Defendant's Motion to Dismiss and Suppress Grand Jury Testimony (*Drake*) filed December 13, 2017.................................. 4384**

**Defendant's Corrected Memorandum in Support of Her Motion to Dismiss and Suppress Grand Jury Testimony (*Drake*) filed December 14, 2017.................................. 4386**

**Government's Response to Defendant Motion to Dismiss for Insufficient Allegations, (*Drake*) with Exhibit, filed January 12, 2018. ................................... 4394**

**Exhibit:**

**1. Letter to Shannon Smith from Douglas Corriher dated December 8, 2005......................... 4401**

**Government's Response to Defendant's Motion to Dismiss and Suppress Grand Jury Testimony, (*Drake*) with Exhibits, filed January 12, 2018. ................................... 4402**

**Exhibits:**

**A. Excerpts of Transcript of Grand Jury Testimony of Yolanda Simpson on January 27, 2016............................ 4413**

**B. Excerpts of Transcript of Grand Jury Testimony of Cheryl Gustavson on December 14, 2015.......................... 4419**

**Exhibits to**
**Government's Response to Defendant's**
**Motion to Dismiss and Suppress Grand Jury Testimony, (*Drake*)**
**filed January 12, 2018, Continued:**

**C. Cover Letter for One of Several Transmittals of Voluminous Records Obtained from Defendant. . . . . . . . . 4427**

**Government's Opposition to**
**Defendant's Motion to Dismiss the Indictment, (*Drake*)**
**with Exhibits,**
**filed March 29, 2018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4467**

**Exhibits:**

**1. Transcript of Grand Jury Testimony of Cheryl Gustavson, with Exhibits, on December 14, 2015.. . . . . . . . . . . . . . . . . . . . . . . . . . . 4503**

**2. Transcript of Grand Jury Testimony of Yolanda Simpson, with Exhibit, on January 27, 2016.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4579**

**3. Transcript of Grand Jury Testimony of Shannon Drake on September 25, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4629**

**4. Notes various dates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4684**

**5. GrandSouth Bank Notes Re: IRS Inquiry Involving Bruce G. Harrison dated June 20, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4723**

**Exhibits to**
**Government's Opposition to**
**Defendant's Motion to Dismiss the Indictment, (*Drake*)**
**filed March 29, 2018, Continued:**

**6. Transcript of**
**Grand Jury Testimony of Shannon Drake,**
**with Exhibits,**
**on May 29, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4725**

**7. Transcript of Motions Hearing**
**Before the Honorable William L. Osteen, Jr.**
**on March 7, 2018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4767**

**TABLE OF CONTENTS**
**Volume XI of XIV - Under Seal**

**Page:**

**Exhibits to**
**Government's Opposition to**
**Defendant's Motion to Dismiss the Indictment, (*Drake*)**
**filed March 29, 2018, Continued:**

**8. Transcript of Motions Hearing Excerpt**
**Before the Honorable William L. Osteen, Jr.**
**on November 9, 2017. .... 4815**

**9. Notes**
**various dates. .... 5047**

**Government's Motion in *Limine* to**
**Limit Cross-Examination of Witness**
**filed December 26, 2018. .... 5050**

**Government's Memorandum in Support of Their**
**Motion in *Limine* to Limit Cross-Examination of Witness,**
**with Attachments,**
**filed December 26, 2018. .... 5053**

**Attachments:**

**A. GrandSouth Bank Corrective Action Report**
**dated March 28, 2013. .... 5066**

**B. Notes of Claims of Misconduct**
**various dates. .... 5068**

**C. Government's Motion in *Limine* to**
**Limit Cross-Examination of Government Witness**
**dated December 26, 2018. .... 5070**

**Exhibits to**
**Defendant's Motion for Attorneys' Fees and Expenses**
**filed April 8, 2019:**

**C. Transcript of Grand Jury Testimony of Kyle Myles on May 31, 2016. . . . . 5073**

**F. GrandSouth Bank Documents various dates. . . . . 5117**

**Government's Opposition, with Exhibits, filed May 15, 2019. . . . . 5139**

**Exhibits:**

**A. (Ex. A at 6:14–23; 9:10–13 (Cannon Tr. 1/15/19)**

**AA. Paid Note Statement for NC Global Investments, Inc., Line of Credit #7586 dated July 29, 2008. . . . . 5174**

**AB. Paid Note Statement for Brooks Labor Line of Credit #54758 dated July 29, 2008. . . . . 5195**

**AC. Paid Note Statement for Medaloni, Inc., 17 Line of Credit #54714 dated July 29, 2008. . . . . 5219**

**AE. Loan System Credit Transaction Form (NC Global Investments, Medaloni, Inc., and Medaloni of SC) dated April 6, 2009. . . . . 5236**

**Exhibits to**
**Government's Opposition to**
**filed May 15, 2019, Continued:**

**AF. GrandSouth Bank,**
**Collection Report (Format A), Collections**
**dated July 29, 2008 - March 31, 2011. . . . . . . . . . . . . . . 5246**

**AG. GrandSouth Bank,**
**Collection Report (Format A), Collections**
**dated July 29, 2008 - March 31, 2011. . . . . . . . . . . . . . . 5287**

**AH. Transaction Management System Report**
**dated April 15, 2009. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5307**

**AI. Account Statement for Medaloni, Inc.**
**GrandSouth Bank DDA Account #17368**
**dated July 31, 2008 - January 31, 2011. . . . . . . . . . . . . . 5309**

**TABLE OF CONTENTS**
**Volume XII of XIV - Under Seal**

**Page:**

**Exhibits to Government's Opposition to filed May 15, 2019, Continued:**

AJ. Transcript of Grand Jury Testimony of Cheryl Gustavson, with Exhibits, on December 14, 2015. . . . . 5348

AK. Transcript of Grand Jury Testimony of Yolanda Simpson, with Exhibit, on January 27, 2016. . . . . 5424

AM. GSB Domestic Outgoing Wire Form - Request For Wire Transfer dated April 8, 2009. . . . . 5474

AN. CMI Banking Documents various dates. . . . . 5476

K. Email from Douglas Corriher to Julie Akers and Kathy Miller, with Attachments, dated January 16, 2009. . . . . 5491

L. Email Correspondence Between Kathy Miller and Shannon Drake Re: Credits dated January 28, 2009. . . . . 5560

**Exhibits to**
**Government's Opposition to**
**filed May 15, 2019, Continued:**

**O. Email Correspondence Between Kathy Miller and Shannon Drake dated February 6, 2009. . . . . 5563**

**Q. Email Correspondence Between Shannon Drake and Kathy Miller Re: Canceled Check from Bristol Aluminum dated February 19, 2009 - February 20, 2009. . . . . 5566**

**R. Email Correspondence Between Shannon Drake and Kathy Miller Re: Hey There dated February 5, 2009. . . . . 5569**

**S. GrandSouth Bank, Collection Report (Format A), Collections dated July 29, 2008 - March 31, 2011. . . . . 5572**

**T. Memorandum of Interview of Douglas Corriher, with Attachments, dated October 23, 2017. . . . . 5592**

**U. Grand South Bank Domestic Outgoing Wire Form dated September 8, 2009. . . . . 5683**

**V. Grand South Bank Domestic Outgoing Wire Form dated October 5, 2009. . . . . 5685**

**X. IHT of S.C., Inc. GSB DDA Account #17285 Statements dated May 29, 2009 - November 30, 2010. . . . . 5687**

**Exhibits to Government's Opposition to filed May 15, 2019, Continued:**

**Y. Paid Note Statement for Green Ideas N Motion Line of Credit #1465 dated July 29, 2008. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5753**

**Z. Paid Note Statement for Medaloni of SC, Inc., Line of Credit #54736 dated July 29, 2008. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5775**

# TABLE OF CONTENTS
## Volume XIII of XIV - Under Seal

Page:

Defendant's Response to Government's Objection to Defendant's Request for Discovery Concerning Her Application for Attorneys' Fees and Expenses, with Exhibit, filed June 7, 2019. . . . . 5790

Exhibit A; Sections:

1. [Count 1 ¶1] Testimony Excerpt - Douglas Corriher. . . . . 5803

2. [Count 1 ¶2] FDIC Information. . . . . 5805

3. [Count 1 ¶4]. . . . . 5811

4. [Count 1 ¶4] Testimony Excerpt - Shannon Drake on September 25, 2012. . . . . 5817

5. [Count 1 ¶7] Incorporation Information.. . . . . 5822

6. [Count 1 ¶¶8, 10-12] Testimony Excerpt - Julie Akers dated March 26, 2013. . . . . 5834

7. [Count 1 ¶14] Incorporation Information.. . . . . 5889

8. [Count 1 ¶28] GrandSouth Bank Information.. . . . . 5897

9. [Count 1 ¶28] FDIC Report for Grandsouth Bank for Examination Date as of March 31, 2009. . . . . 5908

10. [Count 1 ¶28, 29] FDIC Community Reinvestment Act Performance Evaluation dated March 31, 2009. . . . . 5922

**Exhibit A**
**Defendant's Response to Government's Objection to Defendant's Request for Discovery Concerning Her Application for Attorneys' Fees and Expenses filed June 7, 2019, Continued:**

11. [Count 1 ¶30] Legal Lending Limits: Testimony Excerpt - David Burgess on August 27, 2013.. . . . 5948

12. [Count 1 ¶32, 33] Factoring. . . . 5957

13. GrandSouth Bank Factoring Department Procedures (Multiple Paragraphs). . . . 5965

14. [Count 1 ¶36] Testimony Excerpt - Shannon Drake on September 25, 2012. . . . 5971

15. [Count 1 ¶36] Ron Earnest - Title/Position.. . . . 5976

16. [Count 1 ¶37] Commercial Loan Memo for Borrower Bruce Gregory Harrison; Officer Listed as "RKE" dated September 6, 2006 . . . 5983

17. [Count 1 ¶38] Testimony Excerpt - Ron Earnest on March 27, 2013. . . . 5987

18. [Count 1 ¶41] Lien Position Information. . . . 5992

19. [Count 1 ¶43] Payroll Tax Information.. . . . 5998

20. [Count 1 ¶44] Duty of Loan Officer - Testimony Excerpt - Ron Earnest on March 27, 2013. . . . 6005

**Exhibit A**
**Defendant's Response to Government's Objection to Defendant's Request for Discovery Concerning Her Application for Attorneys' Fees and Expenses filed June 7, 2019, Continued:**

21. [Count 1 ¶47, 48, 49] Testimony Excerpt - Douglas Corriher . . . 6010

22. [Count 1 ¶48, 49, 50] Corporation Information. . . . . . . . . . . . . . . . 6034

23. [Count 1 51] Agreement of Sale and Purchase of Assets Between US Staff Holding Corporation, Bruce Gregory Harrison and StaffCo Management Group, Inc.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6085

24. [Count 1 ¶52] Letter from Ronald Earnest to Greg Harrison dated February 26, 2007 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6156

25. [Count 1 ¶53, 54, 73] Commercial Loan Memo for Borrower Bruce Gregory Harrison; Officer Listed as "RKE" dated May 30, 2008 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6158

26. [Count 1 ¶55] Purchase and Sale Agreement Between US Funding, Inc., Compensation Management, Inc., Staffco Management Group, Inc. and Staffco Outsource Management, Inc. and Bruce Gregory Harrison dated August 15, 2008.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6163

27. [Count 1 ¶56, 57, 58, 94]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6184

**TABLE OF CONTENTS**
**Volume XIV of XIV - Under Seal**

**Page:**

**Exhibit A**
**Defendant's Response to Government's Objection to Defendant's Request for Discovery Concerning Her Application for Attorneys' Fees and Expenses filed June 7, 2019, Continued:**

28. [Count 1 ¶59, 60]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6204

29. [Count 1 ¶61, 62]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6228

30. [Count 1 ¶63, 64]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6255

31. [Count 1 ¶65, 66]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6262

32. [Count 1 ¶67, 68]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6281

33. [Count 1 ¶70, 83, 84, 85].. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6324

34. [Count 1 ¶71, 79]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6414

35. [Count 1 ¶72]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6438

36. [Count 1 ¶74] Testimony Excerpt - Corriher (Cross). . . . . . . . . . . 6447

37. [Count 1 ¶75, 86]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6450

38. [Count 1 ¶80]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6471

39. [Count 1 ¶87] Email and Related Attachment from Douglas Corriher to Greg Harrison and Julie Akers Regarding "Customer Roster" Breakdown dated January 2, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6489

**Exhibit A**
**Defendant's Response to Government's Objection to Defendant's Request for Discovery Concerning Her Application for Attorneys' Fees and Expenses filed June 7, 2019, Continued:**

40. [Count 1 ¶88, 95]. . . . . . . . . . 6545

41. [Count 1 ¶91] GrandSouth Bank Domestic Outgoing Wire Form - Request for Wire Transfer in the Amount of $3,281,362.60 dated January 16, 2009 . . . . . . . . . . 6551

42. [Count 1 ¶96] Unpaid Accounts Receivable Research Documentation with Payment Instructions. . . . . . . . . . 6553

43. [Count 1 ¶97] Unpaid Accounts Receivable Research Documentation and Payments. . . . . . . . . . 6567

44. [Count 1 ¶79; Counts 4-15 ¶2]. . . . . . . . . . 6587

45. [Count 30 ¶3] Email from Douglas Corriher to Larry Gibney and cc: Greg Harrison, Kathy Miller and Shannon Drake Regarding Funds in Receipt of US Funding dated March 11, 2009 . . . . . . . . . . 6594

46. [Count 30 ¶4] Email from Douglas Corriher to Larry Gibney cc: Greg Harrison Regarding Funds in Receipt of US Funding dated April 1, 2009. . . . . . . . . . 6597

**Amended Memorandum Opinion and Order filed May 4, 2021. . . . . . . . . . 6602**

Query Reports Utilities Help Log Out

APPEAL,CASREF,CLOSED

# U.S. District Court
# North Carolina Middle District (NCMD)
# CRIMINAL DOCKET FOR CASE #: 1:16-cr-00205-WO All Defendants

Case title: USA v. CORRIHER et al

Date Filed: 06/28/2016

Date Terminated: 02/07/2019

---

Assigned to: CHIEF JUDGE WILLIAM L. OSTEEN, JR

**Defendant (1)**

**DOUGLAS ALAN CORRIHER**
*TERMINATED: 12/18/2018*

represented by **EDWARD T. HINSON , JR.**
JAMES MCELROY & DIEHL, P.A.
600 S. COLLEGE ST., STE. 3000
CHARLOTTE, NC 28202
704-372-9870
Fax: 704-333-5508
Email: ehinson@jmdlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J. ALEXANDER HEROY**
JAMES MCELROY & DIEHL, P.A.
600 S. COLLEGE ST., STE. 3000
CHARLOTTE, NC 28202
704-372-9870
Fax: 704-333-5508
Email: aheroy@jmdlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:371, Conspiracy to commit bank fraud (1) | Dismissed |
| 18:371 Conspiracy to defraud the United States (1s) | Dismissed |
| 18:371 Conspiracy to commit bank fraud (1ss) | Dismissed |
| 18:1344(2) and 2, Bank fraud (2-15) | Dismissed |
| 18:1344(2) and 2 Conspiracy to commit | Dismissed |

| | |
|---|---|
| bank fraud<br>(2s-16s) | |
| 18:1344(2) and 2 Bank fraud<br>(2ss-16ss) | Dismissed |
| 18:656 and 2, Bank embezzlement by bank employee<br>(16-27) | Dismissed |
| 18:656 and 2 Misapplication of funds by bank employee<br>(17s-29s) | Dismissed |
| 18:656 and 2 Embezzlement by a bank employee<br>(17ss-29ss) | Dismissed |
| 18:371, Conspiracy to interfere with IRS laws<br>(28) | Dismissed |
| 26:7212(a) & 18, section 2, Interfere with IRS laws<br>(29) | Dismissed |
| 18:371, Conspiracy to make false entries in bank books/report<br>(30) | Dismissed |
| 18:371 Conspiracy to commit tax fraud<br>(30s) | Dismissed |
| 18:371 Conspiracy to impede IRS<br>(30ss) | Fifteen (15) months imprisonment; three (3) years supervised release; $7,556.882.38 restitution; $100.00 special assessment |
| 26:7212(a) and 18:2 Obstruct IRS<br>(31s) | Dismissed |
| 26:7212(a) and 18:2 Impede IRS in administrating internal revenue laws<br>(31ss) | Dismissed |
| 18:371 Conspiracy to defraud the US by impeding and impairing lawful functions of IRS in computing, collecting income taxes<br>(32s) | Dismissed |
| 18:371 Conspiracy of bank employee to make false entries on bank books<br>(32ss) | Dismissed |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

Assigned to: CHIEF JUDGE WILLIAM L. OSTEEN, JR

Appeals court case number: 21-4242

**Defendant (2)**

**SHANNON MICHELLE DRAKE**
*TERMINATED: 02/04/2019*

represented by

**CLAIRE J. RAUSCHER**
WOMBLE BOND DICKINSON (US), LLP
ONE WELLS FARGO CTR., STE. 3500
301 S. COLLEGE ST.
CHARLOTTE, NC 28202-6025
704-331-4900
Fax: 704-338-7811
Email: Claire.Rauscher@wbd-us.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**JOHN B. WHITE , JR.**
HARRISON WHITE, PC
178 WEST MAIN STREET
SPARTANBURG, SC 29306
864-585-5100
Fax: 865-542-2994
Email: jwhite@spartanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**MARGHRETTA H. SHISKO**
HARRISON WHITE, PC
178 WEST MAIN STREET
SPARTANBURG, SC 29306
864-585-5100
Fax: 864-542-2994
Email: mshisko@spartanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**STEPHEN LUKE LARGESS**
TIN FULTON WALKER & OWEN, PLLC
301 E. PARK AVE.
CHARLOTTE, NC 28203
704-338-1220
Fax: 704-338-1312
Email: LLargess@tinfulton.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**THOMAS R. FERGUSON , III**
WOMBLE BOND DICKINSON (US), LLP
ONE WELLS FARGO CTR., STE. 3500
301 S. COLLEGE ST.
CHARLOTTE, NC 28202-6025
704-331-4920
Fax: 704-338-7839
Email: Russ.Ferguson@wbd-us.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**ALLEN T. O'ROURKE**
WOMBLE BOND DICKINSON (US), LLP
ONE WELLS FARGO CTR., STE. 3500
301 S. COLLEGE ST.
CHARLOTTE, NC 28202-6025
704-350-6357
Fax: 704-338-7857
Email: allen.orourke@wbd-us.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:371, Conspiracy to commit bank fraud (1) | Judgment of Acquittal |
| 18:371 Conspiracy to defraud the United States (1s) | Judgment of Acquittal |
| 18:371 Conspiracy to commit bank fraud (1ss) | Judgment of Acquittal |
| 18:371 Conspiracy to commit bank fraud (1sss) | Judgment of Acquittal |
| 18:1344(2) and 2, Bank fraud (2) | Judgment of Acquittal |
| 18:1344(2) and 2 Conspiracy to commit bank fraud (2s-15s) | Judgment of Acquittal |
| 18:1344(2) and 2 Bank fraud (2ss-15ss) | Judgment of Acquittal |
| 18:1344(2) and 2 Bank fraud (2sss-14sss) | Judgment of Acquittal |
| 18:1344(2) and 2, Bank fraud (4-15) | Judgment of Acquittal |
| 18:656 and 2 Embezzlement by bank employee | Judgment of Acquittal |

| | |
|---|---|
| (15sss-27sss) | |
| 18:656 and 2, Bank embezzlement by bank employee (16-27) | Judgment of Acquittal |
| 18:656 and 2 Misapplication of funds by bank employee (17s-28s) | Judgment of Acquittal |
| 18:656 and 2 Embezzlement by a bank employee (17ss-28ss) | Judgment of Acquittal |
| 18:371 Conspiracy to falsify bank records (29sss) | Judgment of Acquittal |
| 18:371, Conspiracy to make false entries in bank books/report (30) | Judgment of Acquittal |
| 18:371 Conspiracy to defraud the US by impeding and impairing lawful functions of IRS in computing, collecting income taxes (32s) | Judgment of Acquittal |
| 18:371 Conspiracy of bank employee to make false entries on bank books (32ss) | Judgment of Acquittal |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: CHIEF JUDGE WILLIAM L. OSTEEN, JR

**Defendant (3)**

| | | |
|---|---|---|
| **RONALD KEITH EARNEST**<br>*TERMINATED: 02/07/2019* | represented by | **JOHN S. SIMMONS**<br>SIMMONS LAW FIRM, LLC<br>1711 PICKENS STREET<br>COLUMBIA, SC 29201<br>803-779-4600<br>Fax: 803-254-8874<br>Email: jsimmons@simmonslawfirm.com<br>*LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**JOSHUA BRIAN HOWARD**
GAMMON, HOWARD & ZESZOTARSKI, PLLC
115 1/2 W. MORGAN ST.
RALEIGH, NC 27601
919-521-5878
Fax: 919-882-1898
Email: jhoward@ghz-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**STEPHEN LUKE LARGESS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**DEBORAH B. BARBIER**
DEBORAH B. BARBIER, LLC
1811 PICKENS STREET
COLUMBIA, SC 29201
803-445-1032
Fax: 803-445-1036
Email: dbb@deborahbarbier.com
*ATTORNEY TO BE NOTICED*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:371 Conspiracy to defraud the United States (1) | Judgment of Acquittal |
| 18:371 Conspiracy to commit bank fraud (1s) | Judgment of Acquittal |
| 18:371 Conspiracy to commit bank fraud (1ss) | Judgment of Acquittal |
| 18:1344(2) and 2 Conspiracy to commit bank fraud (2-15) | Judgment of Acquittal |
| 18:1344(2) and 2 Bank fraud (2s-15s) | Judgment of Acquittal |
| 18:1344(2) and 2 Bank fraud (2ss-14ss) | Judgment of Acquittal |
| 18:656 and 2 Embezzlement by bank employee (15ss-27ss) | Judgment of Acquittal |
| 18:656 and 2 Misapplication of funds by bank employee | Judgment of Acquittal |

| | |
|---|---|
| (17-28) | |
| 18:656 and 2 Embezzlement by a bank employee (17s-28s) | Judgment of Acquittal |
| 18:371 Conspiracy to commit bank fraud (28ss) | Judgment of Acquittal |
| 18:1503 and 2 False information to grand jury (30ss) | Judgment of Acquittal |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: CHIEF JUDGE WILLIAM L. OSTEEN, JR

**Defendant (4)**

**ROBERT THOMAS TAYLOR**
*TERMINATED: 02/07/2019*

represented by **JOHN S. SIMMONS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**STEPHEN LUKE LARGESS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**WES J. CAMDEN**
WILLIAMS MULLEN
301 FAYETTEVILLE STREET
SUITE 1700
RALEIGH, NC 27601
919.981.4064
Fax: 919.981.4300
Email: wcamden@williamsmullen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CAITLIN M. POE**
WILLIAMS MULLEN
301 FAYETTEVILLE STREET
SUITE 1700
RALEIGH, NC 27601
919-981-4085
Fax: 919-981-4300
Email: cpoe@williamsmullen.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**JAMES W. BANNISTER**
BANNISTER WYATT & STALVEY, LLC
POB 10007
GREENVILLE, SC 29603
864-298-0084
Fax: 864-298-0146
Email: jbannister@bannisterwyatt.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:371 Conspiracy to commit bank fraud (1) | Judgment of Acquittal |
| 18:1344(2) and 2 Bank fraud (2-14) | Judgment of Acquittal |
| 18:656 and 2 Embezzlement by bank employee (15-27) | Judgment of Acquittal |
| 18:371 Conspiracy to falsify bank records (29) | Judgment of Acquittal |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Movant**

**SMITH MOORE LEATHERWOOD,** represented by **JONATHAN ARTHUR**

**L.L.P.**

**BERKELHAMMER**
ELLIS & WINTERS, LLP
POB 2752
GREENSBORO, NC 27402
336-389-5683
Fax: 336-217-4198
Email: jon.berkelhammer@elliswinters.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**KELLY MARGOLIS DAGGER**
ELLIS & WINTERS, LLP
4131 PARKLAKE AVENUE, STE. 400
RALEIGH, NC 27612
919-573-1292
Fax: 919-685-7010
Email: kelly.dagger@elliswinters.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**FOX ROTHSCHILD, LLP.** represented by **JONATHAN ARTHUR BERKELHAMMER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**KELLY MARGOLIS DAGGER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

---

**Plaintiff**

**USA** represented by **FRANK JOSEPH CHUT , JR.**
U. S. ATTORNEY'S OFFICE
101 S. EDGEWORTH ST., 4TH FLOOR
GREENSBORO, NC 27401
336-332-6320
Fax: 336-333-5381
Email: frank.chut@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: United States Attorney*

**JEFFREY A. MCLELLAN**
U. S. DEPT. OF JUSTICE
TRIAL ATTORNEY, TAX DIVISION

POB 972
WASHINGTON, DC 20044
202-514-5181
Fax: 202-514-8455
Email: jeffrey.a.mclellan@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SANDRA J. HAIRSTON**
U. S. ATTORNEY'S OFFICE
101 S. EDGEWORTH ST., 4TH FLOOR
GREENSBORO, NC 27401
336-333-5351
Email: sandra.hairston@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: United States Attorney*

**JOAN BRODISH CHILDS**
U. S. ATTORNEY'S OFFICE - MDNC
101 S. EDGEWORTH ST., 4TH FLOOR
GREENSBORO, NC 27401
336-333-5351
Fax: 336-333-5257
Email: joan.childs@usdoj.gov
*ATTORNEY TO BE NOTICED*

**MATTHEW G. T. MARTIN**
NO LONGER ASSOCIATED WITH FIRM
U. S. ATTORNEY'S OFFICE
101 S. EDGEWORTH ST., 4TH FLOOR
GREENSBORO, NC 27401
336-333-5351
Fax: 336-333-5381
*ATTORNEY TO BE NOTICED*

**NATHAN P. BROOKS**
U. S. DEPARTMENT OF JUSTICE
601 D ST., NW, 7TH FLOOR
WASHINGTON, DC 20004
202-616-3362
Fax: 202-514-0961
Email: nathan.p.brooks@usdoj.gov
*ATTORNEY TO BE NOTICED*

**WILLIAM M. MONTAGUE**
DEPARTMENT OF JUSTICE
TAX DIVISION
601 D. STREET, NW
WASHINGTON, DC 20004
202-616-2386
Fax: 202-514-0961
Email: william.m.montague@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/28/2016 | 1 | INDICTMENT as to DOUGLAS ALAN CORRIHER (1) count(s) 1, 2-15, 16-27, 28, 29, 30, SHANNON MICHELLE DRAKE (2) count(s) 1, 2, 4-15, 16-27, 30. (Taylor, Abby) (Main Document 1 replaced on 6/19/2019) (Hicks, Samantha). (Entered: 06/29/2016) |
| 06/29/2016 | 3 | Arrest Warrant Issued in case as to DOUGLAS ALAN CORRIHER. (Taylor, Abby) (Entered: 06/29/2016) |
| 06/29/2016 | 4 | Arrest Warrant Issued in case as to SHANNON MICHELLE DRAKE. (Taylor, Abby) (Entered: 06/29/2016) |
| 06/30/2016 | 5 | NOTICE OF ATTORNEY APPEARANCE NATHAN P. BROOKS appearing for USA. (BROOKS, NATHAN) (Entered: 06/30/2016) |
| 07/06/2016 | 6 | NOTICE OF ATTORNEY APPEARANCE JEFFREY A. MCLELLAN appearing for USA. (MCLELLAN, JEFFREY) (Entered: 07/06/2016) |
| 07/06/2016 | | Minute Entry for proceedings held before MAG/JUDGE JOE L. WEBSTER in G1A: Initial Appearance/Release Hearing as to DOUGLAS ALAN CORRIHER held on 7/6/2016. AUSA Lisa Boggs. Attorney Edward Hinson entered a limited appearance. Defendant released on conditions agreed to by government(see order). Defendant to be notified as to arraignment. Proceedings Recorded. (Garrett, Kim) (Entered: 07/06/2016) |
| 07/06/2016 | 7 | Arrest Warrant Returned Executed on 7/6/2016 in case as to DOUGLAS ALAN CORRIHER. (Sheets, Jamie) (Entered: 07/07/2016) |
| 07/07/2016 | 8 | SEALED FINANCIAL AFFIDAVIT by DOUGLAS ALAN CORRIHER. (Sheets, Jamie) (Entered: 07/07/2016) |
| 07/07/2016 | 9 | ORDER Setting Conditions of Release for DOUGLAS ALAN CORRIHER. Signed by MAG/JUDGE JOE L. WEBSTER on 7/6/2016. (Sheets, Jamie) (Entered: 07/07/2016) |
| 07/07/2016 | 10 | Appearance Bond Entered as to DOUGLAS ALAN CORRIHER (1) $10,000 unsecured. (Sheets, Jamie) (Entered: 07/07/2016) |
| 07/11/2016 | | Arrest of SHANNON MICHELLE DRAKE on 7/11/2016. (Garrett, Kim) (Entered: 07/11/2016) |
| 07/11/2016 | | Minute Entry for proceedings held before MAG/JUDGE L. PATRICK AULD:Initial Appearance/Release Hearing as to SHANNON MICHELLE DRAKE held on 7/11/2016. AUSA Frank Chut. Attorney Claire Rauscher present with defendant and entered an appearance. Defendant released (see order). Proceedings recorded. (Garrett, Kim) (Entered: 07/11/2016) |
| 07/11/2016 | 11 | Appearance Bond as to SHANNON MICHELLE DRAKE (2); Unsecured, $10,000.00. (Daniel, J) (Entered: 07/11/2016) |
| 07/11/2016 | 12 | ORDER Setting Conditions of Release for SHANNON MICHELLE DRAKE (2). Signed by MAG/JUDGE L. PATRICK AULD on 7/11/2016. (Daniel, J) (Entered: 07/11/2016) |
| 07/11/2016 | 13 | ARREST Warrant Returned Executed on 7/11/2016 in case as to SHANNON MICHELLE DRAKE (2). (Daniel, J) (Entered: 07/12/2016) |
| 07/14/2016 | 14 | NOTICE OF ATTORNEY APPEARANCE: EDWARD T. HINSON, JR appearing for DOUGLAS ALAN CORRIHER (HINSON, EDWARD) (Entered: 07/14/2016) |
| 07/22/2016 | 15 | NOTICE OF ATTORNEY APPEARANCE: J. ALEXANDER HEROY appearing for DOUGLAS ALAN CORRIHER (HEROY, J.) (Entered: 07/22/2016) |

| | | |
|---|---|---|
| 08/03/2016 | | Minute Entry for proceedings held before JUDGE CATHERINE C. EAGLES: AUSA Frank Chut present for Government and Attorneys Edward Hinson and Alexander Heroy present as counsel for defendant. Arraignment as to DOUGLAS ALAN CORRIHER (1) Counts 1-30 held on 8/3/2016. Defendant pleads NOT GUILTY to all charges. Court places this matter on the October Criminal Term, the time between 8/3/16 and 10/10/16 is excluded in the interest of justice. (Court Reporter Jane Calhoun.) (Sanders, Marlene) (Entered: 08/03/2016) |
| 08/03/2016 | 16 | SCHEDULING ORDER as to DOUGLAS ALAN CORRIHER Signed by John S. Brubaker, Clerk, U. S. District Court. Motions due by 9/14/16. Responses due 9/21/16. Motion Hearing and Plea Changes set for 9:30 a.m. 10/3/16 in Winston-Salem, NC. Plea Agreements due no later than 12:00 noon 9/29/16. Jury trial set for 9:30 a.m. on 10/11/16 in Winston-Salem, NC. Counsel are instructed to notify the U.S. Attorneys Office of any scheduling conflicts no later than Monday, 9/26/16. (Sanders, Marlene) (Entered: 08/03/2016) |
| 08/03/2016 | | Minute Entry for proceedings held before JUDGE CATHERINE C. EAGLES: AUSA Frank Chut present for Government and Attorney Claire Rauscher present as counsel for defendant. Arraignment as to SHANNON MICHELLE DRAKE (2) on Counts 1-30 held on 8/3/2016. Defendant pleads NOT GUILTY to all charges. Court places this matter on the October Criminal Term, the time between 8/3/16 and 10/10/16 is excluded in the interest of justice. (Court Reporter Jane Calhoun.) (Sanders, Marlene) (Entered: 08/03/2016) |
| 08/03/2016 | 17 | SCHEDULING ORDER as to SHANNON MICHELLE DRAKE Signed by John S. Brubaker, Clerk, U. S. District Court. Motions due by 9/14/16. Responses due 9/21/16. Motion Hearing and Plea Changes set for 9:30 a.m. 10/3/16 in Winston-Salem, NC. Plea Agreements due no later than 12:00 noon 9/29/16. Jury trial set for 9:30 a.m. on 10/11/16 in Winston-Salem, NC. Counsel are instructed to notify the U.S. Attorneys Office of any scheduling conflicts no later than Monday, 9/26/16. (Sanders, Marlene) (Entered: 08/03/2016) |
| 09/30/2016 | 18 | Joint MOTION to Continue Trial by DOUGLAS ALAN CORRIHER as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE. Responses due by 10/11/2016 Responses due by 10/24/2016 (HEROY, J.) (Entered: 09/30/2016) |
| 10/04/2016 | | Email Notification on 10/4/2016 from AUSA Frank Chut regarding 18 Motion to Continue. The government does not object. (Winchester, Robin) (Entered: 10/04/2016) |
| 10/04/2016 | | Motion Submission as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE re 18 Joint MOTION to Continue Trial to JUDGE N. C. TILLEY, JR. (Winchester, Robin) (Entered: 10/04/2016) |
| 10/06/2016 | | Telephone Notification on 10/6/2016 to Attorney J. Alexander Heroy, Attorney Claire J. Rouscher and AUSA Frank Chut scheduling motion hearing. Motion Hearing set for 10/12/2016 02:00 PM in Greensboro Courtroom #2 before JUDGE N. C. TILLEY JR. re: 18 Joint Motion to Continue Trial(Winchester, Robin) (Entered: 10/06/2016) |
| 10/12/2016 | | Minute Entry for proceedings held before JUDGE N. C. TILLEY, JR: AUSA Frank Chut appeared on behalf of the Government; Jeffrey A. McLellan and Nathan P. Brooks with USDOJ present. Attorneys Edward T. Hinson, Jr. and J. Alexander Heroy appeared with defendant Douglas Alan Corriher. Attorney Claire J. Rauscher appeared with defendant Shannon Michelle Drake. Motion Hearing as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE held on 10/12/2016 re 18 Joint MOTION to Continue Trial filed by DOUGLAS ALAN CORRIHER. (Court Reporter Jane Calhoun.) (Winchester, Robin) (Entered: 10/12/2016) |

| | | |
|---|---|---|
| 10/12/2016 | | ORAL ORDER by JUDGE N. C. TILLEY, JR on 10/12/2016 as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE re: 18 Joint MOTION to Continue Trial. For reasons stated on the record the motion is GRANTED. These matters are continued until the January 2017 Criminal Term of Court. The period from 10/12/2016, up to and including 01/03/2017, is hereby excluded. (Winchester, Robin) (Entered: 10/12/2016) |
| 10/18/2016 | 19 | NOTICE OF ATTORNEY APPEARANCE: THOMAS R. FERGUSON, III appearing for SHANNON MICHELLE DRAKE (FERGUSON, THOMAS) (Entered: 10/18/2016) |
| 11/29/2016 | 20 | SUPERSEDING INDICTMENT as to DOUGLAS ALAN CORRIHER (1) count(s) 1s, 2s-16s, 17s-29s, 30s, 31s, 32s, SHANNON MICHELLE DRAKE (2) count(s) 1s, 2s-15s, 17s-28s, 32s, RONALD KEITH EARNEST (3) count(s) 1, 2-15, 17-28. (Daniel, J) (Main Document 20 replaced on 6/28/2019) (Hicks, Samantha). (Entered: 11/29/2016) |
| 11/30/2016 | 22 | NOTICE OF HEARING as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE. This case will be called for arraignment during the first week of the December Criminal Term of Court beginning 12/5/2016 at 9:30 a.m. in Greensboro Courtroom #1. (Sheets, Jamie) (Entered: 11/30/2016) |
| 11/30/2016 | 23 | Arrest Warrant Issued in case as to RONALD KEITH EARNEST. (Sheets, Jamie) (Entered: 11/30/2016) |
| 12/05/2016 | 24 | Motion for Court to Allow Notice of Limited Appearance as to JOSHUA BRIAN HOWARD appearing for RONALD KEITH EARNEST (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) Modified on 12/5/2016 to reflect as Motion. (Kemp, Donita). (Entered: 12/05/2016) |
| 12/05/2016 | 25 | MEMORANDUM *IN SUPPORT OF MOTION FOR COURT TO ACCEPT NOTICE OF LIMITED APPEARANCE* by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 12/05/2016) |
| 12/05/2016 | | Motions Referred: RE: 24 MOTION for Court to Allow Notice of Limited Appearance to MAG/JUDGE L. PATRICK AULD. (Kemp, Donita) (Entered: 12/05/2016) |
| 12/05/2016 | | Minute Entry for proceedings held before MAG/JUDGE L. PATRICK AULD:Initial Appearance as to RONALD KEITH EARNEST held on 12/5/2016. (AUSA Lisa Boggs; Counsel for defendant Joshua Howard; Proceedings Recorded) (Kemp, Donita) (Entered: 12/05/2016) |
| 12/05/2016 | | Minute Entry for proceedings held before MAG/JUDGE L. PATRICK AULD:Arraignment as to RONALD KEITH EARNEST (3) Count 1,2-15,17-28 held on 12/5/2016. Defendant(s) pleads NOT GUILTY to all charges. (AUSA Lisa Boggs; Counsel for defendant Joshua Howard; Proceedings Recorded) (Kemp, Donita) (Entered: 12/05/2016) |
| 12/05/2016 | 26 | SCHEDULING ORDER as to RONALD KEITH EARNEST Signed by John S. Brubaker, Clerk, U. S. District Court, on 11/1/2016. Motions due 12/14/2016. Responses due 12/21/2016. Hearing on any motions at 9:30 a.m. on 1/3/2017 in Greensboro. Plea Agreements, if any, due no later than 12:00 noon 12/29/2016. Change of Plea Hearing at 9:30 a.m. on 1/3/2017 in Greensboro. Counsel to notify U. S. Attorney's Office of any scheduling conflicts no later than 12/27/2016. Jury Trial set for 9:30 a.m., 1/9/2017, in Greensboro unless otherwise instructed by the Court. Trial Briefs and Request for Preliminary Instructions must be filed by 12:00 noon on 1/5/2017, prior to beginning of jury term. (Kemp, Donita) (Entered: 12/05/2016) |
| 12/05/2016 | | Minute Entry for proceedings held before MAG/JUDGE L. PATRICK AULD: Release Hearing as to RONALD KEITH EARNEST held on 12/5/2016. For the reasons stated on the record, defendant's 24 Motion for Court to Allow Notice of Limited Appearance is |

| | | |
|---|---|---|
| | | hereby WITHDRAWN and terminated as MOOT; The Government agrees to conditions of release and the defendant is ordered Released; Written order forthcoming. (AUSA Lisa Boggs; Counsel for defendant Joshua Howard; Proceedings Recorded) (Kemp, Donita) (Entered: 12/05/2016) |
| 12/05/2016 | 28 | Appearance Bond in case as to RONALD KEITH EARNEST (3) $10,000.00 unsecured. (Daniel, J) (Entered: 12/06/2016) |
| 12/05/2016 | 29 | ORDER Setting Conditions of Release for RONALD KEITH EARNEST (3). Signed by MAG/JUDGE L. PATRICK AULD on 12/5/2016. (Daniel, J) (Entered: 12/06/2016) |
| 12/06/2016 | 27 | Arrest Warrant Returned Executed on 12/05/2016 in case as to RONALD KEITH EARNEST. (Sonbay, Kenan) (Entered: 12/06/2016) |
| 12/09/2016 | | Minute Entry for proceedings held before CHIEF JUDGE WILLIAM L. OSTEEN, JR., in G_1: Arraignment as to SHANNON MICHELLE DRAKE (2) Counts 1s,2s-15s,17s-28s,32s held on 12/9/2016. AUSA Kyle Pousson present on behalf of the Government. Attorney Claire Rauscher present on behalf of the Defendant. Defendant present on bond. Defendant(s) pleads NOT GUILTY to all charges. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 12/09/2016) |
| 12/09/2016 | 30 | SCHEDULING ORDER as to SHANNON MICHELLE DRAKE Signed by John S. Brubaker, Clerk, U. S. District Court on 11/1/16. Motions due 12/14/2016; Responses due 12/21/2016; Hearing on Motions 9:30 a.m., 1/03/2017 in Greensboro, N.C.; Plea Agreements, if any, due not later than 12:00 noon, 12/29/2016; Change of Plea and Hearing 9:30 a.m. on 01/03/2017 in Greensboro, N.C.; Jury Trial 9:30 a.m. on Monday, 01/09/2017 in Greensboro, N.C.; Trial Briefs and any requests for jury instructions must be filed no later than 12:00 p.m., 01/05/2017. (Welch, Kelly) (Entered: 12/09/2016) |
| 12/09/2016 | | Minute Entry for proceedings held before CHIEF JUDGE WILLIAM L. OSTEEN, JR., in G-1: Arraignment as to DOUGLAS ALAN CORRIHER (1) Counts 1s,2s-16s,17s-29s,30s,31s,32s held on 12/9/2016. AUSA Kyle Pousson present on behalf of the Government. Attorney Alexander Henry present on behalf of the Defendant. Defendant present on bond. Defendant(s) pleads NOT GUILTY to all charges. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 12/09/2016) |
| 12/09/2016 | 31 | SCHEDULING ORDER as to DOUGLAS ALAN CORRIHER Signed by John S. Brubaker, Clerk, U. S. District Court on 11/1/16. Motions due 12/14/2016; Responses due 12/21/2016; Hearing on Motions 9:30 a.m., 1/03/2017 in Greensboro, N.C.; Plea Agreements, if any, due not later than 12:00 noon, 12/29/2016; Change of Plea and Hearing 9:30 a.m. on 01/03/2017 in Greensboro, N.C.; Jury Trial 9:30 a.m. on Monday, 01/09/2017 in Greensboro, N.C.; Trial Briefs and any requests for jury instructions must be filed no later than 12:00 p.m., 01/05/2017. (Welch, Kelly) (Entered: 12/09/2016) |
| 12/12/2016 | 32 | NOTICE OF ATTORNEY APPEARANCE: JOSHUA BRIAN HOWARD appearing for RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 12/12/2016) |
| 12/14/2016 | 33 | MOTION for Extension of Time To File Motion by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 12/14/2016) |
| 12/16/2016 | | Motion Submission as to RONALD KEITH EARNEST re 33 MOTION for Extension of Time To File Motion to JUDGE N. C. TILLEY, JR- (Williamson, Wanda) (Entered: 12/16/2016) |
| 01/09/2017 | 34 | Joint MOTION to Extend Trial Status Conference Date by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE. Response to Motion due by 1/30/2017 (Attachments: # 1 Exhibit 1)(RAUSCHER, CLAIRE) (Entered: 01/09/2017) |

| | | |
|---|---|---|
| 01/11/2017 | | Case as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST assigned to JUDGE N. C. TILLEY, JR. (Winchester, Robin) (Entered: 01/11/2017) |
| 01/11/2017 | | Minute Entry for proceedings held before JUDGE N. C. TILLEY, JR: AUSA Frank Chut appeared with Nathan P. Brooks with USDOJ. Attorney Edward T. Hinson, Jr. appeared with Defendant Douglas Alan Corriher. Attorney Claire J. Rauscher appeared with defendant Shannon Michelle Drake and Attorney Joshua Howard appeared with defendant Ronald Keith Earnest. Status Conference as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST held on 1/11/2017. For reasons stated on the record the court denies 34 Joint Motion to Extend Status Conference; the court grants 33 Motion for Extension of Time to File Motion filed by defendant Ronald Earnest. Defendant Ronald Earnest has 60 days to file motions; government shall file response within the normal response deadline. A Status Conference will be scheduled 30 days thereafter. The period from 1/11/2017, up to and including 4/12/2017. is hereby excluded. (Court Reporter Jane Calhoun.) (Winchester, Robin) (Entered: 01/11/2017) |
| 03/02/2017 | 35 | Joint MOTION for Extension of Time To File Motion until May 10, 2017by RONALD KEITH EARNEST as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order) (HOWARD, JOSHUA) (Entered: 03/02/2017) |
| 03/03/2017 | | Motion Submission as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST re 35 Joint MOTION for Extension of Time To File Motion until May 10, 2017 to JUDGE N. C. TILLEY, JR. (Winchester, Robin) (Entered: 03/03/2017) |
| 03/03/2017 | 36 | ORDER. Signed by JUDGE N. C. TILLEY, JR. on 3/3/2017, granting 35 motion for extension of time to file pretrial motion until 5/10/2017 in case as to DOUGLAS ALAN CORRIHER (1), SHANNON MICHELLE DRAKE (2), and RONALD KEITH EARNEST (3). (Daniel, J) (Entered: 03/03/2017) |
| 05/08/2017 | 37 | Joint MOTION for Extension of Time To File Motion Pre-trial Motions until June 9, 2017by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST. (RAUSCHER, CLAIRE) (Entered: 05/08/2017) |
| 05/09/2017 | | Motion Submission as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST re 37 Joint MOTION for Extension of Time To File Motion Pre-trial Motions until June 9, 2017 to JUDGE N. C. TILLEY, JR. (Winchester, Robin) (Entered: 05/09/2017) |
| 05/09/2017 | 38 | ORDER. Signed by JUDGE N. C. TILLEY, JR. on 5/9/2017, that 37 Motion for Extension of Time is GRANTED and the time for filing pretrial motions is extended until 6/9/2017 in case as to DOUGLAS ALAN CORRIHER (1), SHANNON MICHELLE DRAKE (2), and RONALD KEITH EARNEST (3). (Daniel, J) (Entered: 05/09/2017) |
| 06/09/2017 | 39 | MOTION to Dismiss *COUNT ONE* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 06/09/2017) |
| 06/09/2017 | 40 | MEMORANDUM *IN SUPPORT* by RONALD KEITH EARNEST re 39 Motion to Dismiss filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 06/09/2017) |
| 06/09/2017 | 41 | MOTION to Dismiss *COUNTS ONE THROUGH FIFTEEN* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 06/09/2017) |

| | | |
|---|---|---|
| 06/09/2017 | 42 | MEMORANDUM *IN SUPPORT* by RONALD KEITH EARNEST re 41 Motion to Dismiss. (HOWARD, JOSHUA) Modified on 6/12/2017 to link to motion. (Sheets, Jamie) (Entered: 06/09/2017) |
| 06/09/2017 | 43 | MOTION to Dismiss *COUNTS THREE THROUGH FIFTEEN* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 06/09/2017) |
| 06/09/2017 | 44 | MEMORANDUM *IN SUPPORT* by RONALD KEITH EARNEST re 43 Motion to Dismiss. (HOWARD, JOSHUA) Modified on 6/12/2017 to link to motion. (Sheets, Jamie) (Entered: 06/09/2017) |
| 06/09/2017 | 45 | MOTION to Sever by SHANNON MICHELLE DRAKE. Response to Motion due by 6/30/2017 (Attachments: # 1 Text of Proposed Order)(RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/09/2017 | 46 | MEMORANDUM by SHANNON MICHELLE DRAKE re 45 MOTION to Sever filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/09/2017 | 47 | MOTION to Dismiss *Count One* by SHANNON MICHELLE DRAKE. Response to Motion due by 6/30/2017 (Attachments: # 1 Text of Proposed Order)(RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/09/2017 | 48 | MEMORANDUM by SHANNON MICHELLE DRAKE re 47 MOTION to Dismiss *Count One* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/09/2017 | 49 | MOTION to Dismiss *Superseding Indictment* by SHANNON MICHELLE DRAKE. Response to Motion due by 6/30/2017 (Attachments: # 1 Text of Proposed Order) (RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/09/2017 | 50 | MEMORANDUM by SHANNON MICHELLE DRAKE re 49 MOTION to Dismiss *Superseding Indictment* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/09/2017 | 51 | MOTION to Dismiss *Count Thirty-Two* by SHANNON MICHELLE DRAKE. Response to Motion due by 6/30/2017 (Attachments: # 1 Text of Proposed Order)(RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/09/2017 | 52 | MOTION to Dismiss *Superseding Indictment Based on Insufficient Allegations* by SHANNON MICHELLE DRAKE. Response to Motion due by 6/30/2017 (Attachments: # 1 Text of Proposed Order)(RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/09/2017 | 53 | MEMORANDUM by SHANNON MICHELLE DRAKE re 52 MOTION to Dismiss *Superseding Indictment Based on Insufficient Allegations* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/09/2017 | 54 | MEMORANDUM by SHANNON MICHELLE DRAKE re 51 MOTION to Dismiss *Count Thirty-Two* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 06/09/2017) |
| 06/12/2017 | | Set Motion Response Deadlines in case as to RONALD KEITH EARNEST re: 39 MOTION to Dismiss *COUNT ONE*, 41 MOTION to Dismiss *COUNTS ONE THROUGH FIFTEEN*, 43 MOTION to Dismiss *COUNTS THREE THROUGH FIFTEEN*. Responses due by 6/30/2017. (Sheets, Jamie) (Entered: 06/12/2017) |
| 06/16/2017 | 55 | MOTION for Extension of Time to File Response/Reply until 7/7/17by USA as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST. (CHUT, FRANK) (Entered: 06/16/2017) |

| | | |
|---|---|---|
| 06/22/2017 | | Motion Submission as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST re 55 MOTION for Extension of Time to File Response/Reply until 7/7/17 to JUDGE N. C. TILLEY, JR. (Winchester, Robin) (Entered: 06/22/2017) |
| 06/23/2017 | 56 | ORDER. Signed by JUDGE N. C. TILLEY, JR. on 6/23/2017, that the United States is granted a seven day extension of time, until 7/7/2017, to file its Response to Defendants' Pre-Trial Motion in case as to DOUGLAS ALAN CORRIHER (1), SHANNON MICHELLE DRAKE (2), and RONALD KEITH EARNEST (3). (Daniel, J) (Entered: 06/23/2017) |
| 06/27/2017 | 57 | SUPERSEDING INDICTMENT as to DOUGLAS ALAN CORRIHER (1) count(s) 1ss, 2ss-16ss, 17ss-29ss, 30ss, 31ss, 32ss, SHANNON MICHELLE DRAKE (2) count(s) 1ss, 2ss-15ss, 17ss-28ss, 32ss, RONALD KEITH EARNEST (3) count(s) 1s, 2s-15s, 17s-28s. (Daniel, J) (Entered: 06/28/2017) |
| 06/28/2017 | 59 | NOTICE OF HEARING as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, and RONALD KEITH EARNEST. This case will be called for Arraignment during the first week of July 2017 Criminal Term of Court beginning 7/10/2017 in Greensboro Courtroom #1. (Daniel, J) (Entered: 06/28/2017) |
| 06/29/2017 | 60 | PLEA AGREEMENT as to DOUGLAS ALAN CORRIHER (1). (Daniel, J) (Entered: 06/29/2017) |
| 06/30/2017 | 61 | Factual Basis Document as to DOUGLAS ALAN CORRIHER filed on 6/30/2017 (CHUT, FRANK) (Entered: 06/30/2017) |
| 07/07/2017 | 62 | SEALED RESPONSE to Motion filed by USA, SHANNON MICHELLE DRAKE as to SHANNON MICHELLE DRAKE re 49 MOTION to Dismiss *Superseding Indictment*, 47 MOTION to Dismiss *Count One*, 52 MOTION to Dismiss *Superseding Indictment Based on Insufficient Allegations*, 45 MOTION to Sever , 51 MOTION to Dismiss *Count Thirty-Two* (Attachments: # 1 Exhibit Grand Jury Testimony, # 2 Exhibit Grand Jury Testimony)(CHUT, FRANK) (Entered: 07/07/2017) |
| 07/07/2017 | 63 | RESPONSE to Motion filed by USA as to RONALD KEITH EARNEST re 39 MOTION to Dismiss *COUNT ONE*, 43 MOTION to Dismiss *COUNTS THREE THROUGH FIFTEEN*, 41 MOTION to Dismiss *COUNTS ONE THROUGH FIFTEEN* Replies due by 7/21/2017 (CHUT, FRANK) (Entered: 07/07/2017) |
| 07/17/2017 | 64 | REPLY, by SHANNON MICHELLE DRAKE, TO RESPONSE to 49 MOTION to Dismiss *Superseding Indictment*, 47 MOTION to Dismiss *Count One*, 52 MOTION to Dismiss *Superseding Indictment Based on Insufficient Allegations*, 45 MOTION to Sever , 51 MOTION to Dismiss *Count Thirty-Two* (RAUSCHER, CLAIRE) (Entered: 07/17/2017) |
| 07/21/2017 | | Minute Entry for proceedings held before CHIEF JUDGE WILLIAM L. OSTEEN, JR., in G-1: Arraignment as to SHANNON MICHELLE DRAKE (2) on Counts 1ss, 2ss-15ss, 17ss-28ss, 32ss held on 7/21/2017. AUSA Frank Chut present; Attorney Claire Rauscher appeared on behalf of the Defendant. Defendant present on bond. Defendant(s) pleads NOT GUILTY to all charges. (Court Reporter Joseph Armstorng.) (Welch, Kelly) (Entered: 07/21/2017) |
| 07/21/2017 | 65 | SCHEDULING ORDER as to SHANNON MICHELLE DRAKE signed by John S. Brubaker, Clerk, U. S. District Court on 07/17/2017. Motions due 08/21/2017; Responses due 08/28/2017; Hearing on Motions 9:30 a.m., 09/05/2017 in Greensboro, N.C.; Plea Agreements, if any, due not later than 12:00 noon, 08/31/2017; Change of Plea and Hearing 9:30 a.m. on 09/05/2017 in Greensboro, N.C.; Jury Trial 9:30 a.m. on Monday, 09/11/2017 in Greensboro, N.C. (Welch, Kelly) (Entered: 07/21/2017) |

| | | |
|---|---|---|
| 07/21/2017 | | Minute Entry for proceedings held before CHIEF JUDGE WILLIAM L. OSTEEN, JR., in G-1: Arraignment as to RONALD KEITH EARNEST (3) Count 1s,2s-15s,17s-28s held on 7/21/2017. AUSA Frank Chut present. Attorney John Howard appeared on behalf of the Defendant. Defendant present on bond. Defendant(s) pleads NOT GUILTY to all charges. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 07/21/2017) |
| 07/21/2017 | 66 | SCHEDULING ORDER as to RONALD KEITH EARNEST signed by John S. Brubaker, Clerk, U. S. District Court on 07/17/2017. Motions due 08/21/2017; Responses due 08/28/2017; Hearing on Motions 9:30 a.m., 09/05/2017 in Greensboro, N.C.; Plea Agreements, if any, due not later than 12:00 noon, 08/31/2017; Change of Plea and Hearing 9:30 a.m. on 09/05/2017 in Greensboro, N.C.; Jury Trial 9:30 a.m. on Monday, 09/11/2017 in Greensboro, N.C. (Welch, Kelly) (Entered: 07/21/2017) |
| 07/24/2017 | | Minute Entry for proceedings held before CHIEF JUDGE WILLIAM L. OSTEEN, JR: AUSA Frank Chut present for Government and Attorney Ed Hinson present as counsel for defendant. Defendant present on bond. Arraignment as to DOUGLAS ALAN CORRIHER (1) Count 30ss held on 7/24/2017. Defendant pleads GUILTY to all charges. (Court Reporter Joe Armstrong.) (Sanders, Marlene) (Entered: 07/24/2017) |
| 07/24/2017 | | Minute Entry for proceedings held before CHIEF JUDGE WILLIAM L. OSTEEN, JR: AUSA Frank Chut present for Government and Attorney Ed Hinson present as counsel for defendant. CHANGE OF PLEA HEARING held on 7/24/2017. Defendant present on bond. Defendant placed under oath and advised of rights/charges/penalties; Court reviews the plea agreement; Court finds defendant competent to enter a guilty plea; Factual Basis Hearing held; Court adjudges DOUGLAS ALAN CORRIHER (1) GUILTY on Count 30ss. Remaining Counts to be dismissed at sentencing. Court orders the preparation of a Presentence Report. Sentencing set for 10/6/2017 at 9:30 AM in Greensboro Courtroom #2 before JUDGE N. C. TILLEY JR.. (Court Reporter Joe Armstrong.) (Sanders, Marlene) (Entered: 07/24/2017) |
| 07/25/2017 | 67 | NOTICE OF ATTORNEY APPEARANCE: ALLEN T. O'ROURKE appearing for SHANNON MICHELLE DRAKE (O'ROURKE, ALLEN) (Entered: 07/25/2017) |
| 07/26/2017 | 68 | NOTICE OF ATTORNEY APPEARANCE: DEBORAH B. BARBIER appearing for RONALD KEITH EARNEST (BARBIER, DEBORAH) (Entered: 07/26/2017) |
| 08/09/2017 | 69 | SEALED RESPONSE to Motion *Supplemental Response* filed by USA, SHANNON MICHELLE DRAKE as to SHANNON MICHELLE DRAKE re 49 MOTION to Dismiss *Superseding Indictment* (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Attachment C)(CHUT, FRANK) (Entered: 08/09/2017) |
| 08/18/2017 | 70 | NOTICE OF HEARING as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST. Motion Hearing, on all pending motions and any motions that may be filed by defendants on 8/21/2017, set for 9/7/2017 09:30 AM in Greensboro Courtroom #2 before JUDGE N. C. TILLEY JR. (Winchester, Robin) (Entered: 08/18/2017) |
| 08/21/2017 | 71 | NOTICE of Cancellation of 10/016/2017 Sentencing hearing. Parties will be notified of new Sentencing date.(Winchester, Robin) (Entered: 08/21/2017) |
| 08/21/2017 | 72 | MOTION to Dismiss *COUNTS THREE THROUGH FIFTEEN* by RONALD KEITH EARNEST. Response to Motion due by 8/28/2017 (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 08/21/2017) |
| 08/21/2017 | 73 | MEMORANDUM by RONALD KEITH EARNEST re 72 MOTION to Dismiss *COUNTS THREE THROUGH FIFTEEN* filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 08/21/2017) |
| 08/21/2017 | 74 | MOTION to Dismiss *COUNTS SEVENTEEN THROUGH TWENTY-EIGHT* by |

| | | |
|---|---|---|
| | | RONALD KEITH EARNEST. Response to Motion due by 8/28/2017 (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 08/21/2017) |
| 08/21/2017 | 75 | MEMORANDUM by RONALD KEITH EARNEST re 74 MOTION to Dismiss *COUNTS SEVENTEEN THROUGH TWENTY-EIGHT* filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 08/21/2017) |
| 08/21/2017 | 76 | MOTION to Dismiss *COUNT ONE* by RONALD KEITH EARNEST. Response to Motion due by 8/28/2017 (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 08/21/2017) |
| 08/21/2017 | 77 | MEMORANDUM by RONALD KEITH EARNEST re 76 MOTION to Dismiss *COUNT ONE* filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 08/21/2017) |
| 08/21/2017 | 78 | MOTION to Dismiss *COUNTS TWO THROUGH FIFTEEN* by RONALD KEITH EARNEST. Response to Motion due by 8/28/2017 (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 08/21/2017) |
| 08/21/2017 | 79 | MEMORANDUM by RONALD KEITH EARNEST re 78 MOTION to Dismiss *COUNTS TWO THROUGH FIFTEEN* filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 08/21/2017) |
| 08/24/2017 | 80 | MOTION to Join Co-defendant Ernest's Motions *Nos. 72 to 79* by SHANNON MICHELLE DRAKE. Response to Motion due by 9/14/2017 (Attachments: # 1 Text of Proposed Order)(RAUSCHER, CLAIRE) (Entered: 08/24/2017) |
| 08/24/2017 | | Motion Submission as to SHANNON MICHELLE DRAKE re 80 MOTION to Join Co-defendant Ernest's Motions *Nos. 72 to 79* to JUDGE N. C. TILLEY, JR. (Winchester, Robin) (Entered: 08/24/2017) |
| 08/28/2017 | 81 | RESPONSE to Motion filed by USA as to RONALD KEITH EARNEST re 78 MOTION to Dismiss *COUNTS TWO THROUGH FIFTEEN*, 74 MOTION to Dismiss *COUNTS SEVENTEEN THROUGH TWENTY-EIGHT* Replies due by 9/11/2017 (CHUT, FRANK) (Entered: 08/28/2017) |
| 08/28/2017 | 82 | RESPONSE to Motion filed by USA as to RONALD KEITH EARNEST re 76 MOTION to Dismiss *COUNT ONE* Replies due by 9/11/2017 (CHUT, FRANK) (Entered: 08/28/2017) |
| 08/28/2017 | 83 | RESPONSE to Motion filed by USA as to RONALD KEITH EARNEST re 72 MOTION to Dismiss *COUNTS THREE THROUGH FIFTEEN* Replies due by 9/11/2017 (CHUT, FRANK) (Entered: 08/28/2017) |
| 08/29/2017 | 84 | NOTICE OF ATTORNEY APPEARANCE: WES J. CAMDEN appearing for ROBERT THOMAS TAYLOR (CAMDEN, WES) (Entered: 08/29/2017) |
| 08/29/2017 | 85 | SUPERSEDING INDICTMENT as to SHANNON MICHELLE DRAKE (2) count(s) 1sss, 2sss-14sss, 15sss-27sss, 29sss, RONALD KEITH EARNEST (3) count(s) 1ss, 2ss-14ss, 15ss-27ss, 28ss, 30ss, ROBERT THOMAS TAYLOR (4) count(s) 1, 2-14, 15-27, 29. (Sheets, Jamie) (Entered: 08/29/2017) |
| 08/29/2017 | 87 | Arrest Warrant Issued in case as to ROBERT THOMAS TAYLOR. (Sheets, Jamie) (Main Document 87 replaced on 8/29/2017) (Sheets, Jamie). (Entered: 08/29/2017) |
| 08/29/2017 | 88 | NOTICE OF ATTORNEY APPEARANCE: CAITLIN M. POE appearing for ROBERT THOMAS TAYLOR (POE, CAITLIN) (Entered: 08/29/2017) |
| 08/29/2017 | 89 | NOTICE OF HEARING as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST. This case will be called for Arraignment during the first week of the |

| | | |
|---|---|---|
| | | September 2017 Criminal Term of Court beginning 9/5/2017 in Greensboro Courtroom #1. (Sheets, Jamie) (Entered: 08/29/2017) |
| 08/30/2017 | | Arrest of ROBERT THOMAS TAYLOR on 8/30/2017. (Kemp, Donita) (Entered: 08/30/2017) |
| 08/30/2017 | | Minute Entry for proceedings held before MAG/JUDGE L. PATRICK AULD: Initial Appearance/Release Hearing/Arraignment as to ROBERT THOMAS TAYLOR (4) Count 1,2-14,15-27,29 held on 8/30/2017. Defendant(s) pleads NOT GUILTY to all charges. The Government agrees to conditions of release and the defendant is ordered Released after processing; Written order forthcoming. (AUSA JoAnna McFadden; Attorney(s) WES J. CAMDEN and CAITLIN M. POE appeared on behalf of defendant; Proceedings Recorded) (Kemp, Donita) (Entered: 08/30/2017) |
| 08/30/2017 | 90 | **(STRICKEN)** SCHEDULING ORDER as to ROBERT THOMAS TAYLOR Signed by John S. Brubaker, Clerk, U. S. District Court, on 8/1/2017. Motions due 9/13/2017. Responses due 9/20/2017. Hearing on any motions at 9:30 a.m. on 10/2/2017 in Greensboro. Plea Agreements, if any, due no later than 12:00 noon 9/28/2017. Change of Plea Hearing at 9:30 a.m. on 10/2/2017 in Greensboro. Counsel to notify U. S. Attorney's Office of any scheduling conflicts no later than 9/25/2017. Jury Trial set for 9:30 a.m., 10/10/2017, in Greensboro unless otherwise instructed by the Court. Trial Briefs and Request for Preliminary Instructions must be filed by 12:00 noon on 10/5/2017, prior to beginning of jury term.(Kemp, Donita) Modified on 9/7/2017 to strike scheduling order see 9/7/2017 minute entry(Winchester, Robin). Modified on 9/7/2017 (Winchester, Robin). (Entered: 08/30/2017) |
| 08/30/2017 | 91 | Appearance Bond as to ROBERT THOMAS TAYLOR (4) unsecured $10,000. (Daniel, J) (Entered: 08/30/2017) |
| 08/30/2017 | 92 | ORDER Setting Conditions of Release for ROBERT THOMAS TAYLOR. Signed by MAG/JUDGE L. PATRICK AULD on 8/30/2017. (Daniel, J) (Entered: 08/30/2017) |
| 08/31/2017 | 93 | ARREST Warrant Returned Executed on 8/30/2017 in case as to ROBERT THOMAS TAYLOR (5). (Daniel, J) (Entered: 08/31/2017) |
| 08/31/2017 | 94 | NOTICE OF HEARING as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST. Arraignment set for 9/7/2017 09:30 AM in Greensboro Courtroom #2 before JUDGE N. C. TILLEY JR. (Winchester, Robin) (Entered: 08/31/2017) |
| 08/31/2017 | 95 | NOTICE OF HEARING as to ROBERT THOMAS TAYLOR. Status Conference set for 9/7/2017 09:30 AM in Greensboro Courtroom #2 before JUDGE N. C. TILLEY JR. (Winchester, Robin) (Entered: 08/31/2017) |
| 09/07/2017 | | Minute Entry for proceedings held before JUDGE N. C. TILLEY, JR: Attorneys Claire Rauscher and Allen T. O'Rourke appeared with defendant Shannon Drake; AttorneysJoshua Howard and Deborah Barbier appeared with defendant Ronald Keith Earnest. AUSA Frank Chut appeared on behalf of the Government; Nathan Brooks with USDOJ present. Arraignment as to SHANNON MICHELLE DRAKE (2) Count 1,1s,1ss,1sss,2,2s-15s,2ss-15ss,2sss-14sss,4-15,15sss-27sss,16-27,17s-28s,17ss-28ss, 29sss,30,32s,32ss and RONALD KEITH EARNEST (3) Count 1,1s,1ss,2-15,2s-15s,2ss-14ss,15ss-27ss,17-28,17s-28s,28ss,30ss held on 9/7/2017 Defendant(s) pleads NOT GUILTY to all charges. (Court Reporter Briana Bell.) (Winchester, Robin) (Entered: 09/07/2017) |
| 09/07/2017 | | Minute Entry for proceedings held before JUDGE N. C. TILLEY, JR: Attorneys Claire Rauscher and Allen T. O'Rourke appeared with defendant Shannon Drake; Attorneys Joshua Howard and Deborah Barbier appeared with defendant Ronald Keith Earnest; Attorneys Wes Camden and Caitlin M. Poe appeared with defendant Robert Thomas |

| | | |
|---|---|---|
| | | Taylor. AUSA Frank Chut appeared on behalf of the Government. Nathan Brooks with USDOJ present. Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 9/7/2017. Defendant Shannon Drake withdraws 47 Motion to Dismiss Superseding Indictment; 48 Memorandum in support of 47 ; 51 Motion to Dismiss Superseding Indictment Based on Insufficient Allegations and 54 Memorandum in Support of 51 . Remaining motions by defendant Drake may be amended or withdrawn and resubmitted. The parties agree that motions for Defendants Shannon Drake and Ronald Earnest are due 11/15/2017; Government's response due 11/22/2017; Motions for Defendant Robert Thomas Taylor are due 12/13/2017; Government's response due 12/20/2017; if Defendant Shannon Drake and Ronald Earnest wish to join co-defendant Robert Thomas Taylors's Motions the appropriate motion should be filed 12/13/2017. The parties are in agreement with scheduling the jury trial in March 2018. Defendant Ronald Earnest shall file by 5:00 p.m. 9/22/2017 Motion to Preclude the Production of Privileged documents; Government's response due 10/06/2017. (Court Reporter Briana Bell.) (Winchester, Robin) (Entered: 09/07/2017) |
| 09/11/2017 | 96 | NOTICE OF ATTORNEY APPEARANCE: JAMES W. BANNISTER appearing for ROBERT THOMAS TAYLOR (BANNISTER, JAMES) (Entered: 09/11/2017) |
| 09/13/2017 | 97 | NOTICE OF HEARING as to DOUGLAS ALAN CORRIHER. Sentencing set for 1/11/2018 09:30 AM in Greensboro Courtroom #2 before JUDGE N. C. TILLEY JR. (Winchester, Robin) (Entered: 09/13/2017) |
| 09/22/2017 | 98 | SEALED MOTION by RONALD KEITH EARNEST as to RONALD KEITH EARNEST. Response to Motion due by 10/6/2017 (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 09/22/2017) |
| 09/22/2017 | 99 | MEMORANDUM by RONALD KEITH EARNEST re 98 SEALED MOTION filed by RONALD KEITH EARNEST (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(HOWARD, JOSHUA) Modified on 9/25/2017 to seal document (Taylor, Abby). (Entered: 09/22/2017) |
| 09/22/2017 | 100 | MOTION to Seal by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 09/22/2017) |
| 09/22/2017 | 101 | MOTION for Discovery by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 09/22/2017) |
| 09/22/2017 | 102 | MEMORANDUM by RONALD KEITH EARNEST re 101 MOTION for Discovery filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 09/22/2017) |
| 10/06/2017 | 103 | SEALED RESPONSE to Motion filed by USA, RONALD KEITH EARNEST as to RONALD KEITH EARNEST re 98 SEALED MOTION (Attachments: # 1 Attachment A, # 2 Attachment B)(CHUT, FRANK) (Entered: 10/06/2017) |
| 10/06/2017 | 104 | RESPONSE to Motion *for Discovery* filed by USA as to RONALD KEITH EARNEST re 101 MOTION for Discovery Replies due by 10/20/2017 (CHUT, FRANK) (Entered: 10/06/2017) |
| 10/10/2017 | 105 | NOTICE OF HEARING ON MOTIONS in case as to RONALD KEITH EARNEST 98 SEALED MOTION , 101 MOTION for Discovery : Motion Hearing set for 11/9/2017 10:00 AM in Greensboro Courtroom #2 before JUDGE N. C. TILLEY JR. (Winchester, Robin) (Entered: 10/10/2017) |
| 10/16/2017 | 106 | MOTION to Compel by RONALD KEITH EARNEST. Response to Motion due by 10/30/2017 (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 10/16/2017) |

| | | |
|---|---|---|
| 10/16/2017 | 107 | MEMORANDUM by RONALD KEITH EARNEST re 106 MOTION to Compel filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 10/16/2017) |
| 10/18/2017 | 108 | JOINT MOTION *for Access to Sealed Pleadings for All Co-Defendants* by SHANNON MICHELLE DRAKE. (O'ROURKE, ALLEN) (Entered: 10/18/2017) |
| 10/18/2017 | 109 | MEMORANDUM by SHANNON MICHELLE DRAKE re 108 JOINT MOTION *for Access to Sealed Pleadings for All Co-Defendants* filed by SHANNON MICHELLE DRAKE (O'ROURKE, ALLEN) (Entered: 10/18/2017) |
| 10/18/2017 | 110 | ORDER OF RECUSAL as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, signed by JUDGE N. C. TILLEY, JR on 10/18/2017, as set out herein. (Butler, Carol) (Entered: 10/18/2017) |
| 10/25/2017 | | Case as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Reassigned to CHIEF JUDGE WILLIAM L. OSTEEN, JR. JUDGE N. C. TILLEY, JR no longer assigned to the case. (Marsh, Keah) (Entered: 10/25/2017) |
| 10/25/2017 | 111 | AMENDED NOTICE OF HEARING ON MOTION in case as to RONALD KEITH EARNEST 101 MOTION for Discovery , 98 SEALED MOTION : Motion Hearing set for 11/9/2017 09:30 AM in Greensboro Courtroom #1 before CHIEF JUDGE WILLIAM L. OSTEEN JR.(Winchester, Robin) Regenerated 10/25/2017. (Entered: 10/25/2017) |
| 10/25/2017 | 112 | NOTICE OF RESCHEDULING HEARING as to DOUGLAS ALAN CORRIHER: Sentencing **reset for 2/13/2018** at 02:00 PM in Greensboro Courtroom #1 before CHIEF JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 10/25/2017) |
| 10/31/2017 | 113 | SEALED RESPONSE to Motion *Amended Response* filed by USA, RONALD KEITH EARNEST as to RONALD KEITH EARNEST re 98 SEALED MOTION (Attachments: # 1 Attachment 1, # 2 Attachment 2, # 3 Attachment 3)(CHUT, FRANK) (Entered: 10/31/2017) |
| 11/01/2017 | 114 | NOTICE *of Change of Firm Name to Womble Bond Dickinson (US) LLP* by SHANNON MICHELLE DRAKE (FERGUSON, THOMAS) (Entered: 11/01/2017) |
| 11/03/2017 | 115 | MOTION for Ex Parte Hearing by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) Modified on 12/12/2017 to edit title of pleading (Welch, Kelly). (Entered: 11/03/2017) |
| 11/03/2017 | 116 | MEMORANDUM by RONALD KEITH EARNEST re 115 MOTION for Hearing filed by RONALD KEITH EARNEST (Attachments: # 1 Exhibit)(HOWARD, JOSHUA) (Entered: 11/03/2017) |
| 11/03/2017 | | Motion Submission as to RONALD KEITH EARNEST re: 115 MOTION for Hearing, to CHIEF JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 11/03/2017) |
| 11/03/2017 | 117 | JOINT MOTION for Access to Sealed Pleadings by RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (See motion previously filed on 10/18/2017 in co-defendant's case (2) SHANNON MICHELLE DRAKE) (Welch, Kelly) (Entered: 11/03/2017) |
| 11/03/2017 | 118 | MEMORANDUM by RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 117 Joint Motion for Access to Sealed Pleadings for All Co-Defendant filed by RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (See - memorandum previously filed on 10/18/2017 in co-defendant's case (2) SHANNON MICHELLE DRAKE) (Welch, Kelly) (Entered: 11/03/2017) |

| | | |
|---|---|---|
| 11/06/2017 | 119 | Sealed EXHIBITS re 98 SEALED MOTION by Defendants RONALD KEITH EARNEST, RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 11/06/2017) |
| 11/06/2017 | 120 | MOTION to Compel *Return of Privileged Documents* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 11/06/2017) |
| 11/06/2017 | 121 | MEMORANDUM by RONALD KEITH EARNEST re 120 MOTION to Compel *Return of Privileged Documents* filed by RONALD KEITH EARNEST (Attachments: # 1 Exhibit 1, # 2 Exhibit 4, # 3 Exhibit 5)(HOWARD, JOSHUA) (Entered: 11/06/2017) |
| 11/06/2017 | 122 | MOTION to Join Defendant Earnest's Motion for Ex Parte Hearing by SHANNON MICHELLE DRAKE. Response to Motion due by 11/27/2017 (RAUSCHER, CLAIRE) (Entered: 11/06/2017) |
| 11/06/2017 | 123 | MEMORANDUM by SHANNON MICHELLE DRAKE re 122 MOTION to Join Defendant Earnest's Motion for Ex Parte Hearing filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 11/06/2017) |
| 11/08/2017 | | Electronic Notice sent on 11/8/2017 to counsel of record on behalf of SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Status Conference/Motions Hearing set for 11/9/2017 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 11/08/2017) |
| 11/08/2017 | 124 | SEALED OBJECTION/RESPONSE to 115 Defendant Earnest' Motion for Ex Parte Hearing filed by USA. (CHUT, FRANK) Modified on 11/9/2017 to edit title of document filed (Welch, Kelly). (Entered: 11/08/2017) |
| 11/08/2017 | 125 | NOTICE of Appearance of Attorney John Berkelhammer for Non-Party SMITH MOORE LEATHERWOOD, L.L.P. as to RONALD KEITH EARNEST (BERKELHAMMER, JONATHAN) Modified on 11/9/2017 to edit text (Welch, Kelly). (Entered: 11/08/2017) |
| 11/08/2017 | 126 | MOTION to Quash *and Modify Subpoenas Issued by the United States to Walker, Ashley, Peterson, Medford, and Hawkins* filed by SMITH MOORE LEATHERWOOD, L.L.P. as to RONALD KEITH EARNEST. Response to Motion due by 11/29/2017 (Attachments: # 1 Exhibit A - Subpoenas to Walker, Ashley, Peterson, Medford, and Hawkins) (BERKELHAMMER, JONATHAN) (Entered: 11/08/2017) |
| 11/08/2017 | 127 | MOTION to Quash *Subpoenas Issued by the United States and by Ronald Keith Earnest as to James Medford* filed by SMITH MOORE LEATHERWOOD, L.L.P. Response to Motion due by 11/29/2017 (Attachments: # 1 Exhibit A - Subpoena to Medford by the United States, # 2 Exhibit B - Subpoena to Medford by Ronald Keith Earnest, # 3 Exhibit C - Letter (filed under seal))(BERKELHAMMER, JONATHAN) Modified on 11/9/2017 to edit text (Welch, Kelly). (Entered: 11/08/2017) |
| 11/08/2017 | 128 | SEALED EXHIBITS re: 127 MOTION to Quash *Subpoenas Issued by the United States and by Ronald Keith Earnest to James Medford Exhibit C - Letter* filed Movant SMITH MOORE LEATHERWOOD, L.L.P. (BERKELHAMMER, JONATHAN) Modified on 11/9/2017 to edit text (Welch, Kelly). (Entered: 11/08/2017) |
| 11/08/2017 | | Motion Submission as to RONALD KEITH EARNEST re: 115 MOTION for Ex Parte Hearing, 126 MOTION to Quash and Modify Subpoenas Issued by the United States to Walker, Ashley, Peterson, Medford, and Hawkins, 127 MOTION to Quash Subpoenas Issued by the United States and by Ronald Keith Earnest to James Medford, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 11/08/2017) |
| 11/09/2017 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Status Conference and Motion Hearing as to SHANNON MICHELLE DRAKE, |

| | | |
|---|---|---|
| | | RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 11/9/2017 re: pending motions; AUSA's Frank Chut, Jr., Nathan Brooks & Jeffrey McLellan present on behalf of the Government. Attorneys Deborah Barbier & Joshua Howard appeared on behalf of Defendant Earnest. Attorneys Claire Rauscher & Allen O'Rourke appeared on behalf Defendant Drake. Attorneys Wes Camden & Caitlin Poe appeared on behalf of Defendant Taylor. Attorney Jonathan Berkelhammer present on behalf of Movant, Smith Moore Leatherwood, L.L.P.; For the reasons stated from the bench, the Court denied without prejudice all motions previously filed in this matter as moot except for Documents 98 , 100 , 101 , 106 , 108 , 115 , 117 , 120 & 122 . Pretrial Motions deadline reset to: December 13, 2017; Responses due on or before 12/29/2017; Privilege log due: 12/13/2017; Any sealed pleadings - motions, responses and replies that are filed under seal may be shared between counsel for the codefendants but no further disclosure is permitted. Court takes Motions to Quash and to Modify (Docs. 126 , 127 ) under advisement; This hearing is continued to a later date to be set by the Court. Court tentatively set motions hearing for February 1 & 2, 2018; Jury Trial set March 5, 2018 [ETT: 2-3 weeks]; (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 11/13/2017) |
| 11/15/2017 | 129 | NOTICE *of Appearance of Counsel* by SMITH MOORE LEATHERWOOD, L.L.P. as to RONALD KEITH EARNEST (DAGGER, KELLY) (Entered: 11/15/2017) |
| 11/15/2017 | 130 | Consent MOTION to Seal *DE 126 , 126 -1, 127 , 127 -1* by SMITH MOORE LEATHERWOOD, L.L.P. as to RONALD KEITH EARNEST. Response to Motion due by 12/6/2017 (Attachments: # 1 Exhibit 1 - Redacted Version of DE 126, # 2 Exhibit 2 - Redacted Version of DE 126-1, # 3 Exhibit 3 - Redacted Version of DE 127, # 4 Exhibit 4 - Redacted Version of DE 127-1)(BERKELHAMMER, JONATHAN) (Entered: 11/15/2017) |
| 11/15/2017 | 131 | MEMORANDUM by SMITH MOORE LEATHERWOOD, L.L.P. as to RONALD KEITH EARNEST re 130 Consent MOTION to Seal *DE 126 , 126 -1, 127 , 127 -1* filed by SMITH MOORE LEATHERWOOD, L.L.P. (BERKELHAMMER, JONATHAN) (Entered: 11/15/2017) |
| 11/16/2017 | 132 | (See Corrected Document - 138 ) SUPPLEMENTAL MEMORANDUM in Support of 115 Defendant Earnest's Motion for an Ex Parte Hearing filed by RONALD KEITH EARNEST. Responses due by 12/7/2017 (BARBIER, DEBORAH) Modified on 12/12/2017 to edit title of pleading - See Doc. 138 (Welch, Kelly). (Entered: 11/16/2017) |
| 11/16/2017 | 133 | (See Corrected Document - 137 ) MEMORANDUM by SMITH MOORE LEATHERWOOD, L.L.P. as to RONALD KEITH EARNEST re 126 MOTION to Quash *and Modify Subpoenas Issued by the United States to Walker, Ashley, Peterson, Medford, and Hawkins* filed by SMITH MOORE LEATHERWOOD, L.L.P. (BERKELHAMMER, JONATHAN) Modified on 12/12/2017 - See Doc. 137 (Welch, Kelly). (Entered: 11/16/2017) |
| 11/16/2017 | 134 | MEMORANDUM *(Supplemental)* by SHANNON MICHELLE DRAKE re 122 Motion for Miscellaneous Relief filed by SHANNON MICHELLE DRAKE (Attachments: # 1 Exhibit A)(RAUSCHER, CLAIRE) (Entered: 11/16/2017) |
| 11/17/2017 | 135 | TRANSCRIPT of Motions Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 11/09/2017 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | |
|---|---|---|
| | | **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.** Redaction Request due 12/11/2017. Redacted Transcript Deadline set for 12/21/2017. Release of Transcript Restriction set for 2/20/2018. (Armstrong, Joe) (Entered: 11/17/2017) |
| 11/20/2017 | 136 | Corrected document re 134 Memorandum (Attachments: # 1 Exhibit A)(RAUSCHER, CLAIRE) (Entered: 11/20/2017) |
| 11/20/2017 | 137 | Corrected document re 133 Memorandum, (BERKELHAMMER, JONATHAN) (Entered: 11/20/2017) |
| 11/20/2017 | 138 | Corrected document re 132 MOTION for Hearing *SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT EARNESTS MOTION FOR AN EX PARTE HEARING* (HOWARD, JOSHUA) (Entered: 11/20/2017) |
| 12/01/2017 | 139 | SEALED Draft Presentence Investigation Report as to DOUGLAS ALAN CORRIHER. Per LCrR32.2, the parties shall notify the probation officer of initial objections or corrections/modifications to the presentence report by 12/15/2017. Pleadings related to sentencing factors are due by 12/22/2017. (Steele, Anita) (Entered: 12/01/2017) |
| 12/07/2017 | 140 | RESPONSE to Motion filed by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST re 132 MOTION for Hearing *SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT EARNESTS MOTION FOR AN EX PARTE HEARING* Replies due by 12/21/2017 (CHUT, FRANK) (Entered: 12/07/2017) |
| 12/12/2017 | | Motion Submission as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re: 130 Consent MOTION to Seal *DE 126, 126-1, 127, 127-1* to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 12/12/2017) |
| 12/13/2017 | 141 | MOTION to Dismiss *COUNTS THREE THROUGH FOURTEEN* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 12/13/2017) |
| 12/13/2017 | 142 | MEMORANDUM by RONALD KEITH EARNEST re 141 MOTION to Dismiss *COUNTS THREE THROUGH FOURTEEN* filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 12/13/2017) |
| 12/13/2017 | 143 | MOTION to Produce *Documents* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 12/13/2017) |
| 12/13/2017 | 144 | MEMORANDUM by RONALD KEITH EARNEST re 143 MOTION to Produce *Documents* filed by RONALD KEITH EARNEST (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(HOWARD, JOSHUA) (Entered: 12/13/2017) |
| 12/13/2017 | 145 | SEALED MOTION by RONALD KEITH EARNEST as to RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) Modified on 12/14/2017 to provide access to Assistant US Attorney. (Marsh, Keah) (Entered: 12/13/2017) |
| 12/13/2017 | 146 | SEALED *(Brief in Support)* filed by RONALD KEITH EARNEST re: 145 SEALED MOTION . (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10) |

| | | |
|---|---|---|
| | | (HOWARD, JOSHUA) Modified on 12/14/2017 to provide access to Assistant US Attorney. (Marsh, Keah) (Entered: 12/13/2017) |
| 12/13/2017 | 147 | MOTION to Seal by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 12/13/2017) |
| 12/13/2017 | 148 | SEALED MOTION by RONALD KEITH EARNEST as to RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) Modified on 12/14/2017 to provide access to Assistant US Attorney. (Marsh, Keah) (Entered: 12/13/2017) |
| 12/13/2017 | 149 | SEALED *(Brief in Support)* filed by RONALD KEITH EARNEST re: 148 SEALED MOTION (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(HOWARD, JOSHUA) Modified on 12/14/2017 to provide access to Assistant US Attorney. (Marsh, Keah) (Entered: 12/13/2017) |
| 12/13/2017 | 150 | MOTION to Seal by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 12/13/2017) |
| 12/13/2017 | 151 | SEALED MOTION by RONALD KEITH EARNEST as to RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) Modified on 12/14/2017 to provide access to Assistant US Attorney. (Marsh, Keah) (Entered: 12/13/2017) |
| 12/13/2017 | 152 | SEALED *(Brief in Support)* filed by RONALD KEITH EARNEST re: 151 SEALED MOTION . (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(HOWARD, JOSHUA) Modified on 12/14/2017 to provide access to Assistant US Attorney. (Marsh, Keah) (Entered: 12/13/2017) |
| 12/13/2017 | 153 | MOTION to Seal by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 12/13/2017) |
| 12/13/2017 | 154 | MOTION to Adopt 142 Memorandum filed by RONALD KEITH EARNEST, 141 MOTION to Dismiss *COUNTS THREE THROUGH FOURTEEN* filed by RONALD KEITH EARNEST by ROBERT THOMAS TAYLOR as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (CAMDEN, WES) (Entered: 12/13/2017) |
| 12/13/2017 | 155 | MOTION to Dismiss *for Improper Venue and for Change of Venue* by ROBERT THOMAS TAYLOR. Response to Motion due by 12/29/2017 (CAMDEN, WES) (Entered: 12/13/2017) |
| 12/13/2017 | 156 | MEMORANDUM by ROBERT THOMAS TAYLOR re 155 MOTION to Dismiss *for Improper Venue and for Change of Venue* filed by ROBERT THOMAS TAYLOR (CAMDEN, WES) (Entered: 12/13/2017) |
| 12/13/2017 | 157 | SEALED MOTION *to Dismiss* by USA, ROBERT THOMAS TAYLOR as to ROBERT THOMAS TAYLOR. Response to Motion due by 12/29/2017 (CAMDEN, WES) (Entered: 12/13/2017) |
| 12/13/2017 | 158 | SEALED Brief in Support filed by ROBERT THOMAS TAYLOR re: 157 SEALED MOTION *to Dismiss*. (Attachments: # 1 Exhibit A - Robert Taylor Resume, # 2 Exhibit B - June 15, 2005 Memorandum, # 3 Exhibit C - July 14, 2005 Memorandum, # 4 Exhibit D - Loan Review Policy, # 5 Exhibit E - Sample of Loan Reviews, # 6 Exhibit F - October 19, 2009 Grand Jury Subpoena, # 7 Exhibit G - January 12, 2010 Grand Jury Subpoena, # 8 Exhibit H - September 20, 2010 Grand Jury Subpoena, # 9 Exhibit I - September 11, 2012 Grand Jury Subpoena, # 10 Exhibit J - Robert Taylor Target Letter, # 11 Exhibit K - July 5, 2016 Grand Jury Subpoena to Robert Taylor, # 12 Exhibit L - |

| | | |
|---|---|---|
| | | Transcript of November 9, 2017 Hearing, # 13 Exhibit M - Grand Jury Testimony of David Switzer)(CAMDEN, WES) (Entered: 12/13/2017) |
| 12/13/2017 | 159 | MOTION to Seal by ROBERT THOMAS TAYLOR. Response to Motion due by 12/29/2017 (Attachments: # 1 Text of Proposed Order)(CAMDEN, WES) (Entered: 12/13/2017) |
| 12/13/2017 | 160 | MEMORANDUM by SMITH MOORE LEATHERWOOD, L.L.P. as to RONALD KEITH EARNEST re 126 MOTION to Quash *and Modify Subpoenas Issued by the United States to Walker, Ashley, Peterson, Medford, and Hawkins* filed by SMITH MOORE LEATHERWOOD, L.L.P. (Attachments: # 1 Exhibit A - Privilege Log for Invoice 562733, # 2 Exhibit B - Privilege Log for Invoice 564725, # 3 Exhibit C - Privilege Log for Invoice 567302, # 4 Exhibit D - Privilege Log for Invoice 569932, # 5 Exhibit E - Privilege Log for Invoice 573332, # 6 Exhibit F - Privilege Log for Invoice 575708, # 7 Exhibit G - Privilege Log for Invoice 578249, # 8 Exhibit H - Privilege Log for Invoice 580899, # 9 Exhibit I - Privilege Log for Invoice 583821, # 10 Exhibit J - Privilege Log for Invoice 585968, # 11 Exhibit K - Privilege Log for Invoice 588525, # 12 Exhibit L - Privilege Log for Invoice 591926, # 13 Exhibit M - Privilege Log for Invoice 594324, # 14 Exhibit N - Privilege Log for Invoice 597325, # 15 Exhibit O - Privilege Log for Invoice 599335, # 16 Exhibit P - Privilege Log for Invoice 601506) (DAGGER, KELLY) (Entered: 12/13/2017) |
| 12/13/2017 | 161 | MOTION to Dismiss *for Insufficient Allegations and Duplicitous and Multiplicitous Charges* by SHANNON MICHELLE DRAKE. Response to Motion due by 1/3/2018 (RAUSCHER, CLAIRE) (Entered: 12/13/2017) |
| 12/13/2017 | 162 | MEMORANDUM by SHANNON MICHELLE DRAKE re 161 MOTION to Dismiss *for Insufficient Allegations and Duplicitous and Multiplicitous Charges* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 12/13/2017) |
| 12/13/2017 | 163 | SEALED MOTION *to Dismiss and Suppress Grand Jury Testimony* by SHANNON MICHELLE DRAKE. Response to Motion due by 1/3/2018 (RAUSCHER, CLAIRE) (Entered: 12/13/2017) |
| 12/13/2017 | 164 | (See 166 Correction) MEMORANDUM by SHANNON MICHELLE DRAKE re 163 SEALED MOTION *to Dismiss and Suppress Grand Jury Testimony* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) Modified on 2/5/2018 (Welch, Kelly). (Entered: 12/13/2017) |
| 12/14/2017 | 165 | Consent SEALED MOTION by USA, DOUGLAS ALAN CORRIHER as to DOUGLAS ALAN CORRIHER. Response to Motion due by 1/4/2018 (HEROY, J.) (Entered: 12/14/2017) |
| 12/14/2017 | 166 | Corrected Document re: 164 Memorandum by SHANNON MICHELLE DRAKE. (RAUSCHER, CLAIRE) Modified docket text on 12/15/2017 to match document filed. (Daniel, J) (Entered: 12/14/2017) |
| 12/14/2017 | 167 | MOTION to Seal (Doc. #163) *Motion to Dismiss and Suppress Grand Jury Testimony and Corrected Memorandum by SHANNON MICHELLE DRAKE. Response to Motion due by 1/4/2018. (Attachments: # 1 Text of Proposed Order)(RAUSCHER, CLAIRE) (Entered: 12/14/2017)* |
| 12/14/2017 | 168 | MOTION to Adopt *and Join Ronald Earnest's Motion to Dismiss (Doc. Nos 141-142) and Robert Taylor's Motion to Dismiss and Change Venue (Doc. Nos. 155-156)* by SHANNON MICHELLE DRAKE. (Attachments: # 1 Text of Proposed Order) (RAUSCHER, CLAIRE) (Entered: 12/14/2017) |
| 12/15/2017 | 169 | MOTION for Extension of Time to File Response/Reply until 1/12/2018by USA as to |

| | | |
|---|---|---|
| | | SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (CHUT, FRANK) (Entered: 12/15/2017) |
| 12/15/2017 | 170 | SEALED Response to Draft PSR - NOTICE TO PROBATION AND OPPOSING COUNSEL ONLY as to DOUGLAS ALAN CORRIHER. (HEROY, J.) (Entered: 12/15/2017) |
| 12/18/2017 | 171 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 12/18/2017 granting the United States Motion for Extension (Doc. 169 ) until 1/12/2018, to file its Response to Defendants' Pre-Trial Motions in case as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 12/18/2017) |
| 12/21/2017 | 172 | SEALED ORDER re: 165 SEALED Motion in case as to DOUGLAS ALAN CORRIHER (1). Signed by JUDGE WILLIAM L. OSTEEN, JR. on 12/21/2017. (Daniel, J) (Entered: 12/21/2017) |
| 01/11/2018 | 173 | SEALED RESPONSE to Motion *to Produce Documents* filed by USA, as to RONALD KEITH EARNEST re 143 MOTION to Produce *Documents* (Attachments: # 1 Exhibit) (CHUT, FRANK) (Entered: 01/11/2018) |
| 01/11/2018 | 174 | SEALED RESPONSE to Motion *to Dismiss* filed by USA, as to ROBERT THOMAS TAYLOR re 157 SEALED MOTION *to Dismiss* (Attachments: # 1 Exhibit)(CHUT, FRANK) (Entered: 01/11/2018) |
| 01/11/2018 | 175 | SEALED RESPONSE to Motion *Counts Three through Fourteen* filed by USA, as to RONALD KEITH EARNEST re 141 MOTION to Dismiss *COUNTS THREE THROUGH FOURTEEN* (CHUT, FRANK) (Entered: 01/11/2018) |
| 01/11/2018 | 176 | SEALED RESPONSE to Motion filed by USA, RONALD KEITH EARNEST as to RONALD KEITH EARNEST re 148 SEALED MOTION (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(CHUT, FRANK) (Entered: 01/11/2018) |
| 01/12/2018 | 177 | SEALED RESPONSE to Motion *to Dismiss for Insufficient Allegations* filed by USA, as to SHANNON MICHELLE DRAKE re 161 MOTION to Dismiss *for Insufficient Allegations and Duplicitous and Multiplicitous Charges* (Attachments: # 1 Exhibit) (CHUT, FRANK) (Entered: 01/12/2018) |
| 01/12/2018 | 178 | SEALED RESPONSE to Motion *to Dismiss and Suppress* filed by USA, as to SHANNON MICHELLE DRAKE re 163 SEALED MOTION *to Dismiss and Suppress Grand Jury Testimony* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(CHUT, FRANK) (Entered: 01/12/2018) |
| 01/12/2018 | 179 | SEALED RESPONSE to Motion *to Dismiss for Improper Venue* filed by USA, as to ROBERT THOMAS TAYLOR re 155 MOTION to Dismiss *for Improper Venue and for Change of Venue* (CHUT, FRANK) (Entered: 01/12/2018) |
| 01/12/2018 | 180 | SEALED RESPONSE to Motion filed by USA, as to RONALD KEITH EARNEST re 151 SEALED MOTION (CHUT, FRANK) (Entered: 01/12/2018) |
| 01/12/2018 | 181 | SEALED RESPONSE to Motion filed by USA, as to RONALD KEITH EARNEST re 145 SEALED MOTION (Attachments: # 1 Exhibit)(CHUT, FRANK) (Entered: 01/12/2018) |
| 01/17/2018 | 182 | SEALED PRESENTENCE INVESTIGATION REPORT - REVISED as to DOUGLAS ALAN CORRIHER. (Bailey, Jeanne) (Entered: 01/17/2018) |
| 01/18/2018 | | Electronic Notice sent on 1/18/2018 to all Counsel: Status Conference set for *1/23/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. |

| | | |
|---|---|---|
| | | (Welch, Kelly) Modified on 1/19/2018 to correct date of hearing. (NEF regenerated) (Welch, Kelly). (Entered: 01/19/2018) |
| 01/19/2018 | | Set Deadlines/Hearings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Status Conference set for 1/23/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 01/19/2018) |
| 01/19/2018 | 183 | Joint MOTION for Extension of Time to File Response/Reply until February 2, 2018by SHANNON MICHELLE DRAKE as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (Attachments: # 1 Text of Proposed Order)(RAUSCHER, CLAIRE) (Entered: 01/19/2018) |
| 01/22/2018 | 184 | SEALED SENTENCING MEMORANDUM by DOUGLAS ALAN CORRIHER as to DOUGLAS ALAN CORRIHER (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(HEROY, J.) (Entered: 01/22/2018) |
| 01/23/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR: Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/23/2018. As stated during the Status Conference held this day, the Court has ruled that the following motions are hereby terminated as MOOT: 39 , 41 , 43 , 45 , 49 , 72 , 74 , 76 , 78 , 80 , and 117 ; the Court ruled that 108 is hereby GRANTED and the parties are instructed to notify co-counsel by serving a copy of the sealed pleading via email; Defendant DOUGLAS ALAN CORRIHER is not required to notify anyone of sealed pleadings and this order is not intended to grant access to those sealed sentencing pleadings, presentence reports, or others that are sealed under separate rules; Parties instructed to review and confer to determine what specifically is confidential information that needs to be either redacted or unsealed; Parties instructed to file a Joint Statement no later than **January 30, 2018**, to assist the Court in determining which matters will remain sealed or terminated as moot; the Court has elected to set aside **February 8, 2018** and **February 9, 2018**, for an Evidentiary hearing as to Defendants' SHANNON MICHELLE DRAKE and RONALD KEITH EARNEST claim of attorney-client privilege; Defendant ROBERT THOMAS TAYLOR is excused from attending; Parties further instructed to produce the privilege log along with the requested documents identified for in camera review by **February 2, 2018**, but no later than **February 5, 2018**; the Court further ruled that 183 is hereby GRANTED and replies are due by **February 2, 2018**; Parties advised that Pretrial Motion Hearings will be set for **March 7, 2018** and **March 8, 2018**; Parties to be notified of a new trial date at a later date to be determined by the Court. (Attorneys Frank Chut and Nathan Brooks appeared on behalf of the USA; Attorney Claire Rauscher appeared on behalf of Defendant SHANNON MICHELLE DRAKE; Attorney Deborah Barbier appeared on behalf of Defendant RONALD KEITH EARNEST; Attorney(s) Wes Camden, Caitlin Poe, and James Bannister appeared on behalf of Defendant ROBERT THOMAS TAYLOR; Attorney Jonathan Berkelhammer appeared with Client Representative, Rick Coughlin, on behalf of movant SMITH MOORE LEATHERWOOD, L.L.P.; Attorney Andrew Mathias appeared on behalf of GRANDSOUTH BANK; Court Reporter Joseph Armstrong) (Kemp, Donita) (Entered: 01/23/2018) |
| 01/23/2018 | | Set Hearing as to SHANNON MICHELLE DRAKE and RONALD KEITH EARNEST. Evidentiary Hearing set for 2/8/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Kemp, Donita) (Entered: 01/23/2018) |
| 01/23/2018 | | Set Hearing as to SHANNON MICHELLE DRAKE and RONALD KEITH EARNEST. Evidentiary Hearing set for 2/9/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Kemp, Donita) (Entered: 01/23/2018) |

| | | |
|---|---|---|
| 01/23/2018 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Pretrial Motion Hearing set for 3/7/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Kemp, Donita) (Entered: 01/23/2018) |
| 01/23/2018 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Pretrial Motion Hearing set for 3/8/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Kemp, Donita) (Entered: 01/23/2018) |
| 01/24/2018 | 185 | ORDER as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, signed by JUDGE WILLIAM L. OSTEEN, JR on 01/24/2018, as set out. On or before January 30, 2018, the parties shall submit a joint statement identifying those documents which may be unsealed on CM/ECF, those documents which may be unsealed but need some redaction, and those documents which should remain sealed. An evidentiary hearing will be held beginning February 8, 2018, on the issue of whether or not an attorney-client relationship exists between Defendant Earnest and Smith Moore Leatherwood and/or Defendant Drake and Smith Moore Leatherwood. Defendant Earnest's pretrial motions will be addressed at some point following the hearing beginning February 8, 2018. A hearing will be held on all pending pretrial motions beginning March 7, 2018, and continuing until concluded. Trial of this matter is continued to April 23, 2018, at 9:30 a.m. in Greensboro, Courtroom 1. (Garland, Leah) (Entered: 01/24/2018) |
| 01/24/2018 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Trial set for 4/23/2018 09:30 AM in Greensboro Courtroom #1. (See 185 Order) (Garland, Leah) (Entered: 01/24/2018) |
| 01/25/2018 | 186 | SEALED PRESENTENCE INVESTIGATION REPORT - FINAL as to DOUGLAS ALAN CORRIHER. (Bruce, Kimberly) (Entered: 01/25/2018) |
| 01/30/2018 | 187 | NOTICE *of Compliance with Court Order (DE 185)* by SMITH MOORE LEATHERWOOD, L.L.P. as to RONALD KEITH EARNEST (Attachments: # 1 Exhibit 1 - Letter to The Honorable William L. Osteen, Jr.)(BERKELHAMMER, JONATHAN) (Entered: 01/30/2018) |
| 01/30/2018 | 188 | SEALED DOCUMENT by USA, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (CAMDEN, WES) (Entered: 01/30/2018) |
| 01/30/2018 | 189 | Consent MOTION to Seal Document *No. 188* by ROBERT THOMAS TAYLOR. (Attachments: # 1 Text of Proposed Order)(CAMDEN, WES) (Entered: 01/30/2018) |
| 02/02/2018 | 190 | REPLY, by SHANNON MICHELLE DRAKE, TO RESPONSE to 161 MOTION to Dismiss *for Insufficient Allegations and Duplicitous and Multiplicitous Charges* (RAUSCHER, CLAIRE) (Entered: 02/02/2018) |
| 02/02/2018 | 191 | REPLY, by SHANNON MICHELLE DRAKE, TO RESPONSE to 163 SEALED MOTION *to Dismiss and Suppress Grand Jury Testimony* (RAUSCHER, CLAIRE) (Entered: 02/02/2018) |
| 02/05/2018 | 192 | MOTION to Quash by USA as to RONALD KEITH EARNEST. Response to Motion due by 2/26/2018 (Attachments: # 1 Attachment 1, # 2 Attachment 2, # 3 Attachment 3) (BROOKS, NATHAN) (Entered: 02/05/2018) |
| 02/05/2018 | | Motion Submission as to SHANNON MICHELLE DRAKE re: 161 MOTION to Dismiss for Insufficient Allegations and Duplicitous and Multiplicitous Charges, 163 SEALED |

| | | |
|---|---|---|
| | | MOTION to Dismiss and Suppress Grand Jury Testimony, 168 MOTION to Adopt and Join Ronald Earnest's Motion to Dismiss (Doc. Nos 141-142) and Robert Taylor's Motion to Dismiss and Change Venue (Doc. Nos. 155-156), to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 02/05/2018) |
| 02/05/2018 | 193 | MOTION to Continue Trial by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Responses due by 2/26/2018 Response to Motion due by 2/26/2018 (CHUT, FRANK) (Entered: 02/05/2018) |
| 02/05/2018 | 194 | MOTION to Strike by USA as to RONALD KEITH EARNEST. Response to Motion due by 2/26/2018 (CHUT, FRANK) (Entered: 02/05/2018) |
| 02/06/2018 | | Motion Submission as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re: 192 MOTION to Quash, 193 MOTION to Continue Trial, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 02/06/2018) |
| 02/07/2018 | 195 | (SEALED) POSITION PAPER RE SENTENCING FACTORS - NOTICE TO THE COURT AND OPPOSING COUNSEL ONLY as to DOUGLAS ALAN CORRIHER (CHUT, FRANK) (Entered: 02/07/2018) |
| 02/07/2018 | | TEXT ORDER as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) - A continuation of the hearing on attorney-client privilege shall begin tomorrow, Thursday, February 8, at 9:30 a.m. This court is conducting a review of the documents submitted by Nexsen Pruet for this court's in camera review. The parties should be prepared to address the following question: Is an email dated 9/17/2012 from Ron Earnest to Shannon Drake with a cc: to Jim Medford a confidential communication? You may assume for purposes of this question that at the time of the email, Ms. Drake was an employee of the Bank, had been subpoenaed to testify before the Grand Jury but had not made arrangements for counsel to represent her before the Grand Jury. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 2/7/2018.] (Cable, Frances) (Entered: 02/07/2018) |
| 02/07/2018 | 196 | RESPONSE in Opposition by RONALD KEITH EARNEST re 194 MOTION to Strike (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(HOWARD, JOSHUA) (Entered: 02/07/2018) |
| 02/08/2018 | 197 | NOTICE *REGARDING UNSEALING* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (MCLELLAN, JEFFREY) (Entered: 02/08/2018) |
| 02/08/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Evidentiary Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST held on 2/8/2018. AUSA Frank Chut, AUSA Nathan Brooks & AUSA Jeffrey McClellan appeared on behalf of the Government. Attorney Claire Rauscher appeared on behalf of Defendant Drake. Attorneys Deborah Barbier and Joshua Howard appeared on behalf of Defendant Earnest. Defendants Ronald Keith Earnest & Shannon Michelle Drake present. Court denied 194 Government's Motion to Strike Expert Affidavit and to Exclude Tesimony of Nathan Crystal; Witnesses sequestered from the courtroom; Parties presented evidence on the question of the attorney-client privelege and what may or may not be protected under that privelege; Parties to review invoices and determine whether or not the Court should consider anything with respect to the invoices; Parties may file supporting briefs by 12:00 noon on February 12, 2018. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 02/09/2018) |
| 02/09/2018 | | TEXT ORDER as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) - Throughout the course of the hearings held on November 9, 2017, and February 8, 2018, the parties referred to Grand Jury subpoenas issued to Grand South |

| | | |
|---|---|---|
| | | Bank and, apparently, to Defendants Drake and Earnest. This court thought that those subpoenas had been made a part of the record in this case. However, upon review, this court has not been able to locate those subpoenas, at least all of the subpoenas. Some of the relevant subpoenas appear to be attached as exhibits to one pleading. (See Doc. 146, Exs. 8, 9, and 10.) This court believes those subpoenas are necessary to place some of the testimony in context. As a result, the court requests that the relevant subpoenas be filed on or before Monday, February 12, 2018, at 5:00 p.m. The subpoenas should include any to Grand South Bank beginning in September, 2012, up through 2016, as referenced during the hearings, and any subpoenas issued to compel the appearance of Defendants Drake and Earnest. If any party objects to the court's consideration of those subpoenas, those objections should be filed in writing on or before Monday, February 12, 2018, at 5:00 p.m. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 02/09/2018.] (Cable, Frances) (Entered: 02/09/2018) |
| 02/09/2018 | 198 | NOTICE OF RESCHEDULING HEARING as to DOUGLAS ALAN CORRIHER: Sentencing reset for 2/20/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 02/09/2018) |
| 02/12/2018 | 199 | MOTION to Inspect *File* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 02/12/2018) |
| 02/12/2018 | 200 | MEMORANDUM by RONALD KEITH EARNEST re 199 MOTION to Inspect *File* filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 02/12/2018) |
| 02/12/2018 | 201 | MOTION TO CONSIDER by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 02/12/2018) |
| 02/12/2018 | 202 | MEMORANDUM by RONALD KEITH EARNEST re 201 MOTION TO CONSIDER filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 02/12/2018) |
| 02/12/2018 | 203 | RESPONSE/REPLY by RONALD KEITH EARNEST re Order,,,,, *OF FEBRUARY 9, 2018* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(HOWARD, JOSHUA) (Attachment 3, 6, and 7 replaced on 2/12/2018 with PDF images with personal identifiers redacted) (Garland, Leah) (Entered: 02/12/2018) |
| 02/12/2018 | 204 | NOTICE *Brief Regarding Invoices* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST (MCLELLAN, JEFFREY) (Entered: 02/12/2018) |
| 02/12/2018 | 205 | RESPONSE/REPLY by SHANNON MICHELLE DRAKE *to February 9, 2018 Text Order re Invoices* (Attachments: # 1 Exhibit A)(RAUSCHER, CLAIRE) (Entered: 02/12/2018) |
| 02/12/2018 | 206 | REVISED NOTICE OF RESCHEDULING HEARING as to DOUGLAS ALAN CORRIHER: Sentencing **reset for 3/9/2018 02:00 PM** in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 02/12/2018) |
| 02/12/2018 | 207 | SEALED DOCUMENT by USA, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST (Attachments: # 1 Exhibit)(CHUT, FRANK) (Entered: 02/12/2018) |
| 02/13/2018 | 208 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 2/13/2018. This court, sua sponte, finds it is necessary to provide an opportunity for counsel for Defendant Ronald Keith Earnest and Defendant Shannon Michelle Drake to review documents provided to this court, ex parte and in camera, by the Bank. This court enters this order to give notice to the parties of its intention and to provide an opportunity for any objections to be made. Specifically, this court intends to make available for Defendant Earnest and Defendant Drake's counsel to review, under seal, the records currently in this court's control. That |

| | | |
|---|---|---|
| | | review shall be for the limited purpose of reviewing and disclosing any documents which may be relevant to their claims of attorney-client privilege. The clerk is directed to set a status conference in this case as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 02/13/2018) |
| 02/13/2018 | 209 | NOTICE *OF REQUEST FOR PROTECTION FROM COURT APPEARANCES* by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 02/13/2018) |
| 02/13/2018 | | ELECTRONIC NOTICE OF HEARING as to SHANNON MICHELLE DRAKE and RONALD KEITH EARNEST. Status Conference set for 2/16/2018 04:00 PM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN, JR. (Powell, Gloria) (Entered: 02/13/2018) |
| 02/14/2018 | | Electronic Notice of Rescheduling Hearing sent on 2/14/2018 to Counsel for SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, GRAND SOUTH BANK, SMITH MOORE LEATHERWOOD, LLP, and the UNITED STATES: Status Conference **reset for 2/16/2018 01:00 PM** in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 02/14/2018) |
| 02/16/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST held on 2/16/2018. Appearing at the status conference were the following: AUSA Frank Chut, Attorneys Claire Rauscher, Deborah Barbier, Joshua Howard, Andrew Mathias, Chris Hampton & Steven Scoggan. Attending via tele-conference: Attorneys Allen O'Rourke, Wes Camden, AUSA Nathan Brooks & AUSA Jeffrey McClellan. Defendants Drake & Earnest present. No party or counsel raised an objection to the process outlined by this court in its Order dated February 13, 2018. (Doc. 208.) Court reiterated that the findings in its Order (Doc. 208) are preliminary. Court advised Defendants Earnest and Drake as to counsel's review of any attorney-client privilege material and the disclosure of these materials. Court placed limitations on the disclosure of invoices. Review of the invoices is limited to counsel, law enforcement agents assigned to this case, and the parties. Court further noted that Smith Moore Leatherwood made a previous objection as to certain billing records and this court previously found that said records were not protected by attorney-client privilege. Court established the following procedure for review: 1. No party is deemed to have waived any privilege by not objecting to this review by counsel for Earnest and Drake. 2. Only counsel for Defendants Earnest and Drake shall be permitted to review these documents. The documents are presently maintained in camera and under seal, and no disclosure shall be permitted until further order of this court. 3. If counsel should identify a document relevant to the issue of the establishment of an attorney-client relationship, counsel shall mark the document as well as that portion of the document relevant to establishment of the attorney-client relationship. Following review by this court, counsel may present the relevant portion to the court with services of the document on opposing counsel, all pursuant to a supplemental briefing schedule established by this court once review is completed. 4. During review of the documents, counsel shall also consider what documents may constitute those communications which may be attorney-client communications or work-product communications and therefore protected under the attorney-client privilege and be prepared to address that issue if this court should find an attorney-client relationship existed between one or both Defendants and Smith Moore. 5. Court does not find GrandSouth Banks document 6 to be protected by attorney-client privilege. Document 6 can be disclosed to the Government for review. Counsel for Defendants Earnest and Drake both agree that document 6 is not privileged. Court directs Mr. Mathias to produce document 6 to the Government after Bates numbers are added. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 02/16/2018) |

| | | |
|---|---|---|
| 03/01/2018 | 210 | ORDER as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), ROBERT THOMAS TAYLOR (4) signed by JUDGE WILLIAM L. OSTEEN, JR on 3/1/2018; that the Government's motion to continue (Doc. 193 ) is GRANTED and that the trial of this matter is continued to April 30, 2018. FURTHER that the court finds that the ends of justice served by taking such action outweigh the best interest of the public and Defendant in a speedy trial as set forth in 18 U.S.C. § 3161(h)(7)(A) and that the period of time from April 23, 2018, up to and including April 30, 2018, be and is hereby excluded from the provisions of Title 18, United States Code, Section 3161, et seq., under Title 18, United States Code, Section 3161(h)(7)(B)(iv). (Sheets, Jamie) (Entered: 03/01/2018) |
| 03/05/2018 | 211 | Supplemental MOTION to Quash filed by Government *and to Exclude Expert Testimony* by USA as to RONALD KEITH EARNEST. Response to Motion due by 3/26/2018 (MCLELLAN, JEFFREY) (Entered: 03/05/2018) |
| 03/06/2018 | 212 | TRANSCRIPT of Motions Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST held 02/08/2018 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 3/30/2018. Redacted Transcript Deadline set for 4/9/2018. Release of Transcript Restriction set for 6/7/2018. (Armstrong, Joe) (Entered: 03/06/2018) |
| 03/06/2018 | 213 | SEALED MOTION *to Continue Sentencing* by USA, DOUGLAS ALAN CORRIHER as to DOUGLAS ALAN CORRIHER. Response to Motion due by 3/27/2018 (CHUT, FRANK) (Entered: 03/06/2018) |
| 03/06/2018 | | Motion Submission as to RONALD KEITH EARNEST re 211 Supplemental MOTION to Quash filed by Government and to Exclude Expert Testimony, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 03/06/2018) |
| 03/06/2018 | | Motion Submission as to DOUGLAS ALAN CORRIHER re 213 SEALED MOTION, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 03/06/2018) |
| 03/06/2018 | 214 | MOTION to Adopt *and Join Codefendant Earnest Motion to Dismiss Indictment (Doc. 145-146)* by SHANNON MICHELLE DRAKE. (RAUSCHER, CLAIRE) (Entered: 03/06/2018) |
| 03/07/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Status Conference and Motions Hearings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 3/7/2018: Appearing at this proceeding were the following: AUSAs Frank Chut, Nathan Brooks & Jeffrey McClellan, Attorneys Allen O'Rourke, Claire Rauscher, Deborah Barbier, Joshua Howard, Wes Camden, Caitlyn Poe, James W. Bannister, Jonathan Berkelhammer, Kelly Dagger, Gregory Holland, Chris Hampton & Mark Moore. Defendants Drake, Earnest & Taylor present. Status Conference held addressing document disclosure. Defendants are allowed seven (7) days to supplement their previous pleadings re: attorney-client |

| | | |
|---|---|---|
| | | privilege with respect to Smith Moore Leatherwood. Government's response due within seven (7) days; No reply will be permitted. Court heard arguments from the parties on pending motions; Motions hearing continued to 3/8/2018 at 9:30 a.m. (See Exhibit/Witness List)(Written Order forthcoming) (Court Reporter Joseph Armstrong.) (Welch, Kelly (Entered: 03/08/2018) |
| 03/08/2018 | 215 | SEALED ORDER granting 213 SEALED Motion in case as to DOUGLAS ALAN CORRIHER (1). Signed by JUDGE WILLIAM L. OSTEEN, JR. on 3/8/2018. (Daniel, J) (Entered: 03/08/2018) |
| 03/08/2018 | | Sentencing set for 5/24/2018 at 2:00 p.m. in Greensboro Courtroom #1 in case as to DOUGLAS ALAN CORRIHER (1). (Daniel, J) (Entered: 03/08/2018) |
| 03/08/2018 | 250 | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Motions Hearing as to SHANNON MICHELLE DRAKE, ROBERT THOMAS TAYLOR held on 3/8/2018: Appearing at this proceeding were the following: AUSAs Frank Chut, Nathan Brooks & Jeffrey McClellan, Attorneys Allen O'Rourke, Claire Rauscher, Joshua Howard, Wes Camden, Caitlyn Poe, James W. Bannister & Mark Moore. Defendants Drake & Taylor present. Court heard arguments from the parties on 161 Defendant Drake's Motion to Dismiss, 157 Defendant Taylor's Sealed Motion to Dismiss. Court takes motions under advisement. Ms. Drake is allowed seven (7) days to file a brief addressing the concerns identied by the Court; Government's response due within seven (7) days. (See Exhibit/Witness List} (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 03/08/2018) |
| 03/08/2018 | | Reset Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Jury Trial reset for 4/30/2018 at 9:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR pursuant to 210 Order. (Marsh, Keah) (Entered: 03/08/2018) |
| 03/12/2018 | 216 | NOTICE *RE Agent Notes* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (MCLELLAN, JEFFREY) (Entered: 03/12/2018) |
| 03/13/2018 | 217 | MEMORANDUM *to Supplement Discovery Request* by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 03/13/2018) |
| 03/13/2018 | 218 | MOTION to Compel *Discovery* by SHANNON MICHELLE DRAKE. Response to Motion due by 3/27/2018 (RAUSCHER, CLAIRE) (Entered: 03/13/2018) |
| 03/13/2018 | 219 | MEMORANDUM by SHANNON MICHELLE DRAKE re 218 MOTION to Compel *Discovery* filed by SHANNON MICHELLE DRAKE (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit E, # 4 Exhibit F, # 5 Exhibit G)(RAUSCHER, CLAIRE) (Entered: 03/13/2018) |
| 03/13/2018 | 220 | MOTION TO SEAL Exhibits C & D in support of 218 Motion to Compel Discovery filed by SHANNON MICHELLE DRAKE (Attachments: # 1 Exhibit C, # 2 Exhibit D) (RAUSCHER, CLAIRE) Modified on 3/14/2018 to change event type (Contreras, Jamie). (Entered: 03/13/2018) |
| 03/14/2018 | 221 | SEALED SUPPLEMENTAL DOCUMENTS by Defendant SHANNON MICHELLE DRAKE filed pursuant to Court Order March 7, 2018, in support 122 MOTION to Join Defendant Earnest's Motion for Ex Parte Hearing, 123 Memorandum, 134 Supplemental Memorandum, (Attachments: # 1 Exhibit A-Spreadsheet, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(RAUSCHER, CLAIRE) Modified on 3/29/2018 to edit title of document (Welch, Kelly). (Entered: 03/14/2018) |
| 03/14/2018 | 222 | SEALED RESPONSIVE MEMORANDUM filed by RONALD KEITH EARNEST |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(HOWARD, JOSHUA) Modified on 3/29/2018 to edit title (Welch, Kelly). (Entered: 03/14/2018) |
| 03/14/2018 | 223 | MOTION to Seal *Document Number 222* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 03/14/2018) |
| 03/15/2018 | 224 | SUPPLEMENTAL Memorandum by SHANNON MICHELLE DRAKE in Support of 163 SEALED Motion to Dismiss Relating to Prosecutorial Misconduct and Grand Jury Testimony, 214 MOTION to Adopt and Join Codefendant Earnest Motion to Dismiss Indictment (Doc. 145-146), (RAUSCHER, CLAIRE) (Entered: 03/15/2018) |
| 03/21/2018 | 225 | RESPONSE to Motion filed by USA as to SHANNON MICHELLE DRAKE re 218 MOTION to Compel *Discovery* (BROOKS, NATHAN) (Entered: 03/21/2018) |
| 03/22/2018 | 226 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Motions Hearing Excerpt (Testimony of Mary Blackerby and Kyle Myles) for dates of 03/07/2018 before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 4/16/2018. Redacted Transcript Deadline set for 4/26/2018. Release of Transcript Restriction set for 6/25/2018. (Armstrong, Joe) (Entered: 03/22/2018) |
| 03/22/2018 | 227 | MOTION for Extension of Time to File Response/Reply as to 163 SEALED MOTION *to Dismiss and Suppress Grand Jury Testimony*, 164 Memorandum, 224 Supplement, until 3/29/2018by USA as to SHANNON MICHELLE DRAKE. (Attachments: # 1 Text of Proposed Order)(CHUT, FRANK) (Entered: 03/22/2018) |
| 03/22/2018 | | Motion Submission as to SHANNON MICHELLE DRAKE re: 227 MOTION for Extension of Time to File Response/Reply as to 163 SEALED MOTION to Dismiss and Suppress Grand Jury Testimony, 164 Memorandum, 224 Supplement, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 03/22/2018) |
| 03/22/2018 | 228 | NOTICE OF ATTORNEY APPEARANCE MATTHEW G. T. MARTIN appearing for USA. (MARTIN, MATTHEW) (Entered: 03/22/2018) |
| 03/23/2018 | 229 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 3/23/2018. The Government's motion for extension (Doc. 227 ) is GRANTED. The Government shall have up to and including March 29, 2018, within which to file its Response to Defendant's Supplemental Motion to Dismiss as to SHANNON MICHELLE DRAKE (2). (Daniel, J) (Entered: 03/23/2018) |
| 03/23/2018 | 230 | NOTICE OF ATTORNEY APPEARANCE SANDRA J. HAIRSTON appearing for USA. (HAIRSTON, SANDRA) (Entered: 03/23/2018) |
| 03/26/2018 | 231 | RESPONSE in Opposition by USA as to RONALD KEITH EARNEST re 143 MOTION to Produce *Documents* Replies due by 4/9/2018 (MCLELLAN, JEFFREY) (Entered: |

| | | |
|---|---|---|
| | | 03/26/2018) |
| 03/28/2018 | 232 | SEALED RESPONSE filed by USA, as to 222 Defendant Earnest's SEALED RESPONSIVE MEMORANDUM (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Attachment C)(CHUT, FRANK) Modified on 3/29/2018 to associate with Doc. 222 (Welch, Kelly). (Entered: 03/28/2018) |
| 03/29/2018 | 233 | SEALED RESPONSE to Motion filed by USA, SHANNON MICHELLE DRAKE as to SHANNON MICHELLE DRAKE re 166 SEALED MOTION *Corrected Memorandum in Support of Motion to Dismiss and Suppress Grand Jury Testimony*, 163 SEALED MOTION *to Dismiss and Suppress Grand Jury Testimony* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(MARTIN, MATTHEW) (Entered: 03/29/2018) |
| 03/30/2018 | 234 | REPLY, by SHANNON MICHELLE DRAKE, TO RESPONSE to 218 MOTION to Compel *Discovery* (RAUSCHER, CLAIRE) (Entered: 03/30/2018) |
| 03/30/2018 | 235 | MOTION to Strike 233 SEALED Response to Motion, *In Opposition to Shannon Drake's Motion to Dismiss the Indictment* by SHANNON MICHELLE DRAKE. Response to Motion due by 4/20/2018 (RAUSCHER, CLAIRE) (Entered: 03/30/2018) |
| 04/01/2018 | 236 | REPLY by RONALD KEITH EARNEST TO RESPONSE to 143 MOTION to Produce *Documents*. (HOWARD, JOSHUA) Modified on 4/2/2018 to edit text to reflect correct event type. (Sheets, Jamie) (Entered: 04/01/2018) |
| 04/03/2018 | 237 | SEALED RESPONSE to Motion *and Motion for Leave of Court to Accept the Filing of an Enlarged Response to Defendant's Motion to Dismiss* filed by USA, SHANNON MICHELLE DRAKE as to SHANNON MICHELLE DRAKE re 235 MOTION to Strike 233 SEALED Response to Motion, *In Opposition to Shannon Drake's Motion to Dismiss the Indictment* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(MARTIN, MATTHEW) (Entered: 04/03/2018) |
| 04/04/2018 | 238 | SUPPLEMENT *TO MOTION TO COMPEL* by RONALD KEITH EARNEST re 106 MOTION to Compel (HOWARD, JOSHUA) (Entered: 04/04/2018) |
| 04/06/2018 | 239 | NOTICE *INTENT TO INTRODUCE PER R. 902(11)* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 04/06/2018) |
| 04/09/2018 | | Electronic Notice sent on 4/9/2018 to counsel of record: Hearing on 224 , 233 Supplemental Memorandums, 235 Motion to Strike and 237 Response scheduled for 4/13/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 04/10/2018) |
| 04/10/2018 | 240 | MEMORANDUM OPINION and ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 4/10/2018. Defendant Robert Taylor's Sealed Motion to Dismiss the Third Superseding Indictment Based on Pre-Indictment Delay, (Doc. 157 ), is DENIED WITHOUT PREJUDICE as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 04/10/2018) |
| 04/10/2018 | 241 | NOTICE OF HEARING as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Status/Final Pretrial Conference set for 4/18/2018 02:00 PM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 04/10/2018) |
| 04/10/2018 | 242 | MOTION for Bill of Particulars by SHANNON MICHELLE DRAKE. Response to Motion due by 5/1/2018 (RAUSCHER, CLAIRE) (Entered: 04/10/2018) |
| 04/10/2018 | 243 | MEMORANDUM by SHANNON MICHELLE DRAKE re 242 MOTION for Bill of |

| | | |
|---|---|---|
| | | Particulars filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 04/10/2018) |
| 04/11/2018 | 244 | NOTICE *2ND INTENT TO INTRODUCE PER R. 902(11)* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 04/11/2018) |
| 04/12/2018 | 245 | NOTICE *of intent to offer testimony of bank examiners* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit Curricula Vitae)(BROOKS, NATHAN) (Entered: 04/12/2018) |
| 04/12/2018 | 246 | NOTICE *Intent to Offer Testimony of Revenue Agent* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 04/12/2018) |
| 04/12/2018 | 247 | NOTICE *Intent to Offer Testimony of Computer Investigative Specialist* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 04/12/2018) |
| 04/12/2018 | 248 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Motions Hearing for dates of 03/07/2018 before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 5/7/2018. Redacted Transcript Deadline set for 5/17/2018. Release of Transcript Restriction set for 7/16/2018. (Armstrong, Joe) (Entered: 04/12/2018) |
| 04/12/2018 | 249 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST Motions Hearing for dates of 03/08/2018 before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 5/7/2018. Redacted Transcript Deadline set for 5/17/2018. Release of Transcript Restriction set for 7/16/2018. (Armstrong, Joe) (Entered: 04/12/2018) |
| 04/13/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Motion Hearing as to SHANNON MICHELLE DRAKE held on 4/13/2018 re 214 |

| | | |
|---|---|---|
| | | MOTION to Dismiss the Indictment filed by SHANNON MICHELLE DRAKE, 235 MOTION to Strike 233 SEALED Response in Opposition to Shannon Drake's Motion to Dismiss the Indictment filed by SHANNON MICHELLE DRAKE. Appearing at the motion hearing were the following: U.S. ATTORNEY Matthew Martin, AUSA Sandra Hairston, AUSA Frank Chut, AUSA Nathan Brooks, AUSA Jeffrey McClellan and Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Jonathan Berkelhammer & Chris Hampton. Attending via tele-conference: Attorneys Wes Camden & Caitlin Poe. Defendants Drake & Earnest present. After hearing aguments from counsel the Court provided its preliminary findings; Court takes motions under advisement. (Written Opinion forthcoming) (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 04/13/2018) |
| 04/16/2018 | 251 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE Motions Hearing for dates of 04/13/2018 before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 5/10/2018. Redacted Transcript Deadline set for 5/21/2018. Release of Transcript Restriction set for 7/19/2018. (Armstrong, Joe) (Entered: 04/16/2018) |
| 04/16/2018 | 252 | MEMORANDUM OPINION AND ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 4/16/2018. For the reasons stated herein, Earnest's Motion to Preclude the Disclosure of Privileged Materials to the Government, (Doc. 98 ), is DENIED. FURTHER ORDERED that Earnest's Motion for Discovery on the Disclosure of Information to the Government and Requests for Disclosure, (Doc. 101 ), is DENIED; Earnest's Motion to Compel Legal File from Defendant's Prior Attorneys, (Doc. 106 ), is DENIED; Earnest's Motion for Ex Parte Hearing, (Doc. 115 ), is DENIED AS MOOT. Earnest's Motion for Government to Return all Privileged Documents, (Doc. 120 ), is DENIED; Earnest's Motion to Allow Mr. Earnest to Review SML File prior to Disclosure to the Government, (Doc. 199 ), is DENIED AS MOOT in case as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 04/16/2018) |
| 04/16/2018 | | TEXT ORDER - This court, through oversight, failed to redact the names of Grand Jury witnesses in a Memorandum Opinion and Order (Doc. 253) filed April 16, 2018. This court has sealed the document. That document will remain under seal, but a redacted version noting only the initials of Grand Jury witnesses will be filed on Tuesday, April 17, 2018. If any party printed a copy of Document 253, that copy should be maintained as a sealed document. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 04/16/2018.] (Cable, Frances) (Entered: 04/16/2018) |
| 04/17/2018 | 254 | NOTICE *3RD INTENT TO INTRODUCE PER R. 902(11)* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 04/17/2018) |
| 04/17/2018 | 255 | *REDACTED* MEMORANDUM OPINION AND ORDER signed by JUDGE WILLIAM |

| | | |
|---|---|---|
| | | L. OSTEEN, JR. on 4/17/2018 as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4) re: 253 **Sealed** Memorandum Opinion and Order. (Daniel, J) (Entered: 04/17/2018) |
| 04/17/2018 | 256 | Joint MOTION in Limine *to Preclude the Government from Using "Nominee Lending Scheme" Phrase and Equivalent Arguments* by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 5/8/2018 (RAUSCHER, CLAIRE) (Entered: 04/17/2018) |
| 04/17/2018 | 257 | MEMORANDUM by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 256 Joint MOTION in Limine *to Preclude the Government from Using "Nominee Lending Scheme" Phrase and Equivalent Arguments* filed by RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 04/17/2018) |
| 04/17/2018 | 258 | Joint MOTION in Limine *to Preclude the Government from Eliciting Expert Testimony from Lay Witnesses* by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 5/8/2018 (RAUSCHER, CLAIRE) (Entered: 04/17/2018) |
| 04/17/2018 | 259 | MEMORANDUM by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 258 Joint MOTION in Limine *to Preclude the Government from Eliciting Expert Testimony from Lay Witnesses* filed by RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 04/17/2018) |
| 04/17/2018 | 260 | Joint MOTION in Limine *to Exclude the Testimony of Douglas Corriher* by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 04/17/2018) |
| 04/17/2018 | 261 | MEMORANDUM by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 260 Joint MOTION in Limine *to Exclude the Testimony of Douglas Corriher* filed by RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, SHANNON MICHELLE DRAKE (HOWARD, JOSHUA) (Entered: 04/17/2018) |
| 04/17/2018 | 262 | MOTION in Limine *to Permit Polygraph Evidence* by ROBERT THOMAS TAYLOR. Response to Motion due by 5/8/2018 (CAMDEN, WES) (Entered: 04/17/2018) |
| 04/17/2018 | 263 | MEMORANDUM by ROBERT THOMAS TAYLOR re 262 MOTION in Limine *to Permit Polygraph Evidence* filed by ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit A - Robert J. Drdak CV, # 2 Exhibit B - Target Letter, # 3 Exhibit C - Polygraph #1 5.16.16, # 4 Exhibit D - Letter from M. Carpenter to Corriher, # 5 Exhibit E - Matt Carpenter letter, # 6 Exhibit F - Polygraph #2 7.19.17, # 7 Exhibit G - Loan Review of Innovative Hiring, # 8 Exhibit H - Severence Agreement)(CAMDEN, WES) (Entered: 04/17/2018) |
| 04/17/2018 | 264 | MOTION in Limine by ROBERT THOMAS TAYLOR. (CAMDEN, WES) (Entered: 04/17/2018) |
| 04/17/2018 | 265 | NOTICE *Intent to Offer Testimony of Forensic Accountant* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 04/17/2018) |

| | | |
|---|---|---|
| 04/18/2018 | 266 | MEMORANDUM OPINION AND ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 4/18/2018. For the reasons stated herein, Drake's Motion for Ex Parte Hearing, (Doc. 122 (joining Defendant Earnest's Motion (Doc. 115 ))), is DENIED AS MOOT in light of the procedures put in place by this court. FURTHER ORDERED that Drake's Motion to Dismiss and Suppress Grand Jury Testimony, (Doc. 163 ), is DENIED; Drake's motion to join Earnest's motion on Fifth Amendment grounds, (Doc. 214 ), is DENIED; Drake's motion to strike the Government's response, (Doc. 235 ), is DENIED. This court FINDS that an attorney-client relationship existed between DRAKE, MEDFORD, and SMITH MOORE from September 18, 2012, through at least May 29, 2013 in case as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 04/18/2018) |
| 04/18/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 4/18/2018. Appearing at the Status Conference were the following: AUSA Sandra Hairston, AUSA Frank Chut, AUSA Nathan Brooks & AUSA Jeffrey McClellan, Attorneys Claire Rauscher, Joshua Howard, Wes Camden, Caitlyn Poe, James W. Bannister and Chris Hampton. Defendants Drake, Earnest & Taylor present. Status Conference held outlining a schedule for jury selection, motions hearing and trial; Jury selection set 4/30/2018. Proposed voir dire due 4/26/2018 by 5:00 PM. Any proposed instructions as to the elements of the offenses due 4/26/2018 by 5:00 PM. Government to submit a proposed protective order with respect to the redaction of exhibits in compliance with Rule 49.1. [ETT 4 weeks] (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 04/18/2018) |
| 04/18/2018 | | Set/Reset Deadlines/Hearings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Jury Selection/Jury Trial set for 4/30/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 04/18/2018) |
| 04/22/2018 | 267 | MOTION for Protective Order *Expedited* by SHANNON MICHELLE DRAKE. Response to Motion due by 5/7/2018 (Attachments: # 1 Exhibit A)(RAUSCHER, CLAIRE) (Entered: 04/22/2018) |
| 04/22/2018 | 268 | MEMORANDUM by SHANNON MICHELLE DRAKE re 267 MOTION for Protective Order *Expedited* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 04/22/2018) |
| 04/22/2018 | 269 | MOTION in Limine *to Permit Character Evidence* by ROBERT THOMAS TAYLOR. Response to Motion due by 4/30/2018 (CAMDEN, WES) (Entered: 04/22/2018) |
| 04/22/2018 | 270 | MEMORANDUM by ROBERT THOMAS TAYLOR re 269 MOTION in Limine *to Permit Character Evidence* filed by ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit A - Jeffrey Rogers Letter, # 2 Exhibit B - Beverly Rogers Letter, # 3 Exhibit C - John Peden Letter, # 4 Exhibit D - John Atkins Letter, # 5 Exhibit E - James Faulkner Letter, # 6 Exhibit F - Richard Rhame Letter, # 7 Exhibit G - Louis Mathis Letter, # 8 Exhibit H - Jim Dant Letter, # 9 Exhibit I - Robert Hoffman Letter, # 10 Exhibit J - Gregory Dover Letter, # 11 Exhibit K - Carolyn Mathis Letter, # 12 Exhibit L - Tyrone Edwards Letter, # 13 Exhibit M - James Clanton Letter, # 14 Exhibit N - Jim Fayssoux Letter)(CAMDEN, WES) (Entered: 04/22/2018) |
| 04/23/2018 | | Motion Submission as to SHANNON MICHELLE DRAKE re 267 MOTION for Protective Order (Expedited), to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 04/23/2018) |
| 04/23/2018 | 271 | MOTION to Quash *the April 19, 2018 Subpoena Issued to the Bank by the United States* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, |

| | | |
|---|---|---|
| | | JOSHUA) (Entered: 04/23/2018) |
| 04/23/2018 | 272 | MEMORANDUM by RONALD KEITH EARNEST re 271 MOTION to Quash *the April 19, 2018 Subpoena Issued to the Bank by the United States* filed by RONALD KEITH EARNEST (Attachments: # 1 Exhibit A, # 2 Exhibit B)(HOWARD, JOSHUA) (Entered: 04/23/2018) |
| 04/23/2018 | 273 | Proposed Jury Instructions by ROBERT THOMAS TAYLOR (CAMDEN, WES) (Entered: 04/23/2018) |
| 04/24/2018 | 274 | MEMORANDUM OPINION AND ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 4/24/2018 as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). For the reasons stated herein, Drake's Motion to Dismiss, (Doc. 52 ), is DENIED AS MOOT; Smith Moore's Motion to Quash Subpoenas, (Doc. 126 ), is GRANTED IN PART; Smith Moore's Motion to Quash Subpoenas, (Doc. 127 ), is DENIED AS MOOT; Earnest's Motion to Produce, (Doc. 143 ), is DENIED; Drake's Motion to Compel Discovery, (Doc. 218 ), is DENIED; the Government's Motions to Quash, (Docs. 192 , 211 ), are GRANTED IN PART AND DENIED IN PART; Earnest's Motion to Dismiss Counts Three through Fourteen on the basis of Multiplicity, (Doc. 141 ), which both Taylor, (Doc. 154 ), and Drake, (Doc. 161 ), joined, is DENIED; Taylor's Motion to Dismiss for Improper Venue, (Doc. 155 ), in which Drake joined, (Doc. 168 ), is DENIED; Drake's Motion to Dismiss for Insufficient Allegations and Duplicitous and Multiplicitous Charges, (Doc. 161 ), is DENIED; Earnest's Motion to Consider, (Doc. 201 ), is DENIED AS MOOT; Drake's Motion for Bill of Particulars, (Doc. 242 ), is DENIED. (Daniel, J) (Entered: 04/24/2018) |
| 04/24/2018 | 275 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 4/24/2018. Defendant Earnest's Motion to Quash the April 19, 2018 Subpoena Issued to the Bank by the United States, (Doc. 271 ), is DENIED as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), ROBERT THOMS TAYLOR (4). (Daniel, J) (Entered: 04/24/2018) |
| 04/24/2018 | 276 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 4/24/2018. Defendant Drake's Motion for Expedited Protective Order, (Doc. 267 ), is DENIED as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 04/24/2018) |
| 04/25/2018 | 277 | NOTICE *PROPOSED ORDER ON REDACTION* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Text of Proposed Order)(MCLELLAN, JEFFREY) (Entered: 04/25/2018) |
| 04/25/2018 | 278 | MOTION in Limine *to Exclude Testimony of Government's Proposed Witnesses* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 04/25/2018) |
| 04/25/2018 | 279 | MEMORANDUM by RONALD KEITH EARNEST re 278 MOTION in Limine *to Exclude Testimony of Government's Proposed Witnesses* filed by RONALD KEITH EARNEST (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4) (HOWARD, JOSHUA) (Entered: 04/25/2018) |
| 04/25/2018 | 280 | MOTION to Stay *Denials Pending Appeal* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 04/25/2018) |
| 04/25/2018 | 281 | MEMORANDUM by RONALD KEITH EARNEST re 280 MOTION to Stay *Denials Pending Appeal* filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 04/25/2018) |
| 04/25/2018 | 282 | NOTICE OF APPEAL (Interlocutory) by RONALD KEITH EARNEST re 252 |

| | | |
|---|---|---|
| | | Memorandum Opinion, Order, 275 Order on Motion to Quash. Filing fee $505, receipt number 0418-2339360. (HOWARD, JOSHUA) (Entered: 04/25/2018) |
| 04/25/2018 | | TEXT ORDER: Defendant Earnest has filed a motion in limine requesting exclusion of certain alleged expert witness testimony based upon inadequate notice. The United States is directed to file a short, preliminary response to the motion in limine, advising the court of what the FDIC Examiner and BOFI Audit Managers will be testifying to during the trial (i.e., whether a summary or whether they will be performing calculations to show loans in excess of the legal lending limit) and what additional tables, charts, spreadsheets, or summaries will be produced. This preliminary response shall be filed by 5:00 p.m. on Thursday, April 26, 2018. The court sets a status conference on the motion in limine for 9:00 a.m. on Friday, April 27, 2018, in Greensboro Courtroom 1. At least one attorney for the Government and one attorney for Defendant Earnest shall be present. Defendants may attend but are not required to do so. All other counsel may be present but at least one attorney for each Defendant shall attend by telephone. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 04/25/2018.] (Cable, Frances) (Entered: 04/25/2018) |
| 04/25/2018 | 283 | NOTICE *Fourth Intent to Offer Per R902(11)* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 04/25/2018) |
| 04/25/2018 | 284 | RESPONSE in Opposition by USA as to RONALD KEITH EARNEST re 280 MOTION to Stay *Denials Pending Appeal* Replies due by 5/9/2018 (BROOKS, NATHAN) (Entered: 04/25/2018) |
| 04/26/2018 | 285 | RESPONSE to Motion filed by USA as to ROBERT THOMAS TAYLOR re 269 MOTION in Limine *to Permit Character Evidence* Replies due by 5/10/2018 (MCLELLAN, JEFFREY) (Entered: 04/26/2018) |
| 04/26/2018 | 286 | RESPONSE in Opposition by USA as to ROBERT THOMAS TAYLOR re 262 MOTION in Limine *to Permit Polygraph Evidence* Replies due by 5/10/2018 (MCLELLAN, JEFFREY) (Entered: 04/26/2018) |
| 04/26/2018 | 287 | Court's Preliminary Jury Instructions in case as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 04/26/2018) |
| 04/26/2018 | | Case as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, re 277 Notice of Proposed Order, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 04/26/2018) |
| 04/26/2018 | 288 | MOTION to Adopt 278 MOTION in Limine *to Exclude Testimony of Government's Proposed Witnesses* filed by RONALD KEITH EARNEST by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (RAUSCHER, CLAIRE) (Entered: 04/26/2018) |
| 04/26/2018 | 289 | MEMORANDUM by SHANNON MICHELLE DRAKE re 288 MOTION to Adopt 278 MOTION in Limine *to Exclude Testimony of Government's Proposed Witnesses* filed by RONALD KEITH EARNEST filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 04/26/2018) |
| 04/26/2018 | 290 | MOTION to Sever Defendant by ROBERT THOMAS TAYLOR. (CAMDEN, WES) (Entered: 04/26/2018) |
| 04/26/2018 | 291 | RESPONSE to Motion filed by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 256 Joint MOTION in Limine *to* |

| | | |
|---|---|---|
| | | *Preclude the Government from Using "Nominee Lending Scheme" Phrase and Equivalent Arguments* Replies due by 5/10/2018 (MCLELLAN, JEFFREY) (Entered: 04/26/2018) |
| 04/26/2018 | 292 | RESPONSE to Motion filed by USA as to ROBERT THOMAS TAYLOR re 264 MOTION in Limine Replies due by 5/10/2018 (MCLELLAN, JEFFREY) (Entered: 04/26/2018) |
| 04/26/2018 | | TEXT ORDER: Defendants SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR have moved to preclude the Government's use of the phrase "nominee lending scheme" to describe the criminal scheme at issue in this case during the trial. (Doc. 256.) The Government has responded (Doc. 291). For reasons this court will more formally explain on the record, this court suggests the United States find another shorthand term to refer to the nominee lending in this case. The Government is required to prove a "scheme or artifice" as an element of the offense charged in Count Two and Counts Three through Fourteen, and it seems to this court that the scheme alleged is more complex than simple nominee lending. As a preliminary finding, it appears to this court that use of the phrase "nominee lending scheme" by the Government and without objection is unduly suggestive that a "scheme" within the meaning of 18 U.S.C. § 1344(2) has been established, and the phrase could easily cause confusion with the jury as to the relationship between the nominal use of "nominee lending scheme" and the scheme the Government is required to prove beyond a reasonable doubt. This court preliminarily believes that a consistent reference to the nominee loans in this case as a "nominee lending scheme" would be prejudicial and confusing to the jury. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 04/26/2018.] (Cable, Frances) (Entered: 04/26/2018) |
| 04/26/2018 | 293 | Electronic Transmission of Notice of Appeal and Docket Sheet as to RONALD KEITH EARNEST to US Court of Appeals re: 282 Notice of Appeal - Interlocutory. (Daniel, J) (Entered: 04/26/2018) |
| 04/26/2018 | 294 | Proposed Modification to the Court's Preliminary Jury Instructions by SHANNON MICHELLE DRAKE. (RAUSCHER, CLAIRE) Modified document title on 4/27/2018. (Daniel, J) (Entered: 04/26/2018) |
| 04/26/2018 | 295 | Proposed Voir Dire by SHANNON MICHELLE DRAKE. (RAUSCHER, CLAIRE) (Entered: 04/26/2018) |
| 04/26/2018 | 296 | Proposed Voir Dire by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (BROOKS, NATHAN) (Entered: 04/26/2018) |
| 04/26/2018 | 297 | RESPONSE to Motion filed by USA as to RONALD KEITH EARNEST re 288 MOTION to Adopt 278 MOTION in Limine *to Exclude Testimony of Government's Proposed Witnesses* filed by RONALD KEITH EARNEST Replies due by 5/10/2018 (Attachments: # 1 Exhibit, # 2 Exhibit)(BROOKS, NATHAN) (Entered: 04/26/2018) |
| 04/26/2018 | 298 | RESPONSE/REPLY by RONALD KEITH EARNEST re 284 Response in Opposition (HOWARD, JOSHUA) (Entered: 04/26/2018) |
| 04/26/2018 | 299 | MOTION *To Eliminate Surplusage* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 5/17/2018 (MCLELLAN, JEFFREY) (Entered: 04/26/2018) |
| 04/26/2018 | 300 | Second MOTION to Dismiss *the Third Superseding Indictment Based on Pre-Indictment Delay* by ROBERT THOMAS TAYLOR. Response to Motion due by 5/17/2018 (CAMDEN, WES) (Entered: 04/26/2018) |
| 04/26/2018 | 301 | MEMORANDUM by ROBERT THOMAS TAYLOR re 300 Second MOTION to |

| | | |
|---|---|---|
| | | Dismiss *the Third Superseding Indictment Based on Pre-Indictment Delay* filed by ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit A - Commercial Loan Memos, # 2 Exhibit B - BOFI 2007 Report, # 3 Exhibit C - FDIC 2012 Report, # 4 Exhibit D - Frank Chut May 5, 2013 Email, # 5 Exhibit E - Special Agent Knapp Feb. 8, 2018 Testimony, # 6 Exhibit F - Corriher Memorandum of Interview, # 7 Exhibit G - Agent Hench Notes of Cannon Interview, # 8 Exhibit H - Wire Transfer Forms, # 9 Exhibit I - Ron Earnest June 15, 2005 Email)(CAMDEN, WES) (Entered: 04/26/2018) |
| 04/27/2018 | 302 | RESPONSE in Opposition by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 260 Joint MOTION in Limine *to Exclude the Testimony of Douglas Corriher* Replies due by 5/11/2018 (CHUT, FRANK) (Entered: 04/27/2018) |
| 04/27/2018 | 303 | RESPONSE/REPLY by RONALD KEITH EARNEST re 298 Reply/Response Misc (HOWARD, JOSHUA) (Entered: 04/27/2018) |
| 04/27/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 4/27/2018. AUSA Nathan Brooks and AUSA Jeffrey McLellan present on behalf of the Government. Attorney Claire Rauscher, Joshua Howard, Wes Camden and Caitlin Poe appeared on behalf of their clients for the hearing; Defendant Earnest present. Attorneys Deborah Barbier, Mark Moore and Andrew Mathias, and Defendants Shannon Drake and Robert Taylor attended by tele-conference. Court heard from the parties with respect to Defendant Earnest's Motion to Stay; Hearing on Pending Motions set April 30, 2018 & May 1, 2018 at 9:30 a.m.; Jury selection reset to May 2, 2018 at 11:00 a.m. (Court Reporter Briana Bell.) (Welch, Kelly) (Entered: 04/27/2018) |
| 04/28/2018 | 304 | RESPONSE in Opposition by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 288 MOTION to Adopt 278 MOTION in Limine *to Exclude Testimony of Government's Proposed Witnesses* filed by RONALD KEITH EARNEST Replies due by 5/14/2018 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(MCLELLAN, JEFFREY) (Entered: 04/28/2018) |
| 04/29/2018 | 305 | MOTION to Sever by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 5/21/2018 (RAUSCHER, CLAIRE) (Entered: 04/29/2018) |
| 04/29/2018 | 306 | REPLY, by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR TO RESPONSE to 288 MOTION to Adopt 278 MOTION in Limine *to Exclude Testimony of Government's Proposed Witnesses* filed by RONALD KEITH EARNEST (RAUSCHER, CLAIRE) (Entered: 04/29/2018) |
| 04/29/2018 | 307 | RESPONSE in Opposition by RONALD KEITH EARNEST re 299 MOTION *To Eliminate Surplusage* Replies due by 5/14/2018 (BARBIER, DEBORAH) (Entered: 04/29/2018) |
| 04/29/2018 | 308 | MOTION for Disclosure *OF GRAND JURY INDICTMENT PRESENTMENT, COLLOQUY AND TESTIMONY PURSUANT TO RULE6(e)(3)(E)(i) AND RULE 6(e)(3)(E)(ii)* by RONALD KEITH EARNEST. Response to Motion due by 5/21/2018 (Attachments: # 1 Text of Proposed Order)(BARBIER, DEBORAH) (Entered: 04/29/2018) |
| 04/29/2018 | 309 | MEMORANDUM *IN SUPPORT OF MOTION FOR DISCLOSURE OF GRAND JURY* |

| | | |
|---|---|---|
| | | *INDICTMENT PRESENTMENT, COLLOQUY AND TESTIMONY PURSUANT TO RULE6(e)(3)(E)(i) AND RULE 6(e)(3)(E)(ii)* by RONALD KEITH EARNEST re 308 Motion for Disclosure, filed by RONALD KEITH EARNEST (BARBIER, DEBORAH) (Entered: 04/29/2018) |
| 04/29/2018 | 310 | MOTION in Limine *BY DEFENDANT EARNEST TO EXCLUDE ANY REFERENCE OR EVIDENCE OF HARRISON TAX LOSS* by RONALD KEITH EARNEST. Response to Motion due by 5/21/2018 (Attachments: # 1 Text of Proposed Order)(BARBIER, DEBORAH) (Entered: 04/29/2018) |
| 04/29/2018 | 311 | MEMORANDUM *IN SUPPORT OF MOTION TO EXCLUDE ANY REFERENCE OR EVIDENCE OF HARRISON TAX LOSS* by RONALD KEITH EARNEST re 310 Motion in Limine filed by RONALD KEITH EARNEST (BARBIER, DEBORAH) (Entered: 04/29/2018) |
| 04/30/2018 | 312 | MOTION in Limine *to Preclude Statement that Shannon Drake "should have known" about Criminal Activity* by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 5/21/2018 (RAUSCHER, CLAIRE) (Entered: 04/30/2018) |
| 04/30/2018 | 313 | MOTION in Limine *to Disclose Whether any of the Witnesses on the Governments Witness List Are Unindicted Co-Conspirators* by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 5/21/2018 (RAUSCHER, CLAIRE) (Entered: 04/30/2018) |
| 04/30/2018 | 314 | MOTION in Limine *to Preclude the Government from Indicating that Shannon Drake was a Bank Officer* by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 5/21/2018 (RAUSCHER, CLAIRE) (Entered: 04/30/2018) |
| 04/30/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR in G-1: Motion Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 4/30/2018. Appearing at the Motions Hearing were the following: AUSA Nathan Brooks & AUSA Jeffrey McLellan, Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, Wes Camden, James Bannister & Caitlin Poe; Attorneys Mark Moore & Andrew Mathias attended via tele-conference. Defendants Drake, Earnest & Taylor present. Court heard arguments from the parties on pending motions and made the following findings; with respect to Doc. 280 Defendant Earnest's Motion to Stay Court's Order is granted in part, and those orders are stayed until May 17 or further order of the Court. A status conference will be held on May 17, 2018 at 2:00 p.m. In light of the interlocutory appeal, the Court continued the trial until May 29, 2018, and that continuance will be addressed in a separate written order. Court denied Doc. 305 Defendant Drake's Motion to Sever, and also denied Doc. 290 Defendant Taylor's Motion to Sever. Court granted Doc. 299 Government's Motion to Eliminate Surplusage from Indictment, and the Court struck paragraph 99A and relatedly dismissed count 15 of the superseding indictment. The Court takes under advisement Doc. 308 Defendant Earnest's Motion for Disclosure of Grand Jury Indictment Presentment, Colloquy and Testimony, pending a response by the United States. With respect to Doc. 278 Defendant Earnest's Motion in Limine to Exclude Experts, and Doc. 288 Defendant Drake's Motion to Join 278 Earnest's Motion in Limine to Exclude, the Court finds based on the description of the potential testimony to be offered, one, that the Motion should be denied based on the evidence presented here is not persuaded that expert testimony is required; and, two, even assuming that the |

| | | |
|---|---|---|
| | | witnesses will be required to qualify as an expert in order to testify in light of the continuance of this matter, at this point the Court finds that motion should be denied, but without prejudice. With respect to Doc. 258 Drake's Motion in Limine to Preclude the Government from Eliciting Expert Testimony from Lay Witnesses, the Court will apply the rules of evidence during the course of the trial and notes that that Motion at this point doesn't appear to be ripe for final ruling. The Court will be entering written orders on the stay and continuance as well as the Motions to sever. For the reasons stated on the record, the Court denied without prejudice Doc. 300 Defendant Taylor's Renewed Motion to Dismiss the Third Superseding Indictment Based on Pre-Indictment Delay. In addition, the Court denied 264 Defendant Taylor's Motion in Limine. With respect to Doc. 269 Defendant Taylor's Motion to Permit Character Evidence, the Court takes that matter under advisement to be ruled upon at the conclusion of Government's evidence, but the Court has indicated that even if it were inclined to grant the motion, the Court would likely limit the number of witnesses who may be called to testify as to each trait. The Court will grant the Government's Proposed Redaction Order in the form it was presented; Status Conference set May 17, 2018 at 2:00 p.m. in Greensboro, Courtroom 1; Jury Trial reset to May 29, 2018 at 9:30 a.m. in Greensboro, Courtroom 1. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 04/30/2018) |
| 04/30/2018 | | ORAL ORDER as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST & ROBERT THOMAS TAYLOR denying Documents 264 , 278 , 288 , 290 , 300 & 305 ; granting in part Document 280 ; and granting Document 299 ; Issued by JUDGE WILLIAM L. OSTEEN, JR on 4/30/18. (See Minute Entry on 4/30/2018) (Welch, Kelly) (Entered: 04/30/2018) |
| 04/30/2018 | | Set/Reset Deadlines/Hearings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Status Conference set for 5/17/2018 02:00 PM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. Jury Trial **reset for 5/29/2018** 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 04/30/2018) |
| 05/01/2018 | 315 | RESPONSE in Opposition by USA as to RONALD KEITH EARNEST re 308 MOTION for Disclosure *OF GRAND JURY INDICTMENT PRESENTMENT, COLLOQUY AND TESTIMONY PURSUANT TO RULE6(e)(3)(E)(i) AND RULE 6(e)(3)(E)(ii)* Replies due by 5/15/2018 (BROOKS, NATHAN) (Entered: 05/01/2018) |
| 05/03/2018 | 316 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 5/3/2018. The parties may include material covered by Rule 49.1 in their exhibits for purposes of the trial of this case only; however, the parties may not further disseminate trial exhibits containing material covered by Rule 49.1 as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 05/03/2018) |
| 05/04/2018 | 317 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 5/4/2018. For the reasons stated herein, Earnest's Motion to Quash Pending Appeal, (Doc. 280 ), is GRANTED IN PART. This court's orders in question, (Docs. 252 , 275 ), are stayed until May 17, 2018, at 2 p.m., at which time a status conference will be held before this court. FURTHER ORDERED that Taylor's Motion to Sever, (Doc. 290 ), is DENIED; Drake's Motion to Sever, (Doc. 305 ), is DENIED. The trial of this matter is continued to May 29, 2018 and the time between April 30, 2018, and May 29, 2018, is excluded from calculation under the Speedy Trial Act (18 U.S.C. § 3161 et seq.) pursuant to 18 U.S.C. §§ 3161(h)(1) (C) and (h)(6) as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 05/04/2018) |
| 05/04/2018 | 318 | RESPONSE/REPLY by RONALD KEITH EARNEST re 315 Response in Opposition, (Attachments: # 1 Exhibit A)(HOWARD, JOSHUA) (Entered: 05/04/2018) |

| | | |
|---|---|---|
| 05/04/2018 | 319 | MOTION to Adopt 309 Memorandum, filed by RONALD KEITH EARNEST, 308 MOTION for Disclosure *OF GRAND JURY INDICTMENT PRESENTMENT, COLLOQUY AND TESTIMONY PURSUANT TO RULE6(e)(3)(E)(i) AND RULE 6(e)(3)(E)(ii)* filed by RONALD KEITH EARNEST by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (RAUSCHER, CLAIRE) (Entered: 05/04/2018) |
| 05/04/2018 | 320 | MEMORANDUM by SHANNON MICHELLE DRAKE re 319 MOTION to Adopt 309 Memorandum, filed by RONALD KEITH EARNEST, 308 MOTION for Disclosure *OF GRAND JURY INDICTMENT PRESENTMENT, COLLOQUY AND TESTIMONY PURSUANT TO RULE6(e)(3)(E)(i) AND RULE 6(e)(3)(E)(ii)* filed by RONALD KEITH EARNEST filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 05/04/2018) |
| 05/04/2018 | 321 | MOTION to Seal *Exhibit* by SHANNON MICHELLE DRAKE. Response to Motion due by 5/25/2018 (RAUSCHER, CLAIRE) (Entered: 05/04/2018) |
| 05/04/2018 | 322 | Sealed EXHIBITS re 321 MOTION to Seal *Exhibit* by Defendants SHANNON MICHELLE DRAKE, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, Plaintiff USA (RAUSCHER, CLAIRE) (Entered: 05/04/2018) |
| 05/07/2018 | 323 | TRANSCRIPT of Proceedings as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 04/27/2018 before Judge William L. Osteen, Jr., Court Reporter Briana L. Bell, Telephone number 336-734-2514. Email: brinesbit@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 6/1/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/9/2018. (Bell, Briana) (Entered: 05/07/2018) |
| 05/07/2018 | 324 | TRANSCRIPT of Proceedings as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 09/07/2017 before Judge N. Carlton Tilley, Jr., Court Reporter Briana L. Bell, Telephone number 336-734-2514. Email: brinesbit@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.** |

| | | |
|---|---|---|
| | | Redaction Request due 6/1/2018. Redacted Transcript Deadline set for 6/11/2018. Release of Transcript Restriction set for 8/9/2018. (Bell, Briana) (Entered: 05/07/2018) |
| 05/07/2018 | 325 | NOTICE *RE Scheduling* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (MCLELLAN, JEFFREY) (Entered: 05/07/2018) |
| 05/08/2018 | 326 | MEMORANDUM by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 313 MOTION in Limine *to Disclose Whether any of the Witnesses on the Governments Witness List Are Unindicted Co-Conspirators* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 05/08/2018) |
| 05/08/2018 | 327 | MOTION to Seal *Exhibits to MEMORANDUM IN SUPPORT OF DEFENDANT DRAKES MOTION IN LIMINE FOR THE GOVERNMENT TO DISCLOSE WHETHER TRIAL WITNESSES ARE UNINDICTED CO-CONSPIRATORS* by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 5/29/2018 (RAUSCHER, CLAIRE) (Entered: 05/08/2018) |
| 05/08/2018 | 328 | Sealed EXHIBITS re 326 Memorandum, *IN SUPPORT OF DEFENDANT DRAKES MOTION IN LIMINE FOR THE GOVERNMENT TO DISCLOSE WHETHER TRIAL WITNESSES ARE UNINDICTED CO-CONSPIRATORS* by Defendants RONALD KEITH EARNEST, SHANNON MICHELLE DRAKE, SHANNON MICHELLE DRAKE, ROBERT THOMAS TAYLOR, Plaintiff USA (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(RAUSCHER, CLAIRE) (Entered: 05/08/2018) |
| 05/08/2018 | 329 | NOTICE by USA as to SHANNON MICHELLE DRAKE re 319 MOTION to Adopt 309 Memorandum, filed by RONALD KEITH EARNEST, 308 MOTION for Disclosure *OF GRAND JURY INDICTMENT PRESENTMENT, COLLOQUY AND TESTIMONY PURSUANT TO RULE6(e)(3)(E)(i) AND RULE 6(e)(3)(E)(ii)* filed by RONALD KEITH EARNEST (BROOKS, NATHAN) (Entered: 05/08/2018) |
| 05/08/2018 | | Motion Submission as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re: 308 MOTION for Disclosure OF GRAND JURY INDICTMENT PRESENTMENT, COLLOQUY AND TESTIMONY PURSUANT TO RULE6(e)(3)(E)(i) AND RULE 6(e)(3)(E)(ii) filed by RONALD KEITH EARNEST, 319 MOTION to Adopt 308 MOTION for Disclosure OF GRAND JURY INDICTMENT PRESENTMENT, COLLOQUY AND TESTIMONY PURSUANT TO RULE6(e)(3)(E)(i) AND RULE 6(e)(3)(E)(ii) filed by SHANNON MICHELLE DRAKE, 321 MOTION to Seal Exhibit, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 05/08/2018) |
| 05/09/2018 | 330 | MOTION to Quash *Government Subpoena Issued to J.B. Schwiers* by SHANNON MICHELLE DRAKE. Response to Motion due by 5/30/2018 (RAUSCHER, CLAIRE) (Entered: 05/09/2018) |
| 05/09/2018 | 331 | MEMORANDUM by SHANNON MICHELLE DRAKE re 330 MOTION to Quash *Government Subpoena Issued to J.B. Schwiers* filed by SHANNON MICHELLE DRAKE (Attachments: # 1 Exhibit A, # 2 Exhibit B)(RAUSCHER, CLAIRE) (Entered: 05/09/2018) |
| 05/09/2018 | 332 | NOTICE *Corrected Intent to Introduce Per R.902(11)* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 05/09/2018) |
| 05/09/2018 | 333 | NOTICE *Intent to Offer Testimony of Computer Investigative Specialist* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS |

| | | |
|---|---|---|
| | | TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 05/09/2018) |
| 05/10/2018 | | TEXT ORDER: Defendant Shannon Michelle Drake has filed a motion to quash (Doc. 330) the Government's subpoena issued to JB Schwiers (see Doc. 331-1). Drake claims privilege as to the documents responsive to the subpoena. This court anticipates that it will be required to conduct an in camera review of the requested documents, (see, e.g., In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991, 33 F.3d 342 (4th Cir. 1994)), to determine whether the documents are in fact privileged communications. The Clerk is directed to contact the Government, counsel for Defendant Drake, and counsel for the Bank and JB Schwiers to arrange a hearing. The court requests that counsel for the Bank and Schwiers appear with a set of copies of the requested documents in the event the court determines an in camera review is necessary. The time for the United States to file a response, if any, to the motion to quash, is hereby shortened and shall occur within 7 days or no later than 4:00 p.m. on the day before the hearing set by the Clerk. Defendant Drake is required to attend. The co-defendants and their counsel may attend but are not required to do so. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 05/10/2018.] (Cable, Frances) (Entered: 05/10/2018) |
| 05/10/2018 | | Electronic Notice sent on 5/10/2018 to the following: Frank Chut, Nathan Brooks, Jeffrey McLellan, Claire Rauscher, Allen O'Rourk, Thomas Ferguson, Mark Moore & Andrew Mathias re: [Text Order entered 5/10/2018] Hearing set for 5/17/2018 10:00 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 05/10/2018) |
| 05/11/2018 | 334 | MOTION to Adopt *DEFENDANT EARNEST'S MOTION FOR DISCLOSURE OF GRAND JURY PRESENTMENT, COLLOQUY, AND TESTIMONY PURSUANT TO RULE 6(e)(3)(E)(i)-(ii) (DOC. NOS. 308, 309)* by ROBERT THOMAS TAYLOR. (CAMDEN, WES) (Entered: 05/11/2018) |
| 05/16/2018 | 335 | TRANSCRIPT of Status Conference held 01/23/2018 as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 6/11/2018. Redacted Transcript Deadline set for 6/21/2018. Release of Transcript Restriction set for 8/17/2018. (Armstrong, Joe) (Entered: 05/16/2018) |
| 05/16/2018 | 336 | TRANSCRIPT of Status Conference held 02/16/2018 as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a** |

| | | |
|---|---|---|
| | | **Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 6/11/2018. Redacted Transcript Deadline set for 6/21/2018. Release of Transcript Restriction set for 8/17/2018. (Armstrong, Joe) (Entered: 05/16/2018) |
| 05/16/2018 | 337 | TRANSCRIPT of Motions Hearing held 04/13/2018 as to SHANNON MICHELLE DRAKE before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 6/11/2018. Redacted Transcript Deadline set for 6/21/2018. Release of Transcript Restriction set for 8/17/2018. (Armstrong, Joe) (Entered: 05/16/2018) |
| 05/16/2018 | 338 | TRANSCRIPT of Status Conference held 04/18/2018 as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 6/11/2018. Redacted Transcript Deadline set for 6/21/2018. Release of Transcript Restriction set for 8/17/2018. (Armstrong, Joe) (Entered: 05/16/2018) |
| 05/16/2018 | 339 | TRANSCRIPT of Motions Hearing held 04/30/2018 as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be** |

| | | |
|---|---|---|
| | | **viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.** Redaction Request due 6/11/2018. Redacted Transcript Deadline set for 6/21/2018. Release of Transcript Restriction set for 8/17/2018. (Armstrong, Joe) (Entered: 05/16/2018) |
| 05/16/2018 | 340 | RESPONSE in Opposition by USA as to SHANNON MICHELLE DRAKE re 330 MOTION to Quash *Government Subpoena Issued to J.B. Schwiers* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(MCLELLAN, JEFFREY) (Entered: 05/16/2018) |
| 05/16/2018 | | Motion Submission as to SHANNON MICHELLE DRAKE re: 330 MOTION to Quash Government Subpoena Issued to J.B. Schwiers, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 05/16/2018) |
| 05/17/2018 | 341 | MOTION to Continue Sentencing by DOUGLAS ALAN CORRIHER. Response to Motion due by 6/7/2018 (HEROY, J.) (Entered: 05/17/2018) |
| 05/17/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Motion Hearing as to SHANNON MICHELLE DRAKE held on 5/17/2018 re 330 MOTION to Quash Government Subpoena Issued to J.B. Schwiers filed by SHANNON MICHELLE DRAKE. Appearing at the hearing were the following: AUSA Nathan Brooks, AUSA Jeffrey McLellan, AUSA Frank Chut, Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Mark Moore & Andrew Mathias. JB Schwiers present. Defendants Drake & Earnest present. Counsel for GrandSouth Bank appeared with copies of requested documents. Court heard arguments from counsel with respect to an appropriate procedure for disclosure of these records. (Written Order forthcoming) (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 05/17/2018) |
| 05/17/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1:Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 5/17/2018. Appearing at the status conference were the following: AUSA Nathan Brooks, AUSA Jeffrey McLellan, AUSA Frank Chut, Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard & Wes Camden. Appellate counsel Chris Browning & Annie Hayes present. Mark Moore, Andrew Mathias, Deborah Barbier, Caitlin Poe & J.B. Schwiers attended via tele-conference. Defendants Drake, Earnest & Taylor present. Court addressed the interlocutory appeal in the Fourth Circuit; Court treats the Government's request for a stay as a motion to continue; Court takes request under advisement; Case is removed from the trial calendar. Status conference set June 5, 2018 at 11:00 a.m. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 05/17/2018) |
| 05/22/2018 | 342 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR on 5/22/2018. The Defendant's Motion to Continue Sentencing (Doc. 341 ) is GRANTED. The sentencing hearing is rescheduled to July 17, 2018, at 9:30 a.m. in Greensboro Courtroom 1 in case as to DOUGLAS ALAN CORRIHER (1). (Daniel, J) (Entered: 05/22/2018) |
| 05/22/2018 | 343 | ORDER regarding Defendant Shannon Drake's ("Drake's") Motion to Quash Government Subpoena Issued to J.B. Schwiers. (Doc. 330 ) in case as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). Signed by JUDGE WILLIAM L. OSTEEN, JR. on 5/22/2018. (Daniel, J) (Entered: 05/22/2018) |
| 05/22/2018 | 344 | SEALED DOCUMENT in case as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 05/22/2018) |
| 05/25/2018 | 345 | USCA ORDER as to RONALD KEITH EARNEST. Upon review of submissions relative |

| | | |
|---|---|---|
| | | to the motion for stay pending appeal, the court grants the motion and stays the district court's disclosure orders pending appeal. Entered at the direction of Chief Judge Gregory with the concurrence of Judge Agee and Judge Harris. USCA Case Number 18-4260. (Sheets, Jamie) (Entered: 05/25/2018) |
| 06/01/2018 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST and ROBERT THOMAS TAYLOR: Status Conference set for 6/5/2018 at 11:00 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Marsh, Keah) (Entered: 06/01/2018) |
| 06/05/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 6/5/2018. Appearing at the status conference were the following: AUSA Nathan Brooks, AUSA Jeffrey McLellan, AUSA Frank Chut, Attorneys Claire Rauscher, Joshua Howard & Wes Camden. Andrew Mathias appeared on behalf of Nexsen Pruet. Defendants Drake, Earnest & Taylor present. In light of the Fourth Circuit's Order staying Mr. Earnest's case, the court finds without objection the co-defendants cases should be stayed. (Written Order forthcoming.) (Court Reporter Joseph Armstrong.) (Welch, Kelly) Modified on 6/6/2018 to edit text of entry. NEF regenerated. (Welch, Kelly). (Entered: 06/05/2018) |
| 06/08/2018 | 346 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 6/8/2018. This case is STAYED, except as is otherwise provided by this order or a future order of this court, until an order and judgment are issued by the Fourth Circuit in Defendant Earnest's appeal. FURTHER that a status conference in this case is set for Friday, August 3, 2018, at 11:00 a.m. in Greensboro Courtroom 1 as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 06/08/2018) |
| 06/08/2018 | | Set Status Conference for 8/3/2018 at 11:00 a.m. in Greensboro Courtroom #1 as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 06/08/2018) |
| 06/15/2018 | 347 | MOTION FOR LEAVE TO DISCLOSE EXCERPTS OF GRAND JURY TRANSCRIPTS AND TO UNSEAL ADDITIONAL DOCUMENTS by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 06/15/2018) |
| 06/15/2018 | 348 | MEMORANDUM by RONALD KEITH EARNEST re 347 MOTION FOR LEAVE TO DISCLOSE EXCERPTS OF GRAND JURY TRANSCRIPTS AND TO UNSEAL ADDITIONAL DOCUMENTS filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 06/15/2018) |
| 06/22/2018 | 349 | RESPONSE in Opposition by USA as to RONALD KEITH EARNEST re 347 MOTION FOR LEAVE TO DISCLOSE EXCERPTS OF GRAND JURY TRANSCRIPTS AND TO UNSEAL ADDITIONAL DOCUMENTS (BROOKS, NATHAN) (Entered: 06/22/2018) |
| 06/26/2018 | | Motion Submission as to RONALD KEITH EARNEST re: 347 MOTION FOR LEAVE TO DISCLOSE EXCERPTS OF GRAND JURY TRANSCRIPTS AND TO UNSEAL ADDITIONAL DOCUMENTS, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 06/26/2018) |
| 07/03/2018 | 350 | USCA ORDER granting the motion to dismiss the appeal as to RONALD KEITH EARNEST re: 282 Notice of Appeal - Interlocutory. USCA Case #18-4260. (Daniel, J) (Entered: 07/05/2018) |
| 07/03/2018 | 351 | JUDGMENT of USCA. In accordance with the decision of this court, this appeal is |

| | | |
|---|---|---|
| | | dismissed. This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41 as to RONALD KEITH EARNEST re: 282 Notice of Appeal - Interlocutory. USCA Case #18-4260. (Daniel, J) (Entered: 07/05/2018) |
| 07/10/2018 | | TEXT ORDER as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), and ROBERT THOMAS TAYLOR (4) - This court previously entered an order, (Doc. 346), staying this matter in light of the Fourth Circuit's order staying United States v. Earnest, No. 18-4260. The stay remained in effect until an order and judgment were issued by the Fourth Circuit. (Docs. 350, 351.) Through oversight, this court failed to anticipate awaiting issuance of the mandate as specified in the Judgment by the Fourth Circuit. (See Doc. 351.) As a result, this court is considering, sua sponte, continuing the stay until the status conference set for August 3, 2018, to allow additional time for the issuance of the mandate and to allow the parties sufficient time to evaluate the procedural posture of the case in light of the Fourth Circuit's ruling. If any party objects or wishes to be heard as to the court's intended action, an objection or other pleading in response should be filed on or before Friday, July 13, 2018, at 5:00 p.m. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 7/10/2018.] (Cable, Frances) (Entered: 07/10/2018) |
| 07/13/2018 | 352 | SEALED MOTION by USA, DOUGLAS ALAN CORRIHER as to DOUGLAS ALAN CORRIHER. (CHUT, FRANK) (Entered: 07/13/2018) |
| 07/16/2018 | | Motion Submission as to DOUGLAS ALAN CORRIHER re: 352 SEALED MOTION, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 07/16/2018) |
| 07/17/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Case called for sentencing as to DOUGLAS ALAN CORRIHER on 7/17/2018. USDOJ Attorneys Nathan Brooks, Jeffrey McLellan & AUSA Frank Chut present on behalf of the Government. Attorneys Edward Hinson, Jr. & Alexander Heroy appeared on behalf of the Defendant. Defendant present on bond. Court advised the parties of concerns with respect to sentencing issues which require additional briefing. Court continued sentencing to August 31, 2018 at 2:00 p.m. Supplemental Briefs due: 8/3/2018. Responses due: 8/10/2018. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 07/17/2018) |
| 07/17/2018 | | Set/Reset Deadlines/Hearings as to DOUGLAS ALAN CORRIHER: Sentencing **reset for 8/31/2018 02:00 PM** in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 07/17/2018) |
| 07/17/2018 | 353 | USCA STAY OF MANDATE. Under Fed. R. App. P. 41(d)(1), the timely filing of a petition for rehearing or rehearing en banc or the timely filing of a motion to stay the mandate stays the mandate until the court has ruled on the petition for rehearing or rehearing en banc or motion to stay. In accordance with Rule 41(d)(1), the mandate is stayed pending further order of this court as to RONALD KEITH EARNEST (3) re: 282 Notice of Appeal - Interlocutory. USCA Case #18-4260. (Daniel, J) (Entered: 07/18/2018) |
| 07/19/2018 | | Electronic Notice of Rescheduling as to DOUGLAS ALAN CORRIHER sent on 7/19/2018 to/from all counsel of record. **Sentencing reset for 8/24/2018 09:30 AM** in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 07/19/2018) |
| 08/01/2018 | 354 | NOTICE OF ATTORNEY APPEARANCE WILLIAM M. MONTAGUE appearing for USA. (MONTAGUE, WILLIAM) (Entered: 08/01/2018) |
| 08/02/2018 | 355 | (SEALED) POSITION PAPER RE SENTENCING FACTORS - NOTICE TO THE COURT AND OPPOSING COUNSEL ONLY as to DOUGLAS ALAN CORRIHER (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(CHUT, FRANK) (Entered: 08/02/2018) |

| | | |
|---|---|---|
| 08/03/2018 | 356 | SEALED SENTENCING MEMORANDUM by USA, DOUGLAS ALAN CORRIHER as to DOUGLAS ALAN CORRIHER (HINSON, EDWARD) (Entered: 08/03/2018) |
| 08/03/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 8/3/2018. AUSA Frank Chut & US DOJ Attorney William Montague present on behalf of the Government; Attorneys Claire Rauscher, Deborah Barbier & Wes Camden appeared on behalf of their respective clients; Attorney Andrew Mathias present on behalf of Grand South Bank. Court addressed remaining pending motions; With respect to banks records a hearing is scheduled on 8/24/2018 at 3:30 p.m. to finalize privileged documents as to Nexsen Pruet, the Government, and Defendant Shannon Drake; Tentative Trial Schedule set as follows: Discovery deadline as to all materials except for the bank records that are subject to dispute due: 9/13/2018. Response of experts due: 9/27/2018. Pretrial Motions due: 9/13/2018. Responses due: 9/20/2018. Any pretrial motions filed shall include an explanation as to good cause for the Court's consideration. Status Conference and Motions hearing set: 10/9/2018 & 10/10/2018 at 9:30 a.m. Jury Trial: 11/5/2018. (ETT: 3 weeks). (Court Reporter Jane Calhoun.) (Welch, Kelly) (Entered: 08/03/2018) |
| 08/03/2018 | | Set Deadlines/Hearings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Status Conference set for 8/24/2018 03:30 PM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. Motions Hearings and Status Conference set for 10/9/2018 and 10/10/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. Jury Trial **tentatively** set for 11/5/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 08/03/2018) |
| 08/06/2018 | 357 | USCA Order denying the petition for rehearing and rehearing en banc as to RONALD KEITH EARNEST (3) re: 282 Notice of Appeal. USCA Case #18-4260. (Daniel, J) (Entered: 08/06/2018) |
| 08/14/2018 | 358 | MANDATE of USCA. The judgment of this court, entered 07/03/2018, takes effect today. This constitutes the formal mandate of this court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure as to RONALD KEITH EARNEST (3). USCA Case #18-4260. (Daniel, J) (Entered: 08/14/2018) |
| 08/16/2018 | 359 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 8/16/2018. This matter is **STAYED** pending issuance of the mandate in United States v. Earnest, appeal docketed, No. 18-4260, (4th Cir. Apr. 27, 2018), **NUNC PRO TUNC July 13, 2018** as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 08/16/2018) |
| 08/16/2018 | | TEXT ORDER as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), and ROBERT THOMAS TAYLOR (4) - Because the previously entered stay in this matter has now expired, (see Doc. 346), this court is considering, sua sponte, entering an order continuing this trial to November 5, 2018, and incorporating the deadlines established during the August 3, 2018 status conference. The order will exclude time under the Speedy Trial Act as the time is necessary to allow the parties a reasonable time to prepare, taking into consideration due diligence. If any of the parties object or wish to be heard, any objection or other pleading shall be filed on or before August 22, 2018. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 08/16/2018.] (Cable, Frances) (Entered: 08/16/2018) |
| 08/17/2018 | 360 | TRANSCRIPT of Proceedings as to DOUGLAS ALAN CORRIHER Sentencing Hearing for dates of 07/17/2018 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court |

| | | |
|---|---|---|
| | | public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 9/10/2018. Redacted Transcript Deadline set for 9/20/2018. Release of Transcript Restriction set for 11/19/2018. (Armstrong, Joe) (Entered: 08/17/2018) |
| 08/20/2018 | 361 | Objection *to Proposed Trial Date* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (CHUT, FRANK) (Entered: 08/20/2018) |
| 08/23/2018 | | **TEXT ORDER:** The court has been advised by letter that the parties have resolved the disputes relating to documents and the need for a hearing on August 23, 2018 at 3:30 is now moot. This court therefore cancels the hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Issued by JUDGE WILLIAM L. OSTEEN, JR on 8/23/2018. (Welch, Kelly) (Entered: 08/23/2018) |
| 08/24/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Case called for Sentencing as to DOUGLAS ALAN CORRIHER on 8/24/2018. AUSA Frank Chut and US DOJ Attorneys Jeffrey McClellan and William Montague present on behalf of the Government. Attorneys Edward Hinson and Alexander Leroy appeared on behalf of the Defendant. Defendant present on bond. For the reasons stated on the record Defendant's sentencing is continued to a date to be determined; Status Conference set 10/01/2018 at 9:30 a.m. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 08/24/2018) |
| 08/24/2018 | | Set Deadlines/Hearings as to DOUGLAS ALAN CORRIHER: Status Conference set for 10/1/2018 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 08/24/2018) |
| 08/27/2018 | 362 | RESPONSE *in Opposition* by ROBERT THOMAS TAYLOR re 361 Objection filed by USA (CAMDEN, WES) (Entered: 08/27/2018) |
| 08/28/2018 | 363 | RESPONSE in Opposition by SHANNON MICHELLE DRAKE re: 361 Objection *to Proposed Trial Date*. (RAUSCHER, CLAIRE) Modified docket on 8/29/2018 to reflect response. (Daniel, J) (Entered: 08/28/2018) |
| 08/31/2018 | | ELECTRONIC NOTICE OF HEARING as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST and ROBERT THOMAS TAYLOR. Status Conference set for 9/10/2018 at 9:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR.(Marsh, Keah) (Entered: 08/31/2018) |
| 08/31/2018 | 364 | **ORDER** as to SHANNON MICHELLE DRAKE (2); as to RONALD KEITH EARNEST (3); as to ROBERT THOMAS TAYLOR (4) signed by JUDGE WILLIAM L. OSTEEN, JR on 8/31/2018; that the Motion by Defendant Earnest for Disclosure of Grand Jury Indictment Presentment, Colloquy and Testimony Pursuant to Fed. R. Crim. P. Rule 6(e)(3)(E)(i) and (ii), (Doc. 308 ), which both Drake, (Doc. 319 ), and Taylor, (Doc. 334 ), joined, is GRANTED IN PART and DENIED IN PART. The Government is hereby required to disclose the Indictment presentment testimony before the Grand Jury |

| | | |
|---|---|---|
| | | regarding the $3,281,362.60 transaction in time for its effective use at trial. Defendants' request for further disclosure is DENIED. (Sheets, Jamie) (Entered: 08/31/2018) |
| 09/06/2018 | 365 | REPLY *to Defense Responses in Opposition to Government's Objection to Proposed Trial Date* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 362 Response filed by ROBERT THOMAS TAYLOR (CHUT, FRANK) (Entered: 09/06/2018) |
| 09/07/2018 | | Case as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, re: 361 Objection, 362 Response in Opposition, 365 Reply, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 09/07/2018) |
| 09/07/2018 | 366 | TRANSCRIPT of Motion Hearing as to SHANNON MICHELLE DRAKE for dates of 05/17/2018 before Judge William L. Osteen, Jr., Court Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 10/1/2018. Redacted Transcript Deadline set for 10/12/2018. Release of Transcript Restriction set for 12/10/2018. (Armstrong, Joe) (Entered: 09/07/2018) |
| 09/07/2018 | 367 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Status Conference for dates of 05/17/2018 before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email:joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 10/1/2018. Redacted Transcript Deadline set for 10/12/2018. Release of Transcript Restriction set for 12/10/2018. (Armstrong, Joe) (Entered: 09/07/2018) |
| 09/07/2018 | 368 | TRANSCRIPT of Sentencing Hearing as to DOUGLAS ALAN CORRIHER for dates of 08/24/2018 before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or through PACER. |

| | | |
|---|---|---|
| | | **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through the court reporter or PACER.**<br><br>Redaction Request due 10/1/2018. Redacted Transcript Deadline set for 10/12/2018. Release of Transcript Restriction set for 12/10/2018. (Armstrong, Joe) (Entered: 09/07/2018) |
| 09/10/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 9/10/2018. AUSA Frank Chut, Jr. and USDOJ Atty. Jeffrey McLellan present on behalf of the Government. Attorneys Claire Rauscher, Deborah Barbier, Wes Camden and James Bannister present on behalf of their respective clients. Defendants Shannon Drake and Ronald Earnest present; Court addressed with counsel the absence of Defendant Taylor. Court construed (Doc. 361 ) Government's Objection to the Proposed Trial Date, as a Motion to Continue; Court notes the objections of Defendants; For the reasons stated the Court grants a continuance of the trial in this matter to January 7, 2019; Pretrial Motions deadline extended to 9/20/2018; Responses due: 9/27/2018; Pretrial Motions Hearing to remain as previously scheduled: 10/9/2018 & 10/10/2018. (Written Order forthcoming) (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 09/10/2018) |
| 09/10/2018 | | Set/Reset Deadlines/Hearings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Jury Trial **reset** for 1/7/2019 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 09/10/2018) |
| 09/12/2018 | 369 | **ORDER** as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR signed by JUDGE WILLIAM L. OSTEEN, JR on 9/12/2018; that trial of this matter should be continued from August 14, 2018, to November 5, 2018. The court finds that the ends of justice served by taking such action outweigh the best interest of the public and Defendants in a speedy trial as set forth in 18 U.S.C. § 3161(h)(7)(A) and that the period of time from August 14, 2018, up to and including November 5, 2018, be and is hereby excluded from the provisions of 18 U.S.C. § 3161 et seq. With respect to the Government's request for a continuance from the November 5, 2018 trial date, this court further finds that the ends of justice served by continuing this matter from November 5, 2018, to January 7, 2019, outweigh the best interest of the public and Defendants in a speedy trial as set forth in 18 U.S.C. § 3161(h)(7)(A) and that the period of time from November 5, 2018, up to and including January 7, 2019, be and is hereby excluded from the provisions of 18 U.S.C. § 3161 et seq. In light of this continuance, all deadlines previously established at the August 3, 2018 status conference are hereby extended for one week as set out herein. A status conference and motions hearing will be held on October 9 and 10, 2018. (Sheets, Jamie) (Entered: 09/12/2018) |
| 09/20/2018 | 370 | NOTICE *of Intent to Offer Testimony of Bank President* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MONTAGUE, WILLIAM) (Entered: 09/20/2018) |
| 09/20/2018 | 371 | NOTICE *OF INTENT TO OFFER EXPERT TESTIMONY* by RONALD KEITH EARNEST (Attachments: # 1 Exhibit 1)(HOWARD, JOSHUA) (Entered: 09/20/2018) |

| | | |
|---|---|---|
| 09/20/2018 | 372 | MOTION for Disclosure *of Sentencing Documents* by SHANNON MICHELLE DRAKE. Response to Motion due by 10/11/2018 (RAUSCHER, CLAIRE) (Entered: 09/20/2018) |
| 09/20/2018 | 373 | MEMORANDUM by SHANNON MICHELLE DRAKE re 372 MOTION for Disclosure *of Sentencing Documents* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 09/20/2018) |
| 09/20/2018 | 374 | MOTION for Bill of Particulars by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 375 | MEMORANDUM by RONALD KEITH EARNEST re 374 MOTION for Bill of Particulars filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 376 | MOTION to Produce *GRAND JURY PRESENTATION REGARDING THE $3,281,362.60 TRANSACTION* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 377 | MEMORANDUM by RONALD KEITH EARNEST re 376 MOTION to Produce *GRAND JURY PRESENTATION REGARDING THE $3,281,362.60 TRANSACTION* filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 378 | MOTION to Dismiss *COUNT TWENTY-EIGHT OF THE THIRD SUPERSEDING INDICTMENT* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 379 | MEMORANDUM by RONALD KEITH EARNEST re 378 MOTION to Dismiss *COUNT TWENTY-EIGHT OF THE THIRD SUPERSEDING INDICTMENT* filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 380 | MOTION to Dismiss *THE THIRD SUPERSEDING INDICTMENT* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 381 | MEMORANDUM by RONALD KEITH EARNEST re 380 MOTION to Dismiss *THE THIRD SUPERSEDING INDICTMENT* filed by RONALD KEITH EARNEST (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 382 | MOTION to Dismiss *INDICTMENT* by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 383 | MEMORANDUM by RONALD KEITH EARNEST re 382 MOTION to Dismiss *INDICTMENT* filed by RONALD KEITH EARNEST (Attachments: # 1 Exhibit A, # 2 Exhibit B)(HOWARD, JOSHUA) (Entered: 09/20/2018) |
| 09/20/2018 | 384 | MOTION for Disclosure *of Sentencing Documents* by ROBERT THOMAS TAYLOR. Response to Motion due by 9/27/2018 (CAMDEN, WES) (Entered: 09/20/2018) |
| 09/20/2018 | 385 | MEMORANDUM by ROBERT THOMAS TAYLOR re 384 MOTION for Disclosure *of Sentencing Documents* filed by ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit A - Factoring Agreements, # 2 Exhibit B - Request for Advance, # 3 Exhibit C - March 2009 Request to Advance, # 4 Exhibit D. - Earnest email, # 5 Exhibit E - Pay Out Summaries)(CAMDEN, WES) (Entered: 09/20/2018) |
| 09/21/2018 | 386 | MOTION to Adopt 376 MOTION to Produce *GRAND JURY PRESENTATION REGARDING THE $3,281,362.60 TRANSACTION* filed by RONALD KEITH EARNEST, 374 MOTION for Bill of Particulars filed by RONALD KEITH EARNEST |

| | | |
|---|---|---|
| | | by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (RAUSCHER, CLAIRE) (Entered: 09/21/2018) |
| 09/21/2018 | 387 | MOTION for Extension of Time to File Response/Reply until October 3, 2018 by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (MCLELLAN, JEFFREY) (Entered: 09/21/2018) |
| 09/24/2018 | | Motion Submission as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 387 MOTION for Extension of Time to File Response/Reply until October 3, 2018, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 09/24/2018) |
| 09/24/2018 | 388 | SUPPLEMENT by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 387 MOTION for Extension of Time to File Response/Reply until October 3, 2018 (MCLELLAN, JEFFREY) (Entered: 09/24/2018) |
| 09/24/2018 | 389 | **ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR. on 9/24/2018. The Government's motion for extension (Doc. 387 ) is GRANTED and the Government is allowed up to and including October 3, 2018, within which to file its responses SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 09/24/2018) |
| 09/24/2018 | 390 | JOINT MOTION *to Continue Sentencing* by USA as to DOUGLAS ALAN CORRIHER. (MONTAGUE, WILLIAM) (Entered: 09/24/2018) |
| 09/25/2018 | | Motion Referred re: 390 JOINT MOTION to Continue Sentencing, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 09/25/2018) |
| 09/25/2018 | 391 | MOTION to Adopt *Defendant Earnest's Motion for Bill of Particulars* by ROBERT THOMAS TAYLOR. (CAMDEN, WES) (Entered: 09/25/2018) |
| 09/26/2018 | 392 | **ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR. on 9/26/2018. The parties' joint motion to continue, (Doc. 390 ), is GRANTED IN PART AND DENIED IN PART and the sentencing of Defendant Corriher is rescheduled to November 13, 2018, at 2:00 p.m. in Greensboro Courtroom 1 as to DOUGLAS ALAN CORRIHER (1). (Daniel, J) (Entered: 09/26/2018) |
| 10/03/2018 | 393 | RESPONSE in Opposition by USA as to RONALD KEITH EARNEST re 374 MOTION for Bill of Particulars Replies due by 10/17/2018 (CHUT, FRANK) (Entered: 10/03/2018) |
| 10/03/2018 | 394 | SEALED RESPONSE to Motion filed by USA, RONALD KEITH EARNEST as to RONALD KEITH EARNEST re 380 MOTION to Dismiss *THE THIRD SUPERSEDING INDICTMENT* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(CHUT, FRANK) (Entered: 10/03/2018) |
| 10/03/2018 | 395 | RESPONSE in Opposition by USA as to SHANNON MICHELLE DRAKE, ROBERT THOMAS TAYLOR re 372 MOTION for Disclosure *of Sentencing Documents* Replies due by 10/17/2018 (CHUT, FRANK) (Entered: 10/03/2018) |
| 10/03/2018 | 396 | RESPONSE in Opposition by USA as to RONALD KEITH EARNEST re 376 MOTION to Produce *GRAND JURY PRESENTATION REGARDING THE $3,281,362.60 TRANSACTION* Replies due by 10/17/2018 (Attachments: # 1 Exhibit)(CHUT, FRANK) (Entered: 10/03/2018) |
| 10/03/2018 | 397 | RESPONSE in Opposition by USA as to RONALD KEITH EARNEST re 378 MOTION to Dismiss *COUNT TWENTY-EIGHT OF THE THIRD SUPERSEDING INDICTMENT*, |

| | | |
|---|---|---|
| | | 382 MOTION to Dismiss *INDICTMENT* Replies due by 10/17/2018 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(CHUT, FRANK) (Entered: 10/03/2018) |
| 10/03/2018 | 398 | RESPONSE to Motion filed by USA as to SHANNON MICHELLE DRAKE re 386 MOTION to Adopt 376 MOTION to Produce *GRAND JURY PRESENTATION REGARDING THE $3,281,362.60 TRANSACTION* filed by RONALD KEITH EARNEST, 374 MOTION for Bill of Particulars filed by RONALD KEITH EARNEST (MCLELLAN, JEFFREY) (Entered: 10/03/2018) |
| 10/04/2018 | 399 | NOTICE *Senior FDIC Witness* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit)(MCLELLAN, JEFFREY) (Entered: 10/04/2018) |
| 10/05/2018 | 400 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Status Conference for dates of 09/10/2018 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 10/29/2018. Redacted Transcript Deadline set for 11/8/2018. Release of Transcript Restriction set for 1/7/2019. (Armstrong, Joe) (Entered: 10/05/2018) |
| 10/09/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Motions Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 10/9/2018. AUSA Frank Chut, USDOJ Atty. Jeffrey McLellan & USDOJ Atty. William Montague present on behalf of the Government. Attorneys Deborah Barbier, Joshua Howard, James Bannister, Caitlyn Poe, Wes Camden & Claire Rauscher appeared on behalf of their clients. Defendants Ernest, Taylor and Drake present. Court heard arguments from counsel as to Doc. #374 MOTION for Bill of Particulars filed by RONALD KEITH EARNEST, Doc. #376 MOTION to Produce Grand Jury Presentation Regarding the $3,281,362.60 Transaction filed by RONALD KEITH EARNEST, Doc. #378 MOTION to Dismiss Count Twenty-Eight of the Third Superseding Indictment filed by RONALD KEITH EARNEST, Doc. #380 MOTION to Dismiss the Third Superseding Indictment Based on Pre-Indictment Delay filed by RONALD KEITH EARNEST, Doc. #382 MOTION to Dismiss Indictment for Failure to State an Offense filed by RONALD KEITH EARNEST, Doc. #384 Motion for Disclosure of Sentencing Documents filed by ROBERT THOMAS TAYLOR. For the reasons stated from the bench the Court takes under advisement Doc. #374 MOTION for Bill of Particulars and Doc. #376 MOTION to Produce Grand Jury Presentation Regarding the $3,281,362.60 Transaction. Court denied Doc. #378 Motion to Dismiss Count Twenty-Eight. Court denied without prejudice Doc. #380 Motion to Dismiss Based on Pre-Indictment Delay. Court granted in part Doc. #384 Motion for Disclosure of Sentencing Documents and denied without prejudice the Motions for Discovery. (**A separate written order is forthcoming denying Doc. #382 Motion to Dismiss for Failure to State an Offense.) Disclosure of discovery materials due: 11/07/2018. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 10/10/2018) |

| | | |
|---|---|---|
| 10/09/2018 | | **ORAL ORDER** to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR issued by JUDGE WILLIAM L. OSTEEN, JR on 10/9/2018, that Doc. #374 MOTION for Bill of Particulars is taken under advisement; Doc. #376 MOTION to Produce Grand Jury Presentation Regarding the $3,281,362.60 Transaction is taken under advisement; Doc. #378 Motion to Dismiss Count Twenty-Eight denied; Doc. #380 Motion to Dismiss Based on Pre-Indictment Delay denied without prejudice; Doc. #384 Motion for Disclosure of Sentencing Documents granted in part and the Motions for Discovery are denied without prejudice. (See Minute Entry on 10/9/2018) (Welch, Kelly) (Entered: 10/10/2018) |
| 10/25/2018 | 401 | SEALED MEMORANDUM OPINION as to DOUGLAS ALAN CORRIHER signed by JUDGE WILLIAM L. OSTEEN, JR on 10/25/2018 as set out herein. (Sheets, Jamie) Modified on 10/25/2018 to include defendant's name (Welch, Kelly). (Entered: 10/25/2018) |
| 11/01/2018 | 402 | NOTICE *Supplemental RE FDIC Witness* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1)(MCLELLAN, JEFFREY) (Entered: 11/01/2018) |
| 11/02/2018 | 403 | **ORDER** as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), ROBERT THOMAS TAYLOR (4) signed by JUDGE WILLIAM L. OSTEEN, JR on 11/2/2018; that Defendant Earnest's Motion to Produce Grand Jury Presentation Regarding the $3,281,362.60 Transaction, (Doc. 376 ), in which Defendant Drake joined, (Doc. 386 ), is DENIED as MOOT. FURTHER that Defendant Earnest's Motion to Dismiss the Indictment for Failure to State an Offense, (Doc. 382 ), is DENIED. FURTHER that Defendant Earnest's Motion for a Bill of Particulars, (Doc. 374 ), in which Defendants Drake, (Doc. 386 ), and Taylor, (Doc. 391 ), joined, is DENIED WITHOUT PREJUDICE. (Sheets, Jamie) (Entered: 11/02/2018) |
| 11/08/2018 | 404 | MOTION to Continue Sentencing by DOUGLAS ALAN CORRIHER. Response to Motion due by 11/29/2018 (HEROY, J.) (Entered: 11/08/2018) |
| 11/08/2018 | | Motion Submission as to DOUGLAS ALAN CORRIHER re: 404 MOTION to Continue Sentencing, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 11/08/2018) |
| 11/08/2018 | 405 | **ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR. on 11/8/2018. The Defendant's motion to continue, (Doc. 404 ), is GRANTED and the sentencing of Defendant Corriher is rescheduled to November 20, 2018, at 9:30 a.m. in Greensboro Courtroom 1 as to DOUGLAS ALAN CORRIHER (1). (Daniel, J) (Entered: 11/08/2018) |
| 11/09/2018 | 406 | NOTICE *of Correction* by ROBERT THOMAS TAYLOR (CAMDEN, WES) (Entered: 11/09/2018) |
| 11/09/2018 | 407 | Additional Attachments to Main Document re 406 Notice *Exhibit A - Summary Charts* (CAMDEN, WES) (Entered: 11/09/2018) |
| 11/14/2018 | | **TEXT ORDER** as to ROBERT THOMAS TAYLOR (4) - Defendant Taylor has filed a Notice of Correction, (Doc. 406), advising the court that he has not received summary charts as described in the court's Order entered on November 2, 2018, (see id. at 1-2; see also Doc. 403 at 13). The court's Order accurately describes the court's understanding of the Government's representations during a hearing on October 9, 2018. (See Doc. 403 at 13.) The court relied on those representations in reaching a decision. Defendant Taylor requests no action from the court in his Notice, (see Doc. 406), and the court does not intend to act sua sponte on the Notice. If counsel believes some action by the court is necessary, then a motion is required. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 11/14/2018.] (Cable, Frances) (Entered: 11/14/2018) |

| | | |
|---|---|---|
| 11/15/2018 | 408 | (SEALED) POSITION PAPER RE SENTENCING FACTORS - NOTICE TO THE COURT AND OPPOSING COUNSEL ONLY as to DOUGLAS ALAN CORRIHER (Attachments: # 1 A, # 2 B, # 3 C, # 4 D, # 5 E, # 6 F, # 7 G)(CHUT, FRANK) (Entered: 11/15/2018) |
| 11/16/2018 | 409 | SEALED Attachments to Main Document to 408 SEALED Position Paper Re Sentencing Factors - NOTICE TO THE COURT AND OPPOSING COUNSEL ONLY *Amended Attachment G* (CHUT, FRANK) (Entered: 11/16/2018) |
| 11/17/2018 | 410 | TRANSCRIPT of Motions Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for date of 10/09/2018 before Judge William L. Osteen, Jr., Court Reporter J. Armstrong, Telephone: 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 12/13/2018. Redacted Transcript Deadline set for 12/21/2018. Release of Transcript Restriction set for 2/19/2019. (Armstrong, Joe) (Entered: 11/17/2018) |
| 11/20/2018 | 411 | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Sentencing hearing as to DOUGLAS ALAN CORRIHER held on 11/20/2018. AUSA Frank Chut, Jr. and USDOJ Attorneys Jeffrey McLellan & William Montague appeared on behalf of the Government. Attorneys Edward Hinson, Jr., & Alexander Heroy appeared on behalf of the Defendant. Defendant present on bond. For the reasons stated on the record the Court grants 352 Sealed Motion; Defendant allowed to remain out on pretrial release on the same terms and conditions as were previously imposed. Defendant ordered to report to the United States Marshal Service or to the institution designated by the Bureau of Prisons on or before April 19, 2019 at 12:00 p.m. (See Exhibit/Witness List) (Court Reporter Jane Calhoun.) (Welch, Kelly) (Entered: 11/20/2018) |
| 11/20/2018 | | SEALED ORAL ORDER granting 352 SEALED Motion as to DOUGLAS ALAN CORRIHER (1), issued by JUDGE WILLIAM L. OSTEEN, JR on 11/20/2018. (See Minute Entry on 11/20/2018) (Welch, Kelly) (Entered: 11/20/2018) |
| 11/26/2018 | 412 | TRANSCRIPT of Proceedings as to DOUGLAS ALAN CORRIHER Sentencing for dates of November 20, 2018 before Judge Osteen, Court ReporterCalhoun, Telephone number 336-332-6033. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.** |

| | | |
|---|---|---|
| | | Redaction Request due 12/20/2018. Redacted Transcript Deadline set for 12/31/2018. Release of Transcript Restriction set for 2/28/2019. (Calhoun, J.) (Entered: 11/26/2018) |
| 11/28/2018 | 413 | NOTICE OF HEARING as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Final Pretrial Conference set for 12/28/2018 10:00 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 11/28/2018) |
| 11/29/2018 | 414 | MOTION for Leave *to be Excused* by ROBERT THOMAS TAYLOR. (Attachments: # 1 Text of Proposed Order Granting Motion)(POE, CAITLIN) (Entered: 11/29/2018) |
| 11/30/2018 | | Motion Submission as to ROBERT THOMAS TAYLOR re 414 MOTION for Leave *to be Excused* to JUDGE WILLIAM L. OSTEEN, JR. (Marsh, Keah) (Entered: 11/30/2018) |
| 12/07/2018 | 415 | NOTICE *Intent to Offer Testimony of Revenue Officer* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Appendix Appendix A, # 2 Appendix Appendix B)(MCLELLAN, JEFFREY) (Entered: 12/07/2018) |
| 12/11/2018 | 416 | **ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR on 12/11/2018, that Defendant's motion (Doc. 414 ) is GRANTED and that attorney Poe is excused from attendance at the final Pretrial Conference in the above-referenced matter to be held on December 28, 2018 as to ROBERT THOMAS TAYLOR (4). (Taylor, Abby) (Entered: 12/11/2018) |
| 12/18/2018 | 417 | **JUDGMENT** as to DOUGLAS ALAN CORRIHER (1). Count(s) 30ss, Fifteen (15) months imprisonment; three (3) years supervised release; $7,556.882.38 restitution; $100.00 special assessment. Count(s) 1-30, 1s-32s, 1ss-29ss, 31ss-32ss are dismissed. The defendant shall surrender to the U.S. Marshal for this district or to the designated institution by the BOP at 12:00 noon on 4/19/2019. Signed by JUDGE WILLIAM L. OSTEEN, JR. on 12/18/2018. (Daniel, J) (Entered: 12/18/2018) |
| 12/18/2018 | 418 | SEALED Statement of Reasons as to DOUGLAS ALAN CORRIHER (1). (Daniel, J) (Entered: 12/18/2018) |
| 12/21/2018 | 419 | Objection by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (HOWARD, JOSHUA) (Entered: 12/21/2018) |
| 12/26/2018 | 420 | SEALED MOTION by USA, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 1/16/2019 (CHUT, FRANK) (Entered: 12/26/2018) |
| 12/26/2018 | 421 | SEALED DOCUMENT by USA, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Attachment A, # 2 Attachment B, # 3 Attachment C)(CHUT, FRANK) (Entered: 12/26/2018) |
| 12/26/2018 | 422 | Sealed EXHIBITS re 421 SEALED Document, *Attachment C* by Defendants RONALD KEITH EARNEST, SHANNON MICHELLE DRAKE, ROBERT THOMAS TAYLOR, Plaintiff USA (CHUT, FRANK) (Entered: 12/26/2018) |
| 12/26/2018 | 423 | MOTION for Disclosure *of Sentencing Documents* by SHANNON MICHELLE DRAKE. Response to Motion due by 1/16/2019 (RAUSCHER, CLAIRE) (Entered: 12/26/2018) |
| 12/26/2018 | 424 | MEMORANDUM by SHANNON MICHELLE DRAKE re 423 MOTION for Disclosure *of Sentencing Documents* filed by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 12/26/2018) |

| | | |
|---|---|---|
| 12/27/2018 | 425 | TRIAL BRIEF by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Appendix, # 2 Appendix) (MCLELLAN, JEFFREY) (Entered: 12/27/2018) |
| 12/27/2018 | 426 | MOTION for Discovery by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (CHUT, FRANK) (Entered: 12/27/2018) |
| 12/27/2018 | 427 | Additional Attachments to Main Document re 426 MOTION for Discovery (CHUT, FRANK) (Entered: 12/27/2018) |
| 12/27/2018 | 428 | MOTION to Exclude *Expert Testimony by IRS Officer Teresa Driver* by SHANNON MICHELLE DRAKE. Response to Motion due by 1/17/2019 (RAUSCHER, CLAIRE) (Entered: 12/27/2018) |
| 12/28/2018 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1:FINAL PRETRIAL CONFERENCE as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 12/28/2018. AUSA Frank Chut, USDOJ Atty. Jeffrey McLellan & USDOJ Atty. William Montague present on behalf of the Government. Attorneys Claire Rauscher, Joshua Howard, Deborah Barbier, James Bannister & Wes Camden appeared on behalf of their clients. Defendants Ernest & Taylor present; Defendant Drake attended via tele-conference. Court addressed its preferences with the parties with respect to jury selection and trial proceedings scheduled to commence on 1/07/2019. [ETT: 3-5 weeks]; Court heard arguments from counsel and provided its preliminary findings as stated on the record as to the following motions: 256 , 258 , 260 , 310 , 312 , 313 , 314 , 330 , 419 , 420 , 423 , 426 & 428 . Court denied as not ripe (Doc. 312 ) Motion in Limine to Preclude Statement that Shannon Drake "Should Have Known" About Criminal Activity; In light of documents that have been provided to the Government, Court denied as moot (Doc. 426 ) Motion to Compel Reciprocal Discovery. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 01/03/2019) |
| 01/02/2019 | 429 | Joint MOTION for Disclosure by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (Attachments: # 1 Text of Proposed Order) (HOWARD, JOSHUA) (Entered: 01/02/2019) |
| 01/02/2019 | 430 | MEMORANDUM by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 429 Joint MOTION for Disclosure filed by RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, SHANNON MICHELLE DRAKE (HOWARD, JOSHUA) (Entered: 01/02/2019) |
| 01/03/2019 | 431 | Proposed Voir Dire by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 01/03/2019) |
| 01/03/2019 | 432 | Proposed Jury Instructions by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 01/03/2019) |
| 01/03/2019 | 433 | Proposed Voir Dire by ROBERT THOMAS TAYLOR (CAMDEN, WES) (Entered: 01/03/2019) |
| 01/03/2019 | 434 | MOTION to Exclude *or Limit Government Expert Testimony* by ROBERT THOMAS TAYLOR. (CAMDEN, WES) (Entered: 01/03/2019) |
| 01/03/2019 | 435 | MEMORANDUM by ROBERT THOMAS TAYLOR re 434 MOTION to Exclude *or Limit Government Expert Testimony* filed by ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit A- Global Labor Account Statement, # 2 Exhibit B - Compensation Management Inc. Account Statement)(CAMDEN, WES) (Entered: 01/03/2019) |

| | | |
|---|---|---|
| 01/03/2019 | 436 | MOTION to Exclude *Statements and Testimony Regarding Circular Lending* by ROBERT THOMAS TAYLOR. (CAMDEN, WES) (Entered: 01/03/2019) |
| 01/03/2019 | 437 | MEMORANDUM by ROBERT THOMAS TAYLOR re 436 MOTION to Exclude *Statements and Testimony Regarding Circular Lending* filed by ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit A - November 9, 2018 Letter, # 2 Exhibit B - April 2009 Account Statement for CMI x9862, # 3 Exhibit C - April 2009 Account Statement for Global Labor x7591, # 4 Exhibit D - April 2009 Account Statement for CMI x7614, # 5 Exhibit E - Bank Collections Report for Green Ideas 4/17/09, # 6 Exhibit F - Bank Collections Report for Brooks Labor 4/17/09)(CAMDEN, WES) (Entered: 01/03/2019) |
| 01/03/2019 | 438 | MOTION to Adopt 437 Memorandum,, filed by ROBERT THOMAS TAYLOR, 436 MOTION to Exclude *Statements and Testimony Regarding Circular Lending* filed by ROBERT THOMAS TAYLOR by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (RAUSCHER, CLAIRE) (Entered: 01/03/2019) |
| 01/03/2019 | 439 | MOTION to Adopt 434 MOTION to Exclude *or Limit Government Expert Testimony* filed by ROBERT THOMAS TAYLOR, 435 Memorandum, filed by ROBERT THOMAS TAYLOR by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (RAUSCHER, CLAIRE) (Entered: 01/03/2019) |
| 01/04/2019 | 440 | MOTION to Adopt *Docket Nos. 434 and 435* by RONALD KEITH EARNEST. (HOWARD, JOSHUA) (Entered: 01/04/2019) |
| 01/04/2019 | 441 | WITNESS LIST by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (MONTAGUE, WILLIAM) (Entered: 01/04/2019) |
| 01/04/2019 | 442 | MOTION Preclude Advice of Counsel Claims by USA as to RONALD KEITH EARNEST. (MCLELLAN, JEFFREY) (Entered: 01/04/2019) |
| 01/06/2019 | 443 | NOTICE *Filing Redacted Indictment* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Appendix Redacted Indictment)(MCLELLAN, JEFFREY) (Entered: 01/06/2019) |
| 01/06/2019 | 444 | WITNESS LIST by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (RAUSCHER, CLAIRE) (Entered: 01/06/2019) |
| 01/06/2019 | 445 | NOTICE *POTENTIAL CONFLICT DEFENSE REPRESENTATION* by USA as to SHANNON MICHELLE DRAKE (MCLELLAN, JEFFREY) (Entered: 01/06/2019) |
| 01/06/2019 | 446 | RESPONSE in Opposition by USA as to SHANNON MICHELLE DRAKE, ROBERT THOMAS TAYLOR re 438 MOTION to Adopt 437 Memorandum,, filed by ROBERT THOMAS TAYLOR, 436 MOTION to Exclude *Statements and Testimony Regarding Circular Lending* filed by ROBERT THOMAS TAYLOR , 436 MOTION to Exclude *Statements and Testimony Regarding Circular Lending* (MONTAGUE, WILLIAM) (Entered: 01/06/2019) |
| 01/07/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR. in GSO-1: Voir Dire held on 1/7/2019 as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen ORourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, |

| | | |
|---|---|---|
| | | Ernest & Taylor present. (Court Reporter Joe Armstrong.) (Engle, Anita) (Entered: 01/07/2019) |
| 01/07/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR. in GSO-1: Jury Selection as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/7/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Ernest & Taylor present on bond. Defendant Drake sworn and examined by the Court regarding 445 Governments Notice of Potential Conflict. Court found Defendant Drake competent and capable of waiving any potential conflict of interest and her rights under the Sixth Amendment with respect to conflict free counsel, is aware of the consequences of her waiver and her waiver is knowing and voluntary. (61) jurors present and sworn; (12) jurors and (4) alternate jurors selected;. Attorney Rauscher moved to exclude witnesses from the courtroom-GRANTED. Trial set to continue 1/8/2019 at 9:30 a.m. (Court Reporter Joe Armstrong.) (Engle, Anita) (Entered: 01/07/2019) |
| 01/07/2019 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Jury Trial set for 1/8/2019 at 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Engle, Anita) (Entered: 01/07/2019) |
| 01/08/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR in GSO1: Jury Trial (Day 2) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/8/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Ernest & Taylor present on bond. (16) Jurors present and sworn. Opening statements made. Government presented evidence (see witness/exhibit list). Jury Trial to continue 1/9/2019 at 9:30 a.m. (Court Reporter Joe Armstrong.) (Engle, Anita) (Entered: 01/08/2019) |
| 01/08/2019 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Jury Trial set for 1/9/2019 at 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Engle, Anita) (Entered: 01/08/2019) |
| 01/09/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR: Jury Trial as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/9/2019, continued from 1/8/2019; Sixteen (16) jurors present and previously sworn; Government continued to present evidence (see witness/exhibit); Jury trial to continue at 9:30 AM on 1/10/2019. (AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague appeared on behalf of the USA; Attorney(s) Claire Rauscher and Allen O'Rourke appeared on behalf of Defendant SHANNON MICHELLE DRAKE; Attorney(s) Deborah Barbier and Joshua Howard appeared on behalf of Defendant RONALD KEITH EARNEST; Attorney(s) Wes Camden, Caitlin Poe, and James Bannister appeared on behalf of Defendant ROBERT THOMAS TAYLOR; Court Reporter Joseph Armstrong) (Kemp, Donita) (Entered: 01/09/2019) |
| 01/09/2019 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR: Jury Trial to continue at 09:30 AM on 1/10/2019 in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Kemp, Donita) (Entered: 01/09/2019) |

| | | |
|---|---|---|
| 01/10/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR:JURY TRIAL(Day 4) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/10/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Ernest & Taylor present on bond. (16) Jurors present and sworn. Government presented evidence (see witness/exhibit list). Jury Trial to continue 1/11/2019 at 9:00 a.m. (Court Reporter Joseph Armstrong.) (Winchester, Robin) (Entered: 01/10/2019) |
| 01/10/2019 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Jury Trial to continue at 9:00 a.m. on 1/11/2019 in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR.. (Winchester, Robin) (Entered: 01/11/2019) |
| 01/11/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR. JURY TRIAL (Day 5) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/11/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Ernest & Taylor present on bond. (16) Jurors present and sworn. Voir Dire hearing held. Government presented evidence (see witness/exhibit list). Jury Trial to continue 1/14/2019 at 10:00 a.m. (Court Reporter Joseph Armstrong.) (Winchester, Robin) (Entered: 01/11/2019) |
| 01/11/2019 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Jury Trial to continue at 10:00 a.m. on 1/14/2019 in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Winchester, Robin) (Entered: 01/11/2019) |
| 01/14/2019 | 447 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, ROBERT THOMAS TAYLOR Motions Hearing Excerpt (Re: Pre-Indictment Delay) for dates of 03/08/2018 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 2/7/2019. Redacted Transcript Deadline set for 2/19/2019. Release of Transcript Restriction set for 4/18/2019. (Armstrong, Joe) (Entered: 01/14/2019) |
| 01/14/2019 | 448 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Pretrial Conference for dates of 12/28/2018 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | |
|---|---|---|
| | | **NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 2/7/2019. Redacted Transcript Deadline set for 2/19/2019. Release of Transcript Restriction set for 4/18/2019. (Armstrong, Joe) (Entered: 01/14/2019) |
| 01/14/2019 | 449 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Trial Testimony (Direct Examination of Douglas A. Corriher) for dates of 01/11/2019 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 2/7/2019. Redacted Transcript Deadline set for 2/19/2019. Release of Transcript Restriction set for 4/18/2019. (Armstrong, Joe) (Entered: 01/14/2019) |
| 01/14/2019 | 450 | MEMORANDUM *IN SUPPORT OF INTRODUCING EVIDENCE AT TRIAL ON ADVICE OF COUNSEL* by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 01/14/2019) |
| 01/14/2019 | 451 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Opening statement by Mr. Chut) for dates of 01/08/2019 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 2/7/2019. Redacted Transcript Deadline set for 2/19/2019. Release of Transcript Restriction set for 4/18/2019. (Armstrong, Joe) (Entered: 01/14/2019) |
| 01/14/2019 | 452 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Opening Statement by Mr. Camden) for dates of 01/08/2019 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court |

| | | |
|---|---|---|
| | | public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 2/7/2019. Redacted Transcript Deadline set for 2/19/2019. Release of Transcript Restriction set for 4/18/2019. (Armstrong, Joe) (Entered: 01/14/2019) |
| 01/14/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR:JURY TRIAL (Day 6) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/14/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Ernest & Taylor present on bond. (16) Jurors present and sworn. Government presented evidence (see witness/exhibit list). Jury Trial to continue 1/15/2019 at 9:30 a.m. (Court Reporter Joseph Armstrong.) (Winchester, Robin) (Entered: 01/14/2019) |
| 01/14/2019 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Jury Trial to continue at 9:30 a.m. on 1/15/2019 in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Winchester, Robin) Modified on 1/15/2019 to correct courtroom # (Winchester, Robin). (Entered: 01/14/2019) |
| 01/14/2019 | 453 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Trial Testimony (Direct, Continued, of Douglas A. Corriher) for dates of 01/14/2019 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 2/7/2019. Redacted Transcript Deadline set for 2/19/2019. Release of Transcript Restriction set for 4/18/2019. (Armstrong, Joe) (Entered: 01/14/2019) |
| 01/15/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR.JURY TRIAL (Day 7) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/15/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Ernest & Taylor present on bond. (16) Jurors present and sworn. Government |

| | | |
|---|---|---|
| | | presented evidence (see witness/exhibit list). Jury Trial to continue 1/16/2019 09:30 a.m. (Court Reporter Joseph Armstrong.) (Winchester, Robin) (Entered: 01/15/2019) |
| 01/15/2019 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Jury Trial to continue at 9:30 a.m.on 1/16/2019 in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Winchester, Robin) Modified on 1/16/2019 to include date (Winchester, Robin). (Entered: 01/15/2019) |
| 01/16/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR:JURY TRIAL (Day 8) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/16/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Ernest & Taylor present on bond. (16) Jurors present and sworn. Government presented evidence (see witness/exhibit list). Jury Trial to continue 1/17/2019 at 09:30 a.m.in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR.(Court Reporter Joseph Armstrong.) (Winchester, Robin) (Entered: 01/16/2019) |
| 01/16/2019 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Jury Trial to continue at 9:30 a.m. 1/17/2019 in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Winchester, Robin) (Entered: 01/16/2019) |
| 01/17/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR:JURY TRIAL (Day 9) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/17/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Ernest & Taylor present on bond. (16) Jurors present and sworn. Government presented evidence (see witness/exhibit list). Jury Trial to continue 1/22/2018 at 08:30 a.m. in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. Jurors to report at 9:30 a.m.(Court Reporter Joseph Armstrong.) (Winchester, Robin) (Entered: 01/17/2019) |
| 01/17/2019 | | Set Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Jury Trial to continue at 8:30 a.m. 1/22/2019 in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Winchester, Robin) (Entered: 01/17/2019) |
| 01/18/2019 | 454 | TRIAL MEMO *Supplemental Brief Re: Tax Loss* by RONALD KEITH EARNEST (Attachments: # 1 Appendix 1 - Prior Filing, # 2 Appendix 2 - Trial Exhibit)(HOWARD, JOSHUA) (Entered: 01/18/2019) |
| 01/20/2019 | 455 | MOTION in Limine *Preclude Improper Questioning & Argument* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (MCLELLAN, JEFFREY) (Entered: 01/20/2019) |
| 01/21/2019 | 456 | RESPONSE in Opposition by USA as to RONALD KEITH EARNEST re 310 MOTION in Limine *BY DEFENDANT EARNEST TO EXCLUDE ANY REFERENCE OR EVIDENCE OF HARRISON TAX LOSS* (MCLELLAN, JEFFREY) (Entered: 01/21/2019) |
| 01/22/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: JURY TRIAL (Day 10) as to SHANNON MICHELLE DRAKE, RONALD KEITH |

|  |  |  |
|---|---|---|
|  |  | EARNEST, ROBERT THOMAS TAYLOR held on 1/22/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Earnest & Taylor present on bond. (16) Jurors present. Government continued presenting evidence (See Exhibit/Witness list). Trial continued to 1/23/2019. Counsel to report at 9:00 a.m. Jurors to report at 9:30 a.m. Jury Trial set for 1/23/2019 09:00 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) Modified on 1/30/2019 (Welch, Kelly). (Entered: 01/22/2019) |
| 01/23/2019 | 457 | RESPONSE *Opposition to Oral Motions* by USA as to ROBERT THOMAS TAYLOR (MCLELLAN, JEFFREY) (Entered: 01/23/2019) |
| 01/23/2019 | 458 | MOTION to Dismiss by SHANNON MICHELLE DRAKE. Response to Motion due by 2/13/2019 (Attachments: # 1 Exhibit A)(RAUSCHER, CLAIRE) (Entered: 01/23/2019) |
| 01/23/2019 |  | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: JURY TRIAL (Day 11) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/23/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Earnest & Taylor present on bond. (16) Jurors present. Government continued presenting evidence (See Exhibit/Witness list). Trial continued to 1/24/2019. Counsel to report at 8:45 a.m. Jurors reporting at 9:30 a.m. Jury Trial set for 1/24/2019 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 01/23/2019) |
| 01/24/2019 |  | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR:JURY TRIAL (Day 12) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/24/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Earnest & Taylor present on bond. (16) Jurors present. Government continued presenting evidence (See Exhibit/Witness list). Trial continued to 1/25/2019. Counsel to report at 9:00 a.m. Jurors reporting at 9:30 a.m. Jury Trial set for 1/25/2019 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 01/24/2019) |
| 01/24/2019 | 459 | SUPPLEMENT *to Motion in Limine Regarding Circular Lending* by ROBERT THOMAS TAYLOR re 437 Memorandum,, 436 MOTION to Exclude *Statements and Testimony Regarding Circular Lending* (POE, CAITLIN) (Entered: 01/24/2019) |
| 01/24/2019 | 460 | MOTION to Adopt *and Join Taylor Supplemtnal Motion in Limine (Doc. No. 459)* by SHANNON MICHELLE DRAKE. (RAUSCHER, CLAIRE) (Entered: 01/24/2019) |
| 01/25/2019 |  | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: JURY TRIAL Day 13 as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/25/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Earnest & Taylor present on bond. (16) Jurors present. Government continued presenting evidence (See Exhibit/Witness list). Objections to Government's Exhibits offered pursuant to 902(11) certification due: 1/27/2019 at 2:00 |

| | | |
|---|---|---|
| | | p.m. Trial continued to 1/28/2019. Counsel to report at 9:00 a.m. Jurors reporting at 9:30 a.m. Jury Trial set for 1/28/2019 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 01/25/2019) |
| 01/26/2019 | 461 | Objection *to Government Exhibits Admitted pursuant to 902(11) Certificates on 1/25/2019* by SHANNON MICHELLE DRAKE (RAUSCHER, CLAIRE) (Entered: 01/26/2019) |
| 01/26/2019 | 462 | Objection *to Government's Exhibits* by RONALD KEITH EARNEST (BARBIER, DEBORAH) (Entered: 01/26/2019) |
| 01/27/2019 | 463 | MOTION to Exclude *Government's Exhibits* by ROBERT THOMAS TAYLOR. (CAMDEN, WES) (Entered: 01/27/2019) |
| 01/28/2019 | 464 | RESPONSE/REPLY by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Appendix) (MCLELLAN, JEFFREY) (Entered: 01/28/2019) |
| 01/28/2019 | 465 | MOTION to Exclude *Testimony* by ROBERT THOMAS TAYLOR. (Attachments: # 1 Exhibit City of Cleveland v. Cleveland Electric Illuminating Company, # 2 Exhibit In re: E. I. Du Pont De Nemours and Company C-8 Personal Injury Litigation)(CAMDEN, WES) (Entered: 01/28/2019) |
| 01/28/2019 | 466 | MOTION for Acquittal *Pursuant to Rule 29 and Renewed Motion to Dismiss for Unconstitutional Delay and Incorporated Memorandum* by Caitlin Poe. by ROBERT THOMAS TAYLOR. Responses due by 2/19/2019 (POE, CAITLIN) (Entered: 01/28/2019) |
| 01/28/2019 | 467 | MOTION FOR JUDGMENT OF ACQUITTAL ON ALL COUNTS by RONALD KEITH EARNEST. (Attachments: # 1 Text of Proposed Order)(HOWARD, JOSHUA) (Entered: 01/28/2019) |
| 01/28/2019 | 468 | MEMORANDUM by RONALD KEITH EARNEST re 467 MOTION FOR JUDGMENT OF ACQUITTAL ON ALL COUNTS filed by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 01/28/2019) |
| 01/28/2019 | 469 | MOTION for Acquittal by SHANNON MICHELLE DRAKE. Responses due by 2/19/2019. (RAUSCHER, CLAIRE) (Entered: 01/28/2019) |
| 01/28/2019 | 470 | MEMORANDUM by SHANNON MICHELLE DRAKE re 469 MOTION for Acquittal. (RAUSCHER, CLAIRE) (Entered: 01/28/2019) |
| 01/28/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: JURY TRIAL (Day 14) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/28/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Earnest & Taylor present on bond. (16) Jurors present. Government continued presenting evidence; Subject to the reconciliation of the admission of the Government's evidence, Government rests; Rule 29 Motions filed by DRAKE, EARNEST, TAYLOR; Response Briefs due 1/29/2019 at 9:00 a.m.; Court will hear arguments from counsel with respect to its specific issues raised as to the Rule 29 Briefs; (See Exhibit/Witness list). Trial continued to 1/29/2019. Counsel to report at 10:00 a.m. Jurors reporting at 2:00 p.m. Jury Trial set for 1/29/2019 10:00 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 01/28/2019) |

| | | |
|---|---|---|
| 01/28/2019 | | Set/Reset Deadlines/Hearings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Jury Trial set for 1/29/2019 10:00 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 01/28/2019) |
| 01/29/2019 | 471 | RESPONSE *on Multiplicity* by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (MCLELLAN, JEFFREY) (Entered: 01/29/2019) |
| 01/29/2019 | 472 | RESPONSE in Opposition by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 466 MOTION for Acquittal *Pursuant to Rule 29 and Renewed Motion to Dismiss for Unconstitutional Delay and Incorporated Memorandum* by Caitlin Poe. (MCLELLAN, JEFFREY) (Entered: 01/29/2019) |
| 01/29/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: JURY TRIAL (Day 15) as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/29/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Claire Rauscher, Allen O'Rourke, Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Drake, Earnest & Taylor present on bond. (15) Jurors present. (Juror #3 - excused for cause and replaced with alternate juror A-1.) Court heard arguments from counsel; Motion to Dismiss for undue delay taken under advisement; Multiplicity issue taken under advisement; EARNEST - Rule 29 Motion denied as to Counts 1-14 & 16-29, Count 30 taken under advisement; TAYLOR - Rule 29 Motion denied as to Counts 1-14 & 16-28, Count 29 taken under advisement; DRAKE - Rule 29 Motion granted; For the reasons stated on the record all Counts as to Defendant Drake are dismissed. Government's case reopened for the final admission of all evidence; Defendant Taylor presented evidence; Taylor rests; Defendant Taylor moved to renew Rule 29 Motion; Defendant Earnest presented evidence; Earnest to continue with evidence on 1/30/2019. (See Exhibit/Witness list). Jury Trial continued to 1/30/2019 09:30 PM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) Modified on 1/31/2019 to include renewal of Mr. Taylor's Rule 29 Motion (Welch, Kelly). (Entered: 01/29/2019) |
| 01/30/2019 | 473 | Proposed Jury Instructions by RONALD KEITH EARNEST (HOWARD, JOSHUA) (Entered: 01/30/2019) |
| 01/30/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: JURY TRIAL (Day 16) as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/30/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Earnest & Taylor present on bond. (15) Jurors present. Defendant Earnest continued presenting evidence; (See Exhibit/Witness list). Jury Trial continued to 1/31/2019 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 01/30/2019) |
| 01/30/2019 | 474 | Preliminary Draft Final Instructions to the Jury as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Welch, Kelly) (Entered: 01/30/2019) |
| 01/31/2019 | 475 | Proposed Jury Instructions by ROBERT THOMAS TAYLOR (POE, CAITLIN) (Entered: 01/31/2019) |
| 01/31/2019 | 476 | RESPONSE by USA re: Court's Proposed Jury Instructions (Welch, Kelly) (Entered: |

| | | |
|---|---|---|
| | | 01/31/2019) |
| 01/31/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1:JURY TRIAL (Day 17) as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 1/31/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Earnest & Taylor present on bond. (15) Jurors present. Defendant Earnest continued presenting evidence; Defendant Earnest rests; Earnests Rule 29 Motion renewed; Defendant Taylors Renewed Motion to Dismiss for Pre-Indictment Delay (Earnest joined) remains under advisement; Court heard arguments from counsel with respect to the dismissal of Counts 29 & 30; As to TAYLOR Court grants the dismissal of Count 29. As to EARNEST Court denied the dismissal of Count 30; Charge Conference held. (See Exhibit/Witness list). Jurors to report at 9:30 a.m. Counsel to appear at 9:00 a.m. Jury Trial continued to 2/1/2019 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 01/31/2019) |
| 01/31/2019 | 477 | Second Draft Final Instructions to the Jury as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Welch, Kelly) (Entered: 01/31/2019) |
| 02/01/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: JURY TRIAL (Day 18) as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 2/1/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Earnest & Taylor present on bond. (15) Jurors present. Closing arguments held; Jury Trial continued to 2/4/2019 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 02/01/2019) |
| 02/04/2019 | 478 | **JUDGMENT** signed by JUDGE WILLIAM L. OSTEEN, JR. on 2/4/2019. Defendant SHANNON MICHELLE DRAKE's motion for judgment of acquittal is GRANTED. The June 28, 2016 indictment, November 29, 2016, June 27, 2017 and August 29, 2017 superseding indictments all returned by the grand jury against Defendant DRAKE are DISMISSED. FURTHER, the Defendant is acquitted, discharged, and any bond exonerated. (Daniel, J) (Entered: 02/04/2019) |
| 02/04/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: JURY TRIAL (Day 19) as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 2/4/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Earnest & Taylor present on bond. (14) Jurors present; Alternate Juror - A3 excused for cause; Court dismissed alternate jurors A2 & A4; Court instructs the jury; Jury retired at 10:55 a.m. to begin deliberations; Questions received from the Jury; Jury Trial continued to 2/5/2019 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 02/04/2019) |
| 02/05/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Jury Trial (Day 20) as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 2/5/2019. AUSA Frank Chut and USDOJ Attorneys Jeffrey McLellan and William Montague present on behalf of the Government. Attorneys Joshua Howard, Deborah Barbier, James Bannister, Wes Camden and Caitlin Poe appeared on behalf of their clients. Defendants Earnest & Taylor present on bond. (12) Jurors present. Jury |

| | | |
|---|---|---|
| | | resumed with deliberations from February 4, 2019; Jury returned with questions; Jury returned with a Verdict of Not Guilty at 5:00 p.m.; Jury answered not guilty as to all counts for each of Defendants Ronald Keith Earnest & Robert Thomas Taylor; Jury Discharged; Trial concluded. (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 02/05/2019) |
| 02/05/2019 | 479 | JURY VERDICT as to RONALD KEITH EARNEST (Welch, Kelly) (Entered: 02/05/2019) |
| 02/05/2019 | 480 | JURY VERDICT as to ROBERT THOMAS TAYLOR (Welch, Kelly) (Entered: 02/05/2019) |
| 02/05/2019 | 481 | Questions received from the Jury as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Welch, Kelly) (Entered: 02/05/2019) |
| 02/05/2019 | 482 | FINAL INSTRUCTIONS to the Jury as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Welch, Kelly) (Entered: 02/05/2019) |
| 02/07/2019 | 483 | **JUDGMENT OF ACQUITTAL** as to RONALD KEITH EARNEST (3) signed by JUDGE WILLIAM L. OSTEEN, JR. on 2/7/2019. (Daniel, J) (Entered: 02/07/2019) |
| 02/07/2019 | 484 | **JUDGMENT OF ACQUITTAL** as to ROBERT THOMAS TAYLOR (4) signed by JUDGE WILLIAM L. OSTEEN, JR. on 2/7/2019. (Daniel, J) (Entered: 02/07/2019) |
| 03/06/2019 | 485 | MOTION for Attorney Fees *Pursuant to Hyde Amendment* by SHANNON MICHELLE DRAKE. Response to Motion due by 3/27/2019 (Attachments: # 1 Affidavit Exhibit A-Shannon Drake)(RAUSCHER, CLAIRE) (Entered: 03/06/2019) |
| 03/27/2019 | 486 | MOTION for Extension of Time to File Response/Reply as to 485 MOTION for Attorney Fees *Pursuant to Hyde Amendment* by USA as to SHANNON MICHELLE DRAKE. (CHUT, FRANK) (Entered: 03/27/2019) |
| 03/27/2019 | 487 | TRANSCRIPT of Ruling on Rule 29 Motions as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR Ruling for dates of 01/29/2019 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034, Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 4/22/2019. Redacted Transcript Deadline set for 5/2/2019. Release of Transcript Restriction set for 6/28/2019. (Armstrong, Joe) (Entered: 03/27/2019) |
| 03/28/2019 | 488 | **ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR. on 3/28/2019. The Government's motion for extension (Doc. 486 ) is GRANTED. FURTHER that Defendant Drake shall have ten (10) days from the date of this Order to file a memorandum of law in support of her application for attorneys' fees. The Government shall have thirty (30) days after Defendant's memorandum of law is filed within which to file its response as to SHANNON MICHELLE DRAKE (2). (Daniel, J) (Entered: 03/28/2019) |

| | | |
|---|---|---|
| 04/02/2019 | 489 | APPLICATION for Writ of Continuing Garnishment by USA as to DOUGLAS ALAN CORRIHER and COUNTYBANK. (CHILDS, JOAN) (Entered: 04/02/2019) |
| 04/02/2019 | 490 | APPLICATION for Writ of Continuing Garnishment (Northwestern Mutual Life Ins. Co., Garnishee) by USA as to DOUGLAS ALAN CORRIHER Notice of Attorney Appearance (CHILDS, JOAN) (Entered: 04/02/2019) |
| 04/02/2019 | 491 | APPLICATION for Writ of Continuing Garnishment (Raymond James Financial, Garnishee) by USA as to DOUGLAS ALAN CORRIHER Notice of Attorney Appearance (CHILDS, JOAN) (Entered: 04/02/2019) |
| 04/02/2019 | 492 | APPLICATION for Writ of Continuing Garnishment (TDAmeritrade, Inc., Garnishee) by USA as to DOUGLAS ALAN CORRIHER Notice of Attorney Appearance (CHILDS, JOAN) (Entered: 04/02/2019) |
| 04/05/2019 | | Case as to DOUGLAS ALAN CORRIHER referred to MAG/JUDGE JOE L. WEBSTER re: 489 , 490 , 491 and 492 Application for Writ of Continuing Garnishment. (Daniel, J) (Entered: 04/05/2019) |
| 04/08/2019 | 493 | MEMORANDUM in Support by SHANNON MICHELLE DRAKE re: 485 MOTION for Attorney Fees Pursuant to the Hyde Amendment. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit B-1, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I)(RAUSCHER, CLAIRE) Modified document title on 4/9/2019. (Daniel, J) (Entered: 04/08/2019) |
| 04/08/2019 | 494 | Sealed EXHIBITS re 493 MOTION for Attorney Fees *Memorandum in Support of Application for Attorney Fees Pursuant to the Hyde Amendment Exhibit C and F* by Defendants SHANNON MICHELLE DRAKE, SHANNON MICHELLE DRAKE, Plaintiff USA (Attachments: # 1 Exhibit F)(RAUSCHER, CLAIRE) (Entered: 04/08/2019) |
| 04/08/2019 | | Set/Reset Response Deadline in case as to SHANNON MICHELLE DRAKE re: 493 Memorandum and 485 MOTION for Attorney Fees Pursuant to Hyde Amendment. Response due by 5/8/2019. (Daniel, J) (Entered: 04/09/2019) |
| 04/16/2019 | 495 | Writ of Continuing Garnishment as to DOUGLAS ALAN CORRIHER and COUNTYBANK. (Daniel, J) (Entered: 04/17/2019) |
| 04/16/2019 | 496 | NOTICE to Defendant Debtor as to DOUGLAS ALAN CORRIHER and COUNTYBANK. (Daniel, J) (Entered: 04/17/2019) |
| 04/16/2019 | 497 | Writ of Continuing Garnishment as to DOUGLAS ALAN CORRIHER and THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY. (Daniel, J) (Entered: 04/17/2019) |
| 04/16/2019 | 498 | NOTICE to Defendant Debtor as to DOUGLAS ALAN CORRIHER and THE NORTHWESTERN LIFE INSURANCE COMPANY. (Daniel, J) (Entered: 04/17/2019) |
| 04/16/2019 | 499 | Writ of Continuing Garnishment as to DOUGLAS ALAN CORRIHER and RAYMOND JAMES FINANCIAL, INC. (Daniel, J) (Entered: 04/17/2019) |
| 04/16/2019 | 500 | NOTICE to Defendant Debtor as to DOUGLAS ALAN CORRIHER and RAYMOND JAMES FINANCIAL, INC. (Daniel, J) (Entered: 04/17/2019) |
| 04/16/2019 | 501 | Writ of Continuing Garnishment as to DOUGLAS ALAN CORRIHER and TDAMERITRADE, INC. (Daniel, J) (Entered: 04/17/2019) |
| 04/16/2019 | 502 | NOTICE to Defendant Debtor as to DOUGLAS ALAN CORRIHER and TDAMERITRADE, INC. (Daniel, J) (Entered: 04/17/2019) |

| | | |
|---|---|---|
| 04/18/2019 | 503 | SEALED MOTION by USA, DOUGLAS ALAN CORRIHER as to DOUGLAS ALAN CORRIHER. Response to Motion due by 5/9/2019 (CHUT, FRANK) (Entered: 04/18/2019) |
| 04/19/2019 | | Motion Submission as to DOUGLAS ALAN CORRIHER re: 503 SEALED MOTION to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 04/19/2019) |
| 04/25/2019 | 504 | Declaration of Proof of Service on County Bank, filed by USA. *Writ of Continuing Garnishment served on County Bank, Garnishee, on April 19, 2019*. (CHILDS, JOAN) (Entered: 04/25/2019) |
| 04/25/2019 | 505 | ANSWER to Writ of Continuing Garnishment by COUNTYBANK as to DOUGLAS ALAN CORRIHER (1). (Attachments: # 1 Envelope - Front and Back) (Daniel, J) (Entered: 04/25/2019) |
| 04/26/2019 | 506 | Declaration of Proof of Service on The Northwestern Mutual Life Insurance Group, filed by USA. *Writ of Continuing Garnishment served on Garnishee, The Northwestern Mutual Life Insurance Group, on 4/22/2019*. (CHILDS, JOAN) (Entered: 04/26/2019) |
| 04/26/2019 | 507 | Declaration of Proof of Service on TDAmeritrade, Inc., filed by USA. *Writ of Continuing Garnishment served on Garnishee, TDAmeritrade, Inc., on April 23, 2019*. (CHILDS, JOAN) (Entered: 04/26/2019) |
| 04/26/2019 | 508 | Declaration of Proof of Service on Raymond James Financial, Inc., Garnishee, filed by USA. *Writ of Continuing Garnishment served on Garnishee, Raymond James Financial, Inc., on April 22, 2019*. (CHILDS, JOAN) (Entered: 04/26/2019) |
| 04/29/2019 | 509 | ANSWER to Writ of Continuing Garnishment by RAYMOND JAMES FINANCIAL, INC. as to DOUGLAS ALAN CORRIHER (1). (Daniel, J) (Entered: 04/29/2019) |
| 04/29/2019 | 510 | Second MOTION for Extension of Time to File Response/Reply until 05/15/2019by USA as to SHANNON MICHELLE DRAKE. (CHUT, FRANK) (Entered: 04/29/2019) |
| 04/29/2019 | 511 | ANSWER to Writ of Continuing Garnishment by THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY as to DOUGLAS ALAN CORRIHER (1). (Daniel, J) (Entered: 04/29/2019) |
| 05/01/2019 | 512 | **ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR. on 5/1/2019. The Government's motion for extension (Doc. 510 ) is GRANTED and the Government shall have up to and including May 15, 2019, within which to file its response as to SHANNON MICHELLE DRAKE (2). (Daniel, J) (Entered: 05/01/2019) |
| 05/01/2019 | 513 | SEALED RESPONSE to Motion filed by USA, DOUGLAS ALAN CORRIHER as to DOUGLAS ALAN CORRIHER re 503 SEALED MOTION (Attachments: # 1 Exhibit A)(HINSON, EDWARD) (Entered: 05/01/2019) |
| 05/02/2019 | | **TEXT ORDER** as to DOUGLAS ALAN CORRIHER: The Government has filed a motion, (Doc. 503), and Defendant has responded, (Doc. 513). This court finds oral argument would aid the court in resolving the motion. Because this is a post-conviction argument, the court is of the opinion that Defendant's presence is not required. If Defendant agrees and desires to waive his personal appearance, the court will permit counsel to make arrangements with the Bureau of Prisons for Defendant to listen by telephone conference if Defendant desires to do so. The parties are directed to confer with each other and counsel for Defendant shall consult with Defendant to arrange a time for the hearing. This argument will likely last less than an hour. The parties shall consult with the case manager, Kelly Welch, or Keah Marsh, to arrange a hearing time and date depending upon Defendant's decision to personally attend, attend by telephone, or to waive appearance entirely. Entered by JUDGE WILLIAM L. OSTEEN, JR on 5/2/2019. (Marsh, Keah) (Entered: 05/02/2019) |

| | | |
|---|---|---|
| 05/14/2019 | 514 | MOTION for Discovery *Regarding Application for Attorney's Fees and Expenses Pursuant to the Hyde Amendment, Title VI, Section 617, PUB. L. 105-119, 111 STAT.2519; Title 18, U.S.C. Section 3006(A)* by SHANNON MICHELLE DRAKE. (RAUSCHER, CLAIRE) (Entered: 05/14/2019) |
| 05/14/2019 | | Telephonic/Electronic Notice on 5/14/2019 to U.S. Attorney's Office, Defense Counsel, USMS & USPO: Oral Argument Hearing as to DOUGLAS ALAN CORRIHER set for 5/20/2019 03:00 PM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 05/14/2019) |
| 05/15/2019 | 515 | SEALED RESPONSE to Motion filed by USA, SHANNON MICHELLE DRAKE as to SHANNON MICHELLE DRAKE re 485 MOTION for Attorney Fees *Pursuant to Hyde Amendment* (Attachments: # 1 Exhibit A, # 2 Exhibit AA, # 3 Exhibit AB, # 4 Exhibit AC, # 5 Exhibit AD, # 6 Exhibit AE, # 7 Exhibit AF, # 8 Exhibit AG, # 9 Exhibit AH, # 10 Exhibit AI, # 11 Exhibit AJ, # 12 Exhibit AK, # 13 Exhibit AM, # 14 Exhibit AN, # 15 Exhibit B, # 16 Exhibit C, # 17 Exhibit D, # 18 Exhibit E, # 19 Exhibit F, # 20 Exhibit G, # 21 Exhibit H, # 22 Exhibit I, # 23 Exhibit J, # 24 Exhibit K, # 25 Exhibit L, # 26 Exhibit M, # 27 Exhibit N, # 28 Exhibit O, # 29 Exhibit P, # 30 Exhibit Q, # 31 Exhibit R, # 32 Exhibit S, # 33 Exhibit T, # 34 Exhibit U, # 35 Exhibit V, # 36 Exhibit W, # 37 Exhibit X, # 38 Exhibit Y, # 39 Exhibit Z)(CHUT, FRANK) (Entered: 05/15/2019) |
| 05/16/2019 | 516 | SEALED Attachments to Main Document to 515 SEALED Response to Motion,,, *Exhibit AL* (CHUT, FRANK) (Entered: 05/16/2019) |
| 05/16/2019 | 517 | Declaration of Proof of Service on Counsel for Defendant, Douglas Alan Corriher, filed by USA. *Writs of Continuing Garnishment for (1) Countybank, (2) The Northwestern Mutual Life Insurance Company, (3) TDAmeritrade, Inc., and (4) Raymond James Financial, Inc., served on Edward T. Hinson, Jr. and J. Alexander Heroy, Counsel for Defendant, Douglas Alan Corriher, on May 13, 2019*. (CHILDS, JOAN) (Entered: 05/16/2019) |
| 05/20/2019 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Motion Hearing as to DOUGLAS ALAN CORRIHER held on 5/20/2019 re 503 SEALED MOTION filed by USA. AUSA Frank Chut & AUSA Joan Childs present on behalf of the Government. Attorney Edward Hinson present on behalf of the Defendant. Defendant waived his appearance. Court heard arguments from counsel. Court takes 503 Sealed Motion under advisement. (Written Order forthcoming) (Court Reporter Joseph Armstrong.) (Welch, Kelly) (Entered: 05/20/2019) |
| 05/24/2019 | 518 | ANSWER to Writ of Garnishment by TD AMERITRADE, INC. and DOUGLAS ALAN CORRIHER (1). (Attachments: # 1 Envelope - Front and Back) (Daniel, J) (Entered: 05/24/2019) |
| 05/27/2019 | 519 | REPLY, by SHANNON MICHELLE DRAKE, TO RESPONSE to 493 MOTION for Attorney Fees *Memorandum in Support of Application for Attorney Fees Pursuant to the Hyde Amendment* (RAUSCHER, CLAIRE) (Entered: 05/27/2019) |
| 05/28/2019 | | Motion Submission as to SHANNON MICHELLE DRAKE re: 485 MOTION for Attorney Fees *Pursuant to Hyde Amendment, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 05/28/2019)* |
| 05/30/2019 | 520 | RESPONSE in Opposition by USA as to SHANNON MICHELLE DRAKE re 514 MOTION for Discovery *Regarding Application for Attorney's Fees and Expenses Pursuant to the Hyde Amendment, Title VI, Section 617, PUB. L. 105-119, 111 STAT.2519; Title 18, U.S.C. Section 3006(A)* Replies due by 6/13/2019 (CHUT, FRANK) (Entered: 05/30/2019) |

| | | |
|---|---|---|
| 06/07/2019 | 521 | REPLY, by SHANNON MICHELLE DRAKE, TO RESPONSE to 514 MOTION for Discovery *Regarding Application for Attorney's Fees and Expenses Pursuant to the Hyde Amendment, Title VI, Section 617, PUB. L. 105-119, 111 STAT.2519; Title 18, U.S.C. Section 3006(A)* (RAUSCHER, CLAIRE) (Entered: 06/07/2019) |
| 06/07/2019 | 522 | Sealed EXHIBITS re 521 Reply to Response, *to Motion for Discovery Regarding Application for Attorney's Fees and Expenses Pursuant to the Hyde Amendment* by Defendants SHANNON MICHELLE DRAKE, SHANNON MICHELLE DRAKE, Plaintiff USA (Attachments: # 1 Exhibit A -Part 1, # 2 Exhibit A -Part 2, # 3 Exhibit A -Part 3, # 4 Exhibit A -Part 4, # 5 Exhibit A -Part 5, # 6 Exhibit A -Part 6, # 7 Exhibit A -Part 7)(RAUSCHER, CLAIRE) (Entered: 06/07/2019) |
| 06/10/2019 | 523 | SEALED ORDER granting 503 SEALED Motion as to DOUGLAS ALAN CORRIHER (1). Signed by JUDGE WILLIAM L. OSTEEN, JR. on 6/10/2019. (Daniel, J) (Entered: 06/10/2019) |
| 06/13/2019 | | Motion Submission as to SHANNON MICHELLE DRAKE re 514 MOTION for Discovery *Regarding Application for Attorney's Fees and Expenses Pursuant to the Hyde Amendment, Title VI, Section 617, PUB. L. 105-119, 111 STAT.2519; Title 18, U.S.C. Section 3006(A), to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 06/13/2019)* |
| 06/25/2019 | 524 | Consent MOTION for Garnishment *(Countybank, Garnishee)* by USA as to DOUGLAS ALAN CORRIHER. (Attachments: # 1 Text of Proposed Order)(CHILDS, JOAN) (Entered: 06/25/2019) |
| 06/26/2019 | 525 | MOTION for Garnishment *(Raymond James Financial, Inc., Garnishee)* by USA as to DOUGLAS ALAN CORRIHER. (Attachments: # 1 Text of Proposed Order)(CHILDS, JOAN) (Entered: 06/26/2019) |
| 06/26/2019 | | Motions Referred: RE: 524 Consent MOTION for Garnishment (Countybank, Garnishee), 525 MOTION for Garnishment (Raymond James Financial, Inc., Garnishee), to MAG/JUDGE JOE L. WEBSTER (Welch, Kelly) (Entered: 06/26/2019) |
| 06/27/2019 | 526 | **CONSENT ORDER OF GARNISHMENT** as to DOUGLAS ALAN CORRIHER (1) and COUNTYBANK. Signed by MAG/JUDGE JOE L. WEBSTER on 6/27/2019. (Daniel, J) (Entered: 06/27/2019) |
| 07/01/2019 | 527 | **ORDER OF GARNISHMENT** as to DOUGLAS ALAN CORRIHER (1) and RAYMOND JAMES FINANCIAL, INC. Signed by MAG/JUDGE JOE L. WEBSTER on 7/1/2019. (Daniel, J) (Entered: 07/01/2019) |
| 07/03/2019 | 528 | MOTION to Quash *Writ of Continuing Garnishment (TD Ameritrade, Garnishee)* by USA as to DOUGLAS ALAN CORRIHER. Response to Motion due by 7/24/2019 (Attachments: # 1 Text of Proposed Order)(CHILDS, JOAN) (Entered: 07/03/2019) |
| 07/05/2019 | | Motion Referred: RE: 528 MOTION to Quash *Writ of Continuing Garnishment (TD Ameritrade, Garnishee), to MAG/JUDGE JOE L. WEBSTER (Welch, Kelly) (Entered: 07/05/2019)* |
| 07/10/2019 | 529 | MOTION for Garnishment *(Northwestern Mutual Life Insurance Company, Garnishee)* by USA as to DOUGLAS ALAN CORRIHER. (Attachments: # 1 Text of Proposed Order)(CHILDS, JOAN) (Entered: 07/10/2019) |
| 07/11/2019 | 530 | **ORDER to Quash Writ of Continuing Garnishment** as to DOUGLAS ALAN CORRIHER (1) and TD AMERITRADE, INC. Signed by MAG/JUDGE JOE L. WEBSTER on 7/11/2019. (Daniel, J) (Entered: 07/11/2019) |
| 07/12/2019 | | Motion Referred: RE: 529 MOTION for Order of Garnishment (Northwestern Mutual |

| | | |
|---|---|---|
| | | Life Insurance Company, Garnishee), to MAG/JUDGE JOE L. WEBSTER (Welch, Kelly) (Entered: 07/12/2019) |
| 07/15/2019 | 531 | **ORDER OF GARNISHMENT** as to DOUGLAS ALAN CORRIHER (1) and THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY signed by MAG/JUDGE JOE L. WEBSTER on 7/15/2019. The Garnishee pay to Plaintiff, the balance of in the form of (1) Northwestern Mutual Policy 5618196 owned by Douglas A. Corriher with a net surrender value of $12,427.85 as of April 25, 2019, (2) Northwestern Mutual Policy 20160327 owned by Douglas A. Corriher with a net surrender value of $28,451.22 as of April 25, 2019, and (3) Northwestern Mutual Policy 20160332 owned by Douglas A. Corriher with a net surrender value of $810.25 as of April 25, 2019. (Sheets, Jamie) (Entered: 07/15/2019) |
| 01/24/2020 | 532 | Exhibit Receipt - Local Rule 79.4 acknowledged by the USA for Trial Exhibits for Jury Trial held 1/8/2019-2/5/2019 as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3) and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 01/24/2020) |
| 07/14/2020 | 533 | NOTICE *of Appearance of Counsel* by FOX ROTHSCHILD, LLP. as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (BERKELHAMMER, JONATHAN) (Entered: 07/14/2020) |
| 07/14/2020 | 534 | NOTICE *of Appearance of Counsel* by FOX ROTHSCHILD, LLP. as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (DAGGER, KELLY) (Entered: 07/14/2020) |
| 07/14/2020 | 535 | MOTION for Disclosure *of Grand Jury Matters and Sealed Court Filings* by FOX ROTHSCHILD, LLP., SMITH MOORE LEATHERWOOD, L.L.P. as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 8/4/2020 (Attachments: # 1 Exhibit 1- Consent Confidentiality Order, # 2 Exhibit 2- Complaint, GrandSouth Bank v. Fox Rothschild LLP, # 3 Exhibit 3- Complaint, Drake v. Fox Rothschild LLP, # 4 Exhibit 4- Complaint, Taylor v. Fox Rothschild LLP, # 5 Exhibit 5- Complaint, Earnest v. Fox Rothschild LLP, # 6 Exhibit 6- Amended Complaint, Drake v. Fox Rothschild LLP, # 7 Exhibit 7- Earnests Responses to Fox Rothschilds Interrogatories, # 8 Exhibit 8- Taylors Responses to Fox Rothschilds Interrogatories, # 9 Exhibit 9- Fox Rothschilds Requests for Production to Earnest, # 10 Exhibit 10- Drakes Responses to Fox Rothschilds to Discovery Requests, # 11 Exhibit 11- Earnests Responses to Fox Rothschilds Requests for Production, # 12 Exhibit 12- Taylors Responses to Fox Rothschilds Requests for Production, # 13 Text of Proposed Order)(DAGGER, KELLY) (Entered: 07/14/2020) |
| 07/14/2020 | 536 | MEMORANDUM by FOX ROTHSCHILD, LLP., SMITH MOORE LEATHERWOOD, L.L.P. as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 535 MOTION for Disclosure *of Grand Jury Matters and Sealed Court Filings* filed by SMITH MOORE LEATHERWOOD, L.L.P., FOX ROTHSCHILD, LLP. (DAGGER, KELLY) (Entered: 07/14/2020) |
| 09/02/2020 | | Motion Submission as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re: 535 MOTION for Disclosure of Grand Jury Matters and Sealed Court Filings, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 09/02/2020) |
| 05/03/2021 | 537 | SEALED MEMORANDUM OPINION AND ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 5/3/2021. Drake's Application for Attorneys' Fees and Expenses pursuant to the Hyde Amendment (Doc. 485 ) is DENIED. FURTHER that Drake's Motion for Discovery (Doc. 514 ) is DENIED. FURTHER that the Government's Response (Doc. 515 ) will remain sealed, but the Government will file an unsealed, but |

| | | |
|---|---|---|
| | | redacted version, within ten (10) days of the entry of this Memorandum Opinion and Order. FURTHER that this Memorandum Opinion and Order is FILED UNDER SEAL and the parties shall file, within ten (10) days of the filing of this Opinion, a joint report identifying the information in the Opinion, if any, they contend should be redacted, along with an explanation of the basis for their proposed redactions and a draft of this Opinion with those proposed redactions. Because information contained herein will likely be considered confidential information by the parties, this Opinion shall remain sealed until the parties have had an opportunity to submit their requested redactions. (Daniel, J) (Entered: 05/03/2021) |
| 05/04/2021 | 538 | AMENDED SEALED MEMORANDUM OPINION AND ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 5/4/2021. Drake's Application for Attorneys' Fees and Expenses pursuant to the Hyde Amendment (Doc. 485 ) is DENIED. FURTHER that Drake's Motion for Discovery (Doc. 514 ) is DENIED. FURTHER that the Government's Response (Doc. 515 ) will remain sealed, but the Government will file an unsealed, but redacted version, within ten (10) days of the entry of this Amended Memorandum Opinion and Order. FURTHER that this Amended Memorandum Opinion and Order is FILED UNDER SEAL and the parties shall file, within ten (10) days of the filing of this Opinion, a joint report identifying the information in the Opinion, if any, they contend should be redacted, along with an explanation of the basis for their proposed redactions and a draft of this Opinion with those proposed redactions. Because information contained herein will likely be considered confidential information by the parties, this Opinion shall remain sealed until the parties have had an opportunity to submit their requested redactions. (Daniel, J) (Entered: 05/04/2021) |
| 05/13/2021 | 539 | MEMORANDUM by FOX ROTHSCHILD, LLP., SMITH MOORE LEATHERWOOD, L.L.P. as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 535 MOTION for Disclosure *of Grand Jury Matters and Sealed Court Filings* filed by SMITH MOORE LEATHERWOOD, L.L.P., FOX ROTHSCHILD, LLP. *Supplemental Brief in Support of Motion to Disclose Grand Jury Matters and Sealed Court Filings* (DAGGER, KELLY) (Entered: 05/13/2021) |
| 05/13/2021 | 540 | NOTICE *Regarding Amended Sealed Memorandum Opinion (DE 538)* by FOX ROTHSCHILD, LLP., SMITH MOORE LEATHERWOOD, L.L.P. as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (DAGGER, KELLY) (Entered: 05/13/2021) |
| 05/14/2021 | 541 | CONSENT SEALED MOTION by SHANNON MICHELLE DRAKE and USA re: 538 AMENDED SEALED MEMORANDUM OPINION AND ORDER. (Attachments: # 1 Exhibit One)(RAUSCHER, CLAIRE) Modified event type on 5/14/2021 to a Motion. (Daniel, J) (Entered: 05/14/2021) |
| 05/14/2021 | 542 | RESPONSE to Motion *Redacted Response Pursuant to Court Order* filed by USA as to SHANNON MICHELLE DRAKE re 514 MOTION for Discovery *Regarding Application for Attorney's Fees and Expenses Pursuant to the Hyde Amendment, Title VI, Section 617, PUB. L. 105-119, 111 STAT.2519; Title 18, U.S.C. Section 3006(A)* Replies due by 5/28/2021 (CHUT, FRANK) (Main Document 542 replaced on 5/14/2021 with corrected PDF document) (Garland, Leah) (Entered: 05/14/2021) |
| 05/17/2021 | 543 | NOTICE OF APPEAL by SHANNON MICHELLE DRAKE re 538 SEALED Order,,,, Filing fee $ 505, receipt number 0418-3049719. (RAUSCHER, CLAIRE) (Entered: 05/17/2021) |
| 05/18/2021 | 544 | Electronic Transmission of Notice of Appeal and Docket Sheet as to SHANNON MICHELLE DRAKE to US Court of Appeals re: 543 Notice of Appeal. (Daniel, J) (Entered: 05/18/2021) |

| | | |
|---|---|---|
| 05/19/2021 | 545 | NOTICE of Docketing Appeal from USCA as to SHANNON MICHELLE DRAKE re: 543 Notice of Appeal. USCA Case Mgr: Jeffrey Neal; USCA Case Number 21-4242. (Daniel, J) (Entered: 05/19/2021) |
| 05/19/2021 | 546 | **ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR. on 5/19/2021. Plaintiff's Consent Motion on Redactions of Court Order (Doc. 541 ) is GRANTED IN PART and the Amended Memorandum Opinion and Order (Doc. 538 ) shall be filed by the court in redacted form as set forth in Document 541 -1 except the court's signature shall not be redacted. FURTHER that this court's Memorandum Opinion and Order (Doc. 537 ) filed on May 3, 2021, and Amended Memorandum Opinion and Order (Doc. 538 ) filed on May 4, 2021, shall remain FILED UNDER SEAL as to SHANNON MICHELLE DRAKE (2). (Daniel, J) (Entered: 05/19/2021) |
| 05/19/2021 | 547 | REDACTED VERSION of 538 AMENDED SEALED MEMORANDUM OPINION AND ORDER as to SHANNON MICHELLE DRAKE (2). (Daniel, J) (Entered: 05/19/2021) |
| 06/24/2021 | 548 | REQUEST *by Movants for Hearing and Expedited Consideration* by FOX ROTHSCHILD, LLP., SMITH MOORE LEATHERWOOD, L.L.P. as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit 1. Form Order Granting Motion to Compel, # 2 Exhibit 2. Order Granting Motion to Compel)(DAGGER, KELLY) Modified on 6/24/2021 to edit event to reflect as a motion (Welch, Kelly). (Entered: 06/24/2021) |
| 06/24/2021 | | Motion Submission as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re: 548 MOTION/REQUEST for Hearing, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 06/24/2021) |
| 06/29/2021 | 549 | NOTICE OF HEARING as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re: 535 MOVANTS' MOTION for Disclosure of Grand Jury Matters and Sealed Court Filings. Motion Hearing set for 7/14/2021 02:00 PM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) Modified on 7/1/2021 - NEF regenerated to Attorney S. Luke Largess (Welch, Kelly). (Entered: 06/29/2021) |
| 06/29/2021 | 550 | NOTICE of Attorney Appearance by attorney STEPHEN LUKE LARGESS on behalf of SHANNON MICHELLE DRAKE (LARGESS, STEPHEN) (Entered: 06/29/2021) |
| 06/29/2021 | | Attorney update in case as to SHANNON MICHELLE DRAKE. (See Doc. 550 Notice of Appearance of Attorney STEPHEN LUKE LARGESS) (Welch, Kelly) (Entered: 06/30/2021) |
| 07/01/2021 | | **TEXT ORDER** as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), ROBERT THOMAS TAYLOR (4) - The moving parties have filed a Motion to Disclose Grand Jury Matters and Sealed Court Filings. (Doc. 535.) The Government appears to have standing to object to the motion to disclose. If the Government wishes to object, it is directed to file an objection with this court within seven days of the issuance of this Order. If the Government does not object to the motion, it is to file notice of that fact with this court within that same period. Even if the Government has no objection to the requested disclosure, the court requests, but does not require, that the Government appear at the hearing in the event a dispute arises. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 07/01/2021.] (Cable, Frances) (Entered: 07/01/2021) |
| 07/07/2021 | 551 | RESPONSE to Motion filed by USA as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 535 MOTION for Disclosure *of* |

| | | |
|---|---|---|
| | | *Grand Jury Matters and Sealed Court Filings* (HAIRSTON, SANDRA) (Entered: 07/07/2021) |
| 07/08/2021 | | **TEXT ORDER** - Defendants Shannon Michelle Drake (2), Ronald Keith Earnest (3), and Robert Thomas Taylor (4) were served with the motion for disclosure of certain materials filed by Smith Moore Leatherwood, LLP, and Fox Rothschild, LLP. (Doc. 535 at 8.) No response was filed by Defendants expressing an objection to the requested relief. Notwithstanding the absence of a response, in a recent pleading filed by Movants, Defendants request oral argument. (Doc. 548 at 1.) If Defendants wish to be heard during argument, they are directed to file a pleading forthwith outlining their respective positions and any supporting authority. If not earlier filed, any such a pleading shall be filed on or before 12:00 p.m. on Monday, July 12, 2021. [Issued by JUDGE WILLIAM L. OSTEEN, JR., on 07/08/2021.] (Cable, Frances) (Entered: 07/08/2021) |
| 07/08/2021 | 552 | NOTICE of Attorney Appearance by attorney STEPHEN LUKE LARGESS on behalf of SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (LARGESS, STEPHEN) (Entered: 07/08/2021) |
| 07/08/2021 | 553 | RESPONSE to Motion filed by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re 535 MOTION for Disclosure *of Grand Jury Matters and Sealed Court Filings*, 548 MOTION for Hearing Replies due by 7/22/2021 (Attachments: # 1 Exhibit State Court Order Compelling Discovery, # 2 Text of Proposed Order)(LARGESS, STEPHEN) (Entered: 07/08/2021) |
| 07/08/2021 | | Case as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, re: 553 Response to Motion, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 07/08/2021) |
| 07/12/2021 | 554 | NOTICE of Supplemental Authority filed by SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re: 535 MOTION for Disclosure of Grand Jury Matters and Sealed Court Filings. (Attachments: # 1 Exhibit Unpublished decision)(LARGESS, STEPHEN) Modified on 7/13/2021 to edit title of pleading (Welch, Kelly). (Entered: 07/12/2021) |
| 07/14/2021 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Motion Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 7/14/2021. Appearing at this proceeding were the following: Attorneys Jonathan Berkelhammer, S. Luke Largess, John Simmons, Acting United States Attorney Sandra J. Hairston, AUSA Stephen Inman and AUSA Lynne Klauer. Court heard arguments from Counsel with respect to 535 Motion to Disclose Grand Jury Matters and Sealed Court Filings filed by SMITH MOORE LEATHERWOOD, LLP, and FOX ROTHSCHILD, LLP. For the reasons stated on the record the Court directs the Clerk to provide access to Attorneys Jonathan Berkelhammer, Kelly Dagger, Luke Largess and John Simmons to view the sealed documents filed on CM/ECF in Case No. 1:16CR205 as to Defendants Drake(2), Earnest(3) and Taylor(4) with the exception of the sealed versions of the Indictments filed. Copying, downloading or further disclosure of those documents is not permitted. The parties are permitted to take handwritten notes for purposes of a further hearing in this matter. Parties are directed to first provide the United States notice of specific documents and their need for the documents on or before August 5, 2021. This case is set for a further hearing on August 20, 2021 at 2:00 p.m. Upon Attorney John Simmons filing a notice of appearance on behalf of Defendants Ronald Keith Earnest and Robert Thomas Taylor in compliance with Local Rule 83.1(d)(1), he will be authorized to view the sealed documents. Court ordered that all sealed documents filed in this matter remain under seal. (Court Reporter Lori Russell.) (Welch, Kelly) (Entered: 07/15/2021) |
| 07/14/2021 | | Set/Reset Deadlines/Hearings as to SHANNON MICHELLE DRAKE, RONALD |

| | | |
|---|---|---|
| | | KEITH EARNEST, ROBERT THOMAS TAYLOR: Status Conference set for 8/20/2021 02:00 PM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (See Minute Entry on 7/14/2021) (Welch, Kelly) (Entered: 07/26/2021) |
| 07/16/2021 | 555 | NOTICE *Of Special Appearance by John Simmons* by RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (LARGESS, STEPHEN) (Entered: 07/16/2021) |
| 07/16/2021 | 556 | NOTICE of Special Appearance of Counsel John S. Simmons on behalf of Defendants RONALD KEITH EARNEST and ROBERT THOMAS TAYLOR ( Filing fee $ 25 receipt number 0418-3090468.) (SIMMONS, JOHN) (Entered: 07/16/2021) |
| 07/16/2021 | | Attorney update in case as to RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. (Attorney John S. Simmons added) (Welch, Kelly) (Entered: 07/16/2021) |
| 07/19/2021 | 557 | MOTION *to allow Drake's South Carolina counsel limited access to ECF filings upon admission* by SHANNON MICHELLE DRAKE as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR. Response to Motion due by 8/9/2021 (LARGESS, STEPHEN) (Entered: 07/19/2021) |
| 07/20/2021 | | Motion Submission as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR re: 557 MOTION to allow Drake's South Carolina counsel limited access to ECF filings upon admission, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 07/20/2021) |
| 07/20/2021 | 558 | NOTICE *Of Special Appearance of Marghretta Shisko* by SHANNON MICHELLE DRAKE (LARGESS, STEPHEN) (Entered: 07/20/2021) |
| 07/20/2021 | 559 | NOTICE *Of Special Appearance by John White* by SHANNON MICHELLE DRAKE (LARGESS, STEPHEN) (Entered: 07/20/2021) |
| 07/21/2021 | 560 | **ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR. on 7/21/2021. Defendant Drake's motion to allow her South Carolina counsel to review materials (Doc. 557 ) is GRANTED and John B. White, Jr., and Marghretta H. Shisko from the firm of Harrison White, P.C. in Spartanburg, South Carolina, are authorized the same limited access to the ECF filings as other counsel who have appeared in both this case and the South Carolina case. They must, however, first enter their appearance in this matter and register as users of the ECF for this District and pay all applicable fees as to as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 07/21/2021) |
| 07/21/2021 | 561 | NOTICE of Special Appearance of Attorney JOHN B. WHITE, JR., on behalf of SHANNON MICHELLE DRAKE ( Filing fee $ 25 receipt number 0418-3094513.) (WHITE, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 562 | NOTICE of Special Appearance of Attorney MARGHRETTA H. SHICKO on behalf of SHANNON MICHELLE DRAKE ( Filing fee $ 25 receipt number 0418-3094521.) (SHISKO, MARGHRETTA) (Entered: 07/21/2021) |
| 07/27/2021 | 563 | TRANSCRIPT of Proceedings as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, re: Motion Hearing, for the date of 07/14/2021 before Judge William L. Osteen, Jr., Court Reporter Lori Russell, Telephone number 336-734-2547. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically** |

| | | |
|---|---|---|
| | | **available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 8/20/2021. Redacted Transcript Deadline set for 8/30/2021. Release of Transcript Restriction set for 10/28/2021. (Russell, Lori) (Entered: 07/27/2021) |
| 08/18/2021 | 564 | (See entry 8/25/2021) NOTICE OF RESCHEDULING: Motion Hearing/Status Conference reset for 9/8/2021 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 08/18/2021) |
| 08/25/2021 | | Electronic Notice of Rescheduling as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR sent on 8/25/2021 to Acting United States Attorney Sandra J. Hairston, Attorneys Luke Largess, John B. White, Jr., Marghretta H. Shisko, Jonathan Berkelhammer, Kelly Dagger and John S. Simmons re: Status Conference/Motion Hearing **reset for 9/13/2021 02:00 PM** in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Welch, Kelly) (Entered: 08/25/2021) |
| 09/08/2021 | 565 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/08/2019 (Trial Testimony, Julie Akers) before Judge William L. Osteen, Jr., re Jury Trial,, Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**</P> Does this satisfy all appellate orders for this reporter? n <br><br> Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 566 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/09/2019 (Trial Testimony, Julie Akers, Continued) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. |

| | | |
|---|---|---|
| | | Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 567 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/09/2019, before Judge William L. Osteen (Trial Testimony, Mickey Jolly) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Tape Number: Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 568 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/10/2019, before Judge William L. Osteen, Jr., (Trial Testimony, Virginia R. Linke) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 569 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/10/2019, before Judge William L. Osteen, (Trial Testimony, Matthew A. Medaloni) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically** |

| | | |
|---|---|---|
| | | **available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 570 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/10/2019, before Judge William L. Osteen, Jr., (Trial Testimony, Matt S. Carpenter) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Tape Number: Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 571 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/14/2019, before Judge William L. Osteen, Jr., (Trial Testimony, Cross-Exam of Douglas Corriher) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 572 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/15/2019, before Judge William L. Osteen, Jr., (Trial Testimony, Douglas Corriher, Continued) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Tape Number: |

| | | |
|---|---|---|
| | | Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 573 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/15/2019, before Judge William L. Osteen, Jr., (Trial Testimony, Elizabeth K. Byrd) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 574 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/15/2019, before Judge William L. Osteen, Jr., (Trial Testimony, Lesley Cannon) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n |

| | | |
|---|---|---|
| | | Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 575 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/16/2019, before Judge William L. Osteen, Jr., (Trial Testimony, Lesley Cannon, Continued) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 576 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/16/2019, before Judge William L. Osteen, Jr., (Trial Testimony, William R. McDaniel) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 577 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/16/2019, before Judge William L. Osteen, Jr., (Trial Testimony, Randall L. Howell) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a** |

| | | |
|---|---|---|
| | | **Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 578 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/16/2019, before Judge William L. Osteen, Jr., (Trial Testimony, Mark E. Gleason) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 579 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/17/2019, before Judge William L. Osteen, Jr., (Trial Testimony: Catherine Smith, Sue Robinson, Peter Pappas) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Tape Number: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 580 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/22/2019, before Judge William L. Osteen, Jr., (Trial Testimony: Michael Brooks, Teresa Driver, Lawrence |

| | | |
|---|---|---|
| | | Gibney, Angela Holland, Erick Hoffman, Katherine Miller) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 581 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/23/2019, before Judge William L. Osteen, Jr., (Trial Testimony: David Switzer, Cyndy Ayers, Remonia Felix, Jeffrey Burgess, Kyle Myles) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 582 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/24/2019, before Judge William L. Osteen, Jr., (Trial Testimony: Kyle Myles, William Timanus, J.B. Schweirs, Julia Pace) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034.Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be** |

| | | |
|---|---|---|
| | | **viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 583 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/25/2019, before Judge William L. Osteen, Jr., (Trial Testimony: Julia Pace, David Switzer, Donna Hench) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 584 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/28/2019, before Judge William L. Osteen, Jr., (Trial Testimony: Donna Hench, David Switzer, Donna Hench) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 585 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/29/2019, before Judge William L. Osteen, Jr., (Trial Testimony: Ronald Earnest) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public |

| | | |
|---|---|---|
| | | terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 586 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/30/2019, before Judge William L. Osteen, Jr., (Trial Testimony: Ronald Earnest) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/08/2021 | 587 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/31/2019, before Judge William L. Osteen, Jr., (Trial Testimony: Ronald Earnest) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. |

| | | |
|---|---|---|
| | | Release of Transcript Restriction set for 12/10/2021. (Armstrong, Joe) (Entered: 09/08/2021) |
| 09/09/2021 | 588 | REPORT re 560 Order on Motion for Miscellaneous Relief,, by SHANNON MICHELLE DRAKE as to DOUGLAS ALAN CORRIHER, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (Attachments: # 1 Exhibit A - state court protective order)(LARGESS, STEPHEN) (Entered: 09/09/2021) |
| 09/10/2021 | 589 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/16/2020, before Judge William L. Osteen, Jr., (Trial Testimony: Patricia Elliott) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/13/2021. (Armstrong, Joe) (Entered: 09/10/2021) |
| 09/10/2021 | 590 | TRANSCRIPT filed as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 01/29/2019, before Judge William L. Osteen, Jr., re (Trial Testimony: Jeff Rogers, Christopher Taylor, Allison Duffy, Carolyn Miffleton) Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Tape Number: Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? y<br><br>Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/15/2021. Release of Transcript Restriction set for 12/13/2021. (Armstrong, Joe) (Entered: 09/10/2021) |
| 09/13/2021 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Status Conference as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR held on 9/13/2021. Acting United States Attorney Sandra J. Hairston present on behalf of the Government. Attorney Jonathan Berkelhammer appeared on of Movants. Attorneys S. Luke Largess and John S. Simmons |

| | | |
|---|---|---|
| | | appeared on behalf of Defendants. With respect to 535 Movants' Motion to Disclose Grand Jury Matters and Sealed Court Filings, the Court addressed the following issues 1) the question of the disclosure of grand jury materials and 2) the question of whether or not any First Amendment right of access would permit the parties to the civil case to access certain sealed pleadings on the docket of the Court. For the reasons stated on the record the Court finds with respect to sealed documents that those documents should be unsealed and disclosed to the parties and counsel in the South Carolina action subject to a protective order, except as it may relate to grand jury witnesses, which must be addressed separately under Fed. R. Crim. P. 6. The Court directs Mr. Berkelhammer to prepare a proposed order of disclosure consistent with the terms and conditions the court imposed on the record and provide copies to all counsel; if counsel does not object to the language of the order, it can be emailed to the case manager for the Court's consideration and signature. The permitted disclosures which will be allowed by the courts written order may occur upon modification of the Protective Order in the South Carolina action as described by this court. (Court Reporter Joseph Armstrong.) (Welch, Kelly) Modified on 11/16/2021 to edit text (Welch, Kelly). (Entered: 09/13/2021) |
| 09/29/2021 | 591 | TRANSCRIPT of Motion Hearing as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR for dates of 09/13/2021 before Judge William L. Osteen, Jr., Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Redaction Request due 10/25/2021. Redacted Transcript Deadline set for 11/4/2021. Release of Transcript Restriction set for 12/31/2021. (Armstrong, Joe) (Entered: 09/29/2021) |
| 11/15/2021 | 592 | NOTICE *of Settlement* by FOX ROTHSCHILD, LLP., SMITH MOORE LEATHERWOOD, L.L.P. as to SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR (BERKELHAMMER, JONATHAN) (Entered: 11/15/2021) |
| 11/22/2021 | 593 | **ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR. on 11/22/2021. Movants' Motion to Disclose Grand Jury Matters and Sealed Court Filings (Doc. 535 ) is DENIED AS MOOT as to SHANNON MICHELLE DRAKE (2), RONALD KEITH EARNEST (3), and ROBERT THOMAS TAYLOR (4). (Daniel, J) (Entered: 11/22/2021) |
| 12/14/2021 | 594 | TRANSCRIPT EXCERPT filed as to SHANNON MICHELLE DRAKE for dates of 01/15/2019, before Judge William L. Osteen, Jr., re PROCEEDINGS NOT INCLUDED IN PREVIOUSLY FILED WITNESS EXCERPTS, Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a** |

| | | |
|---|---|---|
| | | **Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 1/7/2022. Redacted Transcript Deadline set for 1/17/2022. Release of Transcript Restriction set for 3/17/2022. (Armstrong, Joe) (Entered: 12/14/2021) |
| 12/14/2021 | 595 | TRANSCRIPT EXCERPT filed as to SHANNON MICHELLE DRAKE for dates of 01/24/2019, before Judge William L. Osteen, Jr., re PROCEEDINGS NOT INCLUDED IN PREVIOUSLY FILED WITNESS EXCERPTS, Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Tape Number: Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 1/7/2022. Redacted Transcript Deadline set for 1/17/2022. Release of Transcript Restriction set for 3/17/2022. (Armstrong, Joe) (Entered: 12/14/2021) |
| 12/14/2021 | 596 | TRANSCRIPT EXERPT filed as to SHANNON MICHELLE DRAKE for dates of 01/28/2019, before Judge w, re PROCEEDINGS NOT INCLUDED IN PREVIOUSLY FILED WITNESS EXCERPTS, Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 1/7/2022. Redacted Transcript Deadline set for 1/17/2022. Release of Transcript Restriction set for 3/17/2022. (Armstrong, Joe) (Entered: 12/14/2021) |
| 12/14/2021 | 597 | TRANSCRIPT EXCERPT filed as to SHANNON MICHELLE DRAKE for dates of 01/29/2019, before Judge William L. Osteen, Jr., re PROCEEDINGS NOT INCLUDED IN PREVIOUSLY FILED WITNESS EXCERPTS, Court Reporter/Transcriber J. |

| | | |
|---|---|---|
| | | Armstrong, Telephone number 336-332-6034. Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**<br><br>Does this satisfy all appellate orders for this reporter? n<br><br>Redaction Request due 1/7/2022. Redacted Transcript Deadline set for 1/17/2022. Release of Transcript Restriction set for 3/17/2022. (Armstrong, Joe) (Entered: 12/14/2021) |
| 12/16/2021 | 598 | TRANSCRIPT EXCERPT filed as to SHANNON MICHELLE DRAKE for dates of 01/31/2019, before Judge William L. Osteen, Jr., re PROCEEDINGS NOT INCLUDED IN PREVIOUSLY FILED WITNESS EXCERPTS, Court Reporter/Transcriber J. Armstrong, Telephone number 336-332-6034 Email: joseph_armstrong@ncmd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.**</P> Does this satisfy all appellate orders for this reporter? y <br><br> Redaction Request due 1/9/2022. Redacted Transcript Deadline set for 1/19/2022. Release of Transcript Restriction set for 3/19/2022. (Armstrong, Joe) (Main Document 598 replaced on 12/17/2021) (Armstrong, Joe). (Entered: 12/16/2021) |

---

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 02/16/2022 10:50:44 | | | |
| **PACER Login:** | Tmstuckey | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:16-cr-00205-WO |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PM 1 2 3 4 5 6 7 8 9 10 11 12 AM FILED IN THIS OFFICE AUG 29 2017 Clerk U.S. District Court Greensboro, NC BY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | SUPERSEDING |
| | : | |
| v. | : | |
| | : | |
| SHANNON MICHELLE DRAKE | : | 1:16CR205-2 |
| RONALD KEITH EARNEST | : | 1:16CR205-3 |
| ROBERT THOMAS TAYLOR | : | 1:16CR205-4 |

The Grand Jury charges:

COUNT ONE

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Douglas Alan Corriher was a resident of Greenwood, South Carolina.

2. A bank hereafter referred to as SC Bank was a bank and financial institution chartered under the laws of the State of South Carolina with its headquarters in Greenville, South Carolina. SC Bank was governed by a board of directors. The deposits of SC Bank were insured by the Federal Deposit Insurance Corporation.

3. Douglas Alan Corriher was employed as an officer and vice president of SC Bank in Greenville, South Carolina.

4. ROBERT THOMAS TAYLOR was a resident of Greenville, South Carolina.

5. ROBERT THOMAS TAYLOR was employed as an officer and vice president of SC Bank in Greenville, South Carolina.

6. SHANNON MICHELLE DRAKE was a resident of Williamston, South Carolina.

7. SHANNON MICHELLE DRAKE was employed at SC Bank in Greenville, South Carolina.

8. RONALD KEITH EARNEST was a resident of Simpsonville, South Carolina.

9. RONALD KEITH EARNEST was employed as an officer and president of SC Bank in Greenville, South Carolina.

10. An individual whose initials are B.G.H. was a resident of Greensboro, North Carolina.

11. B.G.H. operated staffing businesses in Guilford County, North Carolina, through three corporations incorporated under the laws of the State of Delaware: Compensation Management, Inc. ("CMI"), Compensation Management of Iowa, Inc. ("CMI of Iowa"), and I.H.T. of SC, Inc. (collectively, "the Staffing Companies"). The Staffing Companies were incorporated at B.G.H.'s direction.

12. B.G.H. was the *de facto* owner of the Staffing Companies despite his designation of nominee owners. B.G.H. controlled the operations of the Staffing Companies, including the funding of payroll to employees and all major financial or banking transactions.

13. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury. The IRS has the responsibility to administer the internal revenue laws of the United States, including the ascertainment, computation, assessment, and collection of income and other taxes.

14. The Staffing Companies together employed thousands of workers who performed unskilled labor for client companies. These employees were on the payroll of the Staffing Companies.

15. The Staffing Companies contracted with client businesses to provide temporary workers at the location of the client businesses and promised, among other things, to assume full responsibility for payment of wages to the temporary employees and to withhold and transmit taxes for the temporary employees.

16. The Staffing Companies withheld taxes from employees' paychecks, including federal income taxes, Medicare, and Social Security taxes (often referred to as Federal Insurance Contribution Act taxes or "FICA"

taxes). These taxes will be referred to collectively in this Indictment as "payroll taxes."

17. IRS Form 941, Employer's Quarterly Federal Tax Return ("Form 941"), was the form used by employers to report to the IRS the employers' withholding of income taxes, Social Security taxes, and Medicare taxes from employees' paychecks, and to report to the IRS the employers' payment of the employers' portion of Social Security and Medicare taxes.

18. Global Labor, Inc. ("Global Labor") was a corporation organized under the laws of the State of Delaware and was operated by B.G.H.

FDIC AND BANKING REGULATION

19. The Federal Deposit Insurance Corporation ("FDIC") was an independent agency of the government of the United States that guaranteed the deposits of customers in all insured United States depository institutions up to $250,000.00.

20. The FDIC regulated those banks insured by FDIC but not supervised by other federal regulators to promote safe and sound banking practices for the purposes of insuring deposits against bank failures and maintaining stability and public confidence in the nation's banking system.

21. The Legal Lending Limit ("LLL") was a regulatory function that restricted the amount of money that a bank could lend to a single individual, corporation, or guarantor, to prevent undue risk to the bank's capital reserves.

22. To promote the financial safety and soundness of insured banks, the FDIC calculated an LLL that capped the amount that a bank could lend to an individual borrower or guarantor. For state-chartered banks, the banking commission of the chartering state calculated and imposed lending limits. Banks also calculated their own internal lending limits that were used by bank loan officers to govern lending activity.

23. The FDIC conducted examinations of state-chartered, FDIC-insured banks to ensure that such banks were operating within state-imposed LLLs.

24. To ensure that banks were employing safe and sound banking practices and complying with banking regulations, including LLL, the FDIC and state banking authorities conducted routine periodic examinations of FDIC-insured banks.

25. In conducting these examinations, FDIC examiners reviewed the books and records of the insured bank. FDIC examiners relied on the completeness and accuracy of the books and records of the insured bank to

determine whether the insured bank was financially safe and sound and operating within FDIC regulations and state banking regulations.

26. The South Carolina State Board of Financial Institutions ("BOFI") was the state regulatory agency for banks chartered in the State of South Carolina. BOFI's mission was to serve the citizens of South Carolina by protecting the borrowing public and ensuring that state-chartered banks followed the laws and regulations established by the state.

27. To ensure that banks were employing safe and sound banking practices, BOFI imposed certain regulations, including LLL, on state-chartered banks.

28. BOFI conducted routine and periodic examinations of banks chartered in South Carolina to ensure that such banks were complying with state-imposed regulations, including LLL.

29. In conducting these examinations, the examiners of BOFI reviewed the books and records of the state-chartered banks. Examiners of BOFI relied on the completeness and accuracy of the books and records of South Carolina state-chartered banks to determine whether the bank was financially safe and sound and operating within regulations imposed by BOFI, including LLL.

30. The practice of nominee lending is one in which a bank makes loans to a nominal borrower for the benefit of a concealed third party not included in the loan agreements. Nominee lending is not a sound banking practice, as it could result in the creation of false entries on the bank's books, could violate bank policies on obtaining security interests in collateral, and could violate lending limits imposed on the bank.

31. The deposits of SC Bank were insured by the FDIC, and SC Bank was subject to examination of its books and financial records by FDIC examiners.

32. SC Bank, as a bank chartered under the laws of the State of South Carolina, was subject to regulation and examination by examiners of the BOFI.

33. SC Bank, as a bank chartered under the laws of the State of South Carolina, was subject to lending limits imposed by the BOFI.

34. As a matter of bank policy, SC Bank maintained internal lending limits binding on the bank and its officers for the purpose of protecting the financial interests of the bank.

35. SC Bank provided both commercial and consumer loan services to customers in the region of North and South Carolina, including financing based upon borrower receivables known as factoring.

36. Factoring of receivables is a form of commercial lending in which credit is extended to a borrower based on the amount due and payable to the borrower on its customer accounts receivable. In a factoring lending arrangement, the lending bank advances funds or credits to the borrower in some percentage of the amount of the receivables. The lending bank then receives payment directly from the customers of the borrower.

37. In most factoring of receivables arrangements, the lending bank does not advance the full face amount of the receivables to the borrower, but only advances money or credit in a percentage of the borrower's invoices as agreed in a formal factoring agreement. Upon payment to the lending bank by the borrower's customers on the invoices, the lending bank then remits the remaining funds to the borrower minus interest or fees as provided for by the factoring agreement.

38. In factoring agreements, the lending bank normally requires that the borrower provide the lending bank with a first security position on its receivables to serve as collateral on the factoring agreement. Such a first security agreement allows the lending bank to attempt to recoup its losses if the borrower defaults on the factoring agreement.

39. SC Bank maintained and operated a factoring department dedicated to providing and servicing factoring lines of credit to clients of SC

Bank. Douglas Alan Corriher was the vice president in charge of the factoring department at SC Bank.

40. SHANNON MICHELLE DRAKE worked at SC Bank in the factoring department under the direct supervision of Douglas Alan Corriher.

41. ROBERT THOMAS TAYLOR worked at SC Bank under the ultimate direction of RONALD KEITH EARNEST, with one of his responsibilities being to conduct loan reviews.

42. RONALD KEITH EARNEST served as the president of SC Bank under the direction of the SC Bank Board of Directors. Among other duties, which included the ultimate supervision of SC Bank officers and employees (including Douglas Alan Corriher, ROBERT THOMAS TAYLOR, and SHANNON MICHELLE DRAKE), RONALD KEITH EARNEST prepared and presented loan memoranda to the SC Bank Board of Directors seeking board approval of proposed loans.

43. SC Bank entered into written factoring agreements with its factoring customers. SC Bank did not provide factoring lines of credit as its normal business practice without a written factoring agreement between SC Bank and the factoring customer.

44. The written factoring agreements typically identified specific collateral, including accounts receivable, to be provided to SC Bank to serve as security for any factoring advances under the factoring agreements.

45. The written factoring agreements also typically stated the commitment amount that could be advanced to the factoring customer.

46. SC Bank required that the factoring client provide SC Bank with a first or senior lien position on the collateral, including accounts receivable. SC Bank then filed UCC-1 forms with the relevant state's office of the Secretary of State, thereby giving notice of SC Bank's first lien position.

47. SC Bank officers were required by SC Bank policy to conduct a due diligence review of the financial condition of the factoring customer, including whether SC Bank would be able to obtain a first lien position on the assets of the factoring customer, to provide security to SC Bank for the factoring agreement.

48. It was a standard practice of SC Bank's factoring department to monitor the tax compliance of factoring clients of SC Bank. Non-payment of taxes by a SC Bank factoring client put SC Bank at increased risk of loss, as the government that is owed the taxes could claim a superior security interest in the assets of the factoring client, thereby allowing the government to be paid prior to SC Bank by a factoring customer.

49. It was the duty of any SC Bank officer or employee to report to SC Bank that a factoring client was not complying with its tax obligations.

50. SC Bank used two structures for factoring lines of credit: an invoice-specific structure and a factoring pool. In a factoring pool, advances were made to the factoring client based on the sum of the borrower's invoices minus invoices over ninety days past due, any invoices otherwise deemed ineligible by SC Bank, and amounts over the credit limit. This sum could then be advanced at a rate set forth in the factoring agreement.

51. Advances were governed by a maximum advance ratio of qualified invoices that were held in a pool. All payments received by the bank from the payment of invoices were applied to the balance of advances, and accrued fees were billed to the factoring customer on a monthly basis.

52. Officers of SC Bank would conduct an annual review of some outstanding loans, including factoring loans. At the conclusion of the review the reviewing officer would create a written report memorializing the results of the review with such written report to be included in the records of SC Bank.

B.G.H. AND SC BANK

53. In or around 2003, the exact date to the Grand Jurors unknown, Douglas Alan Corriher approached B.G.H. and unsuccessfully solicited B.G.H. to factor with SC Bank the receivables of the staffing businesses he was then

operating. SC Bank could not loan as much money as B.G.H. wanted due to the lending limits applicable to SC Bank.

54. In or around 2004, the exact date to the Grand Jurors unknown, B.G.H. approached Douglas Alan Corriher and told him that B.G.H. was then operating a single company that provided "back office" services, such as payroll processing, for regional staffing companies that had entered into licensing agreements with B.G.H. ("the Regional Staffing Companies").

55. Each of the Regional Staffing Companies was owned and controlled by B.G.H. through nominee owners and officers who had no actual control over the operations of the Regional Staffing Companies. The Regional Staffing Companies included, among others, US Staffing of Florida, Inc., US Staffing of North Carolina, Inc., and US Staffing of South Carolina, Inc.

56. SC Bank entered into separate factoring agreements with the Regional Staffing Companies, including among others, US Staffing of North Carolina, Inc., and US Staffing of South Carolina, Inc.

57. On or about November 30, 2006, B.G.H. sold the Regional Staffing Companies to former employees who operated the staffing business through their company, hereafter referred to as Company S.

58. Following the sale of the Regional Staffing Companies, SC Bank discovered that B.G.H. had owned and controlled the Regional Staffing

Companies. SC Bank, through RONALD KEITH EARNEST, imposed liability on B.G.H. personally for remaining unpaid factoring advances owed by the Regional Staffing Companies after B.G.H. sold the Regional Staffing Companies.

59. SC Bank thereafter advanced other funds to B.G.H. as personal loans based on B.G.H.'s representations that B.G.H. would re-acquire the staffing businesses and enter into new factoring agreements with SC Bank.

60. By 2008, SC Bank had advanced B.G.H. over $1,000,000.00 in personal loans.

61. RONALD KEITH EARNEST served as loan officer on personal loans to B.G.H.

62. CMI was incorporated at B.G.H.'s direction. On or around August 15, 2008, B.G.H., through CMI, re-acquired the staffing businesses through a Purchase and Sale Agreement with Company S.

63. J.M., an individual known to the Grand Jurors, was a resident of Greensboro, North Carolina. J.M. served as a pilot for B.G.H.'s personal airplane.

64. J.M. had previously served as a straw owner and operator of one of the Regional Staffing Companies. J.M. did not actually conduct any staffing business.

65. Medaloni, Inc., was a corporation organized under the laws of the State of North Carolina and was in the business of operating bars and nightclubs in Greensboro, North Carolina. Medaloni, Inc., was operated by J.M. and did not conduct any staffing business.

66. M.M., an individual known to the Grand Jurors, was a resident of Greensboro, North Carolina, and was employed in the nightclub business as a disc jockey and entertainer under the name "D.J. Spinny." M.M. previously served as a straw owner and operator of one of the Regional Staffing Companies, US Staffing of Georgia, Inc. M.M. did not work in the staffing industry.

67. Medaloni of SC, Inc., was a corporation organized under the laws of the State of South Carolina in or around July 2008, at the direction of B.G.H. for the purpose of entering into nominee factoring lines of credit with SC Bank under the false pretense that it was an active staffing company. M.M. was the straw owner of Medaloni of SC, Inc., which in fact had no staffing business and no employees.

68. R.H., an individual known to the Grand Jurors, was an associate of B.G.H. R.H. previously served as the straw owner of US Staffing of Virginia, Inc., one of the Regional Staffing Companies.

69. Green Ideas N Motion Corporation was a corporation organized under the laws of the State of North Carolina by R.H. for the purpose of selling environmentally safe products on the internet. Green Ideas N Motion Corporation did not conduct any staffing business.

70. M.B., an individual known to the Grand Jurors, was a citizen of the United Kingdom who resided in Greensboro, North Carolina. M.B. had previously served as the straw owner of US Staffing of North Carolina, Inc., one of the Regional Staffing Companies. M.B. was employed by B.G.H. as an assistant and played soccer with B.G.H.

71. Brooks Labor, Inc., was a corporation organized under the laws of the State of North Carolina in or around July 2008 at the direction of B.G.H. for the purpose of entering into nominee factoring lines of credit with SC Bank under the false pretense that it was an active staffing company when, in fact, it had no such business and no employees.

72. M.G., an individual known to the Grand Jurors, was a resident of Greensboro, North Carolina. M.G. previously served as the straw owner of US Staffing of South Carolina, Inc., one of the Regional Staffing Companies.

73. NC Global Investments, Inc., was a corporation organized under the laws of the State of North Carolina in or about July 2008 at the direction of B.G.H. for the purpose of entering into nominee factoring lines of credit with

SC Bank under the false pretense that it was an active staffing company when, in fact, it had no such business and no employees.

74. E.B., an individual known to the Grand Jurors, was an associate of B.G.H. E.B. previously served as a straw owner of US Staffing of Tennessee, Inc., one of the Regional Staffing Companies.

75. I.H.T. of SC, Inc., was a corporation organized under the laws of the State of Delaware in or around February 2009 at the direction of B.G.H. Although E.B. was the purported owner of I.H.T. of SC, Inc., B.G.H. controlled the operations, including the funding of payroll.

CONSPIRACY

76. From in or around July 2008, continuing up to and including in or around August 2013, the exact date to the Grand Jurors unknown, in the Middle District of North Carolina, and elsewhere, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, B.G.H., and divers other persons, both known and unknown to the Grand Jurors, knowingly, unlawfully, and willfully combined and agreed together and with other persons:

a. Then being employees of SC Bank, to willfully embezzle and misapply the money, funds, and credits of SC Bank, a bank whose deposits were then insured by the FDIC, with intent to injure and defraud SC Bank, of

a value of more than $1,000.00., in violation of Title 18, United States Code, Section 656; and

b. To make and cause to be made materially false entries in the books, reports, and statements of SC Bank, a bank whose deposits were then insured by the FDIC, with intent to deceive the officers and directors of SC Bank, the FDIC, and the agents and examiners appointed to examine the affairs of SC Bank, in violation of Title 18, United States Code, Section 1005.

MANNERS AND MEANS

77. It was a part of the conspiracy that Douglas Alan Corriher, on behalf of SC Bank and B.G.H., would and did enter into factoring agreements with Medaloni, Inc., Medaloni of SC, Inc., Green Ideas N Motion Corporation, Brooks Labor, Inc., and NC Global Investments, Inc. (the "Nominee Companies") under the false pretense that SC Bank would be factoring the receivables of the Nominee Companies when, in fact, the Nominee Companies did no staffing business, had no actual receivables, and the invoices being factored belonged to CMI.

78. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, and B.G.H. would and did factor receivables of the

Staffing Companies through SC Bank in amounts over the lending limits imposed on SC Bank by the BOFI and internal bank policy.

79. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, and B.G.H. would and did factor receivables of the Staffing Companies through the accounts of the Nominee Companies at SC Bank despite the fact that the receivables of CMI were subject to liens in favor of creditors who would hold a superior lien position to SC Bank.

80. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and B.G.H. would and did factor receivables of the Staffing Companies through the accounts of the Nominee Companies at SC Bank despite the fact that B.G.H. was also personally liable to SC Bank for over $1,000,000.00, an amount which, when combined with the credit extended to the Nominee Companies, placed B.G.H. even further over the LLL that SC Bank could extend to B.G.H.

81. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and B.G.H. would and did advance funds factored on the receivables of the Staffing Companies through the accounts of the Nominee Companies at SC Bank

despite the fact that B.G.H. was not paying payroll taxes due to the IRS for the Staffing Companies.

82. It was a further part of the conspiracy that Douglas Alan Corriher, RONALD KEITH EARNEST, and B.G.H. would and did cause the Nominee Companies to secure the factoring agreements with purported first lien positions in their receivables when the Nominee Companies had no actual receivables and the supposed first lien position granted SC Bank was false.

83. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR would and did cause the factoring agreements with the Nominee Companies to be entered into the books and records of SC Bank as if the Nominee Companies actually had receivables that could be factored when, in fact, the receivables at issue were actually the Staffing Companies' receivables.

84. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR would and did create false accountings on the books and records of SC Bank in order to advance funds to and for the benefit of B.G.H. over and above lending limits imposed on SC Bank by the BOFI and by SC Bank policy.

85. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR would and did make factoring advances to Global Labor, a company which was controlled by B.G.H., under the pretense that these funds were factoring advances on the receivables of the Nominee Companies when they were actually factoring advances on the receivables of the Staffing Companies.

86. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR would and did advance funds through the accounts of the Nominee Companies to Global Labor and B.G.H. to circumvent the lending limits imposed on SC Bank by BOFI and by SC Bank internal policy.

87. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, and B.G.H. would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

<u>OVERT ACTS</u>

88. In furtherance of the conspiracy and to effect the objects thereof, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH

EARNEST, ROBERT THOMAS TAYLOR, B.G.H., and divers others, both known and unknown to the Grand Jurors, committed and caused to be committed overt acts in the Middle District of North Carolina, and elsewhere, including, but not limited to, the following:

89. On or about July 25, 2008, Douglas Alan Corriher caused to be submitted commercial loan memoranda falsely representing that the Nominee Companies were staffing companies with substantial staffing business, clients, and receivables, when, in fact, as Douglas Alan Corriher then well knew, the Nominee Companies had no real staffing business and the receivables to be factored belonged to CMI.

90. On or about July 29, 2008, Douglas Alan Corriher travelled from Greenville, South Carolina, to the personal residence of B.G.H. in Greensboro, North Carolina, in the Middle District of North Carolina, for the purpose of executing the factoring agreements with the Nominee Companies.

91. On or about July 29, 2008, Douglas Alan Corriher met with B.G.H., J.M., M.M., R.H., M.B., and M.G. at B.G.H.'s personal residence in Greensboro, North Carolina, in the Middle District of North Carolina. Douglas Alan Corriher presented J.M., M.M., R.H., M.B., and M.G. with factoring agreements between each of the Nominee Companies and SC Bank. At the

direction of Douglas Alan Corriher and B.G.H., each executed the factoring agreement.

92. On or about July 29, 2008, J.M., M.M., R.H., M.B., and M.G. each executed a form at the direction of Douglas Alan Corriher and B.G.H. authorizing SC Bank to wire advances on the factoring lines of credit of the Nominee Companies to Global Labor under the pretense that Global Labor was a licensor of the Nominee Companies providing services such as payroll to the nominee company.

93. From on or about December 19, 2008, continuing up to and including on or about December 22, 2008, Douglas Alan Corriher caused the filing of UCC-1 security notices on each of the Nominee Companies.

94. On or about January 2, 2009, Douglas Alan Corriher sent an email directing J.A. to divide the invoices of CMI and CMI of Iowa among the Nominee Companies.

95. On or about January 16, 2009, Douglas Alan Corriher appointed SHANNON MICHELLE DRAKE as the account executive responsible for the factoring of the receivables for each of the accounts of the Nominee Companies.

96. On or about April 23, 2009, Douglas Alan Corriher presented E.B. with a factoring agreement between I.H.T. of SC, Inc., and SC Bank. At the

direction of Douglas Alan Corriher and B.G.H., E.B. executed the factoring agreement.

97. From in or around January 2009, continuing up to and including in or around September 2010, Douglas Alan Corriher and SHANNON MICHELLE DRAKE administered factoring agreements and factoring lines of credit for each of the Nominee Companies and I.H.T. of SC, Inc.

98. On or about January 16, 2009, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and RONALD KEITH EARNEST caused SC Bank to advance $3,281,362.60 by bank-wire transfer to a company hereafter referred to as Funding Company of High Point, North Carolina, a funding company, for the purpose of purchasing CMI and CMI of Iowa invoices from Funding Company.

99. From on or about February 17, 2009, continuing up to and including on or about September 22, 2010, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR caused the following factoring advances on the factoring lines of credit of the Nominee Companies to be wire transferred to Global Labor for the benefit of B.G.H. and under the pretense that such advances were being made on invoices of the Nominee Companies and I.H.T. of SC, Inc.:

| | **DATE** (on or about) | **AMOUNT** |
|---|---|---|
| a) | January 16, 2009 | $3,281,362.60 |
| b) | February 17, 2009 | $125,000.00 |
| c) | March 2, 2009 | $130,000.00 |
| d) | April 8, 2009 | $400,000.00 |
| e) | May 28, 2009 | $355,000.00 |
| f) | September 8, 2009 | $275,000.00 |
| g) | October 5, 2009 | $275,000.00 |
| h) | October 29, 2009 | $477,000.00 |
| i) | December 10, 2009 | $449,000.00 |
| j) | February 25, 2010 | $270,000.00 |
| k) | June 2, 2010 | $ 65,500.00 |
| l) | July 28, 2010 | $ 35,000.00 |
| m) | September 22, 2010 | $ 10,000.00 |

100. From in or about January 2009, continuing up to and including in or about September 2010, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR did sign documents "[SC Bank] Domestic Outgoing Wire Form, Request for Wire Transfer," apportioning factoring advances among the Nominee Companies as set out in the table below:

| | **DATE** (on or about) | **TOTAL AMOUNT OF ADVANCE** | **NOMINEE COMPANY (APPORTIONMENT OF TOTAL AMOUNT OF ADVANCE)** |
|---|---|---|---|
| a) | 4/08/2009 | $400,000.00 | Medaloni of SC, Inc. ($20,000.00); NC Global Investments, Inc. ($380,000.00) |

| | | | |
|---|---|---|---|
| b) | 5/28/2009 | $355,000.00 | Medaloni of SC, Inc. ($9,500.00); Brooks Labor, Inc. ($40,800.00); Medaloni, Inc. ($7,700.00); Green Ideas N Motion Corporation ($57,500.00); NC Global Investments, Inc. ($239,500.00) |
| c) | 9/8/2009 | $275,000.00 | Medaloni of SC, Inc. ($5,536.30); Brooks Labor, Inc. ($76,000.00); Medaloni, Inc.($25,000.00); Green Ideas N Motion Corporation ($36,000.00); NC Global Investments, Inc. ($176,000.00 advance per $132,463.70 to NC Global Investments, Inc. $43,536.30 to I.H.T. of SC, Inc. DDA 17285) |
| d) | 6/2/2010 | $ 65,500.00 | Medaloni of SC, Inc. ($33,500.00); Brooks Labor, Inc. ($32,000.00) |

101. From in or about July 2008, continuing up to and including in or about September 2010, B.G.H. travelled on a regular basis to the offices of SC Bank by airplane to meet with Douglas Alan Corriher and RONALD KEITH EARNEST, as to his business with SC Bank.

102. From in or about January 2009, continuing up to and including in or about May 2009, Douglas Alan Corriher and SHANNON MICHELLE DRAKE travelled to the offices of CMI in Greensboro, North Carolina, in the Middle District of North Carolina, to meet with B.G.H. and J.A., the controller of the Staffing Companies.

103. From on or about March 31, 2009, continuing up to and including on or about May 11, 2009, Douglas Alan Corriher and SHANNON MICHELLE

DRAKE caused SC Bank to send instructions to the clients of CMI and CMI of Iowa to send payments on CMI and CMI of Iowa invoices to a lockbox controlled by SC Bank with payments addressed to "CMI c/o [SC Bank]."

104. From on or about January 16, 2009, continuing up to and including on or about September 30, 2010, as checks made payable to the Staffing Companies arrived in the lockbox, SHANNON MICHELLE DRAKE caused each check to be applied to the factoring accounts of the Nominee Companies for the purpose of falsely making it appear on the books and records of SC Bank that SC Bank was factoring the invoices of the Nominee Companies.

105. From in or about January 2009, continuing up to and including on or about December 2010, Douglas Alan Corriher and RONALD KEITH EARNEST caused SC Bank to advance monies from the factoring accounts of two of the Nominee Companies to make payments on personal loans and loans personally guaranteed by B.G.H.

106. On or about July 27, 2009, up to and including on or about July 28, 2009, ROBERT THOMAS TAYLOR created written loan review cover sheets and memos purporting to review the status of the factoring agreements between SC Bank and the individual factoring companies and recommending that each individual factoring line be renewed.

107. On or about July 27, 2009, up to and including on or about July 28, 2009, ROBERT THOMAS TAYLOR caused each loan review cover sheet and loan memo to be entered into the books and records of SC Bank, for the purpose of making it falsely appear on the books and records of SC Bank that SC Bank was factoring the receivables of the Nominee Companies and that the Nominee Companies had the business volume to justify renewal.

108. On or about September 24, 2010, Douglas Alan Corriher and RONALD KEITH EARNEST transferred the amount of $137,712.22 to nominee company Brooks Labor, then knowing it to be controlled by B.G.H.

109. On or about March 27, 2013, and again on or about August 27, 2013, RONALD KEITH EARNEST provided false and misleading testimony to a federal grand jury as to the nominee lending scheme.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO

1. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 75 and 77 of Count One as if fully set forth herein.

2. From on or about July 1, 2008, continuing up to and including in or about September 2010, the exact date to the Grand Jurors unknown, in the County of Guilford, in the Middle District of North Carolina, and elsewhere, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH

EARNEST, ROBERT THOMAS TAYLOR, B.G.H., and divers other persons, both known and unknown to the Grand Jurors, did knowingly execute and attempt to execute a scheme and artifice to obtain money, funds, and property under the custody and control of a financial institution, that is, SC Bank, the deposits of which were insured by the FDIC, by means of materially false and fraudulent pretenses, representations, and promises by causing SC Bank to enter into factoring agreements with the Nominee Companies under the materially false pretenses that these companies were staffing companies with invoices and receivables from the provision of staffing services when, in fact, such companies had no actual staffing business and were controlled by B.G.H.

3. It was a part of the scheme that Douglas Alan Corriher and RONALD KEITH EARNEST would and did prepare factoring agreements between SC Bank and the Nominee Companies under the pretense that SC Bank would factor the receivables of the Nominee Companies when, in fact, SC Bank would be factoring the receivables of the Staffing Companies.

4. It was a further part of the scheme that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR would and did operate six factoring lines of credit in the names of the Nominee Companies and I.H.T. of SC, Inc., for the purpose of making it appear that SC Bank was factoring the invoices and receivables of

the Nominee Companies and I.H.T of SC, Inc., with the intent to defraud the secured creditors of CMI and the United States.

5. It was a further part of the scheme that B.G.H., or others under his direction and control, would and did contact Douglas Alan Corriher and SHANNON MICHELLE DRAKE to request factoring advances on the invoices of the Staffing Companies under the pretense that such factoring advances were being made on the invoices of the Nominee Companies.

6. It was a further part of the scheme that SHANNON MICHELLE DRAKE, in response to requests for factoring advances, would and did create false and fraudulent advance requests and wire transfer requests in the names of the Nominee Companies for the purpose of allowing monies in the control and custody of SC Bank to be advanced under the false pretense that they were factoring advances on the invoices of the Nominee Companies, with the intent to defraud the secured creditors of CMI and the United States.

7. It was a further part of the scheme that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR would and did cause monies under the control and custody of SC Bank to be wire transferred to Global Labor under the pretense that the advances were factoring advances on the invoices of the Nominee Companies, with the intent to defraud the secured creditors of CMI and the United States.

8. It was a further part of the scheme that SHANNON MICHELLE DRAKE would and did cause the checks payable to the Staffing Companies to be credited to the accounts of the Nominee Companies.

9. It was a further part of the scheme that Douglas Alan Corriher would and did cause monies under the control and custody of SC Bank to be transferred by wire transfer to nominee company Brooks Labor knowing that such nominee company was controlled by B.G.H.

10. It was a further part of the scheme that ROBERT THOMAS TAYLOR produced loan reviews for each of the nominee companies falsely showing that the nominee companies had the volume of staffing and the assets necessary to justify continued factoring advances.

11. On or about July 29, 2008, in the County of Guilford, in the Middle District of North Carolina, and elsewhere, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, B.G.H., and divers other persons, both known and unknown to the Grand Jurors, did knowingly execute and attempt to execute a scheme and artifice to obtain money, funds, and property under the custody and control of a financial institution, that is, SC Bank, the deposits of which were then insured by the FDIC, with the intent to defraud, by means of materially false and fraudulent pretenses, representations, and promises, by providing the

purported owners of Nominee Companies with factoring agreements between SC Bank and each of the Nominee Companies to factor invoices from staffing customers and directing the purported owners of the Nominee Companies to execute such factoring agreements, when, in fact, as Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR then well knew, B.G.H. controlled each of the Nominee Companies, the Nominee Companies had no actual staffing clients or receivables, and monies advanced from SC Bank would be based on the staffing invoices of CMI.

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

COUNTS THREE THROUGH FOURTEEN

1. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 75 and 77 of Count One and paragraphs two through ten of Count Two as if fully set forth herein.

2. On or about the dates listed below, in the County of Guilford, in the Middle District of North Carolina, and elsewhere, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, B.G.H., and divers other persons, both known and unknown to the Grand Jurors, did knowingly execute and attempt to execute a scheme and artifice to obtain money, funds, and property under the custody

and control of a financial institution, that is, SC Bank, the deposits of which were insured by the FDIC, with the intent to defraud, by means of materially false and fraudulent pretenses, representations, and promises, by causing the following factoring advances to be sent by wire transfer from SC Bank in Greenville, South Carolina, to the bank account of Global Labor at Bank of America in Greensboro, Guilford County, North Carolina, in the Middle District of North Carolina, under the pretense that such funds were factoring advances against the invoices for staffing services of the Nominee Companies and I.H.T. of SC, Inc., when, in fact, as Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR then well knew, the factoring advances were made on invoices of the Staffing Companies, for the benefit of B.G.H.:

| COUNT | DATE (on or about) | AMOUNT OF ADVANCE |
|---|---|---|
| THREE | February 17, 2009 | $125,000.00 |
| FOUR | March 2, 2009 | $130,000.00 |
| FIVE | April 8, 2009 | $400,000.00 |
| SIX | May 28, 2009 | $355,000.00 |
| SEVEN | September 8, 2009 | $275,000.00 |
| EIGHT | October 5, 2009 | $275,000.00 |
| NINE | October 29, 2009 | $477,000.00 |
| TEN | December 10, 2009 | $449,000.00 |
| ELEVEN | February 25, 2010 | $270,000.00 |
| TWELVE | June 2, 2010 | $ 65,500.00 |
| THIRTEEN | July 28, 2010 | $ 35,000.00 |
| FOURTEEN | September 22, 2010 | $ 10,000.00 |

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

COUNTS FIFTEEN THROUGH TWENTY-SEVEN

1. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 75 and 77 of Count One and paragraphs two through ten of Count Two as if fully set forth herein.

2. On or about the following dates and in the following amounts, in the County of Guilford, in the Middle District of North Carolina, and elsewhere, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, and ROBERT THOMAS TAYLOR, then being employees of SC Bank, that is, bank employees, with intent to defraud said bank, did on one or more occasions willfully and knowingly embezzle, abstract, purloin, and willfully and knowingly misapply monies, funds, and credits as set forth below by date and count, belonging to and entrusted to the care of SC Bank, the deposits of which were then insured by the FDIC:

| **COUNT** | **DATE** (on or about) | **AMOUNT** |
|---|---|---|
| FIFTEEN | January 16, 2009 | $3,281.362.60 |
| SIXTEEN | February 17, 2009 | $125,000.00 |
| SEVENTEEN | March 2, 2009 | $130,000.00 |
| EIGHTEEN | April 8, 2009 | $400,000.00 |
| NINETEEN | May 28, 2009 | $355,000.00 |
| TWENTY | September 8, 2009 | $275,000.00 |
| TWENTY-ONE | October 5, 2009 | $275,000.00 |
| TWENTY-TWO | October 29, 2009 | $477,000.00 |
| TWENTY-THREE | December 10, 2009 | $449,000.00 |

| | | |
|---|---|---|
| TWENTY-FOUR | February 25, 2010 | $270,000.00 |
| TWENTY-FIVE | June 2, 2010 | $ 65,500.00 |
| TWENTY-SIX | July 28, 2010 | $ 35,000.00 |
| TWENTY-SEVEN | September 22, 2010 | $ 10,000.00 |

All in violation of Title 18, United States Code, Sections 656 and 2.

COUNT TWENTY-EIGHT

1. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 75 and 77 of Count One and paragraphs two through ten of Count Two as if fully set forth herein.

2. From on or about January 4, 2008, continuing up to and including on or about August 27, 2013, the exact dates to the Grand Jurors unknown, in the County of Guilford, in the Middle District of North Carolina, and elsewhere, RONALD KEITH EARNEST, Douglas Alan Corriher, and B.G.H. did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together and with other individuals both known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, payroll taxes.

MANNER AND MEANS

3. It was a part of the conspiracy that RONALD KEITH EARNEST, Douglas Alan Corriher, and B.G.H. would and did misappropriate funds for payroll taxes that were due to be paid over to the IRS.

4. It was a further part of the conspiracy that RONALD KEITH EARNEST and Douglas Alan Corriher would and did direct funds belonging to the Staffing Companies to accounts under the control of B.G.H. to impede any payroll tax collection action by the IRS.

5. It was a further part of the conspiracy that B.G.H. would and did refuse to supply the accounting and payroll officers of the Staffing Companies with sufficient funds to pay over payroll taxes to the IRS.

6. It was a further part of the conspiracy that B.G.H. would and did convert factoring advances proceeds that could be used to pay the payroll taxes to his own personal and business uses.

7. It was a further part of the conspiracy that RONALD KEITH EARNEST and Douglas Alan Corriher would and did continue to advance monies from SC Bank on the invoices of the Staffing Companies through the nominee lending scheme despite knowing that B.G.H. was converting funds advanced by SC Bank to B.G.H. without paying taxes due to the IRS from B.G.H. and the Staffing Companies.

8. It was a further part of the conspiracy that RONALD KEITH EARNEST and Douglas Alan Corriher would and did cause SC Bank to improperly retain monies paid by customers of the Staffing Companies that otherwise would have been available to make payroll tax payments to the IRS.

9. It was further part of the conspiracy that RONALD KEITH EARNEST would and did attempt to obstruct the federal criminal investigation of the nonpayment of payroll taxes by companies controlled by B.G.H.

10. It was further part of the conspiracy that RONALD KEITH EARNEST, Douglas Alan Corriher, and B.G.H. would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

OVERT ACTS

11. The Grand Jury re-alleges and incorporates by reference the overt acts identified in paragraphs eighty-eight through one-hundred and nine of Count One as if set forth fully herein.

12. On or about January 4, 2008, RONALD KEITH EARNEST signed letters offering the terms of factoring loans to J.M., M.M., R.H., M.B., M.G.,

and others associated with B.G.H. under the pretense that they were the owners of genuine staffing companies.

13. On or about July 25, 2008, RONALD KEITH EARNEST prepared commercial loan memoranda recommending approval of loans to the Nominee Companies.

14. From on or about July 27, 2009, continuing up to and including on or about July 28, 2009, the exact date to the Grand Jurors unknown, RONALD KEITH EARNEST signed false commercial loan memoranda that failed to report unpaid payroll tax debts of the Staffing Companies.

15. On or about December 16, 2009, RONALD KEITH EARNEST recommended to the Board of SC Bank that it approve a policy of deleting emails more than six months old from the SC Bank computer system.

16. In and around Spring of 2010, RONALD KEITH EARNEST approved factoring agreements with a set of companies organized as successors to the Nominee Companies amidst the federal criminal tax investigation of the nonpayment of payroll taxes by companies controlled by B.G.H.

17. On or about May 19, 2010, RONALD KEITH EARNEST falsely informed the Board of SC Bank that no fraudulent activity was found in a review of the factoring loan portfolio of SC Bank.

18. On or about the following dates and in the following approximate amounts, RONALD KEITH EARNEST approved wire transfers of factoring advances against the accounts receivable of the Staffing Companies to an account in Greensboro, North Carolina under the control of B.G.H.:

| DATE | AMOUNT |
|---|---|
| January 16, 2009 | $3,281,362.60 |
| February 26, 2009 | $220,000.00 |
| June 4, 2009 | $350,000.00 |
| June 29, 2009 | $225,000.00 |
| July 9, 2009 | $342,000.00 |
| February 4, 2010 | $323,000.00 |
| April 1, 2010 | $200,000.00 |

19. On or about July 7, 2011, RONALD KEITH EARNEST approved an advance above the normal percentage to B.G.H. through licensees of Global Labor in total of $100,000, knowing that a portion of the repayment would come from funds that could be used to pay significant unpaid payroll tax debt.

20. On or about October 28, 2011, RONALD KEITH EARNEST approved an advance to B.G.H. through licensees of Global Labor in total of

$30,000, knowing that a portion of the repayment would come from funds that could be used to pay significant unpaid payroll tax debt.

21. On or about March 27, 2013, RONALD KEITH EARNEST gave false and misleading testimony before a federal grand jury investigating the nonpayment of payroll taxes by companies controlled by B.G.H. and by claiming that he had little direct contact with B.G.H., by claiming that he had not been aware that B.G.H. had controlled the Regional Staffing Companies, and by claiming that the factoring debt of the Regional Staffing Companies was paid off in 2006, and by claiming that he believed the Nominee Companies were actual staffing companies.

22. On or about August 27, 2013, RONALD KEITH EARNEST gave false and misleading testimony before a federal grand jury investigating the nonpayment of payroll taxes by companies controlled by B.G.H. by claiming that he had been unaware of a 2009 attempted audit of payroll taxes for the Nominee Companies which he himself had commissioned, and by claiming that he did not know SC Bank had been factoring accounts of CMI, which was not a client of SC Bank.

All in violation of Title 18, United States Code, Section 371.

COUNT TWENTY-NINE

1. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 75 and 77 of Count One and paragraphs two through ten of Count Two as if fully set forth herein.

2. On or about January 16, 2009, SC Bank paid Funding Company approximately $3,281,362.60 for CMI and CMI of Iowa accounts receivable.

3. By in or around March 2009, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR had become aware that a significant portion of the $3,281,362.60 of the purchased accounts receivable were backed by invoices which had already been factored, funded, and collected by Funding Company and were therefore uncollectible.

4. Despite knowing that a significant portion of the $3,281,362.60 of the purchased accounts receivable were uncollectible, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR allowed those accounts receivable to remain on SC Bank's books as aging receivables.

5. Beginning in or around March 2009, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR diverted funds by making factoring advances against current accounts receivable of the accounts of the Nominee Companies to improperly pay off the uncollectible accounts receivable.

6. From in or around March 2009, continuing up to and including in or around September 2010, the exact date to the Grand Jurors unknown, in the County of Guilford, in the Middle District of North Carolina, and elsewhere, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, ROBERT THOMAS TAYLOR, B.G.H., and divers other persons, both known and unknown to the Grand Jurors, knowingly, unlawfully, and willfully combined and agreed together and with other persons to make and cause to be made materially false entries in the books, reports, and statements of SC Bank, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR being officers, agents, and employees of SC Bank, the deposits of which were insured by the FDIC, with the intent to deceive the officers and directors of SC Bank, the FDIC, and BOFI, and the agents and examiners appointed to examine the affairs of SC Bank, by creating false entries showing that the uncollectible and aging invoices had been paid, when, in fact, as Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR then well knew, such aging and unpaid invoices had not been paid by an actual staffing customer, but in fact had been marked paid through application of the proceeds of the CMI checks funded by factoring advances made by SC Bank for that purpose with the cooperation of B.G.H.; in violation of Title 18, United States Code, Section 1005.

MANNERS AND MEANS

7. It was a part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR would and did cause wire transfers from SC Bank to Global Labor in Greensboro, North Carolina, in the Middle District of North Carolina, of funds newly advanced to certain Nominee Companies.

8. It was a further part of the conspiracy that Global Labor would and did rapidly transmit the proceeds of such wire transfers to operating accounts of CMI.

9. It was a further part of the conspiracy that CMI, at the direction of B.G.H., would and did use a significant portion of these proceeds to fund the issuance of checks payable to Nominee Companies other than the ones to which the funds were originally advanced.

10. It was a further part of the conspiracy that the aforementioned CMI checks were transported to SC Bank and applied by Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR to pay off a significant portion of the aforementioned $3,281,362.60 of uncollectible receivables being carried by SC Bank as aging invoices over ninety days on the accounts of the Nominee Companies.

11. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR would and did cause entries in the books of SC Bank that falsely represented that the aforementioned uncollectible receivables were paid off with funds received to pay the associated original invoices when, in fact, the funds were the proceeds of new factoring advances made by SC Bank against unrelated invoices.

12. It was a further part of the conspiracy that Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR would and did conceal from the officers and directors of SC Bank, the FDIC, BOFI, and examiners charged with examining the books and records of SC Bank that Douglas Alan Corriher and SHANNON MICHELLE DRAKE in or about January 2009 had advanced approximately $3,281,362.60 in SC Bank funds to purchase CMI and CMI of Iowa invoices, many of which had either already been collected by Funding Company or which were false or otherwise uncollectible invoices.

13. It was a further part of the conspiracy that J.A., at the direction of B.G.H., would and did prepare checks which were funded by monies advanced against invoices of the Staffing Companies for the specific purpose of applying to old and unpaid invoices attributed to factoring pools set up by SHANNON MICHELLE DRAKE in the names of Nominee Companies.

14. It was a further part of the conspiracy that, upon receiving the checks made payable to one of the Nominee Companies at the offices of SC Bank, Douglas Alan Corriher and SHANNON MICHELLE DRAKE would and did direct that the checks be stamped "deposit only" and credited against uncollectible, aging, or unpaid invoices of the Nominee Companies at SC Bank despite the fact that the straw officers of the Nominee Companies had never seen the checks, had no knowledge of the issuance of the checks, and had not endorsed the checks.

15. It was a further part of the conspiracy that Douglas Alan Corriher and SHANNON MICHELLE DRAKE would and did then apply the funds from the checks on the CMI account to pay down aging and unpaid invoices carried in the accounts of the Nominee Companies, thereby in effect using SC Bank money to pay down debt to SC Bank in a circular manner, to allow both factoring advances to continue to B.G.H. on the invoices of the Staffing Companies and to conceal the aging and unpaid invoices from the officers and directors of SC Bank and from the FDIC, BOFI, and examiners charged with the examination and audit of SC Bank.

OVERT ACTS

16. In furtherance of the conspiracy to effect the objects thereof, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, ROBERT THOMAS

TAYLOR, B.G.H., and divers others, both known and unknown to the Grand Jurors, committed and caused to be committed overt acts in the Middle District of North Carolina and elsewhere, including, but not limited to, the following:

17. On or about April 6, 2009, B.G.H., or others under his direction and control, directed J.A., the controller of CMI, to prepare checks drawn on the CMI Bank of America account made payable as follows (collectively, "CMI checks"):

a. Check #52784 made payable to "Brooks Labor" for $210,709.65;

b. Check #52785 made payable to "Green Ideas" for $170,242.57;

c. Check #52786 made payable to "Medaloni, Inc." for $65,447.39; and

d. Check #52787 made payable to "Medaloni SC" for $68,969.96.

18. On or about April 8, 2009, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR directed that SC Bank make factoring advances against the invoices of CMI and CMI of Iowa in the amount of $400,000.

19. On or about April 8, 2009, Douglas Alan Corriher, SHANNON MICHELLE DRAKE, and ROBERT THOMAS TAYLOR caused a wire transfer to the Bank of America account of Global Labor controlled by B.G.H. with the agreement that B.G.H. would use the money advanced to pay down aging and unpaid invoices.

20. On or about April 8, 2009, upon receiving the $400,000.00 wire from SC Bank in the Global Labor Bank of America account, B.G.H. directed that Bank of America transfer $400,000.00 from the Global Labor account to the CMI account at Bank of America.

21. On or about April 8, 2009, J.A. provided the CMI checks to B.G.H., or someone working at B.G.H.'s direction, to physically carry the CMI checks to Douglas Alan Corriher and SHANNON MICHELLE DRAKE at the offices of SC Bank in Greenville, South Carolina.

22. On or about April 8, 2009, Douglas Alan Corriher and SHANNON MICHELLE DRAKE directed that the CMI checks were to be stamped "deposit only" and then credited against uncollectible, aging, or unpaid invoices at SC Bank.

23. On or about April 17, 2009, Douglas Alan Corriher and SHANNON MICHELLE DRAKE made false entries on the books and records of SC Bank marking certain aging and unpaid invoices as paid when, in fact, as Douglas

Alan Corriher and SHANNON MICHELLE DRAKE then well knew, such aging and unpaid invoices had not been paid by a staffing customer and in fact had been marked paid through application of the CMI checks funded by factoring advances made by SC Bank for that purpose with the cooperation of B.G.H.

24. On or about July 28, 2009, up to and including on or about July 29, 2009, ROBERT THOMAS TAYLOR prepared false entries on the books and records of SC Bank by preparing loan reviews that recommended renewal of factoring lines to the nominee companies as if the aging and unpayable invoices had in fact been paid by the clients of the nominee companies.

25. From on or about April 2009, continuing up to and including on or about September 2010, the exact date to the Grand Jurors unknown, Douglas Alan Corriher and SHANNON MICHELLE DRAKE made additional factoring advances to Global Labor with the agreement of B.G.H. that such funds would be paid to SC Bank by CMI checks made payable to Nominee Companies for the purpose of making false entries on the books and records of SC Bank that aging and unpaid invoices had been paid when, in fact, they had not been paid by any staffing customer or client.

All in violation of Title 18, United States Code, Section 371.

COUNT THIRTY

1. Paragraphs 1 through 75 and 77 of Count One are hereby re-alleged by the grand jury and incorporated herein by reference.

2. On March 27, 2013, in response to subpoena, RONALD KEITH EARNEST appeared before a federal grand jury sitting in Greensboro, North Carolina in the Middle District of North Carolina as part of the grand jury's ongoing investigation of Douglas Alan Corriher and his knowledge and facilitation of tax fraud by B.G.H.

3. On March 27, 2013, and again on August 27, 2013, RONALD KEITH EARNEST, after being duly sworn to tell the truth, provided testimony to the grand jury as to the factoring business of SC bank with B.G.H. and the knowledge of bank officers of the failure of B.G.H. to pay payroll taxes owed by the Nominee Companies.

4. On March 27, 2013, RONALD KEITH EARNEST, with the intent to obstruct or impede a judicial proceeding being the grand jury investigation as to Douglas Alan Corriher, knowingly provided false and misleading testimony material to the grand jury by:

a. denying that he had direct contact with B.G.H. at SC Bank and concealing from the grand jury that he in fact was the loan officer for B.G.H., concealing the fact that he met with B.G.H. on multiple occasions as

to the nominee factoring loans and personal loans to B.G.H. and concealing that he directed other SC bank officers to engage in nominee lending with B.G.H.

b. falsely testifying to the grand jury that factoring loans between SC Bank and the Regional Staffing Companies for the benefit of B.G.H. in 2005 and 2006 had paid out pursuant to the factoring agreements and that these transactions had "worked fine" and "raised no red flags" as to SC Bank factoring with the Nominee Companies in 2009 concealing from the grand jury that in fact the 2005 and 2006 factoring lines between SC Bank and the Regional Staffing Companies had not fully paid out and that RONALD KEITH EARNEST had required B.G.H. to be personally liable for over $200,000 in unpaid invoices.

c. testifying that he was not aware that B.G.H. controlled the Regional Staffing Companies until the criminal tax investigation of B.G.H., and concealing from the grand jury that he was well aware that B.G.H. controlled both the Regional Staffing Companies and their finances.

d. testifying that SC Bank and himself personally believed the Nominee Companies to be actual staffing companies with employees, clients and invoices thereby concealing from the grand jury that he and other bank officers were well aware that SC Bank was actually factoring invoices of the

Staffing Companies and that the Nominee Companies only existed to allow B.G.H. to borrow money over the LLL.

e. testifying that SC Bank and its officers were not aware that the bank was factoring invoices of CMI and CMI of Iowa when he and other officers of SC Bank were well aware that the bank was factoring invoices of CMI and CMI of Iowa.

5. On August 27, 2013, RONALD KEITH EARNEST, with the intent to obstruct or impede a judicial proceeding being the grand jury investigation as to Douglas Alan Corriher, knowingly provided false and misleading testimony material to the investigation of the grand jury by:

a. testifying that he had no knowledge that B.G.H. was not paying payroll taxes until the criminal tax indictment was returned against B.G.H. concealing from the grand jury that he was aware in 2009 that B.G.H. could not account for the payroll taxes due from his staffing companies.

b. testifying that he had no knowledge of a field audit of B.G.H.'s staffing companies by an auditor whose initials are M.C. and the failure of the field audit due to B.G.H.'s inability to account for payroll taxes.

6. From on or about March 27, 2013, to on or about August 27, 2013, in the County of Guilford in the Middle District of North Carolina, RONALD KEITH EARNEST did corruptly influence, obstruct and impede and endeavor

to influence, obstruct and impede the due administration of justice in regard to an investigation being conducted by a federal grand jury sitting in Greensboro, North Carolina by providing false and misleading testimony to the grand jury as to matters material to the grand jury's investigation as set forth in paragraphs 4 and 5 above.

All in violation of Title 18, United States Code, Sections 1503 and 2.

DATED: August 28, 2017

SANDRA J. HAIRSTON
Acting United States Attorney

BY: FRANK J. CHUT, JR.
Assistant United States Attorney

NATHAN P. BROOKS
Trial Attorney
USDOJ, Tax Division

by NPB

JEFFREY A. MCLELLAN
Trial Attorney
USDOJ, Tax Division

A TRUE BILL:

FOREPERSON

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA ) Greensboro, North Carolina
) November 9, 2017
vs. ) 9:34 a.m.
)
SHANNON MICHELLE DRAKE, )
) Case No. 1:16CR205-2
Defendant. )
__________________________________)
UNITED STATES OF AMERICA )
)
vs. )
)
RONALD KEITH EARNEST, )
) Case No. 1:16CR205-3
Defendant. )
__________________________________)
UNITED STATES OF AMERICA )
)
vs. )
)
ROBERT THOMAS TAYLOR, )
) Case No. 1:16CR205-4
Defendant. )
__________________________________)

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE WILLIAM L. OSTEEN, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: FRANK JOSEPH CHUT, AUSA
Office of the U.S. Attorney
101 S. Edgeworth Street, 4th Floor
Greensboro, North Carolina 27401

NATHAN P. BROOKS
U.S. Department of Justice
601 D St., NW, 7th Floor
Washington, DC 20004

JEFFREY A. MCLELLAN
U.S. Department of Justice, Tax Division
POB 972
Washington, DC 20044

APPEARANCES, Continued:

For the Defendant: Drake
CLAIRE J. RAUSCHER
ALLEN T. O'ROURKE
Womble Bond Dickinson (US), LLP
One Wells Fargo Ctr., Ste. 3500
301 S. College St.
Charlotte, NC 28202-6037

For the Defendant: Earnest
DEBORAH B. BARBIER
Deborah B. Barbier, LLC
1811 Pickens Street
Columbia, SC 29201

JOSHUA BRIAN HOWARD
Gammon, Howard & Zeszotarski, PLLC
115 1/2 W. Morgan St.
Raleigh, NC 27601

For the Defendant: Taylor
WES J. CAMDEN
CAITLIN M. POE
Ward and Smith, P.A.
POB 33009
Raleigh, NC 27636-3009

For the Movant:
JONATHAN ARTHUR BERKELHAMMER
Ellis & Winters, LLP
POB 2752
Greensboro, NC 27402

Also Present:
MARK C. MOORE
Nexsen Pruet
1230 Main Street, 700
Columbia, SC 29201

DAN BOYCE
Nexsen Pruet
4141 Parklake Avenue, Ste. 200
Raleigh, NC 27612

Andrew A. Mathias
Nexsen Pruet
55 E. Camperdown Way, Ste 400
Greenville, SC 29601

I N D E X

| WITNESSES FOR THE DEFENDANT: | PAGE |
|---|---|
| BRUCE PAUL ASHLEY | |
| Direct Examination By Ms. Barbier | 52 |
| Cross-Examination By Ms. Rauscher | 92 |
| Cross-Examination By Mr. Chut | 96 |
| Redirect Examination By Ms. Barbier | 99 |
| Recross-Examination By Ms. Rauscher | 105 |
| LAURA DILDINE | |
| Direct Examination By Ms. Barbier | 107 |
| Cross-Examination By Mr. Chut | 167 |
| Redirect Examination By Ms. Barbier | 168 |
| STEPHEN PETERSEN | |
| Direct Examination By Ms. Barbier | 171 |
| Cross-Examination By Ms. Rauscher | 185 |
| Cross-Examination By Mr. Chut | 199 |
| Redirect Examination By Ms. Barbier | 206 |
| Recross-Examination By Ms. Rauscher | 211 |

| EXHIBITS: | | RCVD |
|---|---|---|
| DX 3 | Letter from Ashley | 58 |
| DX 8 | Letter from Petersen to Barbier | 178 |

Court Reporter: Joseph B. Armstrong, FCRR
324 W. Market, Room 101
Greensboro, NC 27401

Proceedings reported by stenotype reporter.
Transcript produced by Computer-Aided Transcription.

P R O C E E D I N G S

(At 9:34 a.m., proceedings commenced.)

(Defendants present.)

THE COURT: I see I am vastly outnumbered this morning. You can call the cases.

MR. CHUT: Yes, Your Honor. This is United States of America versus Shannon Michelle Drake, 1:16CR205-2; Ronald Keith Earnest, 1:16CR205-3; and Robert Thomas Taylor, 1:16CR205-4; Ms. Drake represented by Ms. Rauscher, Mr. Earnest represented by Ms. Barbier and Mr. Howard, and Mr. Taylor represented by Mr. Camden. This is on for a status conference and a motions hearing, Your Honor.

THE COURT: Ms. Barbier, good morning.

MS. BARBIER: Good morning, Your Honor.

THE COURT: Let me start with you, if you'll -- we'll just go down the line so I make sure I know who everybody is seated at counsel table first.

MS. BARBIER: Yes, sir, Your Honor. It's a pleasure to be here. May it please the Court, Your Honor, seated next to me, of course, is Mr. Howard, my cocounsel. We both represent Mr. Ronald Earnest. He's seated next to Mr. Howard. Would you like me to introduce my -- the codefendants' counsel as well?

THE COURT: They can probably take care of that part themselves.

MS. BARBIER: Okay.

THE COURT: Ms. Rauscher?

MS. RAUSCHER: Good morning, Your Honor.

THE COURT: Good morning.

MS. RAUSCHER: Claire Rauscher for Shannon Drake. I'm joined here by my colleague, Allen O'Rourke, and Ms. Drake who is seated to my left.

THE COURT: All right.

MR. O'ROURKE: Good morning.

THE COURT: Good morning. Mr. Camden?

MR. CAMDEN: Wes Camden here on behalf of Mr. Taylor. I'm here with my colleague, Ms. Poe.

THE COURT: All right.

MR. CHUT: Your Honor?

THE COURT: Yes, sir?

MR. CHUT: I think Mr. Brooks has appeared in front of you, but to my right is also Jeff McLellan from the main Justice Tax Division.

THE COURT: All right.

MR. McLELLAN: Good morning.

THE COURT: Good morning. All right. We have a few things to do today, but the first thing we're going to talk about is how we proceed from here. As everybody knows, Judge Tilley recused himself from the case, so we have to -- at this point the case got sent to me, and, as the parties know, at

least with respect to Mr. Earnest -- is that correct?

MS. BARBIER: That's correct, Your Honor.

THE COURT: I'm going to hear what motions can be heard today to try to keep this case moving. But as I understand it, Judge Tilley had set a motions deadline for November 15 and then a trial date in March; and when I read his order, there was some -- I interpreted the language to suggest that even with the superseding indictment, the parties would have the option of maintaining the earlier motions to dismiss that have been filed or filing amended new motions or supplements. It wasn't entirely clear to me how we were proceeding with the motions that may need to be heard and filed as of November 15. And Judge Tilley is a genius, and that would work well for him, but I struggle sometimes in cases where we get a lot of motions filed dealing with the same issues in terms of putting the record together.

So with the superseding indictment that was issued, my preference would be to deny all motions that were filed prior to that, except for the ones we're going to hear today, without prejudice as moot, clean the record up from there, and then allow those motions to be refiled in accordance with the new deadlines. So I know, number one, exactly which motions we've got to deal with, and, number two, I don't run into people incorporating by reference materials from earlier motions and making it difficult sometimes to go back through

the record and figure out what applies. But before I did anything with that, I wanted to get the positions of the parties.

Mr. Chut, I think -- well, primarily it will be the defendants, because it's their motions, but does the Government have any position on this?

MR. CHUT: No, Your Honor.

THE COURT: All right. Ms. Barbier?

MS. BARBIER: Good morning, Your Honor. With respect to the deadlines that the Court has currently set, we believe, Your Honor, that we will need a brief extension of those deadlines --

THE COURT: We'll get to deadlines in a minute. First, I just want to get squared away on what I can do in terms of all those motions to dismiss that were previously filed and pending with respect to earlier indictments.

MS. BARBIER: With respect to the previous motions to dismiss that were filed, Your Honor, we have no objection to you mooting those and giving us permission to refile those.

THE COURT: Okay. Let me see what everybody else says. Ms. Rauscher?

MS. RAUSCHER: Your Honor, as to the motions that were filed on behalf of Shannon Drake, actually at the last hearing we withdrew all of those motions in light of the superseding indictment because things got a little confusing,

so we have no objection to your plan.

THE COURT: All right. Mr. Camden, I don't even know whether you all filed --

MR. CAMDEN: We don't have anything pending Judge.

THE COURT: Okay. So it's just Mr. Earnest. All right. Then, Ms. Welch -- I didn't bring the numbers with me, but let's see when that superseding indictment was filed. Was it the end of October?

MR. CHUT: It was August 29, 2017, Your Honor.

THE COURT: All right.

MR. CHUT: Document 85, Your Honor.

THE COURT: Thank you. All right. So, Ms. Welch, I'm going to -- well, I can't deny them all prior to August 29 because that will moot some of Mr. Earnest's motions. So at this point -- let's see what's the best way to say this. I'm going to deny without prejudice all motions previously filed in this matter as moot except -- let me run through my list -- except for Documents 103 and 113, which is the Defendant Earnest's motion to preclude disclosure of privileged materials -- excuse me -- that's Document 98 and 119; the motion to seal, Document 100; Defendant Earnest's motion for discovery and disclosure, that's Document 101; Defendant Earnest's motion to compel, Document 106; and all defendants' joint motion for access to sealed pleadings, Document 108; Defendant Earnest's motion for an ex parte hearing,

Document 115; and then Defendant Earnest and Taylor's joint motion for access to sealed pleadings, Document 117. And I think Documents 108 and 117, the joint motions for access to sealed pleadings, all related to the same document. So they're actually the same motion with different parties involved.

So if I keep those motions pending, does that work for Mr. Earnest?

MS. BARBIER: It does, Your Honor. In addition to that, there was one motion filed on November 6 by Mr. Earnest, motion to compel the return of privileged documents. That's Document 120 on ECF.

THE COURT: That will remain pending.

MS. BARBIER: Thank you.

THE COURT: All right. Everybody okay with that? All right.

MS. RAUSCHER: Your Honor, there is one more. We move to join the motion for ex parte hearing, and that's Document No. -- I apologize -- 122 and 123.

THE COURT: All right. I'll leave that -- I'll leave that pending as well. All right. So that takes care of that.

Now, you needed additional time, so you wanted to change that November 15 deadline?

MS. BARBIER: Well, Your Honor, we believe that there will be testimony in the hearing both today and whenever Your Honor should decide to have the testimony related to our

motion, and we will need to get a transcript of that -- of this proceeding and incorporate some of that testimony, I believe, into some motions that we'll be filing, and so we've asked, for that reason, for a brief extension.

THE COURT: All right. Have you made arrangements with the court reporter? Do you know how long it's going to take, expedited or regular or --

MS. BARBIER: We can do that, Your Honor, and will do that today --

THE COURT: Okay.

MS. BARBIER: -- depending upon --

THE COURT: Let me ask Mr. Armstrong. We can go off the record for a second.

(Discussion held off the record.)

THE COURT: Let's see. Today is the 9th. So we'll say through the 16th to get the records. Is the 23rd Thanksgiving? I don't mind making you all work over Thanksgiving. How about the 27th? Mr. Chut, Mr. Brooks, any issue with extending the pretrial motions deadline to November 27?

MR. CHUT: No, Your Honor.

THE COURT: All right. November 27?

MS. BARBIER: That works, Your Honor.

THE COURT: All right. So we'll move the pretrial motions deadline to the 27th. What did you all have in the way

of response time? Is it a week, two weeks, three weeks?

MR. CHUT: We had two weeks before, Your Honor, so two weeks should be adequate.

THE COURT: All right. So pretrial motions will be due on or before Monday, November 27, and that will put responses due -- I'm going to push it out a little bit and make responses due Wednesday, December 13. Yes, ma'am?

MS. RAUSCHER: Your Honor, my understanding is at the last hearing with Judge Tilley, Mr. Taylor has different motions deadlines than we do, and in thinking this through right now --

THE COURT: Was he arraigned late? Did he get like a standard calendar or something?

MR. CAMDEN: He did have a standard calendar at that hearing. He was the most recently added defendant. Because we were new to the matter, I think Judge Tilley decided to give us a little bit of extra time to look at the pretrial motions. He set our deadline for December the 13th.

THE COURT: Okay.

MS. RAUSCHER: In thinking this through, Your Honor, and because there has been, as you know already, motions to join other defendants' motions, it might, just for efficiency purposes, have the same deadline for all of us because -- well, I foresee what may happen. Mr. Taylor may file a motion that I want to join that would be appropriate, so that's my only

concern.

THE COURT: I can move him back. You all have had a chance to see the discovery now?

MR. CAMDEN: We have had the discovery, Your Honor.

THE COURT: Will November 27 work, or do I need to push it out?

MR. CAMDEN: I think we would prefer to have the deadline we have right now.

THE COURT: Yeah, of course. Mr. Chut, so it would be the 13th and then -- we'll say the 13th, and I'll say December 29 for responses.

MR. CHUT: Okay. Thank you.

THE COURT: Is that good? All right. Then I'll make everybody's motions deadline December 13, and responses will be due on or before December 29, 2017.

All right. At this point do the defendants anticipate any new motions to dismiss, or do you anticipate they'll be similar to what's previously filed?

MS. BARBIER: We do anticipate new motions to dismiss, Your Honor.

THE COURT: All right. I'm trying to -- I'd like to go ahead and set up a motions hearing day. Does the Government anticipate filing any motions?

MR. CHUT: Not at this time, Your Honor.

THE COURT: All right. Let's jump ahead to the trial

date. I had a March date in mind from what was previously set, and I'm willing to work within the parameters of what have been previously established. How long do you think it will take to try this case?

MR. CHUT: Two to three weeks, Your Honor.

THE COURT: Two to three weeks?

MR. CHUT: Yes, Your Honor.

THE COURT: Do you all agree with that?

MS. BARBIER: That sounds about right, Your Honor.

THE COURT: Everybody?

MS. RAUSCHER: It does, Your Honor.

MR. CAMDEN: Yes, Your Honor.

THE COURT: All right. How does March 5 sound for a trial date?

MR. CHUT: That's good for the United States.

MS. BARBIER: We don't object to that, Your Honor.

MS. RAUSCHER: That's fine with us, Your Honor.

MR. CAMDEN: No objection to that, Your Honor.

THE COURT: All right. So we'll set a trial date for March 5. A pretrial motions hearing date. So December 29 the motions will be in. I've got the January civil master, and January 8 I've got something set. I'm going to tentatively set two days aside for motions hearings on Thursday and Friday, February 1 and 2. That's tentative. I've got to look at some other calendars and make sure I can make that work, and we may

not need the full two days after we've seen the motions that are filed, but we'll address motions. For now, we'll go ahead and set it for February 1 and 2.

Let me see. Ms. Welch, have you got anything for me February 1 or 2?

THE CLERK: No, sir, nothing.

THE COURT: All right. February 1 and 2, but -- I'm not going to confirm that, but I will, hopefully by the first part of January, have a better idea of whether those dates will work for me. I'm reasonably confident they will. If not, we'll stay in that general area, and that will give me time to review the motions and be ready to move forward.

All right. While we have everybody here, and before we turn to Mr. Earnest's motions, is there anything else I need to address with the remaining parties? Mr. Chut?

MR. CHUT: I don't believe so, Your Honor.

THE COURT: All right. Let's see. Anything from you all's side?

MS. RAUSCHER: No, Your Honor.

THE COURT: Mr. Camden?

MR. CAMDEN: Nothing, Your Honor.

THE COURT: All right. Let's see. Ms. Rauscher, you all have moved to join Mr. Earnest's motions. I guess we ought to talk about the disclosure because it looked like everybody was having trouble getting to the sealed pleadings, so let's

talk about that before I start excusing parties.

Mr. Chut, in looking at the pleadings that they -- defendants couldn't get access to, I think there was some attachments, like grand jury information and other stuff, but it didn't look like anything the defendants wouldn't be getting during discovery anyway. So was there any reason the Government had to exclude certain defendants from viewing the material?

MR. CHUT: No, Your Honor. The purpose wasn't really to exclude other defendants. We had to file it under seal and -- based on policy to protect the grand jury materials. But we have no objection to the motion, Your Honor. The Court's correct that basically the defendants have this information already all individually, so there's no risk of anything going to the actual defendants.

THE COURT: All right. And there was some mention that the Clerk's Office couldn't make CM/ECF provide access to everybody? Is that what the problem was?

MR. HOWARD: Your Honor, if I may, I've led the charge on our side with regard to that. I'm convinced that CM/ECF has some bugs, at least as to this case. A recent manifestation of that was as recently as yesterday when Mr. Chut filed a sealed response, when you read that docket entry, it says, "Sealed response to motion by USA, Ronald Keith Earnest as to Ronald Keith Earnest." When you read that

docket entry, it looks like we filed a motion against ourselves in joinder with Mr. Chut. That's clearly some sort of ECF misfunction that -- we can work through it with the Clerk's Office. I don't think we need the Court to address that, but it's out there; and if the Court might just give us permission, sort of a standing order, whether oral or written, for the defense attorneys to share their sealed pleadings with each other moving forward, that would be helpful.

THE COURT: Yeah, it doesn't sound like there's a problem with that. Here's the thing, though. If things can go wrong, they will go wrong; and if somebody doesn't get a pleading, through accident or otherwise, then we have the issue of who is responsible for getting the pleading to them.

So I think we'll start out this way, unless the Government objects. I'll authorize defense counsel when served with a sealed pleading to provide that pleading under seal to cocounsel -- to codefendants' counsel in the case, but no further disclosure is permitted as would be the same with any other sealed document. Any objection to that, Mr. Chut?

MR. CHUT: No, Your Honor.

THE COURT: All right.

MR. HOWARD: Your Honor, if I may, one point of clarity on that. That sounds to me like we're free to share our pleadings with other defense attorneys, but does that include a sealed response or motion by Mr. Chut that was

otherwise just served on --

THE COURT: I was thinking it would be the whole series. Are you good with that, Mr. Chut?

MR. CHUT: Yes, Your Honor.

THE COURT: Yeah, any sealed pleading -- any motions, responses, or replies that are filed under seal may be shared between counsel for the codefendants in this case. No further disclosure is permitted without -- as would be the case with any other sealed document.

I don't really know what to do to cure the bugs. CM/ECF and sealed documents are like an allergic reaction to each other. It's awful. If we need to do it at some point, we might be able to set up a miscellaneous file, but we may have to go to hand service if we have -- we may have to go to hand service or service by mail or email.

MR. CHUT: And, Your Honor, I noticed the same bug that Mr. Howard did. Smith Moore filed a motion to quash, and in CM/ECF it came up as "By Mr. Earnest," which was kind of confusing.

THE COURT: I see this with more frequency than I would like, and it's particularly in -- it seems particularly isolated to criminal cases. You'll get sentencing pleadings filed by the defendant, and they'll show up on the docket as having been filed by the Government, and vice-versa, and it's bizarre. It's going to take a while to work all that out, but

we'll let you all share pleadings and make sure everybody gets a copy of it.

All right. Anything else we need to address while everybody's present? Then if not, let's see. Mr. Camden, I guess you and Mr. Taylor can take off if you would like. Ms. Drake -- I mean, you don't have to leave if you don't want to, you're welcome to stay, but there's no -- at this point I'm going to deal with Mr. Earnest's motions, and we'll also address the issue of Ms. Drake joining in the motion.

All right. So starting out, there are a couple of issues. Is Mr. Berkelhammer here today with his clients? There he is. Good morning, Mr. Berkelhammer. So we have two motions to suppress -- or not suppress -- two motions to quash the subpoenas. At this point those motions are for Mr. Medford and the paralegal and -- maybe there were three -- and a lawyer with Smith Moore.

MR. BERKELHAMMER: There was a motion to quash the subpoena with respect to Mr. Medford on health reasons. There was a motion to modify the subpoenas issued to Smith Moore and several of its attorneys and a former attorney and former employee with respect to the scope of the subpoena issued by the Government.

THE COURT: Okay. All right. So here's what we're going to do first. We're going to talk about a couple things behind the courtroom briefly. One of them will be we're going

to figure out how to handle the information provided about Mr. Medford outside the presence -- out -- well, it's not going to be a closed session, but we're going to figure out how to proceed with that. We're going to talk about one other issue, and then we're going to come back.

And it seems to me the order to proceed -- Ms. Rauscher, first, I need to hear more from you in terms of joining in Mr. Earnest's motion. Then it seems to me the first issue is whether or not there was or existed an attorney-client -- or the first issue in dispute is whether or not there was an attorney-client relationship between Mr. Earnest and Smith Moore with respect to the work that was done for the bank. Then if there was an attorney-client relationship, go to the second issue in that chain, and that is the question of what documents are privileged. Then we'll go to the third issue, or related issue, we'll call it, and that is have any privileged documents been disclosed to the Government?

So we first have to decide whether there was a privilege; if so, to what did that privilege attach; and if it did attach to certain actions, have those -- has that information been shared with the Government? Then if we get through those, we'll have to figure out what to do about it if we get there. Does that sound about right, Mr. Chut?

MR. CHUT: Yes, Your Honor.

MS. BARBIER: It does, Your Honor.

THE COURT: All right. Let's take about a 15-minute recess, and let me see counsel for the Government, two would be plenty, two for Mr. Earnest, and, Ms. Rauscher, if you and cocounsel want to come back, six is plenty. Oh, and I want to see Mr. Berkelhammer, too. So six is plenty. We'll be in recess for 15 minutes.

(At 9:58 a.m., break taken.)

(At 10:15 a.m., break concluded.)

THE COURT: All right. Step one in today's process, as I indicated earlier, we have a motion to quash a subpoena that was issued to Mr. Medford. Initially, after speaking to counsel and reviewing some of the information that's been provided by Mr. Berkelhammer on behalf of Mr. Medford, what we are going to do now going forward is before we proceed with any evidentiary hearing, Mr. Berkelhammer has graciously agreed to make Mr. Medford available for a brief interview by counsel for everybody to try to get some sense of what the next step should -- can and should be in terms of moving forward today with the hearing. So we're going to recess court for 20 minutes or so, and the counsel that I met with back in the conference room as well as Mr. Berkelhammer and -- are going to interview Mr. Medford briefly.

I've given some preliminary comments as to the way that I view the privilege issue, and, as I indicated earlier,

the first issue is the question of whether or not an attorney-client relationship existed. At this particular point, I am not persuaded that the facts that would or would not establish the existence of an attorney-client privilege are not themselves privileged.

So I've agreed that the lawyers -- or instructed the lawyers may be a better way to put it -- that the interview is not to involve any substantive communications that Mr. Medford may have had with respect to the transactions at issue and that type of thing, but the parties may ask some questions, to the extent appropriate, with respect to Mr. Medford's recollection of those facts that may relate to the establishment of the attorney-client privilege.

Ultimately, when we come back in, I will -- I neglected to address this, but I will have to address further this question of ex parte issues and that type of thing in terms of this attorney-client relationship, but we'll address that when you get back.

Mr. Chut, any disagreement or objections with what I just outlined?

MR. CHUT: No, Your Honor. If I could ask that Mr. McLellan also participate.

THE COURT: He can.

MR. CHUT: Thank you, Your Honor.

THE COURT: Mr. Howard, Ms. Barbier?

MS. BARBIER: No objections to that Your Honor.

THE COURT: Ms. Rauscher?

MS. RAUSCHER: No, Your Honor.

THE COURT: All right. Let's stand in recess for 20 minutes.

(At 10:18 a.m., break taken.)

(At 10:46 a.m., break concluded.)

THE COURT: All right. Let's see where we stand at this particular juncture. So, Mr. Howard, Ms. Barbier, whoever wants to tell me where you think we need to go from here with respect to Mr. Medford.

MS. BARBIER: Your Honor, with respect to Mr. Medford, his attorney was gracious and allowed us to speak with him during the break as Your Honor suggested. We are comfortable, Your Honor, proceeding by allowing his attorney to proffer into the record what Mr. Medford would say if he was called as a witness, and it would be very brief, and we would be comfortable excusing him as a witness, provided that can be done and we can protect the record so the record reflects why he was not called as a witness.

THE COURT: Mr. Chut, Mr. Brooks, whoever wants -- do you want to hear the proffer first and then see where you stand?

MR. CHUT: Yes, Your Honor.

THE COURT: All right. How about we do that?

Mr. Berkelhammer, let me ask you to step forward then, and tell me what you would proffer if Mr. Medford were called as a witness.

MR. BERKELHAMMER: Thank you, Your Honor. If Mr. Medford were called as a witness, he would testify that he does recall --

THE COURT: You'll have to get in front of a mic. Either table will be fine, and we'll just start over. Just keep your voice up as long as you're standing in front of it.

MR. BERKELHAMMER: Thank you, Your Honor.

Mr. Medford would testify that he does recall GrandSouth Bank as a client of the firm of Smith Moore Leatherwood, but he has no memory of what he did for GrandSouth Bank. He recalls the names "Ronald Earnest" and "Shannon Drake," but he does not recall any work done with or for them. He does not recall the work for some of his other -- for his other clients or does not recall really his other clients.

THE COURT: All right. Mr. Chut?

MR. CHUT: If I may briefly, Your Honor?

THE COURT: Um-hum.

MR. CHUT: That would be acceptable to the United States, Your Honor.

THE COURT: All right. We'll accept his proffer then and excuse him from any further responsibility under the subpoena. Mr. Medford will be here. If anything comes up or

we need to pursue this matter further, let me ask all counsel to speak to Mr. Berkelhammer first before you subpoena Mr. Medford and see if you can work out a way to address it if additional information becomes necessary.

MR. BERKELHAMMER: Thank you, Your Honor.

THE COURT: All right. Hold on. You're not going anywhere just yet. Now we have to talk about the other two motions with respect to the Government's subpoenas. Let me see if I have that. Oh, I'll tell you what. Let me see Mr. Earnest -- is it Earnest or Earnest?

MS. BARBIER: It's Mr. Earnest, Your Honor.

THE COURT: Earnest, thank you. All right. Let me see Government counsel and Mr. Earnest's counsel and Ms. Drake's counsel up here at the bench.

(Bench conference as follows:)

THE COURT: Those are the microphones obviously, so position yourself in front of a microphone as best you can.

My law clerk reminded me, I had forgotten this, and she mentioned it when we got back downstairs. She was a summer law clerk for Smith Moore working for Rick Coughlin. She didn't know anything about -- didn't have anything to do with this case, and at this point I don't see that she's got any reasons to stay out of this case. She didn't do anything, doesn't have any knowledge. But, there again, my preference is to put everybody on the same playing field. Anybody got any

questions about that?

MR. CHUT: No, Your Honor.

MS. BARBIER: No, Your Honor.

THE COURT: All right. Thank you. You can step back, unless you had something you wanted to say. All right.

(Bench conference concluded.)

THE COURT: Let me see if I can find the rest of these -- all right. So the motion to quash and modify. This motion indicates that Bruce Ashley, Stephen Petersen, Jim Medford's subpoena has been taken care of, and Kathy Hawkins have been subpoenaed and requested -- and there is a request to produce documents, and Smith Moore Leatherwood indicates there were discussions with the United States about narrowing the scope of that production, but no final agreement has been reached.

So, first of all, is there any final agreement at this point, or are we still --

MR. CHUT: I don't think there's a final agreement, Your Honor. Mr. Berkelhammer pointed out to me that Smith Moore -- I guess the Leatherwood firm had represented GrandSouth Bank for a number of years, which I was unaware of. So I agreed, Your Honor, to limit production to about an 18-month period that was focused on this, but I don't think we had a final agreement on that, Your Honor.

THE COURT: All right. So we have 2012 to 2016 is

kind of the relevant period that keeps getting mentioned in terms of Mr. Earnest's motions. What's the 18-month period?

MR. CHUT: I had thought, Your Honor, at least for purposes of this hearing that September of 2012 to December 14 would have been adequate for the purposes of this hearing.

THE COURT: Okay. All right. Let's see. So, Mr. Berkelhammer, if that limitation is in place, does the objection remain?

MR. BERKELHAMMER: It does, Your Honor. It's not just the time frame, but it's the subject matter of the subpoena. I think topic one is an easy example. I'll do this. It asks for any representation/engagement letter/agreement between Smith Moore Leatherwood and GrandSouth Bank as to legal representation of GrandSouth Bank. I assume that's by Smith Moore Leatherwood. That's unrestricted to the matter that I understand this proceeding is about. It could go back 20 years searching for engagement letters. So we would like to limit these to the subject matter, which is, as I understand it, the representation of Smith Moore with respect to either grand jury subpoenas to the bank or to these two individuals.

THE COURT: I think it would probably extend a little further than that in terms of relevance because -- I don't know that it will go back to Harrison. Maybe. I'm not clear on that. But it does look like -- was the Harrison case finished in 2012?

MR. CHUT: 2011, Your Honor. He was sentenced in 2012, Your Honor.

THE COURT: So 2012 we get this investigation of Corriher?

MR. CHUT: Yes, Your Honor.

THE COURT: And then that -- between the time frame of 2012 to 2016, the investigation of Corriher expands to other officers. So I would phrase it in terms of relevance as these representation, engagement letter, et cetera, et cetera, as may relate to Smith Moore Leatherwood's representation of GrandSouth Bank during the period of 2012 to 2016 as that representation related to the grand jury -- any grand jury investigation of Corriher, and then subsequently that would have extended out to Earnest, Drake, and -- I guess Taylor came along after 2016.

MR. CHUT: Yes, Your Honor.

THE COURT: Okay. So it would be Earnest and Drake. Is that --

MR. BERKELHAMMER: For that time period of September 2012 to December 2014?

THE COURT: Um-hum -- 2016, I think, is when Smith Moore stopped representing GrandSouth Bank and Nexsen Pruet began its representation. I can't remember the month in there. Does that sound fair to you, Mr. Chut?

MR. CHUT: Yes, sir, it does.

THE COURT: Does Mr. Earnest or Ms. Drake want to be heard on that limitation?

MS. BARBIER: No, Your Honor. It was July of 2016 that Nexsen Pruet stepped in.

MS. RAUSCHER: That is correct, Your Honor.

THE COURT: All right. I guess the same limitation as to request number two?

MR. BERKELHAMMER: Yes, Your Honor, and with respect to three --

THE COURT: Three and four, same limitation, I think.

MR. BERKELHAMMER: I think so, Your Honor. We have a second sort of sub-issue with three and four. The invoices contain attorney-client privileged information. They are reflections of work done and communications and things like that. So the subject matter -- it's not just a time frame with respect to the invoices, it is the subject matter of those invoices.

THE COURT: All right.

MR. BERKELHAMMER: And we have multiple people claiming a privilege over the contents of those invoices, and so we have to assert the privilege for everyone who's claiming to be a client, which I understand is part of the focus of this hearing, but we cannot turn those over voluntarily unless, A, everybody who claims to be a client consents, or, B, some court tell us otherwise.

THE COURT: All right. It might be helpful -- you can have a seat, Mr. Chut, for a moment. It might be helpful at this point since this issue is going to continue to arise to tell everybody where I preliminarily stand with respect to this privilege question. I understand that generalizations can sometimes hurt more than they help, but we've got to start somewhere. As I see it, based on what's been presented, there's a question of what's privileged and non-privileged.

So in *Chaudhry versus Gallerizzo*, 174 F.3d 394 at 402, 403, the Fourth Circuit in 1999 suggested that things such as the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. But if any such records reveal a litigation strategy or reflect which statutes were researched, then it may be privileged, and they were citing *Clark versus American Community National Bank*, 974 F.2d at 127.

You can also take a look at *In Re: Grand Jury Proceedings*, 33 F.3d 342.

The Eighth Circuit in *Diversified Industries versus Meredith*, 572 F.2d 596, had stated that the mere fact of legal representation is not privileged from disclosure, nor are the dates, times, and places of communication with an attorney.

Those facts -- let's see. There was another case

that I was looking at. This is *In Re: Grand Jury Proceedings*, 33 F.3d at 342. I'm not quite -- yeah, I told you about that one. In that case, the district court held that the billing records, expense reports, and travel records of counsel are not generally privileged as the attorney -- as attorney-client communications. The privilege does not normally extend to the payment of attorneys fees and expenses. Then it goes on to cite some cases. Fee information -- fee arrangement information revealing the date and amount of payments and the identity of persons making the payments are not privileged because these facts reveal nothing about the advice sought or given. Fee arrangements are not -- attorney-client Sixth Amendment do not prohibit disclosure of fee arrangements between attorneys and clients.

So there are some facts, as I see it, that are not protected here, and it may be that a bill is a hybrid of the two, and I think the only way that I can address that at this point would be, with those parameters in mind -- I'm not saying -- telling you when to object and when not to object. I'm just outlining for you if you object and disagree with what I've described here, then you better bring some case law in to explain it. But it would seem to me that if we get to a document with one of these witnesses that you object to or you object to at least parts of, I'm going to have to take a look at it and then make a decision as we go along as to whether or

not I agree that it's protected. Do you feel otherwise about that?

MR. BERKELHAMMER: I do, Your Honor. It's our view that the billing entries, the descriptions of the work performed and what was being done, revealed, A, communications --

THE COURT: Well, I think what I read to you would allow some latitude in terms of asserting privilege on that.

MR. BERKELHAMMER: And my concern, Your Honor, is that if -- if they already had those documents and wanted to talk about them, that's one thing, but I don't believe the Government has those documents. I don't know. But if the subpoena compels me to turn them over, once I do that, my line by line objection doesn't go very far.

THE COURT: Okay. I'm not making myself very clear. To the extent there's an objection, I think step one is I have to take a look at it first and resolve the objection. I've given you some parameters to say unless you convince me otherwise, you're not going to prevail on an objection to these types of items that are in these cases. At least one of the cases makes some allowance for things that might be revealed in the communication about the billing, and I think I've got to go through those piece by piece before they get turned over.

MR. BERKELHAMMER: Yeah, we were happy to provide those to the Court in camera for in-camera inspection.

THE COURT: Well, don't let me start going through there and finding a bunch of stuff I don't think is protected, if that makes any sense to you. I know the preference would be to give me all of it. How much are we talking about?

MR. BERKELHAMMER: Well, 18 months, so 18 invoices. Each one could be anywhere from 7 to 15 to 20 pages long, depending on the time frame we're talking about.

THE COURT: Any other records besides the invoices you contend are subject to GrandSouth Bank's objection?

MR. BERKELHAMMER: I don't believe so, Your Honor.

THE COURT: Just the invoices?

MR. BERKELHAMMER: I'm happy to hand up one for the Court to begin to get a feel for what it looks like for the inspection. Then the Court may be able to tell me --

THE COURT: Let me take a look at one right now. Any objection to that?

MS. BARBIER: No, Your Honor.

MR. CHUT: No, Your Honor.

MS. BARBIER: I might add for the record, Your Honor, we take the position that the -- we have about 12 months of those 18 months of invoices my client had. We take the position they are privileged. I think when Your Honor sees them, you'll understand why we take that position. We've looked at the case law, the *In Re: Grand Jury Proceedings* case, and the Fourth Circuit's position on invoices, and I can tell

you that these particular invoices are extraordinarily detailed, and we wanted the Court to look at these in camera, to begin with, because we believe they support our position that an attorney-client relationship existed between Mr. Earnest and Smith Moore. They detail legal advice that they are giving him. And so we think that an in-camera review is absolutely appropriate, but we would object to the Government having these invoices. They detail mental impressions and thought processes and strategic decisions that were made during this investigation --

THE COURT: Before we get to Mr. Earnest's invoices, let me deal with these first.

MS. BARBIER: They're all the same, Your Honor.

THE COURT: Do you have the one he's handing up?

MS. BARBIER: Yes.

THE COURT: I mean, you've got 12 months, they've got 18 months, right?

MS. BARBIER: Right, and they're the same ones.

THE COURT: All right. Let me look at this first, and then we'll figure out what to do with the rest.

MR. BERKELHAMMER: May I approach, Your Honor?

THE COURT: You may. You don't need to ask.

MR. CHUT: Your Honor, GrandSouth Bank is the victim in this case, Your Honor. They have not only the president of GrandSouth Bank, but the chairman of board and their own

counsel are here, and I do not believe -- Smith Moore is not representing GrandSouth Bank. So GrandSouth Bank can speak for itself, Your Honor, as to its privilege, Your Honor.

THE COURT: Who's with GrandSouth Bank? Mr. Boyce?

MR. BOYCE: Good morning, Your Honor.

THE COURT: How are you doing?

MR. BOYCE: Dan Boyce. I am here on behalf of GrandSouth Bank with my colleagues Mark Moore and Andrew Mathias. They're from our South Carolina offices. I'm relatively new into this case, but licensed to practice here, so they asked me to give you an overview if you --

THE COURT: All right. Before you do that, let me just short-circuit it. Has Mr. Berkelhammer said anything that you disagree with in terms of GrandSouth's assertion of the privilege as to these documents?

MR. BOYCE: I will let Mr. Moore directly respond to that one question.

THE COURT: All right.

MR. MOORE: Good morning, Your Honor. We don't disagree that GrandSouth Bank believes that there's a privilege that attaches. We brought all the -- Mr. Chut subpoenaed a number of those documents from us as well. We told Mr. Chut yesterday that we brought all the invoices, not just that 18 months, but all of them.

THE COURT: Okay. But very specifically, is

GrandSouth objecting to --

MR. MOORE: We do not.

THE COURT: Do not object.

MR. MOORE: We object to the production of those documents, yes, we do.

THE COURT: Okay. But no objection to my review at this point?

MR. MOORE: Absolutely none, Your Honor.

THE COURT: All right.

(A short pause.)

THE COURT: Yes, ma'am?

MS. RAUSCHER: Your Honor, I always feel like I'm throwing a monkey wrench into this matter. But as I explained earlier, Smith Moore Leatherwood represented Shannon Drake. I have not seen any of these invoices. But based on information that has just been given, I assert attorney-client privilege over probably notations regarding Shannon Drake in these bills. Granted, I've never seen them, but I can prove they represented her, and I'm sure that there are notations in there; and if they are what Ms. Barbier says, that they involve matters of impression and strategy, I just want to make it clear for the record that we object to the Government being provided with these as well.

MR. CHUT: Your Honor?

THE COURT: Yes.

MR. CHUT: Matter of a point of clarity. My understanding is, you know, one of the basic concepts of the court is motions are filed, and the Government has a chance to respond. I do not understand Ms. Rauscher -- I understand her ex parte motion, I think, joining the ex parte motion. I do not understand her to have filed a separate motion on privilege for Ms. Drake. If she wants to do that, that's great, Your Honor, with your blessing obviously, but we've not had a chance --

THE COURT: We're not going to address that today.

MR. CHUT: Yes, sir.

THE COURT: I didn't understand anything to have been filed to assert a privilege, and I don't know what we're going to end up addressing today, quite candidly.

All right. Let me -- there's been a lot of attention paid to rules, regulations, and cases on disclosure of the attorney-client privilege, but I'm beginning to reach a conclusion that this is a little premature, and I'll give you an example from a bill.

So this bill is addressed to someone and also designated to someone's attention, and presumably this bill ultimately got paid. So at this point I don't know that I would find the bill to be a confidential communication. I don't know. In terms of the dates and some of the information contained in the bill, I don't -- I mean, it reflects a

communication with the United States of America. So there's nothing confidential about the fact of that communication, just as one example.

A bill that reflects communications with third parties, even if it's a summary, doesn't seem to me to be a confidential communication, nor is a billing record of that confidential. There are some -- there is some information in here in these bills that may arguably be a little bit more than you might see in a standard -- well, I won't say standard, I mean, everybody does their billings differently -- but it's relatively extensive in terms of what was being researched, and that type of thing, and that may very well be something substantive that's confidential, unless somehow the process of paying the bill somehow resulted in a waiver of that privilege. I don't know those facts.

So I'm -- we've been at this this morning, but I'm getting really concerned that we're in a situation where there have been general objections lodged, but the specifics have not been addressed, in part, because -- well, everything's unfolded rather quickly for one thing.

Number two, these records are just now getting to the point where the Government has requested them, not that they should or could have done it earlier. The Government is in a little bit of a difficult situation in that apparently a bunch of information was turned over by GrandSouth Bank in terms of

the internal records and documents, but now there's more that's become an issue in this case.

Is there anything we can do today without the records, if we're just talking about billing records? We've got witnesses here and present. Is the Government going to need to get the record issue resolved and the motion to quash before any evidence is presented?

MR. CHUT: Depending, Your Honor, what -- depending on what the Court allows. I think as to the issue -- the United States if -- when it puts on evidence would have put on -- intends to put on the president of GrandSouth Bank to testify that GrandSouth Bank paid the bills. I was not intending to confine my conversations with the GrandSouth Bank's attorneys to ask anything beyond that of President Schwiers. I think the United States does have a right to look at the invoices before the Court makes a decision.

And I think, Your Honor, the -- sort of the rule of particularity would be of help. There's been sort of a very blanket assertion of privilege, the Government contends sometimes sort of a cart-before-the-horse assertion of privilege, and I think the objections to what's in the bill, considering the general fact the bills themselves are generally not privileged, would be the way to approach this. If there's something that's objectionable or is privileged, then it can be struck out, Your Honor, or redacted, but --

MR. BERKELHAMMER: Your Honor, if I might be heard just briefly, just for the Court's consideration. Even though there are entries that describe communications with the Government or some other person, we have a work product -- whoever claims to be a client has a work product privilege, and how that communication gets recorded down by the lawyer reveals the lawyer's -- may reveal the lawyer's mental impression --

THE COURT: You see that some, but I think there are clearly entries that don't do that. I've seen one entry -- I mean, as an example, I've seen one entry of both at this point. One that talks about the communication with a third party and, you know, what the lawyer was asking the third party about, and it's a tricky third party. Then I see one communication where Medford calls an assistant United States Attorney. That -- I mean, you'll have to really convince me that that's privileged information there. And there's no accompanying mental impressions of an attorney.

We've got the additional issue, Mr. Berkelhammer, that putting mental impressions in a bill is not completely indicative, in my mind, of protecting the information and intending to keep it confidential, because nobody knows who's going to see a bill at the end of the day, and it may or may not be an individual whose employment and authority within the client is sufficient that privilege would attach to their review, if that makes any -- if you understand what I'm saying.

So there's a host of issues -- this is -- all right. So the Government says we're going to put the bank president up, but we really want to see the bills. What about any of the other Smith Moore lawyers? I mean, is billing --

MR. CHUT: I would ask, Your Honor, one thing we did subpoena was billing numbers. We understand that Smith Moore has certain billing records to identify clients. I would ask Smith Moore attorneys who -- what client they're billing for. I don't see how that could be objectionable, Your Honor.

THE COURT: That would be independent of the records, as -- the records may come in later to verify, but the testimony would be when you did this work, who did you bill it to?

MR. BERKELHAMMER: The -- I don't understand the request that that goes to, Your Honor.

THE COURT: No, this would be if a witness is called to testify. Forget about the billing records. Set that aside. The question -- the Government's going to propound a question of when you did work on this issue, who did you bill this work to? And, I mean, big firms all do it differently, but I think the lawyer keys in a number, and it goes to that client, but then there's a review, and so on and so forth. But that would be separate and apart from the actual bill itself.

MR. BERKELHAMMER: The testimony -- yes, the testimony would be. That's true.

THE COURT: Are you objecting to that also?

MR. BERKELHAMMER: This is the first I've heard of it, but I don't believe that who revealed it to --

THE COURT: Why don't you check with GrandSouth and see if they have objection to that testimony.

MR. MOORE: We do not.

THE COURT: Okay.

MR. BERKELHAMMER: I hate to ask, but I assume none of these other lawyers object to that or are asserting privilege --

THE COURT: I'm going to get to them in a minute. First, I'm trying to figure out where you guys stand.

MR. BERKELHAMMER: Okay.

THE COURT: When we get that figured out, then I'm going to move to them.

MR. BERKELHAMMER: I just have a lot of people who are looking at me with fear in their eyes. I just want to make sure they're all kind of safe.

THE COURT: What do you all say in terms of the records at this point? Are there any witnesses who have been subpoenaed here today who you're interested in testimony only, separate and apart from the records that are being provided by GrandSouth Bank?

MS. BARBIER: Yes, Your Honor. There is testimony that we can take from the witnesses who are here with respect

to the existence and duration of the attorney-client privilege between Mr. Earnest and Smith Moore, and there may be questions down the road that we want to ask them about the invoices. But, Your Honor, we had envisioned, and we're requesting from the Court, that that be done ex parte, because I -- I know you've only looked at one invoice, but there are invoices that detail conversations with Mr. Earnest, that detail, you know, certain advice that's being given to Mr. Earnest; and that cannot be done, in our opinion, in front of attorneys for the Government. So that will be, I guess, for another day after Your Honor has had an opportunity to review the --

THE COURT: I mean, I don't know whether I would agree or disagree in terms of the questions you intend to propound, whether the answer is going to elicit privileged information or not, but assuming that -- well, let me back up. I mean, in terms of the cases that I just outlined for you, do you have any cases that disagree with that analysis?

MS. BARBIER: I don't disagree with that analysis, Your Honor. I believe that the general rule was that there are many -- most invoices are not -- don't contain privileged information and that they are fair game in terms of being producible. I think these invoices fall within the exception to that rule, Your Honor. They're extraordinarily detailed, and they --

THE COURT: All right. Let me back up. So we have

in the *Chaudhry* case identity of the client, amount of the fee, identification of the payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. Do you agree with that or disagree with that?

MS. BARBIER: I agree with all but the last nugget, Your Honor, which is the general purpose. In this particular case, they have intertwined the general purpose of the work performed with the mental impressions, work product, and thought processes --

THE COURT: I mean, but a witness can testify as to the general purpose of the work they either thought was being performed or was performed without getting into privileged information, can't they?

MS. BARBIER: Well, perhaps, Your Honor, but actually the timing of what lawyers do in an investigation like this, the particular documents that are being gathered, the particular analysis that's being performed, all of that is -- it's our position it's privileged, because simultaneously with the Government's investigation, Smith Moore was performing an internal investigation. They were using Mr. Earnest not just as president of the bank, but because they believed he had exposure in this matter, to perform a lot of those duties, to perform analysis of certain of the loans that were being requested by the bank -- I'm sorry, by the Government. There

were a lot of things that were being done at Smith Moore's request by my client, and I believe that the mere fact they asked him to do those things is privileged.

So I don't agree that always that that's not -- that the work performed, the general purpose --

THE COURT: Have you got any cases to support your position?

MS. BARBIER: No, Your Honor, but I'll be glad to brief that issue for you. We have included in one of our briefs the selection and compilation theory of the work product doctrine, and that is part of our initial motion, the motion to preclude the disclosure of privileged documents, because it's not -- and the selection and compilation doctrine, Your Honor, dictates that --

THE COURT: Hold on. We're talking about two different things. The issue I'm trying to address right now, the first issue, is whether the attorney-client relationship existed. Now, it seems to me that there are non-privileged facts that could be presented to aid the Court in determining whether or not that relationship existed, right?

MS. BARBIER: I agree with that.

THE COURT: Okay. And we may disagree on the scope of the general purpose of the work performed. But if your client can testify that -- or GrandSouth -- or Smith Moore can say who was their client, they can also say for what purpose

were they engaged in a particular case, which is going to be important, I think, because it sounds like we may have some testimony about being engaged for grand jury purposes only and not other purposes.

Your client has already disclosed the fact in an affidavit as to some of the things that were and were not done as part of that representation, and to the extent confidential information has to be provided in order to establish the attorney-client relationship, we're going to run into a second problem, it seems to me, and that is we're getting in a position where the Government's trying to defend what it did without having access to evidence of the attorney-client relationship that you are presenting, and that -- I haven't seen a case where that happened yet. Maybe this will be the first, or maybe the Fourth Circuit will tell me I'm wrong, I don't know. But, first, we have to figure out what evidence is necessary to establish the attorney-client relationship.

So in that vein, at this particular juncture, I'm not going to do -- at this point I'm not going to exclude the Government from the hearing or conduct some kind of ex parte hearing in their absence. We'll take the evidence that we can, if we can; and, if not, then the parties are going to go out, and they're going to make specific objections to the information with respect to disclosure, and I'll address those specific objections.

But right now all I've got are general objections. We object to the invoices. We object to information in the invoices. As I look at it in my analysis, those general objections are not helpful to the Court because they're capturing non-privileged information and privileged information, and it's not my job to take a general objection and go through -- as I see it and go through line by line and make my own mind up as to what's privileged and what's not.

So back to my original question. Without the benefit of the invoices, you got any -- provided by GrandSouth Bank, because I think it's going to take some time to get those sorted out, is there any other evidence you want to present today while you have witnesses here?

MS. BARBIER: Yes, sir.

THE COURT: All right. Then you may proceed.

MR. BERKELHAMMER: Your Honor?

THE COURT: Yes, sir?

MR. BERKELHAMMER: We have lawyers for Mr. Earnest who are claiming they have an attorney-client relationship; we have lawyers for Ms. Drake who are claiming they have attorney-client relationship; we have lawyers for the bank who have an attorney-client relationship.

THE COURT: Correct.

MR. BERKELHAMMER: It's our obligation to protect that, subject to some of our clients or all of our clients

saying they waive it. Since all of their lawyers are here, any lawyer who testifies has that same obligation to not answer or try to guess whether that answer is or that question --

THE COURT: I think the witness when they take the stand is going to have to answer the question. The question is going to be how do we handle the objection --

MR. BERKELHAMMER: The objection and who's responsible.

THE COURT: -- if and when they come up.

MR. BERKELHAMMER: Correct.

THE COURT: The only way I know to do it at this point is put a witness up there, have the objections, and I'll rule on them as we go along. I really have -- I don't know how else to outline it any clearer. It's a big, broad area in terms of the general purpose of the work performed. I understand that. But there's some stuff here that I don't think is protected at this point.

MR. BERKELHAMMER: I understand, Your Honor. I would just like to make sure that the lawyers who are asserting a privilege have their obligation to assert it, so my witnesses aren't left wondering whether I'm going to assert it for them or they have to assert it from the stand.

THE COURT: Um-um. At this point if a witness takes the stand, I expect the witness to testify.

MR. BERKELHAMMER: Okay.

THE COURT: And if there's an objection, I expect the lawyers to do the objection -- objecting, which I guess in a sense means I'm going to overrule your motion to quash. I'm going to allow the lawyers to be called, if that's where we get, and, Mr. Boyce, you're licensed to practice in the Middle District. If you want to come inside the bar with the GrandSouth Bank attorneys --

MR. BOYCE: I guess we just need some direction, Your Honor. We're here to do whatever the Court wants to do, and we didn't know if you wanted us to be asserting any objections on the part of the bank because we're not a party. The Government's told us we're a victim in the case, so we're here as a victim in the case.

THE COURT: Well, for purposes of this, I do think the bank has standing to object if they think their privilege would preclude disclosure of the information. I've got to get some feeling for what kind of information we're going to be dealing with here so I can kind of figure out -- we're going to have to have another hearing. I mean, there's just no doubt in my mind looking at these invoices that we can't go through line by line today. That will take forever.

MR. BOYCE: Right. And one thing we were going to propose to the Court, if the Court would want to consider this, is these general -- there are, I think, roughly 30,000 documents that have been produced so far --

THE COURT: To the Government.

MR. BOYCE: To the Government.

THE COURT: Yeah.

MR. BOYCE: We voluntarily provided them pursuant to a letter agreement. There's also some categories of documents that have now been subpoenaed that we're willing to provide, but then the joint privilege was asserted this year only recently. So we had made a production of 30,000 documents before we even knew there was a joint privilege issue involved.

We thought we would propose to the court we will be happy to go in chambers and tell you the scope of the documents that we provided -- we've got a little chart -- the scope of the documents that we have not been provided and what they are, and that may give the Court a feel for what the Court will be dealing with at the next hearing. We're happy to do that if that will help.

THE COURT: We're going to have to do something a little better because the general objections are not helping me at all, and this issue has got to be addressed specifically. But for purposes of today, unless the Government or Mr. Earnest objects, we're going to see if we can take at least some testimony while witnesses are here, and we're going to see how it goes. Then if it breaks down completely, then we're going to figure out another format to address this.

MR. BOYCE: Very well.

THE COURT: I feel like I might have made a tactical error stepping in here and keeping Judge Tilley's motion hearing date set. That's my own problem, not you all's.

But let's see if we can take some evidence. Let's see what happens in terms of objections. Mr. Berkelhammer has lodged his objection on behalf of Smith Moore to everything. I'm overruling any motion to quash to the extent it precludes a Smith Moore attorney from being called as a witness during the course of the hearing. And to be as clear as I can, GrandSouth Bank is here and represented; and if they have an objection to the testimony they hear, for purposes of today's hearing I'll grant them standing to make the objection.

MR. BOYCE: Thank you, Your Honor.

THE COURT: All right.

MR. CHUT: Your Honor, maybe just for clarity, GrandSouth Bank did turn over, pursuant to subpoena, yesterday and today certain board minutes from the bank that the United States would intend to present to the president.

Also, Your Honor, there's an issue. We were informed yesterday by counsel for GrandSouth Bank that Smith Moore has turned over approximately 30 boxes of documents which are part of this internal investigation to Nexsen Pruet representing GrandSouth Bank which the Government has not seen. I think that's probably the documents that are most at issue.

THE COURT: Well, let's see where we get on this

issue. Mr. Berkelhammer, I'll just grant you a continuing objection to everything, subject to specific objections from GrandSouth Bank. Mr. Boyce, if you all want to come up and sit at counsel table, you can, or you can stay there, either one.

All right. Ms. Barbier, just pick somebody, and let's see how we get along.

MS. BARBIER: Yes, sir, Your Honor. Thank you. The defendant calls Bruce Ashley.

THE COURT: All right. Mr. Berkelhammer, if you prefer, you're welcome to sit over there at counsel table.

MR. BERKELHAMMER: I think I prefer right here, Your Honor.

THE COURT: I understand.

MS. BARBIER: Your Honor, what is your preference as to where you would like for me to stand when examining the witness?

THE COURT: We don't have the podium pulled out, so at counsel table.

MS. BARBIER: Okay.

THE COURT: If you want to get closer or use the podium, you can do that. Everybody asks if they can approach the witness. You do not have to ask; but if you abuse the privilege, then I will stop you.

All right. Where is Mr. Ashley? He's coming? Let's see. Where did Mr. Berkelhammer go? Did he go get Mr. Ashley?

For the time being, when he comes back, I'm going to give him that invoice back.

MR. HARRELL: Your Honor, just quickly before we start, Cooper Harrell. I'm here on behalf of Laura Dildine. I'm just curious if there's been a request for other witnesses who are subject to subpoena to stay out of the courtroom and be sequestered during testimony, or if they're free to come in --

THE COURT: Has there been a request?

MR. HARRELL: I'm not aware. I'm asking the Court if there has been.

THE COURT: Anybody request that the witnesses be sequestered?

MR. CHUT: Your Honor, the United States would.

THE COURT: All right, yeah, then -- if it's requested, I have to do it.

Mr. Ashley, if you'll step forward and be sworn, please. Yes, sir?

MR. MATHIAS: Several bank executives are in, and they've been subpoenaed.

THE COURT: Oh, you all need to step out.

(Witness sworn by the clerk.)

BRUCE PAUL ASHLEY,

DEFENDANT'S WITNESS, SWORN AT 11:37 a.m.

DIRECT EXAMINATION

BY MS. BARBIER:

Q Good morning, Mr. Ashley. My name is Debbie Barbier. I represent Ronald Earnest.
A Good morning.
Q Mr. Ashley, if you could, please state your full name for the record.
A Bruce Paul Ashley.
Q Could you give the Court, please, your educational background.
A I have an undergraduate degree from the University of North Carolina and a law degree from the University of Michigan.
Q And could you give us a brief summary of your work experience.
A Since 1986, I've been at Smith Moore Leatherwood or its predecessors here in Greensboro.
Q What is your primary area of practice, if you will?
A I describe it as "dirt litigation." I do construction cases, real property disputes, condemnation cases, primarily, in addition to occasionally other litigation matters.
Q And how long have you been doing "dirt law," as you say?
A Twenty-five years.
Q Okay. Are you -- did you -- how many times have you defended in a bank fraud case?
A I do not recall ever defending in a bank fraud case.
Q Okay. What about assisting people in the production for

grand jury subpoenas? Have you ever done that?
A As -- the only one that I have any potential experience with is this case, and I was not involved in the production other than to say "have at it" to my folks, have access to my documents.

THE COURT: All right. Mr. Ashley, let me -- on that microphone, you don't need to lean into it. But if you're going to look over there as you testify, if you can just kind of get the microphone centered so you're talking at it basically. A little higher. Perfect.

BY MS. BARBIER:
Q Could you explain, please, what your role was in assisting GrandSouth Bank and some of its employees in this investigation.
A I hesitate because my role in representing GrandSouth Bank began in terms of representing them in a civil litigation early this decade, and my representation has been focused upon that, or was, until that matter concluded. In terms of any subpoenas related to this recently, I, as I mentioned, turned -- have given access to my documents that still exist, paper files, computer files, to the appropriate persons at the law firm with IT and other access, and they have taken care of valuing what I do and don't have.
Q Okay. Let's start by asking you, what -- tell us about the litigation that you represented GrandSouth Bank in back in

about -- I think it was about 2008, is that correct?
A That is the general time frame, and I hope that by your question you'll understand that I have not great memory of that from a decade or more ago. It was involved with some factoring of some sort. I believe GrandSouth Bank got pulled in as a defendant or a third-party defendant at some point. The case got resolved appropriately for GrandSouth Bank. I do not know the terms of the settlement. I believe it got resolved some time early 2013, but that's based only upon having a memory of a hearing in December of 2012.
Q Do you recall that that case involved -- you said it involved factoring, correct?
A Yes.
Q And did it involve factoring involving some companies that were licensees of Bruce Gregory Harrison?
A I remember Mr. Harrison's name being involved in that; but in terms of particular companies, I have no memory, no.
Q So you don't remember what the allegations in the complaint were?
A No.
Q Okay. And do you recall that the criminal investigation was pending at the same time as the civil litigation that you were representing GrandSouth Bank in?
A I have no recollection of that beyond putting some pieces together when this subpoena came in. Based on what I've been

able to recall, it was ending, but I had no involvement that I recall.

Q Okay. Did you -- you said that you had a chance to review some of your files on that case, is that correct?

A I have reviewed a few documents that have been placed before me by attorneys of the firm.

Q Okay.

A But I have not gone and done any sort of comprehensive review of my files, no.

Q What did you review?

A A few emails, and I apologize for not being able to tell you what they were, but I just don't that memory at the moment. I was shown a letter from some time in September that I wrote to Mr. Chut, I believe. But beyond that, I have no -- those are the only things that I recall being shown.

Q The letter that you reviewed that you wrote to Mr. Chut, is that the letter in which you indicated you represented Shannon Drake?

A I don't think I -- that letter has a reference to Ms. Drake in it. I have no independent recollection of that letter being written at the time. I don't think it said I represented Ms. Drake. It may have said the firm represented her, but I don't have any independent knowledge of that.

MS. BARBIER: Your Honor, at this time I'd like to present this document to the witness and enter it into evidence

if he's able to authenticate it.

THE COURT: All right.

MS. BARBIER: May I approach him, Your Honor?

THE COURT: You may.

BY MS. BARBIER:

Q Do you recognize that document, Mr. Ashley?

THE COURT: What's the number on it?

MS. BARBIER: Your Honor, this would be Mr. Earnest's Exhibit 3.

THE COURT: Okay.

THE WITNESS: This is the letter I was shown recently. That is my signature on the letter.

MS. BARBIER: Okay. Your Honor, at this time I would move it into evidence.

MR. CHUT: No objection, Your Honor.

MR. BOYCE: Your Honor, I hate to interrupt. We're not privy to anything that's been filed under seal --

THE COURT: Do you mind showing them a copy of that letter?

MS. BARBIER: Not at all, Your Honor. This is not a privileged document. It's from Smith Moore to Mr. Chut.

MR. BOYCE: Thank you, Your Honor.

THE COURT: Do you all want to take a minute and read it or any objection?

MR. BOYCE: No, Your Honor.

THE COURT: Defendant's Exhibit 3 is admitted. What's the date of the letter?

MS. BARBIER: Your Honor, I have a copy for the Court. It's dated September 18 of 2012.

BY MS. BARBIER:

Q Now, that you've had a chance to look at this letter, Mr. Ashley, can you please tell us the subpoena that it's in reference to, is that a grand jury subpoena to GrandSouth Bank?

A I really don't remember. I have no recollection of this time period other than going to one meeting, I believe, with Mr. Medford and Mr. Chut and perhaps a meeting with Ms. Drake, but I have no memory of any substance of what was going on at that time. I apologize, but I really just don't remember what this is about.

Q So you don't recall grand jury subpoenas to GrandSouth Bank or a grand jury subpoena to Shannon Drake; is that your testimony?

A It's my understanding that they have received subpoenas. I do not recall them in terms of this time frame or any other.

Q Well, if you read this letter, Mr. Ashley, it appears that you are negotiating with the Government an extension of time to respond to the grand jury subpoena for documents. Do you see that?

A Yes.

Q And you -- again, this is the signature -- your signature

on this document?

A Yes.

Q Okay. And you also indicate in the third paragraph of this letter, "As I indicated in my voice message this week, we will be representing Shannon Drake, the GrandSouth Bank employee who recently received a witness subpoena from your office." Do you see that?

A Yes, ma'am.

Q Okay. Do you have any information that now contradicts that you were representing Shannon Drake at that time?

A I have -- again, and I do apologize, but I really don't remember anything going on in this time frame other than what I just described. I hesitate to explain what -- other than the passage of time why that might be, but I had a serious health event in early October 2012, and I don't go through the security gates anymore because of that. And I have -- I can tell you a lot about that two weeks in the hospital in October of 2012, but I have very little memory of this.

No, as I said, I remember one -- maybe. I remember what I think was a meeting with Mr. Chut and Mr. Medford, and I have no memory of substance, and I seem to remember meeting Ms. Drake with Mr. Medford at that time. But, again, substance, I have no recollection of that.

THE COURT: To respond to her question, though, you don't have anything that -- any recollection of anything that

 disputes what you wrote in the letter.

THE WITNESS: No. No, Your Honor.

THE COURT: Okay. Next question.

BY MS. BARBIER:

Q Okay. So, Mr. Ashley, you mentioned that you remember a meeting between yourself and Mr. Medford and Mr. Chut, is that correct?

A I remember coming over here and meeting with Mr. Chut. I really could not remember any detail of that meeting.

Q Do you recall whether the meeting was before this letter or after this letter?

A I do not recall.

Q I see in the letter that you say in the last paragraph, "Finally, Jim Medford and I would like to meet with you at some point in the next few days to get a better handle on the situation." Does that refresh your memory as to whether it was before or after?

A It really doesn't, but as -- I have no reason to think anything I wrote at this time was not accurate at this time.

Q Okay. Do you recall after this letter -- I mean, closer in time to when we are now, do you recall helping Mr. Earnest gather documents to respond to the grand jury subpoena?

A No.

Q Do you recall having any conversations with any GrandSouth Bank employees about responding to the GrandSouth Bank

subpoena?

A None.

Q So let's go back, Mr. Ashley, and talk a little bit more about your experience. I note from my review of the invoices that you assisted in this process and billed GrandSouth Bank for that time, is that correct?

A Again, I have no recollection of that. My invoices -- my invoice entries are -- I pride myself on them being accurate. So if that's what they say, then I stand by what's in them.

Q Okay. So you're --

A But I do not remember what happened on those dates.

Q Okay.

A And I don't know what invoice entries you're talking about, quite frankly.

Q Do you recall whether you entered into an engagement agreement with GrandSouth Bank?

A I personally do not ever send an engagement letter.

Q Have you ever seen one with --

A No.

Q -- Smith Moore and GrandSouth Bank?

A No.

Q Okay. Did you have any conversations at your firm about whether one exists?

A We have discussed that, and to my knowledge -- well, let me back up. I reported that I do not know one exists, and

that's where things were left at. I do not think one exists.
Q Okay.
A But I certainly do not prepare one and do not have one in my civil litigation.
Q Okay. Does an engagement agreement exist with Mr. Earnest?
A I don't know.
Q Does an engagement agreement exist with Ms. Drake?
A I don't know.
Q Okay. Are you aware that there are other GrandSouth Bank employees who were represented by Smith Moore during this time period?
A I'm not aware of it.
Q Were you privy to the information during the investigation that Mr. Medford was receiving and the work that he was doing?
A No.
Q Okay. Do you recall conferencing with him on these issues about the grand jury production of documents and the grand jury subpoenas to individuals?
A I have no specific recollection of any of those meetings. I do remember being asked for documents over periods of time that have been acquired through the civil litigation and turning those over to whoever was handling that production. But in terms of actually strategizing, no, I had no role in that.

Q If there are time entries that indicate you were discussing strategy and you were participating in the representation of GrandSouth Bank, would they be accurate?
A I represented GrandSouth Bank. Any -- so, yeah, anything indicating that would be correct. That would be strategizing as part of the representation. That would be correct. From my perspective, it would've been in my role as their civil litigation attorney in the earlier litigation we talked about.
Q Okay. Do you recall -- let me ask this first. How many witnesses have you assisted in the preparation for grand jury testimony?
A I don't recall assisting any.
Q Okay. Did you assist Mr. Medford in preparing Mr. Earnest for his grand jury testimony?
A Not that I recall.
Q You don't recall anything about that --
A No.
Q -- process? No?
A No.
Q Okay. Well, let me ask this. Would you agree that preparing a witness to testify in the grand jury is a pretty cumbersome process?
A I would be speculating, because in my 31 years of practice I have done purely civil work. So I really don't know what goes into that.

Q Well, Mr. Ashley, you worked on this case, didn't you?
A I worked on representing GrandSouth Bank through civil litigation. It's -- I have no memory of representing them solely in the criminal litigation. As your time entries may indicate, there would certainly be times these two things were not operating in separate universes. I mean, there would be questions asked about the civil litigation that I would ask, and I would also want to know what was going on in the criminal litigation to the degree it had any effect on the civil litigation. But I never viewed myself as being involved in actually preparing anyone or doing anything like that. And, again, I have no specifics in terms of particular meetings, but my role would have been on the civil context -- in the civil context and representing GrandSouth Bank through that process.
Q I'll go back to Mr. Earnest's Exhibit No. 3, Mr. Ashley.
A Yes, ma'am.
Q If you were not involved in the grand jury subpoena production for GrandSouth Bank and the grand jury subpoena to Shannon Drake, why are you writing to the assistant United States Attorney who's issued the subpoena and discussing and negotiating the specifics of the subpoena?
A I would be speculating as to why I wrote this letter.
Q You don't know why you wrote it?
A I do not remember writing -- I did not remember this letter until it was shown to me in the last few weeks.

Q Do you know why you would be billing GrandSouth Bank for time related to grand jury production in a criminal investigation if you didn't do it?

A I do not know why my time entries would be on the criminal aspect, if there was one, in terms of billing. I believe my billings would be based on a matter number, and I would allocate time as instructed in terms of those aspects. But, again, I apologize, no independent recollection to particular time entries.

Q Mr. Ashley, do you know the difference between testifying in a civil proceeding versus testifying in a criminal grand jury proceeding?

A All the differences? No. I guess the main difference that I'm aware of is that the witness does not have counsel in the room in a grand jury proceeding.

Q And the significance of the witness not having counsel in the room would be that the witness has to deal with the issues of whether a question is privileged by themselves, is that right?

A I'm not a criminal attorney. I would assume that without an attorney there to object that that's the case, but I would not know.

Q Would you agree with me that preparing a witness to testify in the grand jury is a very important process because of the number of mistakes that a witness could make in a grand

jury proceeding and the perhaps dire consequences that could flow from that?

MR. CHUT: Objection, Your Honor.

MS. BARBIER: Would you agree with that?

THE COURT: Yeah, I'm going to sustain. Have you got anything to tie him directly to Mr. Earnest at this point?

MS. BARBIER: Well, Your Honor, we have time entries.

THE COURT: Well, if there's some testimony that relates to Mr. Ashley's work or representation of Mr. Earnest, then I would suggest we move into that.

MS. BARBIER: Okay.

BY MS. BARBIER:

Q Mr. Ashley, you indicated you don't recall Mr. Earnest receiving a grand jury subpoena?

A I do not.

Q Okay. Do you recall him testifying in the grand jury?

A I do not.

Q Do you recall having any considerations with Mr. Medford about Mr. Earnest testifying in the grand jury?

A I do not.

Q Do you recall having any conversations with anybody at GrandSouth Bank about Mr. Earnest's grand jury testimony?

A I do not.

Q Do you recall whether or not Mr. Earnest was given an Upjohn warning?

A I do not.
Q Do you know what an Upjohn warning is?
A I found out about that earlier this week.
Q What did you find out about it?
A That it's something that an attorney who's not representing you gives in a criminal setting that basically says I'm not representing you.
Q Did Smith Moore, to your knowledge, give Mr. Earnest an Upjohn warning?
A I do not know. I did not.
Q Did you have any discussion about that in your firm?
A No.
Q No one discussed that?
A No.
Q Did anybody look for a written waiver in the file --
A Well, let me back up. No one discussed it with me. I don't want -- your question said did anyone in the firm discuss it. I don't know to that. Did I ever discuss it with anyone? No.
Q Okay. Well, what do you know about that discussion?
A I don't know about that discussion.

THE COURT: Yeah, he can't know about a discussion he doesn't know about.

MS. BARBIER: I misunderstood his answer. I apologize, Your Honor.

BY MS. BARBIER:

Q Mr. Ashley, are you aware of a conflict waiver being executed with Mr. Earnest?

A I am not aware of that.

Q So I just want to make sure I'm clear on what you're aware of in terms of the existence of Mr. Earnest. You're not aware of a written engagement letter with GrandSouth Bank, correct?

A Correct.

Q You're not aware of a written engagement letter with Mr. Earnest, correct?

A Correct.

Q You're not aware of a written engagement agreement with Ms. Drake, correct?

A Correct.

Q You're not aware of an Upjohn waiver being in the file, is that correct?

A I'm not aware of that, no.

Q You're not aware of a written conflict waiver existing, is that correct?

A I'm not aware of that.

Q Okay. Are you aware of any conversations that took place with Mr. Earnest regarding whether he needed separate counsel?

A I do not recall any such discussion.

Q Would you -- do you -- let me ask this, Mr. Ashley. Did you give Mr. Earnest any legal advice?

MR. CHUT: Objection.

THE COURT: Well, I'm going to overrule, see what he recalls first.

BY MS. BARBIER:

Q I'm not asking you what the advice was, I'm asking you simply do you recall giving Mr. Earnest any legal advice?

MR. CHUT: May I be heard briefly, Your Honor?

THE COURT: Um-hum.

MR. CHUT: I'm concerned, Your Honor, about the nature of the question. Mr. Earnest is both an officer of a corporation, which is separate from him and he has a fiduciary to, and he's a person. I'm not sure if the question is, has he given legal advice as an officer of the corporation or as an individual. That's my objection.

THE COURT: Well, I mean, to the extent you think it needs to be cleaned up, you can do that on cross-examination. At this point I'm not -- I'll just -- I'm going to overrule. We can address it in cross. And here it's just whether he recalls giving Mr. Earnest any legal advice. I am going to confine the question -- it sounds like we've got this period of 2008 to 2016, and I'm not real clear on the timing of it or what the relevance might be of '08 legal advice if it occurred, so you might want to narrow it down a little bit.

MS. BARBIER: I will, Your Honor.

BY MS. BARBIER:

Q Mr. Ashley, during the BHC and Acquient litigation involving Mr. Harrison that you represented GrandSouth Bank in, did you give Mr. Earnest any legal advice?

A He was the president of the bank. I gave him no legal advice personally. But in terms of his role as an officer of the bank, yeah, I advised the bank through him.

Q And you were aware, as you said previously, that there was a criminal investigation pending at the same time this civil litigation was ongoing, correct?

A I believe so, yes.

Q Okay. Did you advise Mr. Earnest about the possible repercussions of any statements he might make in the civil litigation and what they would have in a criminal proceeding?

A I do not remember that type discussion.

Q Okay. Were you aware of the consequences of any statements he made in the civil litigation being used against him in a criminal proceeding?

A I was not focused on that, so I guess I was not aware that that could happen.

Q So, Mr. Ashley, do you recall after the BHC and Acquient litigation was resolved with Mr. Harrison and the other licensees, do you recall then in September of 2012 when you got involved in the grand jury criminal investigation -- do you recall giving Mr. Earnest any legal advice during that?

A I don't recall getting involved in the grand jury criminal

investigation that you mention. That being said, I would have been advising Mr. Earnest in the civil litigation all through that period.

Q Okay. Let's talk about this meeting that you attended with Mr. Medford and Mr. Chut. Do you recall Mr. Chut making any allegations regarding the bank's knowledge of Mr. Harrison's scheme?

A I do not.

Q Do you recall any discussion about any potential culpability that Mr. Chut felt Mr. Earnest had?

A I do not.

Q Do you recall summarizing that meeting for Mr. Earnest?

A I do not.

Q Do you recall discussing that meeting afterwards with Mr. Medford?

A I have no distinct recollection of that, but I'm assuming we walked back from here to the office and talked about it at some point through that process, but I have no recollection of a discussion.

Q What was your general impression of the Government's position with respect to the bank and its officers' culpability at that point?

A I'm not sure I remember what it was. In fact, I don't remember what it was at that point.

Q Well, was it a pleasant meeting? Did Mr. Chut say he

didn't believe anybody had done anything wrong at the bank?

A I have to work backwards in terms of that. I think I would have remembered it if it was hostile in some way, but I have no memory of that meeting. I know it occurred, and I know I was over here, but I didn't know -- I assume Mr. Chut is the one sitting to the right at this table. I couldn't recognize him. I've not seen him for the last five years. So it's not something I've really paid much attention to at all -- any attention to.

MS. BARBIER: Your Honor, at this time I have documents that -- emails between Mr. Ashley and Mr. Earnest that relate to this meeting and the allegations that were made in this meeting, and I believe it's a privileged communication, and so --

THE COURT: Are you going to stand up when you address the Court?

MS. BARBIER: Oh, I apologize, Your Honor.

THE COURT: So what are --

MS. BARBIER: Well, Your Honor, I would ask that those questions be asked outside the presence of the Government; and if Your Honor chooses to do that today or another day, I understand, but I would like to reserve the right to refresh his memory regarding those events and ask him about those communications.

THE COURT: Mr. Chut?

MR. CHUT: Your Honor, this is very much a cart before the horse. This witness has established no relationship as attorney-client between Mr. Earnest as an individual and Smith Moore. It's represented this attorney represented GrandSouth Bank and that he communicated to Mr. Earnest as an officer of GrandSouth Bank. So there's no evidence of any type of attorney-client relationship. So, Your Honor, I would object strongly to this document being kept from the Government's view. If the Court feels it should review it in camera, Your Honor, I guess that would be fine. But there's no attorney-client privilege that's been remotely proven at this point, Your Honor.

THE COURT: Let me see one of the emails.

MS. BARBIER: I beg the Court's indulgence.

THE COURT: Um-hum.

MS. BARBIER: I apologize, Your Honor.

THE COURT: You probably ought to mark it.

MS. BARBIER: Your Honor, we would mark this as Mr. Earnest Exhibit 7.

THE COURT: Ms. Barbier, I'm looking at this document. Given the testimony in the case, I would be inclined to find that this -- if there's any privilege as to this particular document, based on the testimony provided -- Mr. Ashley says that he represented GrandSouth Bank through this period of time primarily in relation to the civil

litigation, doesn't recall any specific representation of Mr. Earnest outside Mr. Earnest's position as president of GrandSouth Bank. Mr. Ashley has acknowledged that according to the letter, he was representing Ms. Drake before the grand jury in the letter dated September 18, 2012. This email's September 26, 2012. And it looks to me like Mr. Ashley -- I mean Mr. Earnest is responding in his capacity as the president of GrandSouth Bank on behalf of GrandSouth Bank.

So I don't know that I see an individual privilege with respect to this.

MS. BARBIER: Your Honor, the email has to be put in the correct context. When "GSB" is referred to, GSB actually was its officers, and Mr. Earnest --

THE COURT: Well, it may need context, but the only context I've got is the evidence that's been presented. If there's other context, then maybe we ought to hear that evidence, right?

MS. BARBIER: Sure. I'll put some background on it, Your Honor.

THE COURT: All right.

MS. BARBIER: May I proceed?

THE COURT: You may.

BY MS. BARBIER:

Q Mr. Ashley, was it your understanding that GrandSouth Bank's actions with respect to Mr. Harrison was done through

its officers?
A Through its officers and its employees. I don't think that the president of the bank was the only one ever dealing with Mr. Harrison.
Q You said that you don't think the president of the bank ever dealt with Mr. Harrison?
A I cannot recall if he did or not, but your question made it sound like only the officers would be. I'm sure the employees dealt with Mr. Harrison, too, at some point during this process that was the basis for the civil litigation.
Q Are you aware of Mr. Earnest's dealings with Mr. Harrison from your representation of him and the bank in the Acquient litigation and the BHC litigation?
A I don't recall.
Q Do you recall the deposition that he gave -- the two depositions that he gave in that litigation?
A I do not recall any of the depositions.
Q Were you there defending those depositions?
A I do not recall.
Q Do you recall reviewing the trial transcript of Mr. Harrison's trial?
A No, but that wouldn't surprise me if I did for its potential effect on the civil litigation.
Q I'm going to show you -- let me ask this. Would it surprise you if you had time entries for reviewing that trial

transcript?

A No.

MS. BARBIER: Your Honor, may I approach?

THE COURT: You may.

MS. BARBIER: We've marked this as Defendant's Exhibit 1.

THE COURT: You need to give GrandSouth a copy. Hold on a second. Is that grand jury testimony?

MS. BARBIER: No, Your Honor. It's trial testimony.

THE COURT: Okay.

BY MS. BARBIER:

Q Mr. Ashley, do you recognize this as being an excerpt from the trial transcript of Mr. Harrison?

A Not independently. It seems to indicate that it is based upon the document.

Q And do you dispute the fact that you reviewed this transcript during your representation of GrandSouth Bank?

A I have no memory of reviewing it. I do not dispute that I did.

Q Okay. If I could direct your attention to page 80 of this transcript. It's actually the last page of this exhibit. If you could look at lines 1 through 8, please. Do you see on line 7 it says -- well, let's start with line 1:

"And Mr. Corriher has been your main contact at GrandSouth?

Answer: He only handles the accounts receivable finance department for the factoring division of GrandSouth Bank. Ron Earnest is actually the president, and that's my main contact.

Question: Your main contact is the president of the bank?

Answer: Yes, Ron Earnest."

Do you recall reviewing that?

A I do not. This is Mr. Harrison's testimony at the trial, correct?

Q Correct. And do you recall during the deposition in the Acquient and the BHC litigation Mr. Earnest being asked about his involvement in the preparation of loan memorandums?

A I don't recall that.

Q Okay. Do you recall being asked about his involvement in the signing of wire transfers to Mr. Harrison?

A I do not recall that either.

Q Okay. Do you recall anything about Mr. Earnest's involvement with Mr. Harrison from either the civil litigation or this criminal investigation?

A Other than Mr. Earnest being aware of Mr. Harrison, no, I have no recollection of any particular aspect of that relationship.

Q Does your review of the trial transcript refresh your memory as to the fact that Mr. Harrison was saying his main

contact at the bank was Ron Earnest?

A It really does not.

Q Okay. Did you also review the testimony at trial in December of 2011 of Douglas Corriher?

A I apologize for continuing to say this, but I really do not recall that.

Q Okay.

A That would be consistent with finding out any information that could be helpful in the civil litigation.

Q I'm going to show you what we've marked as Mr. Earnest Exhibit 2.

MR. CHUT: Your Honor, I'll just lodge a general objection as to relevancy. I'm not sure how reviewing the testimony is relevant to the issue of the attorney-client privilege.

THE COURT: I'm going to allow a little latitude here, but -- I want to hear the questions about it, and then we'll figure out your objection.

BY MS. BARBIER:

Q Mr. Ashley, have you reviewed the pages of that excerpt of the trial transcript of Mr. Corriher?

A I'm scanning through it at the moment.

Q Mr. Ashley, do you see on page 29 of this transcript, and I'm starting on line 19 where it says:

"Is that a letter you wrote Mr. Corriher?

Answer: I did not write it. The bank president wrote it and put my name on it.

Did you sign it?

Yes."

Do you see that?

A I do see that.

Q Does that refresh your memory as to the testimony in the trial of Mr. Harrison as to what Mr. Earnest's role with Mr. Harrison was?

A No.

Q Okay. So I'm wondering does any of this refresh your memory about the meeting in September of 2012 and the allegations that the Government was making regarding the culpability of certain officers of the bank, including Mr. Earnest?

A It does not.

Q Do you recall being involved in the debriefing of Mr. Earnest after his grand jury testimony?

A No.

Q Did you do it? Were you there?

A I do not recall being in that meeting.

Q Do you know -- I mean, have you reviewed any notes to determine whether or not you were there?

A No, I have not.

Q Okay. Do you recall that the meeting was recorded?

A I do not recall that.
Q Does your firm have a copy of the recording?
A I don't recall the meeting, and I don't recall if it was recorded, so I don't know if we have a copy of anything that may or may not have been recorded.
Q When you reviewed documents before your testimony today, did you have -- did you review anything with respect to Mr. Earnest's grand jury testimony?
A No.
Q Do you know whether there are notes with respect to that testimony in the preparation and debriefing of him?
A I do not know that.
Q Have you asked anybody?
A I have not asked anyone.
Q Okay. Are you aware that there is a grand jury transcript that indicates that Mr. Earnest is represented by Mr. Medford on that day?
A I am not aware of that.
Q Okay. Were you aware that Mr. Earnest was under the impression that Smith Moore was representing him throughout this entire time period?
MR. CHUT: Objection, Your Honor.
THE COURT: Sustained.
BY MS. BARBIER:
Q What is your understanding, Mr. Ashley, of who

Mr. Earnest's lawyer was?

THE COURT: Yeah, let me make something clear, as I understand it, and I think this email points to it, and some of the other information points to it, and Mr. Ashley talked about this a little bit.

A lawyer has to communicate with a corporation through individuals, and Mr. Ashley understood his representation of GrandSouth Bank to include communication -- communicating with Mr. Earnest in his capacity as the president of the bank, that is, the representative. And one of the issues that I think is going to ultimately have to be addressed is in terms of the representation, Mr. Earnest appears to, at least from what I've seen, have worn two different hats: one as a primary contact of -- for GrandSouth Bank in his capacity as president, and, two, his individual capacity in terms of his involvement in what late -- at least at some point became the subject of a criminal investigation.

And based on Mr. Earnest's testimony -- I mean, excuse me -- Mr. Ashley's testimony so far, I thought I understood him to say, no, I don't recall representation of Mr. Earnest individually, only -- maybe I'm wrong about this; and if I am, you can correct me. But in terms of asking the questions with respect to Mr. Ashley's representation of Mr. Earnest individually, I'm sustaining the objection because I'm not sure at this point Mr. Ashley has provided any evidence

which would suggest he had some individual responsibility -- or some representation of Mr. Earnest individually. The letters and the documents may reflect otherwise, ultimately. I don't know where we're going with this in terms of the evidence in the case. But I do think in terms of the questions that are propounded, at least with respect to that one, that's my explanation of why I'm sustaining the objection. You may continue.

MS. BARBIER: Thank you, Your Honor.

BY MS. BARBIER:

Q Mr. Ashley, let's go back to the rendering of legal advice. You indicated that you recall rendering advice to Mr. Earnest in his capacity as bank president, correct?

A I recall representing GrandSouth Bank and talking to Mr. Earnest as the president of the bank through that process and providing legal advice through that, yes.

Q Okay. Do you recall him seeking legal advice for the bank with you?

A Yes. In terms of GrandSouth civil litigation, yes.

Q Okay. And when did you stop, if any -- I mean, do you recall when you stopped communicating with Mr. Earnest?

A I do not.

Q Okay. You said that Acquient and BHC litigation ended some time around 2013, is that right?

A I believe so.

Q Okay. And would you agree with me that the grand jury investigation into the bank and its officers began somewhere around September of 2012?

MR. CHUT: Objection. There's no evidence, Your Honor, of who the target of the investigation was. Counsel keeps saying investigation of the bank. The bank has never been a target, Your Honor. So I'm concerned about this sort of putting words in the witness's mouth about the actions of --

THE COURT: Yeah, target or subject, either way, though, the way I understood those questions -- something was going on because grand jury subpoenas were issued. So at this point I understand your point about a double question in there, but I'm going to overrule the objection if he knows. Mr. Ashley, can you answer the question?

THE WITNESS: Could you ask that again?

MS. BARBIER: I've now forgotten the question.

THE COURT: Do you recall the bank being investigated beginning in September of 2012? Something like that.

BY MS. BARBIER:

Q The bank and its officers. Do you recall that?

A I don't recall the bank being investigated. I recall getting -- you know the letter that I wrote you showed me, I wrote that, but I don't recall it, and that relates to the subpoena response to a grand jury. But in terms of what was going on with that, I have no memory of that.

Q Do you recall the grand jury subpoenas that were issued to the bank?
A I do not.
Q There were a series of them, were there not, do you know?
A I do not know.
Q Okay. Let me see if I can refresh your memory on that.
MS. BARBIER: Your Honor, this is a series of grand jury subpoenas and --
THE COURT: Well, if you're going to refresh his recollection, refresh his recollection.
MS. BARBIER: Okay.
THE WITNESS: I don't recall seeing any of these.
BY MS. BARBIER:
Q Okay. But would you agree with me that this time span that these subpoenas relate to, 2010 through 2013, that would be the time span that you were representing them in the BHC and Acquient litigation, correct?
A Yes.
THE COURT: Them -- hold on just a second. Them being who?
MS. BARBIER: I'm sorry.
BY MS. BARBIER:
Q That you were representing --
A I was representing GrandSouth Bank.
Q You represented GrandSouth Bank during that time period,

correct?
A Um-hum.
Q And a number of the grand jury subpoenas were addressed to GrandSouth Bank, correct?
A Yes.
Q And there's -- also, you reviewed a grand jury subpoena being issued to Mr. Corriher, correct?
A I do see his name, yes.
Q And do you see Mr. Earnest's name on one?
A Yes.
Q Okay. So would you agree with me that this is the time frame within which you're representing them in the civil litigation -- or I say GrandSouth Bank?
A Yes.
Q Okay. And did you -- when you received these subpoenas, do you know would it would be a normal practice to review what the documents being requested are?
A I don't recall receiving these subpoenas.
Q Okay. Do you recall -- only just asking about your general practice. When your client receives a subpoena, what is it -- how is it that you proceed?
A My general practice involving subpoenas is exclusively in the civil context.
Q Do you examine --
A I work with the attorney -- with the client and staff to

figure out how to respond to the subpoena, both in terms of whether or not to object and what to produce. That would be my normal practice in a civil subpoena. For the criminal subpoena, I do not do criminal law. If I ever got that, I would have handed it to someone else to deal with.

Q Well, it appears, Mr. Ashley, that you were handling it because you wrote the United States Government on behalf of GrandSouth Bank to discuss the production of documents under grand jury subpoenas; am I right?

A That letter exists. That doesn't mean I was handling it. I may have been asked to write that letter by Mr. Medford whom I believe was overseeing this production at the time.

Q Okay. So is it your testimony that you have no memory of seeing any of these grand jury subpoenas?

A I do not.

Q And you have no memory of helping them -- helping the bank respond to these subpoenas?

A No, I do not.

Q And you have no memory of Mr. Earnest testifying in the grand jury?

A I do not.

Q Do you have any memory of Ms. Drake testifying in the grand jury?

A Yes.

Q Can you tell me that memory.

A I have no memory of her testimony. I do remember being in a meeting afterwards with Mr. Medford and her. I do not remember details of the meeting.
Q Okay. Was it a meeting to debrief her on what she was asked in the grand jury?
A I don't remember the details.
Q Do you remember why you were present?
A My purpose would have been because of the civil litigation.
Q And explain --
A And any effect that may have had, any effect -- any information she may have or shared during the meeting, the effect it might have on the civil litigation.
Q Okay. So with respect to the letter that you wrote the Government indicating that you were representing Shannon Drake, did you write a similar letter indicating that you were representing Mr. Earnest?
A I don't remember.
Q Have you reviewed your file to see if you have?
A I have not. Based on the information I have, I did not write that letter -- write such a letter. That doesn't mean such a letter doesn't exist. I don't remember. I don't think I did.
Q How about with respect to David Burgess? Do you recall David Burgess?

A No.

Q Do you recall that he was an employee, an officer of GrandSouth Bank, who Smith Moore also represented in the grand jury?

A No. I'm pausing because I don't even remember David Burgess in terms of the name. So I'm -- no, I don't remember any involvement with him.

Q Do you remember any -- you don't remember any aspect of representing him?

A No.

Q How about David Switzer, another GrandSouth Bank employee that was represented by Smith Moore in the grand jury? Do you remember him?

MR. CHUT: Objection, Your Honor.

THE COURT: To whether or not he remembers him?

MR. CHUT: Just the characterization of the question, Your Honor. The question is lengthy, and it has a characterization of representation.

THE COURT: All right. I'll sustain as to the form of the question.

BY MS. BARBIER:

Q Are you aware, Mr. Ashley, that there are grand jury transcripts that indicate these witnesses that were employees of GrandSouth Bank told the grand jury that their attorney was Mr. Medford?

A I'm not aware of that.
Q Does that surprise you?
MR. CHUT: Objection.
THE WITNESS: I --
THE COURT: Hold on just a second. I'll sustain.
BY MS. BARBIER:
Q Mr. Ashley, are you -- well, I'll go back to the invoices. I'm sorry. I don't want to repeat myself, but did you review the invoices and your time entries with respect to the work performed for GrandSouth Bank?
A No.
Q So you don't have any recollection of what they say you did?
A No.
Q And if you reviewed them, would that refresh your memory as to any of the services that you performed?
A Based on the passage of time, my expectation is that it would not.
Q Other than being in the meeting with Mr. Chut in September of 2012 and Mr. Medford and the meeting that took place with Ms. Drake after her grand jury testimony, do you have any memory of any other meetings between yourself and Ron Earnest?
A I met with Mr. Earnest at various times. I have no memories of specific meetings. I know I met with him at least once in Greenville. I think I met with him up here a time or

two. But in terms of when, details, I do not have any memory of those.

Q Do you know whether when you met with him it was during the criminal investigation time frame?

A I met with him during the civil litigation time frame which may have apparently overlapped with the criminal investigation time frame.

Q You were aware that they overlapped, correct?

A Yes.

Q Okay. And you -- I think you just testified previously that you wanted to know what Ms. Drake had been asked in the grand jury to determine what effect it had had on the civil litigation, correct?

A Yes.

Q Okay. So --

A Let me back up. I may not have been too concerned about what she was asked. I wanted to hear what she was saying.

Q You wanted to hear what her answers were?

A What she was saying during the meeting, because the civil litigation wouldn't have the same questions, but the answers might be the same. There's no -- I needed to hear her testimony, potential testimony. So that would've been why I would have been in that meeting.

Q Is it also important, Mr. Ashley, to debrief a witness after their testimony in the grand jury to determine what

theories the Government might be pursuing against putative defendants?

A That sound like it might be, but I'm not a criminal attorney. I don't know how criminal attorneys handle those settings.

Q Did you interview any witnesses in connection with your representation of GrandSouth Bank in this case in the criminal investigation?

A No. I did interview witnesses as part of the civil side, but I have no memory of interviewing someone for criminal purposes.

Q Whose primary responsibility was the criminal investigation at Smith Moore?

A Mr. Medford.

Q Was there anybody else that worked with Mr. Medford on those issues?

A Ms. Hawkins was a legal assistant for him. Beyond that, I guess time entries indicate on occasion I would get asked things relating to the civil case, but I do not know of any other. My involvement, if any, was very limited. I do not know of anyone else helping him with that.

Q Were you aware of Ms. Laura Dildine's participation in representation?

A I was not.

Q You were never in any meetings with her?

A I don't recall being in meetings with her.

MS. BARBIER: Beg the Court's indulgence for a minute.

THE COURT: All right.

MS. BARBIER: I don't have any other questions at this time, Your Honor.

THE COURT: Ms. Rauscher, any questions you want to ask this witness?

MS. RAUSCHER: I just have a few questions, Your Honor.

CROSS-EXAMINATION

BY MS. RAUSCHER:

Q Mr. Ashley, my name is Claire Rauscher, and I represent Shannon Drake. Do you still have Earnest Exhibit No. 3 in front of you? It's the letter.

A Yes.

Q Earlier, you testified that -- do you have any firsthand recollection of writing this letter?

A No, I do not.

Q But would it be fair to say that there's no reason to believe that anything that's stated in this letter is not accurate, correct?

A That's correct.

Q And the person that was copied on this letter, it was Mr. Medford, right?

A That's what it indicates.

Q And you just testified that Mr. Medford was in charge of the criminal investigation for Smith Moore and to the GrandSouth Bank investigation, correct?

A Yes.

Q In paragraph 3 where it states that "We will be representing Shannon Drake, the GrandSouth Bank employee who recently received a witness subpoena from your office," that confirms that your firm was representing her in this matter, correct?

A That was my understanding.

Q In fact, you actually -- earlier in the sentence, you said, "As you indicated in your voice message this week," that means that you also conveyed that information to Mr. Chut earlier before you wrote this letter, correct?

A I have no recollection of the voice messages. But as you said, the letter -- I have no reason to think the letter is inaccurate.

Q Thank you. Now, you testified that you recalled being at a meeting with Mr. Medford after Shannon Drake was -- after she testified before the grand jury, correct?

A Yes.

Q And Ms. Drake testified before the grand jury on two occasions. One was September 25 of 2012, and the other one was May 29, 2013. Do you recall which one of those times it was?

Was it September of 2012 or May of 2013 that you were there after the testimony?

A It would've been in the time frame of this letter. So the September one. I do not recall Ms. Drake being up here twice for that. She may have been, though, in the September time frame.

Q But you do recall that subsequent to her testimony that you and Mr. Medford spoke with her about her testimony, correct?

A Yes.

Q And you're aware that Mr. Medford represented her in front of the grand jury that day?

MR. CHUT: Objection.

THE COURT: I'll overrule. You may answer.

THE WITNESS: Your question was, are you aware Mr. Medford represented her in front of the grand jury that day? No, I don't understand how criminal process works on that. I don't know if he represents a witness in front of the grand jury or not. I would think he doesn't since he's not in the room, but I was in the meeting afterwards with Mr. Medford and her. That I recall.

BY MS. RAUSCHER:

Q Was there anything that occurred in that meeting after the testimony that led you to believe that he was not representing her?

A I don't recall. I have no -- I don't recall. I have no reason to think there was, but I really don't recall any detail of that meeting.
Q Do you know who Steve Petersen is?
A He is one of my law partners, yes.
Q And do you recall that he was involved also in defending GrandSouth Bank and others in this case for the investigation?
A I seem to remember Mr. Petersen may have gotten involved at some point more recently, but he and I never had any interaction other than just do you know anything about this case, and him saying no, and moving on. But I do not recall when he got involved, but I do know he has been involved in representing GrandSouth Bank.
Q Do you recall in May, specifically, May 23 of 2013, that you attended a meeting with Shannon Drake, Mr. Petersen, and Laura Dildine?
A I do not recall that.
Q Are you aware that attorneys from Smith Moore take notes during meetings?
A That is -- that happens, yes.
Q And would you have any reason to believe if your name was mentioned in their notes that you may not have -- that you would have been in attendance?
A No, no reason to doubt that.
Q And my last question is, is there any significance to you

to the number 5321?
A That is my extension.
MS. RAUSCHER: I have no further questions, Your Honor.
THE COURT: Mr. Chut, do you have any questions?
MR. CHUT: Yes, Your Honor, briefly.

CROSS-EXAMINATION

BY MR. CHUT:
Q Mr. Ashley, you represented GrandSouth Bank in several civil matters related to the factoring department of the bank?
A I represented them in factoring litigation. I can't remember how many litigations there were, but pretty complex.
Q And was GrandSouth Bank a defendant in those civil matters?
A I believe they were a defendant or a third-party defendant.
Q Were any of the individual officers defendants in the civil litigation?
A I do not think so.
Q And how many years have you worked at Smith Moore or its predecessors?
A Thirty-one.
Q And are you familiar with Smith Moore's billing practices?
A Yes.
Q And do you recall what client you billed for the work on

the civil litigation regarding GrandSouth Bank?

A We would have -- we had a number for the civil matter, maybe two numbers, two matters, I do not recall, but that is where my time related to that would go.

Q And did you bill GrandSouth Bank for your time?

A My time was placed upon -- into the system. I did not send the bills personally.

Q Do you identify your billing by a particular client?

A Yes.

Q And that's true for all -- is that true for all Smith Moore bills?

A That I do not know.

Q And did you bill GrandSouth Bank as a client for the civil litigation?

A Again, I do not send the bills. It's my understanding the bills are sent to GrandSouth Bank.

Q And in your years working in civil litigation, have you often represented corporations?

A Yes.

Q And a corporation is a legal entity, is that correct?

A Yes.

Q Are corporations, as you've testified, required to communicate with you through their officers or employees?

A Yes.

Q And is that normal and necessary practice in representing

a corporation?
A Yes.
Q Does that necessarily mean the individual officers are your client or clients of your law firm?
A I view the entity as my client.
Q The corporation?
A Yes.
Q Are you aware, as an experienced attorney, what a conflict of interest is?
A Yes.
Q And what's a conflict of interest briefly?
A Briefly might be hard, but in general being in a situation where you represent competing interests, competing clients.
Q And does Smith Moore have attorneys or ethical officers providing guidance in avoiding conflicts of interests among its attorneys?
A Yes.
Q And does Smith Moore sometimes use something called a conflict waiver to deal with potential conflicts?
A I believe I may have used those at some point personally. I don't have an institutional knowledge on that. It would not surprise me if we used conflict waivers.
Q Would it be possible that a conflict of interest would exist between a corporation and its officers?
A It is possible.

Q Would that be a concern for you rep -- if you were in a position where you represented both the corporation and one or more of its officers?

A Yes.

Q And would that might be a situation where you might use a conflicts waiver?

A If I thought there was a situation with a potential conflict in representation, I would try to get that straightened out, probably with a conflict waiver.

Q Do you have any memory of executing a conflict waiver as to GrandSouth Bank and any of its officers or employees?

A I do not.

MR. CHUT: Thank you, Mr. Ashley.

THE COURT: Any redirect?

MS. BARBIER: Just briefly, Your Honor.

REDIRECT EXAMINATION

BY MS. BARBIER:

Q Mr. Chut asked you whether or not you regularly seek guidance on conflict issues with anybody at Smith Moore, and I wanted to know did you do that in this case?

A I don't know as if he asked if I regularly seek guidance because I don't. I don't run into conflict situations very often. I did not do that here.

Q Okay. Did you at any time think that Smith Moore had a conflict in representing Mr. Earnest and GrandSouth Bank?

A I did not --

MR. CHUT: Objection.

THE COURT: I'm going to overrule. Let me see what the answer is.

THE WITNESS: In my civil representation, I did not at any time think that, and I did not ponder the question on the criminal side.

BY MS. BARBIER:

Q Did you ever discuss that with Mr. Medford?

A No, not that I recall.

Q Okay. Were you -- I know I may have asked this. I don't want to repeat myself, but I want to ask it in the context of a different question. You indicated that you don't have any memory of Mr. Earnest's grand jury testimony, correct?

A Correct.

Q And so are you aware that he testified twice in the grand jury?

A I am not.

Q Okay. One was in March of 2013, and the other one was in August of 2013. Does that refresh your memory at all?

A No.

Q Okay. If Mr. Medford had been representing Mr. Earnest at the grand jury, would you have foreseen any problems with that?

MR. CHUT: Objection, Your Honor.

THE COURT: Yeah, I'm going to sustain.

MS. BARBIER: Your Honor, based --

THE COURT: I don't know what foundation he has to opine on that at this point.

MS. BARBIER: Well, Your Honor, he's testified that he is aware of what a conflict of interest is, and he's testified that he has in the past sought guidance on conflicts of interest in other matters. And, Your Honor, he was representing the bank in civil litigation during this time frame. Mr. Medford, he's testified, was representing GrandSouth Bank during this time frame. And when one receives a grand jury subpoena, it is to an individual. It is not to somebody in their official capacity as an officer of the corporation. It is an individual subpoena that seeks their individual testimony on issues. Mr. Earnest does not stand here indicted as a person as an employee of GrandSouth Bank. He's an indicted as an individual.

THE COURT: Understood.

MS. BARBIER: And so my point is, Your Honor, that I want --

THE COURT: Is every instance in which an attorney represents a corporation and an officer of the corporation during the course of grand jury testimony or production of documents a conflict of interest?

MS. BARBIER: No, Your Honor, but --

THE COURT: Then until you can establish that he's

got some reason to believe there's a conflict or there's some facts in the record that might suggest that he should opine, for him to opine on whether or not he ever talked to -- or what was the question?

MS. BARBIER: Did he ever discuss a conflict of interest with Mr. Medford in representing Mr. Earnest individually and the bank?

THE COURT: Let me see. "If Mr. Medford had been representing Mr. Earnest at the grand jury, would you have foreseen any problems with that?" What basis does he have to opine on any problems with that?

MS. BARBIER: He has a lot of bases, Your Honor, because he represented GrandSouth Bank in the BHC and Acquient litigation, which was the related civil matter involving Mr. Harrison. Through that litigation in terms of the evidence that was brought forth during that case, the depositions that were taken, the documents that were produced during that case that he reviewed and that he had access to, those facts are some form -- some of the same facts that now appear in the criminal indictment. So he would have had a great knowledge base of the facts, Your Honor, that are not being alleged as criminal conduct by Mr. Earnest. The cases are very similar, and the theories overlap, and if you read --

THE COURT: But how many of those facts does he recall now?

MS. BARBIER: Well, Your Honor, he doesn't recall -- he doesn't seem to recall a lot of facts.

THE COURT: Um-um.

MS. BARBIER: And I think that in going back to the Court's question as to why would they have foreseen a conflict or what facts would they have had access to --

THE COURT: No, ultimately, at the end of the day, you're asking him to opine today as to whatever that question was, whether or not Mr. Medford consulted on a conflict, or whatever the question was. At this point other than -- I think you can ask him, did you all ever do that? Do you ever recall doing that? All those specific facts. But in terms of a question that suggests Mr. Medford had a duty -- that there existed a conflict and he had a duty, I haven't heard this witness relay a single fact that would suggest, A, he was aware of any facts giving rise to a conflict or that he was aware of anything suggesting a duty.

So it's -- all right. I'm going to sustain the objection. You may continue.

BY MS. BARBIER:

Q Mr. Ashley, during your representation of GrandSouth Bank in the civil litigation, did you become aware of Mr. Earnest's relationship with Mr. Harrison?

A Mr. Harrison was the primary topic of the civil litigation. So, yes, I guess I knew there was a relationship

of some part -- part between the two.

Q Did you become aware that Mr. Earnest signed on a large number of loan memorandums that involved loaning money to Mr. Harrison and his licensee companies?

A I don't recall that.

Q Do you dispute that?

A No.

Q Okay. You just don't recall it?

A Correct.

Q So if I showed you those loan memorandums, and I showed you the documents that have Mr. Earnest's name -- his signature on it, would that refresh your memory?

A No, but I would have no reason to think the documents were inaccurate or fraudulent in some way.

Q Mr. Ashley, did you and Mr. Medford ever discuss a potential conflict of interest between representing GrandSouth Bank and Mr. Earnest?

A No.

Q At no time?

A I have no memory of that type discussion and -- no, I don't think -- I'm pretty -- I'm hesitating a little bit because I'm trying to think if there was. No. That discussion, no.

Q Did you ever discuss whether or not Mr. Earnest may be indicted in this case?

A No.

Q Did you ever discuss whether any of the GrandSouth Bank officers may be indicted?

A I don't remember any discussions like that.

Q Did you ever discuss whether the bank may be indicted?

A I do not remember any discussions about indictments.

Q If your time entries reflect differently, would that refresh your memory?

A Not necessarily, but I have no reason to think the time entries would be inaccurate.

Q You just don't recall any of those facts, is that correct?

A Yes.

MS. BARBIER: I don't have any other questions.

THE COURT: Anything?

RECROSS-EXAMINATION

BY MS. RAUSCHER:

Q Mr. Harrison, did you and Mr. Medford ever discuss whether there was a conflict between the firm representing GrandSouth Bank and Shannon Drake?

A I don't recall that discussion.

Q During the meeting that you were with Ms. Drake and with Mr. Medford, do you recall explaining to Ms. Drake that there could be a conflict with your representation of the bank in the civil matter?

A Can you -- I don't recall discussing any conflicts with

her. I hesitated because the question confused me a little bit. But, no, there were no discussions that I remember about the conflicts.

Q With Ms. Drake, is that correct?

A Correct.

MS. RAUSCHER: Thank you. No further questions.

THE COURT: Mr. Chut?

MR. CHUT: Nothing further, Your Honor. Thank you, Your Honor.

THE COURT: All right. You may step down, Mr. Ashley.

(At 12:56 p.m., witness excused.)

THE COURT: We're going to take -- I have to do a couple of things over lunch. Well, before we leave, any other witnesses at this point?

MS. BARBIER: We have other witnesses, Your Honor, and so we could call those after lunch.

THE COURT: All right. We'll be in recess until 2:30.

(At 12:56 p.m., break taken.)

(At 2:37 p.m., break concluded.)

THE COURT: All right. You may call your next witness.

MS. BARBIER: Thank you, Your Honor. Defendant calls Laura Dildine.

LAURA DILDINE,

DEFENDANT'S WITNESS, SWORN AT 2:38 p.m.

DIRECT EXAMINATION

BY MS. BARBIER:

Q Good afternoon, Ms. Dildine.
A Good afternoon.
Q I'm Debbie Barbier. I represent Ron Earnest in this matter. Ms. Dildine, could you tell the Court, please, what your educational experience is.
A Yes. I graduated from Wake Forest University in 2000 with degrees in economics and politics. Then I went back to law school in 2007, Wake Forest University School of Law, and graduated from there in 2010. And I took some classes at Georgetown when I was an undergrad and some classes at UNCG and Winston-Salem State for a teaching certificate as well.
Q And after graduating from law school, where did you first work?
A I actually worked here in this courthouse. I was a one-year term law clerk for Judge Tilley.
Q And following your clerkship, where did you go work?
A I went to work at Smith Moore Leatherwood's Greensboro office.
Q What year would that have been?
A That would've been in the fall of 2011.
Q And were you assigned to a particular team at Smith Moore?

A The litigation team.

Q Okay. And who was your, I guess, direct supervisor?

A I suppose my direct supervisor would have been the head of litigation, which at the time when I first started could have been Jim Medford. It later changed to Greg Holland, if I'm not mistaken. I also had a mentor as well. I'm not sure if she would be responsive to your answer, but her name was Lisa Garrison.

Q Did you work a good deal with Mr. Medford?

A I worked with Mr. Medford on several cases during my tenure at the firm, but I worked more with other attorneys.

Q What types of cases did you work on with Mr. Medford?

A Let's see. I did work on at least one civil matter that comes to mind and then a couple of criminal matters.

Q Was a percentage of Mr. Medford's practice criminal defense work?

A I don't know. I know that he had experience in the past of doing criminal defense work.

Q Okay. And the cases -- the criminal cases that you worked on with him, were those the only criminal cases you worked on at Smith Moore?

A No.

Q Okay. What other types of -- did you work with any other partners on criminal cases?

A Yes.

Q How many criminal cases would you say you were involved in while you were there?
A Five or six.
Q Okay. And was that your first introduction to criminal defense work, your work at Smith Moore?
A As an attorney, yes. I certainly witnessed some of that working in the courthouse before that.
Q Okay. So in terms of your work with Mr. Medford, did you ever get involved in a case that involved the representation of GrandSouth Bank?
A Yes.
Q Okay. Can you tell us what the nature of your involvement was?
A Yes. When I came aboard, this was an existing matter, and I assisted with responding to subpoenas that the Government had served on GrandSouth Bank for documents and in preparing GrandSouth Bank employees to testify before the grand jury and the Government's investigation of Doug Corriher.
Q So did you in the course of that review documents that were responsive to the subpoenas?
A Yes.
Q Did you review trial testimony in the Harrison case?
A I don't have a specific recollection of that, but I may have.
Q Okay. In terms of how you billed for your time while you

were at Smith Moore, did you make specific entries into bills related to your activities?

A Yes.

Q And would those entries be accurate?

A I would hope so.

Q Okay. During the time period that you were working on the case involving GrandSouth Bank, did you have an opportunity to meet Ron Earnest?

A I believe so. He is familiar to me looking at him today, yes.

Q Okay. And did you attend meetings with Mr. Earnest?

A I believe that I did attend a meeting with Mr. Earnest here in Greensboro.

Q Did you attend meetings with the Government?

A Yes.

Q Okay. How many meetings would you say you attended with the Government?

A I would say at least two.

Q Do you have a specific recollection about what time frame those meetings took place in?

A All I can say to that is that I recall working on this matter, to the best of my recollection, maybe the summer of 2013 through the summer of 2014, and so I really don't know when in that span of time or even outside of that those meetings would have occurred with the Government.

Q It's my understanding that you don't work at Smith Moore anymore, is that correct?
A Correct.
Q Okay. So have you had the opportunity to review any parts of the file or any documents related to the representation of GrandSouth in preparation for your testimony today?
A I have not reviewed documents from this case.
Q Okay. And if there are time entries on invoices beginning in February of 2013, would that refresh your memory as to when you began work on this case?
A I would assume that those are correct.
Q Okay. So during the time period that you were working on this case with Mr. Medford, did you become aware of facts that could expose Mr. Earnest to criminal charges?
A I'm pausing because I want to make sure that my ethical responsibilities are --
Q I don't want you to tell me what the facts were --

THE COURT: What we've got in place here, we have attorneys from Smith Moore, we have attorneys from GrandSouth, and I instructed the attorneys earlier that the witnesses -- that I was overruling at least parts of the motion to quash, the witnesses would be called, and the witnesses are responsible for testifying; and either Mr. Earnest or GrandSouth or Smith Moore attorneys will be doing the objecting. So if you don't hear an objection, you can answer.

THE WITNESS: Thank you, Your Honor. Would you mind repeating your question?

BY MS. BARBIER:

Q Sure, and I don't want you to tell me what facts you became aware of. I just want to know whether or not during the course of your work on this case you became aware of facts that could expose Mr. Earnest to criminal charges?

A I never did that I can recall.

Q Okay. Did you -- were you asked to analyze that?

A I don't remember if I was specifically asked to analyze that. May have been, I just don't remember.

Q Okay. If there were time entries that indicated you did analyze that issue, would that refresh your memory?

A Yes, those would be accurate.

Q Okay. Do you recall attending any meetings with the Government where accusations were made regarding Mr. Earnest?

A I don't specifically recall that.

Q Do you recall any accusations being made about the bank or any of its employees during those meetings?

A Other than accusations against Mr. Corriher, no, and I believe that I would remember that because I knew that Mr. Corriher had his own separate representation because he was the grand jury target, so I think that my radar would have detected the Government suggesting those types of things towards any other bank employee.

Q Okay. Were you able -- in preparing document production for the grand jury subpoenas, did you review what the scope of the investigation appeared to be?
A I'm not quite sure I understand what you mean did you review what I understood the scope to be. Could you --
Q Did you ascertain what the scope of the investigation was from your review of the grand jury subpoenas?
A To the best of my understanding at the time.
Q Okay. And did the grand jury subpoenas request documents regarding the licensee companies of Mr. Harrison?
A I think they did.
Q Do you recall whether any of the documents that were produced contained the name or the signature of Mr. Earnest?
A I think they did.
Q Was it your understanding that Mr. Earnest's conduct was within the scope of the grand jury investigation, the actions that he took with respect to these loans?
A With respect to the scope of the investigation into criminal conduct?
Q Correct.
A I did not understand that the Government was investigating Mr. Earnest for criminal conduct.
Q Did you understand whether the Government was investigating the bank?
A I did not understand that the Government was investigating

the bank for criminal conduct.

Q Okay. When you were in the meetings with the Government, do you recall an allegation by the Government that the bank knew or should have known that the structure of the licensee companies was a fiction?

A I don't specifically remember that, but the Government could have said that.

Q Do you recall the Government making the accusation that the bank knew or should have known that payroll taxes were not being paid as required?

A I don't have a specific recollection of that.

Q Do you have any recollection of it?

A I don't. I'm sorry.

Q Okay. Do you recall the Government making the accusation that the bank's funding of licensee companies provided Harrison with an opportunity to steal funds belonging to the US Government?

A I don't specifically recall that. I mean -- I'm sorry. I think I do recall the Government -- generally, I recall the Government feeling fairly convicted, no pun intended, that it had a case against Mr. Corriher; but the extent about what you're asking me, I'm sorry, I don't have a specific recollection of those statements.

Q Did you take notes during these meetings with the Government?

A I may have taken notes during the meetings.

Q Do you recall generating some memoranda after the meetings summarizing certain accusations or summarizing what happened in the meeting?

A I don't recall specifically sitting down and doing that. I do know that I did draft memoranda after meetings with the Government.

Q Okay. And do you recall any of the -- I don't want to ask you about the contents of the memoranda at this time because I do believe those --

THE COURT: Just ask your question.

MS. BARBIER: Okay.

BY MS. BARBIER:

Q Ms. Dildine, do you recall partaking in the preparation of Mr. Earnest for his grand jury testimony?

A It's possible that my recollection of having met Mr. Earnest would've been when he came to Greensboro to prepare for testimony before the grand jury, because otherwise he was, as far as I know, not in Greensboro when we were speaking with him. So that may have been why he was here.

Q Okay. During the course of the preparation for him for grand jury testimony, did he ask questions?

A Unfortunately, I don't remember any specifics of that meeting.

Q Do you recall whether -- tell me what attorneys were

present for Smith Moore during the preparation of his grand jury testimony.

A I don't know why that is not a vivid memory for me, but it is not. I don't believe I would have been there by myself with Mr. Earnest in preparing him, so I know there would've been at least someone else there as an attorney, but I don't recall who that would've been, if it were Mr. Medford. I would think it was probably Mr. Medford.

Q Do you recall whether, in the course of preparing him for his grand jury testimony, legal advice was given to him?

MR. CHUT: Objection.

THE COURT: Well, I'll overrule, if she recalls.

THE WITNESS: I don't recall.

BY MS. BARBIER:

Q And you don't recall whether he sought legal advice?

A I'm sorry, if he sought?

Q And you don't recall whether Mr. Earnest sought legal advice?

A I do not. Sorry.

Q Just in terms of your general understanding of preparing a witness for the grand jury, would you say that it would be necessary to explain to the person who was going to be a witness the nature of a grand jury proceeding?

A I would think that would be wise to give them an understanding of what to expect when they walked in the door.

Q Would you think it would be necessary to explain to them the distinctions between testifying in a civil case and testifying in a grand jury proceeding?

A I would think that would be important.

Q Do you think it would be important to explain to them the concept of perjury and the consequences of perhaps a perjury charge?

A I would think it's always wise to tell someone that they have an obligation to tell the truth.

Q Okay. And along those lines, would you think it was important to advise and counsel the witness on the appropriate way to answer a question in terms of answering it completely?

A I think in practice as an attorney, you would want a witness to answer truthfully and to the best of his or her recollection.

Q And let me ask you this. Was there -- do you recall any discussion during the preparation of this -- of Mr. Earnest's first grand jury testimony of whether Smith Moore was acting as his attorney?

A I don't recall acting as Mr. Earnest's attorney in a personal or individual capacity. Mr. Earnest, from my recollection, was our primary point of contact for GrandSouth Bank. He spoke for the bank, my interpretation, and so that is how I understood Mr. Earnest' relationship with us.

Q Do you recall whether or not Mr. Earnest was advised that

he could get his own attorney?
A I don't recall that.
Q Do you recall whether Mr. Earnest was asked to sign a conflict waiver?
A I don't recall that.
Q Do you recall whether he was given an Upjohn warning?
A And what do you mean by an Upjohn warning?
Q Do you recall whether or not he was instructed that Smith Moore was not his personal, individual counsel?
A I don't recall that.
Q Was it Smith Moore's practice during that time period, to your knowledge, to give Upjohn warning waivers in writing?
A I don't know what the firm's practice was with that.
Q Okay. Were you aware of the term "Upjohn warning" while you worked there?
A Not the term. I certainly understand that under the rules of professional conduct if there were to become a conflict, however that word may be defined, between individuals who work for a company and the representation of that company that eventually that employee might need to have his or her own counsel. That would be the extent of my understanding.
Q In terms of the rules of professional conduct, was the rule that discusses representation of a corporate client discussed at all in your preparation with Mr. Earnest?
A I don't recall.

Q And, specifically, I'm talking about the rule relating to clearly identifying who the client is. Do you recall whether that discussion was had?

A I'm sorry, I don't.

Q Going back to the way in which a grand jury witness is prepared, in terms of your general knowledge of that, it's possible that privilege issues could arise in the context of a question being asked in the grand jury, correct?

MR. CHUT: Objection, Your Honor.

THE COURT: Basis?

MS. BARBIER: Your Honor, it goes to --

THE COURT: I was asking for the basis of the objection first.

MS. BARBIER: Oh, sorry.

MR. CHUT: Just relevance, Your Honor. This is a hearing about a privilege motion, Your Honor. I'm not sure -- we've already delved into preparation for grand jury witnesses, and now we're returning to it, and I'm not sure how it's relevant to the issue of her -- Smith Moore's representation of Mr. Earnest as an individual.

THE COURT: Do you want to respond?

MS. BARBIER: Yes, sir, Your Honor. Your Honor, this goes to the issue of what legal advice was given -- I'm sorry -- what legal advice was given to Mr. Earnest during the time period that he was being prepared for the grand jury.

THE COURT: Well, two things. Number one, I'm going to overrule the objection. But I will warn you in terms of the weight to be assigned this testimony, at this point this is an attorney who is testifying. But in terms of both practice and experience, I'm not sure this attorney is in a position either as a -- I guess you'd call it a layperson -- but as a layperson by virtue of experience or as an expert to opine with respect to practice before a grand jury during the course of a criminal investigation. That would go to the weight of the testimony ultimately.

And number two, in terms of general practices, that may be of some -- some assistance to the Court, but it's going to be very limited, because, I mean, what advice is given and how things are handled depends on several different circumstances.

So I'm overruling the objection. I'll give you a little bit of latitude in terms of general practices, but I'm not going to let it continue for a long time.

THE WITNESS: Shall I answer the question?

THE COURT: You may answer the question.

THE WITNESS: Yes, I would imagine that if a witness were testifying before the grand jury, and the Government inquired of that witness some communication that that witness had with his or her attorney, there could be a privilege issue.

BY MS. BARBIER:

Q Okay. Would it be necessary then to instruct the witness on how to identify a privilege issue?

A Would it be -- for the Government during the grand jury testimony to do so?

Q No, I'm sorry. In the process of preparing a witness for the testimony, would it be important to instruct the witness about how to identify a privilege issue?

A I would think so, yes.

Q Okay. Are there any other issues that you're aware of that it would be important to instruct the witness on in grand jury preparation?

A Not that come to mind. You've covered truthfulness, completeness. That would be what comes to mind.

Q When a witness testifies in the grand jury, they're given the option of leaving the grand jury to consult with their lawyer if it becomes necessary; is that your understanding?

A That's my understanding.

Q Okay. Was legal advice given to Mr. Earnest about that concept?

A I don't recall.

Q Would that have been your practice to do so in preparing a witness?

A I can't say that I have a practice of preparing witnesses for the grand jury, but I would think that a witness before the grand jury would be told they could step out if they had legal

counsel outside.

Q How about the invocation of the Fifth Amendment should a question implicate -- the answer to a question implicate the witness? Was Mr. Earnest explained that right?

A I don't recall.

Q Okay. Do you recall whether or not that would have been something that you or Mr. Medford would have gone over with him?

A I don't recall whether we would have or not. I would think that we would have, but I just don't recall.

Q All of these things that I asked you about in terms of how Mr. Earnest would have been prepared, would that have involved legal advice in your opinion?

MR. CHUT: Objection.

THE COURT: I'll overrule. You can answer, if you know the answer.

THE WITNESS: In my opinion, it would have involved legal advice on behalf of GrandSouth Bank in having one of its employees testify before the grand jury, and -- because there wasn't -- at least with the meeting with Mr. Earnest, if there wasn't anyone else who was a representative of the bank to whom to give legal advice, then it would have been to Mr. Earnest. So that's a roundabout way of saying yes; but in my mind, it's legal advice given to the client which should be GrandSouth Bank, and he is the personification of that in that meeting.

BY MS. BARBIER:

Q Was it your understanding that Mr. Earnest was subpoenaed to the grand jury as an individual or as a representative of GrandSouth Bank?

A It's my understanding as a representative of the bank.

Q What do you base that understanding on?

A And perhaps I'm not answering your initial question as you had anticipated with my understanding of it. But I understood that Mr. Earnest was strictly a fact witness as a bank employee in the Government's investigation of Mr. Corriher. So that's why I'm responding that, in my mind -- and I don't recall what the subpoena said or if I reviewed it, I'm not sure -- but in my mind, he was testifying as a bank employee, as the bank president, but not as someone separate and apart from the bank.

Q So your understanding was he was not testifying in his individual capacity?

A I'm not sure how to distinguish that. Perhaps that's the problem between -- I mean, because you have this corporate client who's speaking through its agents and officers and principals. So -- I don't recall what the subpoena said. You know, perhaps it's more specific. I haven't seen that in years, if I saw it at the time. So in my mind, what I recall -- and I don't recall any specifics of that meeting -- but I recall thinking that he was involved in this as a bank employee.

Q And you don't recall researching or analyzing whether or not Mr. Earnest could be indicted for -- or be exposed to criminal charges for any of the activities related with Mr. Harrison?
A I don't; but according to you, there's records that suggest that I may have done that, which those would be accurate.
Q Okay. Beg the Court's indulgence. Let me ask you this, Ms. Dildine. Are you familiar in civil litigation with the concept of a 30(b)(6) deposition?
A Yes.
Q Okay. What I think I'm hearing you say is that your impression was that Mr. Earnest was only testifying in the grand jury as a somewhat of a 30(b)(6) witness for GrandSouth Bank?
A I think that's a good analogy. I'm not quite sure what the rest of your question is suggesting or anticipating, but I think that I would say that's a good analogy.
Q Did you have discussions with Mr. -- I don't want you to tell me what the discussions were, but did you have discussions with Mr. Medford regarding your understanding of how he was testifying?
A I don't recall.
MS. BARBIER: Your Honor, there is a -- excuse me -- there is a privilege memoranda that we would like to ask

Ms. Dildine about and ask her to authenticate that she appears to be the author of relating to a lot of the questions I've asked her. Obviously, I can't enter that into the court record because we believe it's a privileged communication, and so I would ask the Court how you would like us to proceed at this point.

MR. CHUT: Your Honor, may we approach?

THE COURT: You may.

(Bench conference as follows:)

THE LAW CLERK: The bank wants to know if they should approach.

THE COURT: Yeah, one.

MR. BOYCE: I'm the designated one.

MR. CHUT: Your Honor, I have a concern -- and my understanding is we're going to wait to deal with the records from Smith Moore. I'm concerned there seems to be this second source of records from Smith Moore that have not come from Smith Moore, and I'm concerned that before we start handing -- because we have no way to know what they are, whether they're truthful. This is a case involving charges of obstruction of justice and falsification of bank records. I would like, Your Honor, maybe we should have a procedure where there's an authenticated set of these records from Smith Moore so that we have some confidence that these are actually accurate documents.

THE COURT: At this point, as I understand it -- you want to introduce it or refresh recollection?

MS. BARBIER: I could use it to refresh her recollection, Your Honor, and I don't have to introduce it as long as there's no issue of waiver there.

THE COURT: Either way, it may be that Laura can authenticate it. But the minute it's handed to her on the witness stand for whatever purpose, the other side gets to take a look at the document. So, arguably, privilege is waived as to the document once that occurs. Did you bring the document with you?

MR. HOWARD: I did. This is multiple copies.

THE COURT: Are they all stapled together?

MR. HOWARD: They are.

THE COURT: Who is Miles? Anybody know the last name?

MS. BARBIER: I don't, Your Honor.

THE COURT: Do you all know anybody?

MS. BARBIER: Your Honor, I don't know what part you're reviewing, but the commentary section is specifically about the --

THE COURT: Let me -- I don't know that I've gotten to that part yet.

MS. BARBIER: It's toward the end.

THE COURT: No, I've just gotten to the follow-up

section.

All right. Two things jump out at me. I can't remember -- I can't recall now what the law is, but I know there's some law out there about an attorney's notes from BEs and such, and I don't have that in front of me, so I can't -- whether or not that's privileged information.

I do think that any commentary, specifically impressions of counsel as to work product, are work product. I think it's clear at this point this belongs -- whatever Mr. Earnest's status is, this belongs to GrandSouth Bank. I don't know how at this point, absent some kind of way for GrandSouth or something -- I don't know how we can get in to putting this in at this point.

The same -- as I see it, the same problem for you all that you're complaining about in terms of GrandSouth's production, and that is that GrandSouth has privilege that applies to this also. And so before it can be published, GrandSouth needs an opportunity to decide what their position is with respect to this. I don't know if you all have any idea.

MR. BOYCE: I believe we've waived the privilege on behalf of GrandSouth. But my understanding was, when we were made aware recently that there was a joint privilege, that we could not waive it for others who are claiming privilege.

THE COURT: Okay. What I suggest we do at this point

is we take a 10-minute recess. We can let GrandSouth take a look at this and make sure this falls within the purview of their waiver, unless you have a better idea. I've got to go take a look -- anybody got any cases on notes of interview? I know there's some out there. I've looked and couldn't --

MR. CHUT: It could be work product, Your Honor. Right now there's been no proof of any (inaudible) --

THE COURT: Yeah, I'm not sure those notes of interview are just blanket work product. I think they can be work product, at least the impressions, but I have some recollection in the back of my mind that they can be redacted, and the information that was exchanged between the attorney and the third party is not privileged because there's no intent to keep it secret.

MR. CHUT: And I for sure have no idea what's actually in the document. So, obviously, if there was a third party, I think one issue in this privilege thing is if Mr. Earnest did have privilege, is it waived when the bank officers are there. You can say joint privilege. The case law is pretty strict on how you establish joint privilege --

THE COURT: Well, at this point I'm not even talking about joint privilege. I mean, it's pretty clear. So what we're going to do is -- I'm going to take a short recess. You can -- unless you object, you can let GrandSouth take a look at the document and see what their position is on it. If they

object, then we've got issues; and if they don't object, then we'll come back around to this.

At this point in time if I were to go find -- I'll give you this forewarning, and then you can think about it. If I were to find after a quick look that notes of public conversations, we'll call them, an attorney's notes of public conversations, not the impression, just the notes of the information, is not attorney work product or attorney-client privilege, then I would be inclined to say part of this is not protected under the privilege as privilege or work product.

But I think the last part under the comments is clearly attorney work product, and I wouldn't allow that to be -- I would permit you to hand up the document with that part redacted if that's where I get to. Do you follow what I'm saying?

MS. BARBIER: I do.

THE COURT: You may disagree with me on the first part. I've got to go look at the cases. I can't remember what they say about this interview stuff. All right. We'll be -- we'll take a short recess.

(Bench conference concluded.)

(At 3:15 p.m., break taken.)

(At 3:47 p.m., break concluded.)

THE COURT: All right. So I don't know the answer. There's an old case that I looked at -- old, 1984 -- 748 F.2d

871. I didn't Shepardize it, and there's apparently some negative authority. It doesn't look like it's been reversed, but there's some talk in there about in order to fall under the privileged communication prong of attorney-client privilege, it has to have been a communication between the lawyer and the client. That's not what we have in this memo or what's reflected in this memo.

Step two, it looks like in more recent times the Fourth Circuit and other courts have started distinguishing between fact work product and opinion work product, and it appears to be black letter law that opinion work product is more heavily protected than fact work product, but fact work product is protected also.

So I think there's at least some argument that an attorney's notes as to a conversation between the attorney and a third party, those notes reflect the attorney's impressions, at least to the extent the attorney would have noted what was important, and, therefore, that fact work product is subject to protection. The most recent case we looked at on that is another *In Re: Grand Jury Subpoena*, 870 F.3d at 312. That gets also, I think, into the crime fraud exception, which raises some other issues.

So at this point I would be inclined to say that the document is protected under the attorney-client privilege. I'm not convinced of that, but I'm not at this point -- well,

attorney-client -- work product privilege. I'm not fully convinced of that, but I would be a little uneasy opening the document up for full examination, which then brings us around to the second part, which is what does all that mean if I'm at least close to correct in my analysis?

So Mr. Earnest has argued in his briefing that under the North Carolina rules of professional responsibility, the Court's got to conduct an ex parte in-camera hearing with respect to the existence of the attorney-client privilege, but our research has led us to believe that in terms of a federal case, it's the federal rules that apply, not the North Carolina State rules. Therefore, the North Carolina rule with respect to professional responsibility would not be controlling in this proceeding, and I have not found any cases to say -- there are a lot of cases that say the burden is on the proponent to establish the existence of the attorney-client privilege, but I've not read any cases, nor have I seen any cases, that say to make that determination you hold an in-camera ex parte hearing on the matter. To the contrary, it appears that the burden's on the proponent to come forward with evidence, by affidavit or otherwise, to establish the existence of the privilege.

But then that -- if that analysis is correct, that then leads to what I find to be almost an untenable situation, which is a witness is called to testify about the existence of a privilege, and then whether it's recollection recorded or

even the introduction of an exhibit, can be handed an exhibit, asked to testify about matters that are reflected in the exhibit, whether it's refreshing recollection or whether it's substantive matters in the exhibit, and the opposing side doesn't get to see the exhibit. I don't think I've ever seen that happen in a courtroom. I'm pretty sure I've never heard of it happening in a courtroom, and it's directly contrary to the rules of evidence, even with respect to refreshing recollection, which would require that if it does refresh recollection, it's got to be made available to the opposing party.

So how do we get through this? I don't know the answer to any of the questions honestly. Mr. Chut, do you want to be heard on anything?

MR. CHUT: Just briefly, Your Honor. You know, as to the bank, I think the existence of privilege is clear. As to Mr. Earnest, it's not. I would suggest, in fact, the evidence is almost nil that --

THE COURT: Well, let me paint a little different picture and what's caused me some concern. Mr. Earnest says in his affidavit that Mr. Medford agreed to represent us both, GrandSouth Bank and me, and I forgot what the comment he alleged that he attributes to Mr. Medford, but something along the lines of, you know, we'll make sure nobody gets indicted or something along those lines. Whether that's enough, I

certainly have my doubts.

But then you couple that with the testimony before the grand jury and the presence -- the testimony being are you represented by counsel, yes, he's outside, Mr. Medford being present outside, at least is suggestive to me that there's an issue of fact. It may not carry the day. I'm not saying that. But there's some issues there. Even if you get -- even if you say, well, that proves the existence of the attorney-client relationship, it's still what was the nature of the relationship? Was it just to be present and protect -- I don't know. There are other questions that go along with that.

So I didn't mean to -- I didn't mean to get off track, but there's some things here that cause me some issues with respect to who was being -- who was represented in this equation. I don't say that critically. It's just there is at least some evidence there. So how do we handle the clash?

MR. CHUT: I don't know what the document is, Your Honor, so I have a hard time having an opinion. I'm just really concerned, Your Honor, where a former employee of a corporation (inaudible) corporate records never seen and can use them in court, that is of concern to me. I don't know what they are. It's hard for me to have an opinion --

THE COURT: I can understand you. I'd be a little concerned myself if there was a witness on the stand talking about documents, and the judge say you can't see them. That

would be a little troubling to me, too.

MR. CHUT: And, Your Honor, what's --

THE COURT: But, ultimately, it's what the law requires.

MR. CHUT: Yes, Your Honor. The law is really narrow on what attorney-client privilege is, and it can be -- most of the time, the true attorney-client privilege are not the actual communications. It would seem that the real evidence, Your Honor, would be the non-privilege evidence.

THE COURT: I don't think there's any question here, and Ms. Barbier, Mr. Howard, either one, can correct me, but I think in terms of the memo, it's an attorney's notes of a memo of a discussion essentially -- I don't think this is revealing too much -- of a discussion with opposing counsel and maybe one other person, and ordinarily that clearly wouldn't fall under an -- I mean, attorney-client communication invoking -- supporting a finding as to the attorney-client privilege. I think the tougher question presented by the memo is whether or not if the privilege existed, is this protected by the attorney work product privilege? Is that your position?

MS. BARBIER: Yes, Your Honor. The reason my client has a copy of that memorandum is because it was given to him by his attorney, Mr. Medford, and so I --

THE COURT: I mean, it should have been. I mean, the whole -- given to somebody at GrandSouth Bank.

MS. BARBIER: It was given to Mr. Earnest.

THE COURT: I understand, but it needed to be.

MS. BARBIER: Correct.

Your Honor, I would like to weigh in on how -- what we would propose as an appropriate way to proceed. Your Honor, not only do you have in front of you Mr. Earnest's affidavit, which doesn't just indicate that Mr. Earnest was told that Mr. Medford's goal was to make sure that he was not indicted, Mr. Earnest was not indicted, and the bank was not indicted, you also have the affidavit setting forth specific facts that an attorney-client relationship was created, that he sought legal advice and that he was given legal advice throughout the time period of this investigation --

THE COURT: Sought legal advice as to what?

MS. BARBIER: He sought -- well, Your Honor, that sort of brings me back to the next issue and the problem that we have here.

THE COURT: Just what's in the affidavit.

MS. BARBIER: Yes, sir. The affidavit does not contain a great deal of detail about what specific legal advice that he sought because if we informed third parties of that, that would be a waiver.

Your Honor, we have the burden to prove this attorney-client relationship existed. As Your Honor has already cited, several cases in the Fourth Circuit establish

how that is done. We have to show that Mr. Earnest sought legal advice; we have to show that Mr. Medford and other attorneys at Smith Moore rendered legal advice in their capacities as members of the bar; we have to show that these communications were confidential; and we have to show that the privilege has not been waived.

And, Your Honor, in order to do that, in order to meet our burden in doing that, we have to be able to inquire and make a record of facts that establish what advice was sought, how it was sought, how often it was sought, and what advice was given in return for that, Your Honor, and we are unable to do that in full and completely without referring to privileged information.

THE COURT: Have you got any case, any case, in the federal system where that was done in an ex parte fashion?

MS. BARBIER: Your Honor, we would like -- here's the dilemma that we have, and this is not -- this would be -- you know, I'll take the blame for this. As we were preparing for this hearing, Your Honor, I started contemplating how we would put forth evidence regarding the existence and duration of the attorney-client privilege here, and it became apparent to me in reviewing the invoices that we have that have an extensive amount of detail about communications that were had with Mr. Earnest, about meetings that were had with Mr. Earnest, about issues that were arising in the litigation and regarding

different concerns that were being expressed to him and back and forth, Your Honor, it became apparent to me that we had to do at least a portion of this hearing in an ex parte fashion, and that is why I --

THE COURT: I understand. But is there -- I mean, can you give me any federal authority that says we do this in an ex parte fashion?

MS. BARBIER: Your Honor, we would like permission to extensively brief that issue. We think it's a critical issue. Your Honor, we have --

THE COURT: It is a critical issue, and we're here. We've been looking at it. Surely, you've been looking at the question.

MS. BARBIER: We have, Your Honor, and the most analogous situation that we can find is a Rule 44 hearing. As Your Honor knows, in a Rule 44 hearing the Court inquires about joint representation issues and whether --

THE COURT: Absolutely. I've never done one ex parte. Never. Never had one done ex parte. Have you been in a court where they did a Rule 44 ex parte?

MS. BARBIER: Your Honor, I have not, but I have been involved in cases where -- let's just say there's an appointed lawyer, and the client wants to fire the lawyer, and the Court hears argument about that ex parte on a routine basis.

THE COURT: We don't do that up here.

 MS. BARBIER: We don't?

THE COURT: Um-um. If the client wants to fire his lawyer, he has to stand up in the courtroom and explain his reasons.

MS. BARBIER: Well, I could provide you with authority from at least the District of South Carolina where that's happened, and, Your Honor, the purpose behind that is to determine -- for the Court to make a determination whether or not there's been such a breakdown in the attorney-client relationship that it necessitates relieving counsel.

Very similarly here, what we have is a situation -- the issue is whether the attorney-client relationship was ever formed and the duration, if so, of that relationship. And I would submit, Your Honor, that's a very similar issue that is, at least in the District of South Carolina, done on a routine basis ex parte.

But, Your Honor, I apologize that we don't have case law on hand on that issue, but I know that attorneys for Ms. Drake have the same position that we do with respect to the need for an ex parte portion of this hearing, and we would all like to brief the issue.

We also, Your Honor, may obviate the need for an ex parte portion of the hearing if Your Honor agrees to review the invoices and confidential memoranda that we believe are privileged between Mr. Earnest and the Smith Moore attorneys in

camera. If that review is done, Your Honor, it may obviate the need for an ex parte hearing because Your Honor will be able to --

THE COURT: Yeah, I mean, I'll be -- if I review the invoices in camera and ex parte and come out and say attorney-client privilege applies because there was an attorney-client relationship between Mr. Earnest and Smith Moore relating to these matters, I'll be right back at square one. The Government's going to say, no, you can't make that finding without us having some opportunity to respond.

MS. BARBIER: Your Honor, I believe there's got to be case law that says that in order to prove the existence of the relationship that we're trying --

THE COURT: Have a seat, Mr. Chut.

MR. CHUT: Yes, Your Honor.

MS. BARBIER: We can't be forced to waive the privilege in order to prove that the privilege exists. And, again, we would like the opportunity to extensively brief that for the Court.

THE COURT: All right. Mr. Chut?

MR. CHUT: Your Honor, we did file a brief. This ex parte motion came on November 6, which was Monday, which was awful close to this hearing for the United States to get notice of this extraordinary request to have a secret hearing.

We did file a brief, Your Honor. We didn't find an

enormous amount of law, but we did find the -- I want to say it's the *Olander* case out of the Seventh Circuit in 2011 which did analyze the issues of fact and came down against allowing ex parte testimony, and the factors, Your Honor -- the fact is it goes against the general nature of the adversarial system. The risk is not great. Mr. Earnest is indicted. The Court can exclude any evidence. It's hard to imagine what is so secret that even with an exclusionary order, it would somehow harm Mr. Earnest.

And I have concerns, Your Honor. This is a really difficult -- this is a really unusual request that was made late, and we responded to it. This is a situation where -- normally, privilege issues are pretty in the open because people are either represented or not represented. All the evidence is supposedly secret. This is very strange, Your Honor, and it's not -- this is not something the United States -- you're right, Your Honor. We would never agree to ex parte -- in-camera examination is one thing, but ex parte testimony? I don't think there's any authority that -- we didn't find any authority that allowed it to happen. I said the one circuit case came down pretty heavily against it.

So if you're going to file that motion, I don't understand why it wasn't briefed in advance. It's an extraordinary remedy, Your Honor. I think it's very harmful to the United States. And the attorney-client privilege is old

law. Is there an attorney-client relation? That itself is not privilege. This idea that you have to have secret information to prove the privilege is very strange, Your Honor.

THE COURT: Well, state law might allow it, I don't know. I never participated in a hearing like that under state law, so I can't speak with any authority on that. But I sure can't find any federal authority that would support that.

There's another problem here, at least for me, in trying to address these issues, and at this point it seems to me that everything that is within the lawyer's file or generated by counsel or delivered by counsel to the client has been more or less treated as attorney-client privileged information or falling under the privilege or work product or something and, therefore, not subject to disclosure. And I thought we might be able to work our way through this today, but I don't see how we can do something with this issue without more information along the lines of a privilege log, which is really awkward because the proponent of -- the defendant -- the proponent of the privilege is -- has the documents, and they're not under subpoena, and Mr. Earnest is not under a duty to produce those documents. So it's a little bit tricky as to a privilege log.

I'm kind of leaning now toward going back to the beginning and maybe where this case should have gone in the first instance, and that is at this particular juncture the

defendants have all the discovery -- maybe there's more coming, I don't know -- but they should have most, if not all, of the discovery, which would include those documents provided by the bank. And it would seem to me in terms of the objection that was raised that the duty is on the proponent of the privilege to establish that those documents that have been turned over by the bank to the United States are privileged documents, and that I don't think has happened yet. There's been a general allegation that Mr. Earnest contends that he was represented by Smith Moore during this particular period of time, and apparently Ms. Drake contends the same thing, and, therefore, some documents -- I'm not sure -- at least I'm not sure what at this point were turned over to the Government, and, therefore, the privilege has -- not been broken, but violated by this disclosure. I don't know what we're dealing with in terms of those documents.

MR. CHUT: Your Honor, the United States has turned over everything in its possession. We would contend there's nothing provided to it that GrandSouth Bank in the proper way is privileged to. We were informed by bank counsel yesterday that Smith Moore has completed turning over its file to -- back to GrandSouth Bank, and that amounts to 30 boxes of documents.

THE COURT: So there are more documents to be disclosed?

MR. CHUT: We've not seen them, Your Honor. I'm not

 sure what they are, to be honest. Why a law file -- a lawyer's file would include 30 boxes of documents, Your Honor, is both a mystery and concern to the United States. Everything we have has been turned over, Your Honor. We have completed our discovery. After Mr. Earnest left the bank, the bank cooperated with the United States. We turned all those documents over, Your Honor. We completed our discovery, and now we're informed there's 30 boxes of documents that were turned over by Smith Moore to Nexsen Pruet on behalf of GrandSouth.

THE COURT: I'm not so sure I don't have these issues out of order in terms of the way we need to proceed, because I just am kind of trying to put things in perspective without any context in which to put these matters into perspective.

I read the briefs. I understand the different allegations about different times at which different individuals were subjects and targets and what was going on with this case -- I'll tell you what, Ms. Dildine. I forgot you were sitting there. If you don't mind, I'll have you step out.

(Ms. Dildine exits the courtroom.)

THE COURT: So at this point, most of the objection seemed to be directed toward some internal investigation that Smith Moore conducted for the bank and the contention that that was privileged information. I don't know if -- how that

information got disclosed, whether the investigation was conducted with an eye toward the investigative materials ultimately being disclosed in an effort to exonerate the bank or what, and so I'm beginning to have some reservations that we're going -- even though it makes logical sense to try to take this evidence, trying to go backwards -- or trying to go forwards by establishing the attorney-client relationship, seeing how far that extends and then reviewing the records is creating a very awkward situation.

For example, it might be that after reviewing the records, none of those -- even if Mr. Earnest was represented by Smith Moore, none of those records may turn out to be privileged documents. There's got to be a better way to do this than what we're doing here, because I don't know -- at this particular juncture, I've got nothing to suggest -- or no authority that would support an ex parte in-camera hearing. I don't know of any way, even if I should determine that a document is privileged, that a document can be presented to a witness, the witness testify in response to that document, and the opposing party not be given any information with respect to the document. I can't make that make any sense. So I'm really kind of torn.

Anybody have a better idea how to deal with this?

MR. BOYCE: I'm just curious, Your Honor. Do you think your concern about doing anything ex parte would somehow

restrict one party's ability to see the documents -- would you say that applies to the victim bank? In other words, could we provide the information to you in chambers, and you use us as the vehicle to make --

THE COURT: I appreciate your offer, but here's the problem. At this point I don't know who has what, so I'm wasting my time if you were to come over and deliver all the records that you have sent to the Government and said we've provided these to the United States. I don't know what that means. I can't put it in any context. If I take your 30,000 pages of new documents and start scrolling through those, I don't know how I make any headway on that. Maybe I'm missing the point here.

MR. BOYCE: Well, I think these two gentlemen have already done some funneling of documents down to some what I think are key documents that they believe the Court may want to look at in chambers and assist the Court in making the determination before we turn over anything. We're trying to technically and legally do the right thing --

THE COURT: Yeah, I see what you're saying.

MR. BOYCE: -- and we were thinking if you looked at some of the key documents, it might help you make a decision.

THE COURT: I still come back to a similar problem, and that is if I go look at them in chambers and then come back out and say, okay, I've decided that Smith Moore represented

Earnest and the bank, and, therefore, there's a joint -- there are two clients, and both have to consent before these can be disclosed. I mean, it's almost a question of who's going to the Fourth Circuit first.

And, you know, at the end of the day, I don't care what the Fourth Circuit does, but I hate -- look at -- we've got lawyers all over this -- well, I do care what the Fourth Circuit does, but if they reverse -- they can reverse me, but they can't fire me. We've got lawyers all over this courtroom. We're spending scads of money -- or the parties are spending scads of money, and the Government's going to great expense to try to work our way through this, and we could go through this exercise for several days, and I'm not sure we get any closer because some of the issues need to be resolved.

I don't want to turn down a very generous offer, but I'm not sure how I work my way out of this box.

MR. BOYCE: Okay. And Mr. Moore, I think, wants to add one thing to what I just said.

MR. MOORE: Your Honor, if it please the Court, I think that one of the things that I don't think has been clearly established here today is sort of the context at least in which we understand this motion was brought. We did turn over a number of documents to the Government because the Government asked us to turn over certain documents. We entered into an agreement with them. We agreed that if we provided

documents which we thought might be privileged, they'd agree that that wouldn't be seen as a subject matter waiver, okay, so that's what we agreed to do.

And we thought we had all the Smith Moore documents. They learned after this whole thing came out that we didn't, because the Government asked us to produce documents from an internal investigation, and we went through the whole sort of privilege analysis, and then we got told, well, we don't think you can turn over any documents related to an internal investigation because we think there's a joint privilege here, stop.

So all of these in -- what I would call internal investigation documents, memos, et cetera, none of those have been turned over to the Government; and after that issue was raised before Judge Tilley, we said, stop, we're not providing anything else.

THE COURT: So at this point then is it fair to say there's no challenge to any of the records that have been turned over previously.

MR. MOORE: I think, Your Honor, that there probably --

THE COURT: Let me see what they say.

MR. MOORE: I'm sorry. Yes, sir.

MS. BARBIER: Your Honor, I don't think that's a fair statement, and I'll tell you why. First of all, when the

Government's produced documents to us, they put it with a cover letter, and the cover letter -- we have one cover letter that says this was GrandSouth Bank's sixth production of documents to the United States, we're providing it to you. We then get -- the next letter we get says this is GrandSouth Bank's tenth production of documents, and we're providing it to you. We don't know if there's some confusion, we don't know what the seventh, eighth, and ninth productions of GrandSouth Bank to the Government were, so that's a question in our minds that needs to be answered in terms of the universe of documents that have been provided.

We do, however, Your Honor, have documents that the bank provided, some of which contained emails between Mr. Earnest and Smith Moore attorneys and Smith Moore staff that we would contend are privileged and that we would object to them having been produced. So there's that issue.

Thirdly, there's an issue of the fact that the bank attorneys during the July 2016 time period right before the superseding indictment was returned met with the Government over a period of a couple days and, my understanding, orally provided them with information and some of which it may have been derived from the internal investigation that was conducted by Smith Moore.

So in our mind, Your Honor, there are three issues outstanding with respect to what has been provided to the

Government.

THE COURT: Previously.

MS. BARBIER: Previously.

THE COURT: All right. See my problem?

MR. MOORE: No, sir. I do, Your Honor, but I mean, she's correct --

THE COURT: No, I'm not challenging her. It's just that the objection seems to extend to everything.

MR. MOORE: Yes, sir.

THE COURT: And I don't know how to put it all in con -- I mean, for example, let me pose this issue. Suppose that the record that was turned over is an SEC filing. That's not protected.

MS. BARBIER: I would agree with that, Your Honor.

THE COURT: So, I mean, at this point it's impossible for me to know what specifically is being objected to because the fact that Smith Moore or Nexsen Pruet or whoever turned over documents that were in the possession of counsel or the bank doesn't necessarily make it privileged, and right now I'm being asked to look -- it seems like I'm being asked to look at the whole universe of documents, establish whether attorney-client privilege existed, and then start going through and figuring out what might be subject to a claim of privilege, and it doesn't even sound like everybody knows what's out there yet.

MR. CHUT: We don't know, Your Honor, what's in the new documents --

THE COURT: The most recent.

MR. CHUT: We don't, Your Honor, but we have turned everything over, Your Honor. I'll certainly go back and establish that, but the stuff that's been turned over, why there's all those boxes of documents and attorneys files --

THE COURT: Just out of curiosity, do you know off the top of your head what the deal is with the sixth production and the tenth production --

MR. CHUT: I think it's all been turned over, Your Honor. I will double check that. We may not have included the bank's cover letter or phrased it differently, but my understanding is we have turned everything over we received from GrandSouth Bank, with the exception for the other defendants there's about four or five pages of documents turned over by the bank. In the tenth production, there were emails on fairly what we perceived innocent matters that we excluded from turning over to Mr. Taylor and Ms. Rauscher considering they were brief emails to attorneys.

Otherwise, we believe everything has been turned over, and we have no knowledge of what's in the Smith Moore file. We instructed the bank after the September 7 status conference not to turn over any documents from the internal investigation. And that's where we are, Your Honor.

THE COURT: Well, it would seem to me what needs to happen -- or what I would like to see happen first is for Mr. Earnest's counsel to go through the prior production and figure out what they assert privilege would attach to within the documents that have been provided, step one, and then prepare a specific objection as to each document he believes is covered by privilege.

Step two is for counsel for Mr. Earnest to review the documents that are presently -- are all you guys with Nexsen Pruet?

MR. MOORE: Yes, sir.

THE COURT: Do you all have custody of all the documents?

MR. MOORE: We do, yes, sir.

THE COURT: All right. I don't want anybody to get into a situation -- we all have honorable counsel here, so nobody's going to take a record, but I always worry that something's going to go disappear, and then -- inadvertently, and then everybody's going to start hooping and hollering about who took the record kind of thing. So I would prefer that this be done under circumstances where everyone's comfortable -- and maybe Nexsen Pruet can do it -- but everybody's comfortable that all the records have been reviewed.

But the next step would be for counsel for the defendants to be able to review the records that you intend to

turn over so they can decide whether or not there's any specific document that they contend is privileged. Do you all anticipate there will be?

MR. MOORE: I don't know if the Government intends to continue to ask us to turn over these internal investigation documents. That's a question the Government has to answer.

THE COURT: My guess is they're interested now.

MR. CHUT: Yes, Your Honor, absolutely.

THE COURT: Yeah.

MR. MOORE: The question I have is -- and we'll comply with any order of the Court. But until and unless the Court finds that there's some sort of joint privilege access, I don't know that counsel for the defendants has access to all of our documents, all these documents from Smith Moore in their legal file, and I will say that, you know, there are 30 boxes --

THE COURT: Yeah, let me say this. I'm assuming that if you turn them over to the Government, the defendants are going to get them.

MR. MOORE: Yes, sir.

THE COURT: So it's a -- I'm treating it almost like a done deal if they get disclosed. But how many documents would you say you believe there to be a genuine issue were I to find that Mr. Earnest was represented by Smith Moore during this time?

MR. MOORE: One moment, Your Honor.

I mean, that's a hard question to answer without, you know, knowing what specific documents we're talking about, because there are a lot of documents in this file that, you know, wouldn't be subject to disclosure in any event to the Government. I mean, the Government -- the Government certainly hasn't asked us, and I can't imagine they would ask us, to turn over the entire Smith Moore legal file, because there's a lot of privileged information in there that really has nothing to do with advancing the Government's ball.

THE COURT: Regardless of whose privilege it is.

MR. MOORE: Right, right. I understand why the Government's asked us to turn over the internal investigation documents. Mr. Chut and I had a number of discussions about that in those meetings, and I understand the Government's position, and, you know, we agreed to do it.

THE COURT: Okay. Now, I'm getting really confused. What are you -- what are you intending to turn over to the Government in response to a subpoena or other request at this point?

MR. MOORE: Where we were -- to try to answer your questions, where we were is we were going to turn over all memorandums of interview or documents related to the internal investigation conducted by either Smith Moore or Nexsen Pruet. That's where we were. That was the outstanding request that

was outstanding before this matter was brought. We can easily segregate those documents.

THE COURT: Okay. With respect to Nexsen Pruet then, there's not any -- once Nexsen Pruet came in, Mr. Earnest was out. So if Nexsen Pruet interviewed somebody, that's Mr. Earnest -- neither Ms. Drake or Mr. Earnest have a claim to that, right?

MS. BARBIER: Your Honor, to the extent the Nexsen Pruet attorneys reviewed the internal investigation of Smith Moore and derived any of their questions of these witnesses from their review of the Smith Moore internal investigation, then we would say that the privilege carries through to there.

MS. RAUSCHER: I would agree with Ms. Barbier. The problem we have here is that on behalf of my client Smith Moore clearly represented her. They've turned over the file to the bank. We have requested the file from Smith Moore, and they have said they are not giving it to us because the bank has objected. We believe, under the North Carolina rules, it's a joint file, and we should have it. So we can't even respond to that, but I would submit they have the file. I'm sure in their -- they've reviewed the file when they were conducting their internal investigation, and now they're going to be turning that file over to the Government or may have provided some of that information already, and our position is they violated Ms. Drake's attorney-client privilege.

So -- but I can't, until I get the file from my client's former attorney, be able to fully litigate this for Your Honor, and that's the problem that we have right now.

MR. CHUT: Your Honor, the Government's position is it's their burden of proof. At this point outside of a self-serving affidavit, there is no proof these defendants were represented. I think, Your Honor, this thing is going to get more and more confusing until they are held to their proof. The evidence today, outside the self-serving affidavit, went nowhere to establishing a relationship. I think, Your Honor, we have to find a way that doesn't require secret documents or secret hearings for them to prove that attorney-client privilege existed. Otherwise, we're talking about the horse before the cart again -- or the cart before the horse again.

THE COURT: Um-hum.

MS. RAUSCHER: Your Honor, Mr. Petersen from Smith Moore told me that they believed, and they talked to the state bar, that they, in fact, represented Shannon Drake, and they were going to turn over the file to me until the bank objected. And I understand they have a joint privilege, but I have also a right to the file, and there's North Carolina law --

THE COURT: Yeah, but which parts do you get?

MS. RAUSCHER: I'm sorry?

THE COURT: Which parts of the file do you get?

MS. RAUSCHER: Well, if it's a segregated file,

perhaps just the segregation. But from what I understand, the 31 boxes, they're not segregated, that this information is strewn throughout the file. They represented numerous individuals and did interviews, et cetera, and were talking to the Government about various parties, so it's impossible to segregate the file.

MS. BARBIER: Your Honor, I might add Mr. Petersen told me the same thing, that they agreed they represented Mr. Earnest in connection with his grand jury appearance.

THE COURT: Where is Mr. Petersen?

MS. BARBIER: He's subpoenaed and is available to testify today as well.

THE COURT: Do you need to present him with any records?

MS. BARBIER: Well, Your Honor, I don't have -- I have -- I don't have records with respect to Mr. Petersen. I have a letter that he sent me.

THE COURT: So Mr. Petersen seems to remember or have some basis to testify that they represented -- does he know the scope of the representation? I mean, why didn't we start with him?

MS. BARBIER: Well, Your Honor, and I apologize, but I had no idea that the witness -- until last night at about 6:00 or maybe 5:00, I didn't know that Mr. Medford had any problems with his memory. I certainly didn't anticipate

Mr. Ashley to have the problems with the memory that he had. And I understand this is a long time ago. I understand that this case and the representation of Smith Moore has spanned a long period of time. The BHC litigation and Acquient litigation began sometime in 2008, and their representation spanned to 2016.

So I understand that there's problems with memory. I had no idea it was going to be to the extent we heard today. I have a letter from Mr. Petersen that -- where he indicates that the Smith Moore attorneys met with and prepared Mr. Earnest to appear before the grand jury in March and in August of 2013, and he also represents that Smith Moore was not aware of information that led us to believe that Mr. Earnest needed separate counsel.

And so, Your Honor, we could put him on the witness stand to testify to that, and I can enter this as a court's exhibit.

THE COURT: Well, let's go back to Ms. Dildine. If we stop here -- as of today -- let me say this. As of today, with respect to her testimony, I am not -- I've not been presented any authority which would support the Court holding that should she be presented with a document and asked to testify from that document, whether it's refresh recollection or otherwise, that that information can be maintained as privileged. I understand the difficulty created by that, but I

just haven't seen a case yet that says that's the way these proceedings go, at least not in the federal system.

So question number one -- I think at this point -- Mr. Chut, Mr. Brooks, the Government may disagree, but at this point in time, at least as I understand the law, if she's presented a document -- if Ms. Dildine is presented a document, then she -- and she identifies it or uses it to refresh recollection, it's coming in unless I permit some part of it to be redacted. I think there are waiver issues implicated there as well. If not, then if there's somebody out there who actually knows something about the engagement with respect to the parties, we can stop with Ms. Dildine now and come back to her later. Do you have any suggestions on this? I think it would be helpful to have something.

MR. CHUT: Your Honor, the United States was going to call the bank president. It's not my burden, Your Honor. I'm a little concerned about --

THE COURT: No, I mean, first question is at the end of the day -- as I understand your position, if they present the documents during the course of the hearing, then privilege is waived. There's no procedure by which there can be a hearing and documents reviewed by witnesses but not provided to the other side.

MR. CHUT: Yes, Your Honor. I think the Court, if the Court felt that the information was privileged, could

exclude it from being presented to a jury at a trial. I believe the Court has that power, which is a protective power. That's something the *Olander* court decided was a Court's ability to -- since there's already an indictment in place to exclude evidence from the jury hearing. I think that's certainly within the power of the Court.

THE COURT: Well, it might be helpful to hear some evidence from somebody who can shed some light on who was representing whom. Do you agree with that, disagree with that?

MR. CHUT: I do, Your Honor. I mean, I'm a little concerned about -- the United States isn't going to present evidence because it's not my burden. You know, we had subpoenaed all the Smith Moore attorneys, of course, and we also have Mr. Schwiers who we're going to call. The defendant has also subpoenaed two members of the bank board. So I don't know what their desire is going forward, Your Honor.

THE COURT: I guess I should have phrased the question differently. It might be helpful to hear from Mr. Petersen, at least briefly. I understand the burden is on the defendants; but if there's a lawyer out there who has some ability to testify with respect to the relationship between the parties, that might at least give everyone an opportunity to consider what the nature of the relationship was, and that might help us limit the issues to some degree.

But I still think we're going to come back to even if

I should find ultimately that the privilege exists between Mr. Earnest, Ms. Drake, and others, or with respect to Smith Moore's representation, I think we still have to go -- the documents have to be reviewed, and the objections to disclosure have to be very specific. I don't think it's enough to show representation. And then all this different material and all those various issues, I may be wrong, but I don't think it's enough to show just the fact of representation and then any document coming from counsel is therefore subject to the privilege, and I don't know where we go with that.

MR. CHUT: I think my suggestion, respectfully, is that we finish with Ms. Dildine. I think, Your Honor, you know, if defense chooses -- if Mr. Earnest's attorneys choose to show her that document, they can go forward. I think we're in the middle of this witness, Your Honor. The United States has not had a chance to cross-examine her. I don't know what this document is. I think that would be the Government's suggestion moving forward, Your Honor.

THE COURT: Do you want to be heard on that?

MS. BARBIER: Your Honor, I don't think we can adequately complete her testimony without being able to ask her about documents that contain privileged information. We're not willing to waive the privilege. I would suggest, as the Court suggested, we put Mr. Petersen on the stand. He can perhaps -- I think he'll be a short witness. I think we could adjourn.

We would be --

THE COURT: Okay. This is what I'm going to do. We're going to bring Ms. Dildine back in. We're not going to release her from the subpoena. You can decide today based on my comments and based on my understanding of the law as of this moment what you want to do with that document. If you want to present it, then at least, as of today, in the absence of any contrary authority, I'm going to find that privilege is waived because the opposing party is entitled to see the document. If you want to hold that back and keep her under subpoena until we return, because we are going to be coming back, then just finish up your examination, and we'll go from there.

And then if we have some time, we'll start with Mr. Petersen and see if he's got anything -- see what he has to say about this. Then we're going to -- then we'll stop, and we're going to get a little better handle on what's what with respect to the objections to documents that have been previously provided by the Government to the defendants, and somebody is going to be preparing a privilege log if they contend documents are privileged. Then we'll figure out what to do with what's sitting out there still.

Can somebody bring Ms. Dildine back in?

(Ms. Dildine returns to the courtroom.)

THE COURT: All right. Ms. Dildine, if you'll return to the stand. You may proceed.

MS. BARBIER: Thank you, Your Honor.

BY MS. BARBIER:

Q Ms. Dildine, I previously have already asked you about whether you partook in the preparation of Mr. Earnest for his grand jury testimony. Now, I want to ask you about whether you partook in the debriefing of Mr. Earnest after his grand jury testimony. Do you recall whether you did?

A I don't recall it.

Q Okay. And that question is to -- as either -- either time that he testified in the grand jury. In March of 2013 or in August of 2013, do you recall participating in any debriefing of him afterwards?

A I do not recall that.

Q Okay. And so I'm assuming since you don't recall whether you were there, you cannot answer questions about whether he sought legal advice or received legal advice in that meeting?

A No, not off the top of my head. I just don't remember that. Not to say it didn't happen, I just don't remember it.

Q Okay. Do you recall after he testified for the last time in the grand jury in August of 2013 whether or not there were -- well, let me back up. Do you recall a meeting that took place with the Government the day before Mr. Earnest testified in the grand jury for the second time?

A I'm not sure that I can distinguish his testifying twice. You know, I'm not sure -- I recall a meeting with the

Government before somebody testified at the grand jury. I'm not sure which witness that was. I'm not sure if that was Mr. Earnest or not.

Q Do you recall in a meeting that took place before -- the day before Mr. Earnest's second grand jury testimony Mr. Chut indicating that he was going to explain to Mr. Earnest that Jim Medford represented the bank and not Mr. Earnest?

A I don't recall that statement. But like I said, I don't really recall the substance of -- what I remember of a meeting with the Government before someone testified at a grand jury is minimal, and that is not part of what I recall.

Q What do you recall about that meeting?

A I recall the Government attorney, perhaps there were two, Government agents sitting across from us. I recall Mr. Medford being next to me and speaking with the Government. I don't believe that I spoke during that meeting. And that's about it. I don't really remember any content of the conversation.

Q So you don't recall whether the Government ever indicated they didn't believe anybody's previous grand jury testimony was truthful or accurate?

A I don't recall that.

Q Okay. Do you recall after the second -- Mr. Earnest's second grand jury testimony sometime around November of 2013 meeting with the Government and Government agents and the Government telling -- I'm sorry -- the Government telling

Mr. Medford that there was a conflict of interest in representing both the bank and any individual associated with the bank?

A I don't recall the Government saying that, no.

Q Do you recall any conversations with the Government about conflict of interest?

A I have a vague recollection that the Government said something to the effect of there might possibly be a conflict, you know, be on the lookout for it in case -- I mean, I never interpreted it as there is a conflict because I know my -- again, I think I've used this term before, but my radar would have picked up on that. I understood that the person with whom there was a conflicted target had his own counsel. So I think I would have been looking out for something like that, but I don't recall it. Not to say it didn't happen, I just don't recall that.

Q Do you -- would you have -- would your radar, as you say, have gone up if someone had been the subject of the investigation?

A What do you mean by subject?

Q Well, are you familiar with the terms of use by the Department of Justice in the US Attorney's manual or in other public information that's out there defining subject and targets of investigations?

A My only understanding is generally what a target is. I

mean, as I think I explained to you before, I don't have a practice of working in grand jury investigations and only worked on a few criminal matters. I was working sort of under Mr. Medford's, you know -- I don't know what you would call it, but he was the main attorney on that case. But my understanding of the target is the person literally that the Government, you know, has in its crosshairs and who is on notice that they're being -- I mean, I guess maybe sometimes they're not on notice, but I do believe that Mr. Corriher was on notice.

Q Okay. So is it fair to say that during the time period that you were working on this case with Mr. Medford you did not have an understanding of what a subject of a federal criminal investigation was?

A Probably not in the way that you're thinking, not some sort of academic understanding, no. I mean, for me the basis of my knowledge was we had a target, and that was Doug Corriher, and that the Government was focused on any potential criminal conduct that he committed and that everyone else was sort of a witness as part of the Government's case against him.

Q Okay. Were you aware in August of 2013 that the IRS had opened a criminal investigation on Mr. Earnest?

MR. CHUT: Objection.

THE COURT: Well, was she aware of it. If she recalls. I'll overrule. You can answer.

THE WITNESS: I don't know that I was aware of that. I don't remember that, but I'm not sure if I was aware at the time. I don't recall that.

BY MS. BARBIER:

Q Was there any discussion in any of your meetings with the Government about the fact that the IRS had assigned an investigation number to Mr. Earnest?

MR. CHUT: Objection.

THE COURT: Didn't she just say -- well, if you know. I'll overrule.

THE WITNESS: I don't recall that.

BY MS. BARBIER:

Q And let me just ask you this. Are you familiar with the IRS protocol in opening a criminal investigation?

A No.

Q Okay. So are you aware of the stages of an investigation pertaining to the IRS procedures and practices?

A No.

MS. BARBIER: Okay. I don't have any other questions. Thank you, Ms. Dildine.

Your Honor, obviously, I would like to the reserve the right to recall Ms. Dildine should Your Honor's ruling change on the privilege issue.

THE COURT: Well, should there -- okay. Any questions on behalf of Ms. Drake?

MS. RAUSCHER: Your Honor, since this is Mr. Earnest's motion, and she has not addressed Ms. Drake, I reserve the right perhaps in the future to call her back if there is a dispute about representation. But at this time I don't have any questions.

THE COURT: Cross?

MR. CHUT: Briefly, Your Honor.

CROSS-EXAMINATION

BY MR. CHUT:

Q Ms. Dildine, when you worked for Smith Moore, was there a process by which you recorded your time for billing purposes?

A Yes.

Q And did you fill out time sheets?

A I kept a paper time sheet. That was my preference. Then I would input it into the computer electronically.

Q And was there a means by which, as a Smith Moore associate, you would identify your time entered for a particular client?

A We had matter numbers assigned to particular clients, and some clients had one, some clients had others.

Q And do you recall who you billed for your work responding to the grand jury subpoenas on the GrandSouth Bank?

A I believe it was GrandSouth Bank.

Q And you testified that Doug Corriher had his own counsel?

A Yes.

Q That's counsel outside of Smith Moore.
A Yes.
Q And do you have an understanding of why he had his own counsel?
A My understanding was that was because he was the target of the criminal investigation.
Q And what did you understand Mr. Earnest's title at the bank to be?
A President.
Q Did you work on other cases involving corporate clients of Smith Moore?
A Yes.
Q And did you -- in those cases, did you communicate with officers of the bank, such as presidents or vice presidents -- excuse me -- officers of the corporate clients, such as presidents or vice presidents?
A I know we communicated with officers. Whether they were presidents or vice presidents, I don't recall those specifics.

MR. CHUT: Thank you, ma'am.

THE COURT: Anything?

MS. BARBIER: Just briefly, Your Honor.

REDIRECT EXAMINATION

BY MS. BARBIER:
Q Ms. Dildine, Mr. Chut asked you about the recording of your time at Smith Moore. Was that -- were your time entries

done simultaneously to the day that you performed the service?

A So when I'm writing them in hard copy on the little sheets of paper that have six-minute increments, yes. If I were caught up on -- caught up meaning -- I guess I should say caught up in particular work that was taking my entire time that day, I would not have the time to input it that particular day. So there might be, you know, three or four days' worth of my handwritten notes that are contemporaneous that I would then put into the computer.

Q Was it your practice while you were at Smith Moore and you were in meetings with clients to take notes?

A Yes.

Q Okay. And was it Mr. Medford's practice to take notes as well?

A I don't know what his practice was.

Q Did you ever observe him during meetings taking notes?

A Yes.

Q Okay. And so would it be fair to say that notes were taken while Mr. Earnest was prepared for the grand jury?

A If what I'm recalling was his preparation, I may have taken notes. I'm not sure what my role would have been that particular day. And I don't know what Mr. Medford would have done in preparing someone for grand jury testimony. I just don't remember what took place.

Q Would the notes that you had taken during that meeting

reflect questions that were being asked by Mr. Earnest's responses that Smith Moore attorneys were giving?

A They could. I'm not sure how specific. I don't remember. It's a little hard to answer outside the context. Sometimes they would be specific, and sometimes they would be perhaps more general descriptions.

MS. BARBIER: I don't have any other questions. Thank you very much.

THE COURT: Mr. Chut, anything in response to that?

MR. CHUT: No, Your Honor. Thank you.

THE COURT: You may step down, Ms. Dildine. Ms. Dildine, your subpoena will still be in effect whether or not you are recalled.

(At 4:49 p.m., witness excused.)

THE COURT: All right. Call whoever you want to call. We've got just a few minutes left.

MR. HARRELL: Your Honor, in the event that Ms. Dildine's testimony is needed, we would ask that the Court require the parties to give us some notice, because, as a pure witness, she's not receiving ECF notifications of hearings or anything along those lines. Obviously, our preference would be to have her released from the subpoena subject to our agreement to accept another one if the parties determined she was needed down the road.

THE COURT: I'm good either way. I'd say -- you'll

have advanced notice of another hearing, so I'd say you all will be able to give her at least a week or two's notice.

MS. BARBIER: I will certainly do that, Your Honor.

THE COURT: Do you all want me to release her and let you all re-subpoena her, or just agree that she'll be given 7 to 14 days' notice if she's going to be recalled.

MS. BARBIER: I will let her attorneys know as soon as we know about the hearing, Your Honor.

THE COURT: All right. You'll give her at least 7 to 14 days' notice?

MS. BARBIER: Yes, sir.

THE COURT: Okay.

MR. HARRELL: Thank you, Your Honor.

THE COURT: All right.

MS. BARBIER: The defendant calls Stephen Petersen.

(Witness sworn by the clerk.)

STEPHEN PETERSEN,

DEFENDANT'S WITNESS, SWORN AT 4:51 p.m.

DIRECT EXAMINATION

BY MS. BARBIER:

Q Mr. Petersen, good afternoon. My name is Debbie Barbier. I represent Ron Earnest.

A Good afternoon.

Q Mr. Petersen, could you give us a brief recitation of your educational background.

A I can try. Two undergraduate degrees, dental school at Chapel Hill, law school at Chapel Hill.

Q And are you currently an attorney at Smith Moore Leatherwood?

A Yes, I am.

Q What is the nature of your practice?

A I am the chair of the white color criminal defense section. I do civil business litigation also, and I do licensing board work for professionals.

Q Okay. What percentage of your practice is white color criminal defense?

A It depends what year it is. Some years it's 100 percent. Some years it's 25 to 30 percent.

Q Do you regularly represent corporate defendants?

A Yes.

Q Do you represent individual defendants?

A Yes.

Q Okay. Do you represent people in connection with appearances before grand juries?

A Yes.

Q Do you represent individuals who have been issued grand jury subpoenas for documents?

A Yes.

Q Did you participate in the representation of GrandSouth Bank in this criminal investigation?

A At different times, yes.
Q Okay. When were you brought in to help?
A I was brought in initially in September of 2012 to help get counsel for Doug Corriher and to get the undertaking done to get counsel for him. I was -- that was the extent of my activity at the start. I was brought in in May of 2013 to help with Shannon Drake going to the grand jury. I was back in the case then because Mr. Medford was having surgery. I was in the case maybe two or three weeks at that point. I was brought back in a third time, I would say, in late summer of 2014.
Q In late summer of 2014, what was your role?
A I was on standby because Mr. Medford was having some medical issues, and I was to be available if anything was needed. I really didn't do anything because shortly after I was brought back in, we got a letter from GrandSouth Bank saying nothing had happened and for us to stand down and not do any further work.
Q Okay. You indicated in May of 2013 that you helped with Shannon Drake's grand jury preparation, is that correct?
A Yes.
Q Did the bank -- I'm sorry -- did Smith Moore represent Shannon Drake?
A My understanding when I was brought in was that we were helping Shannon Drake prepare for grand jury as an employee of the bank. GrandSouth Bank was our client. When I met with --

I mean, I got called on May 22 to come over on May 23 and help prepare Shannon Drake. So I didn't have a lot of background on the case. When I met with Shannon Drake on May 23, I gave her an Upjohn warning and helped prepare her. She testified a week later, and that was the end of my activity for that whole stretch.

Q Tell me, did you ever meet with Ron Earnest?

A Not to my recollection.

Q Okay. And are you aware of who represented him and prepared him for his grand jury appearance?

MR. CHUT: Objection.

THE COURT: I'm going to let him answer. Overruled. You may answer.

THE WITNESS: Thank you, Your Honor. Just from reading memos, I know that Mr. Medford helped to prepare him for his grand jury appearance.

BY MS. BARBIER:

Q And you indicated you're the chairman of the white collar crime practice group at Smith Moore, is that right?

A That is correct.

Q Okay. In your experience, does preparing someone for grand jury testimony involve the rendering of legal advice?

A It can happen all sorts of ways. Yes, it does.

Q Yes. You have to initially first look at the subpoena to determine whether it's a valid subpoena, correct?

A You do.

Q Okay. You have to determine whether or not the witness should testify as opposed to invoke the Fifth Amendment, correct?

A You do not.

Q You do not -- can you explain?

A Yes, I can try to explain. If I am representing a corporate entity, and one of the employees or officers of the corporation gets a grand jury subpoena, I will meet with them and tell them I represent the entity, I am here to prep -- help prep you if you want me to. If you want your own counsel, we'll get you your own counsel. That's essentially what happened with Shannon Drake, and she said, "got it." She had already been to the grand jury once without my involvement, so we proceeded, and I assumed she understood I was representing GrandSouth Bank.

Q Okay. And so did you -- when you received a request for Ms. Drake's file and Mr. Earnest's file, did you go back and review documents in the file?

A I reviewed documents that Laura Dildine emailed to me the day before I helped Ms. Drake.

Q But in preparation for your testimony today and also in response to requests you've gotten from Ms. Drake and Mr. Earnest's file, have you reviewed some of the file?

A I have reviewed some of the files for different reasons,

yes.

Q Okay. And you indicated that your review was that indicated to you that Ms. Drake received an Upjohn warning, correct?

A Yes.

Q Okay. Did your review of the file indicate that Mr. Earnest received an Upjohn warning?

A I have not seen anything in the file to indicate that.

Q Okay. And did you see anything in the file that indicated that Mr. Earnest received legal advice during the course of his grand jury preparation?

A I have not.

Q Okay. Was there any indication about whether or not there was a discussion of invocation of his Fifth Amendment right?

A I do not recall seeing anything in the file about that.

Q Okay. What, in your experience as the white collar crime practice group, is the protocol for preparing a witness for grand jury testimony? What type of advice do you have to give?

A Listen to the question. Tell the truth. If you feel uneasy, come out in the hall. If you want to ask me a question out in the hall, I'll try to help you. If you want your own lawyer, we'll stop the grand jury hearing and get you your own lawyer.

Q And do you know what advice was given to Ron Earnest during his grand jury preparation?

A I have no idea, no.

Q But you do know that he -- the file does not indicate he was not given an Upjohn warning, correct?

A I have not seen one.

Q Okay. Have you seen any type of conflict waiver between Smith Moore and Mr. Earnest?

A I have not seen one.

Q Okay. Have you seen any engagement letters defining the scope of representation or a limitation on the representation?

A Of Mr. Earnest?

Q Correct.

A No.

Q Have you seen any engagement letter with GrandSouth Bank indicating the scope of this representation?

A I have not.

Q And have you looked for such things?

A I have made inquiry as to whether they exist, and I have not seen any.

Q Do you recall talking to Ms. Rauscher about whether or not Smith Moore represented Shannon Drake?

A I have talked to Ms. Rauscher about those issues, yes.

Q Okay. And did you indicate to her that Smith Moore represented Shannon Drake?

A I think I indicated to her I did not know the answer to the question.

Q Okay. And I'm going to ask you to -- may I approach the witness, Your Honor? -- review a document labeled Defendant's Exhibit 8, and I'll give a copy to the Government, the Court, and GrandSouth Bank. Do you recognize this document?
A I do, yes.
Q And is this a document you wrote?
A It is a document that I helped draft, and it is one that I did sign, yes.
Q Okay. And this is a document -- or this is a letter addressed to myself in response to my request for Mr. Earnest's legal file, correct?
A That is correct.
Q Okay. And is it true that -- Your Honor, I would move this into evidence.
THE COURT: Any objection?
MR. CHUT: No, Your Honor.
THE COURT: What is it? Eight?
MS. BARBIER: Your Honor, it's dated October 16 --
THE COURT: No, what is the number? Eight?
MS. BARBIER: Yes, Your Honor.
THE COURT: Defendant's Exhibit 8 is admitted.
BY MS. BARBIER:
Q Mr. Petersen, do you see in the fifth paragraph, the last paragraph on the first page, where you indicate that "Smith Moore also was not aware of information that led us to believe

that Mr. Earnest needed separate counsel"?
A I do see that, yes.
Q Okay. And where did you -- what information are you basing that upon in terms of the fact that Smith Moore wasn't aware of information that led them to believe that he needed separate counsel? How did you form that opinion?
A I formed that based on some telephone calls with Mr. Medford. I based that on my review of the Smith Moore files that I have looked at. You know, I have not looked at every single piece of paper in the file, but memos written by Laura Dildine and Cathy Hawkins and notes taken by Laura Dildine and Cathy Hawkins of different meetings with the Government and with Mr. Earnest.
Q So am I understanding correctly that you had conversations with Mr. Medford about my request for Mr. Earnest's file?
A No, I'm sorry. These were earlier discussions with Mr. Medford two and three years ago in August of 2014.
Q Okay. And you had conversations with Mr. Medford in August of 2014, and you say that he indicated to you that there were no facts in Smith Moore's possession that Mr. Earnest needed separate counsel. Is that right?
A That was my understanding of what he told me, yes.
Q Okay. And you also reviewed memoranda that Smith Moore attorneys wrote that indicated -- that had no indication in them that Mr. Earnest needed separate counsel?

A That's my recollection, yes.
Q Okay. Did any of the memoranda that you review contain any information in them that the Government was making accusations towards Mr. Earnest?
A I did not see any memoranda that made any accusations against Mr. Earnest.
Q Okay. Did you review the legal invoices of Smith Moore?
A I did not.
Q Okay. So you don't know the entries on those invoices?
A I did not review them. I do not know the entries, no.
Q Okay. Do you know whether Smith Moore's lawyers were analyzing Mr. Earnest's criminal exposure?
A I do not.
Q Do you know whether they were doing that prior to his first grand jury testimony?
A I do not know if they were doing that at all.
Q Okay. The next sentence of this letter says, "Accordingly, SML met with and prepared Mr. Earnest to appear before the grand jury in March and August of 2013." Do you see that?
A I do, and you're kind for correcting my typo. Thank you.
Q And so, Mr. Petersen, tell me by that sentence what do you mean by you met with and prepared Mr. Earnest to appear? How -- how did Smith Moore do that?
A All I know is what I read in the memos that I have

reviewed and from my conversations with Mr. Medford in May of 2013 and August of 2014, and that is that Mr. Medford met with Mr. Earnest prior to both of Mr. Earnest's grand jury testimonies.

Q And were you at those meetings?

A I was not, no.

Q Okay. So you don't know whether Mr. Medford was giving Mr. Earnest legal advice?

A I do not.

Q Okay. But you know in your own experience that preparing a witness for the grand jury necessarily entails giving legal advice, don't you?

A Well, as I said earlier, I have met with witnesses who were officers or employees of a corporation I represented, and in that circumstance I was reviewing facts with them, but I was going out of my way not to give legal advice.

Q Have you ever represented individuals --

A Many times.

Q -- in connection with a grand jury appearance?

A Many times.

Q Okay. And in connection with representing individuals, do you give legal advice?

A Yes, I did.

Q Okay. And you don't know what Mr. Medford did here?

A I do not.

Q But your review indicates that he did not give Mr. Earnest an Upjohn warning, is that right?
A I have not seen any indication that he did so.
Q You apparently contacted the North Carolina State Bar about Smith Moore's obligations in this matter?
A I did contact the North Carolina State Bar, yes.
Q Okay. And what advice did the North Carolina State Bar give Smith Moore?
A They indicated that there was a question as to whether -- there was not a question as to whether we represented -- Smith Moore represented GrandSouth Bank; there could be a question as to whether we represented Ron Earnest or Shannon Drake; and they said absence a waiver by the bank, who was obviously our client, that we should not release documents unless we were ordered to by the Court.
Q Release --
A I'm sorry. We should not release documents to Mr. Earnest or to Ms. Drake absent a court order.
Q And did you prepare documents that you believed should be produced to Mr. Earnest when you gave the file to the attorneys for the bank now, Nexsen Pruet attorneys?
A There are no separate files for Mr. Earnest or Ms. Drake in the information that -- all of the document we have given to Nexsen Pruet. So they have everything -- Nexsen Pruet has everything we would have had. They have our entire file.

Q But my question is this. Did you segregate certain documents that you believed should be produced to Ms. Drake, and did you segregate certain documents that you believed should be produced to Mr. Earnest?

A We segregated certain documents that we thought might apply to preparing Mr. Earnest and Ms. Drake for grand jury appearances.

Q Do you recall telling me when we spoke on the telephone that you were prepared to produce the file to Mr. Earnest until the bank objected?

A I don't recall the content of our telephone call. I do remember we talked.

Q Okay. And do you recall telling me that the bank acknowledged that it represented Mr. Earnest?

A I do not recall the content of our telephone call.

THE COURT: Did you say the bank acknowledged?

MS. BARBIER: I'm sorry, that Smith Moore acknowledged that they represented Mr. Earnest.

BY MS. BARBIER:

Q Do you know, Mr. Petersen, whether or not there was ever any notice given to Mr. Earnest by Smith Moore that they no longer represented him?

MR. CHUT: Objection.

THE WITNESS: I have no knowledge of such notice.

THE COURT: I'll overrule.

BY MS. BARBIER:

Q In other words, Mr. Petersen, after his grand jury appearances, is there anything in the file to indicate that Smith Moore informed Mr. Earnest that they would no longer be representing him, and they took care under the rules of professional conduct to protect his interests and find him other counsel?

THE COURT: Sustained as to that. You can break it down into two separate questions if you want to.

MS. BARBIER: Okay. I apologize, Your Honor. Thank you.

BY MS. BARBIER:

Q If -- Mr. Petersen, is there anything in the file to indicate that the representation of Mr. Earnest was being terminated?

A I've seen nothing in the file to indicate there was a representation of Mr. Earnest. I've seen nothing in the file to indicate there was a termination of a representation if it existed.

Q So your testimony is that you've seen nothing in the file to indicate that an attorney-client relationship was formed between Mr. Earnest and Smith Moore?

A That is correct.

Q Okay. So you've seen no memoranda that indicate Smith Moore gave Mr. Earnest legal advice?

A I was not there. I have not interpreted the memoranda.

Q Did you read the memoranda?

A I have not red all of the memoranda. I have read some of the memoranda.

Q Have you read the notes of meetings between him and Smith Moore attorneys?

A I have read some notes from Ms. Hawkins and some notes from Laura Dildine.

Q Did you read Mr. Medford's notes?

A No, I don't think I have.

Q Do they still exist?

A I have not seen any notes that I know of that were Mr. Medford's, but I have not reviewed everything in the boxes that we sent Nexsen Pruet either.

Q Are you familiar with Mr. Medford's handwriting?

A I am not.

MS. BARBIER: I don't have any other questions.

THE COURT: Cross?

MS. RAUSCHER: Thank you, Your Honor.

CROSS-EXAMINATION

BY MS. RAUSCHER:

Q Good afternoon, Mr. Petersen.

A Good afternoon, Ms. Rauscher.

Q When you got involved in this matter in September of 2012, it was solely to find counsel for Mr. Corriher, is that

correct?
A That was the extent of it. It was maybe three or four days at most.
Q Were you aware that Mr. Medford was representing Shannon Drake?
A I was not.
Q Did Mr. Medford discuss with you that she had received a subpoena and that he was going before the grand jury with her?
A He did not.
Q So you have no idea -- so you never met with Shannon Drake or Mr. Medford in the fall of 2012, is that correct?
A That is correct.
Q And have you reviewed any memorandum or anything that shows Mr. Medford and what he said or what he advised Ms. Drake?
A I have not seen anything that I recall.
Q You stated earlier that the first time after that -- finding counsel for Mr. Corriher that you got involved with this case again was May of 2013, is that right?
A That is correct.
Q Were you privy to any conversations or communications with Mr. Medford and Ms. Drake between the time of September and May?
A No.
Q Did you have conversations with Mr. Medford about his

advice and counsel to Ms. Drake prior to you getting involved in May?

A No.

Q When you got involved in May, did you have conversations with Mr. Medford about his representation of Ms. Drake prior to that?

A Ms. Rauscher, I don't think so. Just -- the reason I got involved is because Mr. Medford was going in for surgery. He told me he was going in for surgery. He said Laura Dildine would bring me up to speed on the case. So I think any conversation I had about the case would have been with Ms. Dildine.

Q And so when you got involved in May of 2013, did Ms. Dildine get you up to speed on their representation of Ms. Drake to that point?

A Ms. Dildine sent me an email that had probably a 2-inch thick binder of documents, and Ms. Dildine spoke to me on the telephone on May 22 for a period of time, I don't recall how long, trying to explain the background of the case to me, and then I came to Greensboro the next morning and met with Ms. Dildine and Ms. Drake.

Q And was that email and the binder turned over to the lawyers at Nexsen Pruet?

A Yes, it was.

Q When you got involved with -- when you met Ms. Drake, that

was in May of 2013, the 23rd of May?
A It would've been the 23rd of May, yes.
Q In fact, her grand jury testimony was May the 29th, is that right?
A I think that is correct, yes.
Q And between the 23rd and the 29th, you had several meetings with Ms. Drake, is that correct?
A My recollection is we had a meeting on the 23rd that morning, and then Ms. Drake went home. My recollection is there was one meeting after that with Ms. Drake before she testified.
Q In fact, there was a meeting on May the 29th with Mr. McLellan from the US Attorney's office, isn't that correct?
A I believe that's correct, yes.
Q And you accompanied her to that meeting, is that correct?
A Yes, I believe that is correct, yes.
Q Now, on May the 23rd, the first time you met with Ms. Drake, there were other individuals who were present during that time, is that right?
A That is correct.
Q And some of those folks were Cathy Hawkins, who is the paralegal, right?
A Yes.
Q And Ms. Dildine?
A Yes.

Q Yourself?
A Yes.
Q And also Mr. Medford participated by phone, didn't he?
A Yes.
Q And your testimony -- and people were taking notes during those -- during that meeting, correct?
A Yes.
Q In fact, everyone, Ms. Dildine, Ms. Hawkins, and even perhaps yourself took notes during that meeting, is that correct?
A Yes.
Q You testified earlier that you provided Ms. Drake with Upjohn warnings. Did you get her to sign the Upjohn warnings?
A I did not.
Q Did you have an opportunity to review the memos prepared by -- or the notes taken by individuals at that meeting?
A I have reviewed those in the last six months. I haven't reviewed them recently.
Q And none of them reflect or state that you gave her Upjohn warnings, is that correct?
A I do not recall.
Q During the meeting, you said that when you gave her Upjohn warnings, did Ms. Drake ask you any questions about that?
A I don't have a clear recollection.
Q You also stated that you offered her the opportunity to

get separate counsel, is that right?
A That is correct, yes.
Q Okay. Why?
A That's what I do when I give an Upjohn warning.
Q Did you believe at that time that she had -- that there was a possibility that she could be in the crosshairs of the Government?
A I did not.
Q Are you aware if Mr. Medford provided her with that opportunity?
A I am not. I do not know.
Q And what was Ms. Drake's response to that?
A She did not seem to be concerned and elected to go forward.
Q In fact, she was happy with the representation she was receiving from Smith Moore, isn't that right?
A She seemed to be happy with the relationship that was -- with the way things had proceeded in the past with Smith Moore, yes.
Q Now, during your preparation of Ms. Drake, it occurred over approximately about a day and a half, is that right?
A Yes.
Q And during that preparation, you advised her of what would happen in front of the grand jury, is that right?
A We discussed the procedures in front of the grand jury.

She had already been once, so she had some concept of what was going on, yes.

Q And I assume you provided her with advice about telling the truth, correct?

A Correct.

Q And during those prep sessions, did she have questions for you about information that she was receiving or documents that she was reviewing?

A Most of the documents that she was reviewing with us, she was explaining to us the procedures for factoring at the bank and how she -- what her part in those proceedings were.

Q During your representation of her, were you advising you on ways that she should answer questions?

A Other than tell the truth. I don't think we were coaching her on what to say or not to say, other than tell the truth.

MS. RAUSCHER: One second.

BY MS. RAUSCHER:

Q At any point in time during those meetings with Ms. Drake, did you bring up the subject of whether she was a subject by the Government, considered to be a subject or a witness?

A I don't remember bringing it up. My understanding from what Ms. Dildine had told me was that the Government had said that Ms. Drake was not a subject, that she was a witness, but --

Q Do you recall if you told her that?

A I don't recall that I told her that. I recall that I asked a question of Ms. Dildine, and that's what I was told.

Q When Ms. Drake -- oh, and so before she testified in front of the grand jury, you went with her to the US Attorney's office, is that correct?

A That is correct, I believe, yes.

Q And at the time you spoke with -- she was interviewed by Assistant US Attorney McLellan, isn't that right?

A I don't remember who was there, but I know there were several people there, yes.

Q Do you remember how long that meeting was?

A I do not.

Q And what was your role as you were at that meeting with her?

A My recollection of the meeting is that the folks from the US Attorney's Office were previewing for her the questions they were going to ask her so that she would be comfortable with the questions.

Q And what was your role being at that meeting?

A To be there to make sure she understood the questions, I guess.

Q And what would happen if she didn't understand the question or had a question for you?

A We would have stepped out into the hall, and I would have tried to help her understand the question and asked her if she

was still okay.

Q And you would provide her with advice, isn't that right?

A Yes.

Q Later that afternoon, she testified in front of the grand jury, is that correct?

A Yes.

Q And were you -- did you remain outside of the grand jury room while she was testifying?

A Ms. Dildine and I were both there the entire time that Ms. Drake was in the grand jury room, yes.

Q And before Ms. Drake went inside, did you tell her that if there was -- if she had any questions, she could come out and talk to you?

A I would have told her that, yes.

Q And that was your role outside the grand jury, is that right?

A Yes.

Q After the grand jury -- after she testified in front of the grand jury, she came back to the offices, and she was what we call debriefed, isn't that right?

A I understand that is what happened, yes.

Q Okay. Were you present for that, or was it just Ms. Dildine?

A I was not present for that.

Q And after the -- after she testified in front of the grand

jury that day, when was the next time you met with or had any contact with Ms. Drake?

A I do not recall.

Q At any point in time between her testimony in May of 2013 and when she was indicted, did you have any additional contact with her?

A Not that I recall.

Q And at any point in time during that period of time, did you send her any kind of communication that Smith Moore no longer represented her?

A No.

MS. RAUSCHER: Just one second, Your Honor. I'm sorry. I have just a few more questions.

BY MS. RAUSCHER:

Q We -- back, and I think it was October 4, you called me while I actually was in London. Do you recall that?

A I do recall calling you while you were out of the country, yes.

Q Right. And during that phone call, you were responding to a request that I made to you to obtain Ms. Drake's file, isn't that correct?

A I recall that I got a request from you for Ms. Drake's file, yes.

Q And during that phone call, you told me that you had consulted with the North Carolina State Bar, do you recall?

A I don't.

Q Do you recall that you told me that during that conversation that the bar told you that based on the information you provided that Smith Moore jointly represented Shannon Drake as well as other individuals?

A I don't recall that.

Q Do you recall that you were going to provide me at that point with some portions of the file based on your conversations with the state bar?

A I do recall during that conversation I told you that we would provide you with portions of the file, yes.

Q And at that point you had also explained to me that you had been gathering the file from several locations, isn't that right?

A I may have said it that way. What I meant was that things related to what we might perceive were related to Ms. Drake were in the entirety of the GrandSouth Bank bank file, yes.

Q And, in fact, portions of the file were kept in Raleigh, Greensboro, and Greenville, isn't that correct, during your representation?

A I had duplicates of materials in Raleigh. I don't know what was in Greenville. I know that most of the documentation that was in the files was in Greensboro.

Q But during your search putting it in the file, you explained to me that you felt you found additional materials,

isn't that right?

A I went to Greensboro twice to -- when Nexsen Pruet had asked for the files. Ms. Hawkins and I were trying to make sure we had corralled everything that might consist of the bank file. One of my visits to Greensboro, Ms. Hawkins and I had looked in a file cabinet that had not been looked in before, and I found additional documents. I went down to Mr. Medford's area and found probably three more banker's boxes of files that I perceived to be duplicates, his working files perhaps. So when I referred to things that we hadn't found before, I think I was referring to those documents.

Q But prior to October of this year, Smith Moore had turned over what it perceived to be its entire file to Nexsen Pruet, is that right?

A Yes, we had turned materials over to Nexsen Pruet prior to October of this year.

Q And the materials that you turned over to Nexsen Pruet included materials regarding the preparation and representation of Shannon Drake before the grand jury?

A They included all of our notes related to Ms. Drake's grand jury preparation and appearance, yes.

Q And earlier, Ms. Barbier showed you a letter you signed on October 16 of 2017. You also sent a similar letter to me, isn't that correct?

A I did, yes.

Q And the letter was almost exactly the same except for one paragraph, isn't that correct?
A It was very close to the same. It had the same typo in it, yes.
Q I'm going to have to apologize. I don't have a copy of it. I only have it on my computer. But it was dated the same date --
A Yes, it was.
Q -- correct?

MS. RAUSCHER: And if I can, Your Honor, I'm going to mark this as SD No. 1. May I approach, Your Honor?

THE COURT: Um-hum.

BY MS. RAUSCHER:

Q Mr. Petersen, I'm showing you what I've marked as SD No. 1. Would you take a look at that, please.
A Yes.
Q And is that a letter that you sent to me October 17 of this year?
A It's a letter dated October 16 that I believe I sent to you on the 16th, but, yes.
Q The -- and if you would look, I see you still have the other letter here. Is this the only paragraph, this one second to the last, that's different from the paragraph that you sent?
A I think the first paragraph and the fourth paragraph -- the first paragraph and the fourth paragraph, I think, are the

only paragraphs what are different, and it's just exchanging Ms. Drake's name for Mr. Earnest.

Q Okay. And if you would, Mr. Petersen, would you just read this one paragraph about "Ms. Drake's subsequently," just that one paragraph.

A "Ms. Drake subsequently received a subpoena to appear and testify before the grand jury. During the course of our dealings with the Government, we were advised that Ms. Drake was not a target of the Government's investigation. SML also was not aware of information that led us to believe that Ms. Drake needed separate counsel. Accordingly, SML met with and prepared Ms. Drake to appear before the grand jury on two occasions."

Q Thank you. During your time representing Ms. Drake in May of 2017, did you personally segregate materials out that you used to prepare Ms. Drake?

A During my time representing GrandSouth Bank in May of 2013, I did not separate out materials regarding any meetings I had with Ms. Drake.

Q And just so I'm clear, the reason that you have not turned over the file to Ms. Drake and her counsel is that GrandSouth Bank has objected, isn't that correct?

A GrandSouth Bank has not consented to us turning over any materials regarding Mr. Earnest or Ms. Drake.

MS. RAUSCHER: No further questions, Your Honor.

THE COURT: Cross?

CROSS-EXAMINATION

BY MR. CHUT:

Q Good afternoon Mr. Petersen.

A Good afternoon, Mr. Chut.

Q You testified, sir, that you helped Doug Corriher obtain separate counsel?

A Yes.

Q And why was Mr. Corriher obtaining separate counsel from Smith Moore?

A In September of 2012, my recollection is Mr. Earnest called, I think, Bruce Ashley and told him that Doug Corriher had gotten a target letter, and GrandSouth Bank had gotten subpoenas for the grand jury. I did not get that call from Mr. Earnest. That was Bruce Ashley.

My understanding from looking back at emails is that Mr. Ashley contacted Mr. Medford about what to do. I do know that Mr. Medford called me in September of 2012 and told me that Mr. Corriher was a target at one of our clients and that Mr. Medford thought Mr. Corriher needed separate counsel and did I have an undertaking form that he could craft to send to Mr. Earnest so Mr. Earnest could give it to the board of directors of GrandSouth Bank to get counsel appointed or retained for Mr. Corriher.

Q What's an undertaking?

A An undertaking is just a document that the board of directors approves saying that they're going to provide funds for representation for a person.
Q By separate counsel?
A By separate counsel, yes.
Q Is there a procedure for that under the applicable state law to do that?
A I do not know. That's just -- that's just the procedure I followed in representing corporations who were going to provide counsel for somebody.
Q Were you personally involved in obtaining counsel or undertakings for any other employees of GrandSouth Bank during Smith Moore's representation of the bank?
A I was not, and I must say in September of 2012 I was not even aware this was a grand jury -- I mean, I was not aware this was a GrandSouth Bank matter. Mr. Medford just said he had a client where they needed to obtain separate counsel. So I did not realize it was germane to GrandSouth Bank case at that time.
Q Now, were you ever involved in obtaining separate counsel or undertakings for Mr. Earnest or Ms. Drake?
A I was not.
Q Based on your review of the Smith Moore file, did you see that Smith Moore was involved in obtaining separate counsel for Mr. Earnest?

A I have not seen that.
Q What about Ms. Drake?
A I have not seen that either.
Q How many lawyers are employed or partners at Smith Moore?
A It varies.
Q How many offices are there?
A There are seven offices, I think. We fluctuate around 150 lawyers. I don't know how many of them are partners.
Q And Smith Moore in some form has existed for many years?
A Yes.
Q And would it be fair to say it tends to represent sophisticated clients?
A We have.
Q And does Smith Moore use certain standard procedures for opening files or undertaking new clients?
A We are supposed to.
Q And what would those procedures generally be if you were taking on a new client?
A Generally, if someone calls me seeking representation, I have them give me their name, any entities that might be involved, any individuals who might be involved. We run a conflicts check for those entities and individuals. After we get the report, we check for conflicts. If there are no conflicts, then we have a representation letter outlining the scope of our representation.

Q And is that standard procedure within the Smith Moore firm?
A It is at this point in time, yes.
Q Was it in 2013?
A I think it probably should have been. I think it was, yes.
Q Based on your review of the Smith Moore files, did you see any indication of Mr. Earnest being intaked as a new client?
A I did not see an indication of that, and the procedure I've just described is for a new client. GrandSouth Bank was an existing client, so things sometimes happen differently with existing clients. Mr. Earnest -- in answer to your question, I did not see any such procedure for Mr. Earnest.
Q As an individual?
A As an individual.
Q How about Ms. Drake?
A I had not seen any such procedure for Ms. Drake.
Q Now, in gathering and reviewing the GrandSouth Bank file at Smith Moore for preparation of turning it over to Nexsen Pruet on behalf of GrandSouth Bank, approximately how much material was included in the file in total?
A Mr. Chut, the first time I went over to check on files, probably July of 2016. I think Ms. Hawkins had identified 11 banker's boxes of materials. After Ms. Hawkins and I kept looking and digging, we have come up with a total of 21 boxes.

Q Do those boxes also include bank records for GrandSouth Bank, or are they purely a legal file?
A I do not know. I have not reviewed every box completely.
Q And would it be part of the preparation of a grand jury witness when the witness was an officer of a client corporation to advise that officer to tell the truth in grand jury proceedings?
A Yes.

MR. CHUT: Thank you, sir. No further questions.

THE COURT: Anything further?

MS. BARBIER: No, Your Honor.

THE COURT: Anything further?

MS. RAUSCHER: No, Your Honor.

THE COURT: Let me ask this question, Mr. Petersen, to see what, if any, thoughts you have on this. If, as you describe, Smith Moore or any -- we'll keep it a hypothetical. A law firm represents a corporation who is participating -- or has been subpoenaed to present evidence before a grand jury with respect to an investigation of another party. The corporation is not a target at this point.

THE WITNESS: Yes.

THE COURT: Certain officers, directors, or employees of the cooperation are subpoenaed to appear and provide those records. Counsel represents the bank -- or the corporation, but is appearing with those employees on behalf of the

corporation. In terms of your practice and experience, if you are there as counsel for the corporation and the employee is appearing, what is it that authorizes the employee while in the grand jury room to stop the examination and speak with you as counsel for the corporation? Does that make sense?

THE WITNESS: Yes.

THE COURT: All right.

THE WITNESS: My practice over the years has been if I'm representing the corporation, the way I communicate with a corporation is through a corporate officer. So if there is a grand jury subpoena for documents to a hypothetical corporation, the only way I have to communicate with the corporation about fulfilling that production obligation is communicating through a person on behalf of the entity.

In doing that, if hypothetically Mr. Chut was involved, I would call Mr. Chut and say what's going on at this stage of this case as you perceive it? Mr. Chut might or might not tell me that my client, the corporation, was a target or a subject. He might not. But I would understand if Mr. Chut told me your client, the entity, is not a subject or a target. I understand fully that Mr. Chut could change his mind hypothetically the next day.

THE COURT: Right.

THE WITNESS: So I would also ask him the same question about the person conduit with whom I was communicating

to the entity. If he told me that's a bad person in my mind, I would get that person separate counsel right then. If he told me we don't think that person is a bad person at this moment, I would proceed in helping that person get ready to go to the grand jury to give the documents and to answers questions.

I would have a discussion with that particular person that if they got in the grand jury and had questions, they should be able to come out and talk to me, and I would try to clear that with the assistant US Attorney handling the grand jury questions.

THE COURT: So -- go ahead.

THE WITNESS: And if there was a difference in what I was going to have that person do and what the assistant US Attorney was going to have that person do, I would get that person separate counsel at that point.

THE COURT: Okay. So your representation of the corporation gives you standing to be present when a corporate officer or employee is testifying before the grand jury; but at least in your perception, if that employee stopped and came out and said I need advice as to this matter, what happens then?

THE WITNESS: I would do an analysis of that matter, and I have asked the assistant US Attorney to come out of the grand jury in that situation and talk with me about whether there was a real problem or not. If there was a real problem, I would say let's stop this grand jury appearance and get this

person a lawyer.

THE COURT: Okay. And I assume you anticipate in prepping a witness for a grand jury testimony that whoever -- whatever US Attorney is going to ask questions will say are you represented by counsel and give that advice?

THE WITNESS: Yes.

THE COURT: Do you generally instruct the witness how to respond to those questions?

THE WITNESS: I do not.

THE COURT: Okay. So you give them -- your practice, you give them the Upjohn warnings and then send them in, and they testify; and if they come out, you make a call on whether it's an individual or corporate issue and whether new counsel is necessary.

THE WITNESS: That is correct.

THE COURT: All right. Anything in response to that?

MR. CHUT: No, Your Honor. Thank you, Your Honor.

MS. BARBIER: Just briefly, Your Honor.

REDIRECT EXAMINATION

BY MS. BARBIER:

Q Mr. Petersen, was your understanding that any of the employees of GrandSouth Bank that were subpoenaed to the grand jury were being subpoenaed in their individual capacity or in their capacity as employee of the bank?

A My understanding was that they were being -- my

understanding Mr. Earnest was being subpoenaed in his capacity as an officer of the bank and that Ms. Drake was being subpoenaed as an employee of the bank.

Q Can you explain to me what that means. What do you mean by he was being subpoenaed in his capacity as an officer of the bank?

A Well, as we discussed in the hypothetical, in my communications with an entity, I need a person to talk to, and Mr. Earnest was the person who was helping Smith Moore Leatherwood collect documents that were responsive to the subpoena to the bank.

Q My question relates to Mr. Earnest's testimony in the grand jury, okay.

A Okay.

Q So let me be clear. Maybe I wasn't clear about that.

A Okay.

Q What authority do you have to support the notion that Mr. Earnest was not testifying as an individual in the grand jury?

A I do not know what was happening with Mr. Earnest's testimony at the grand jury because I was not involved.

Q If Mr. Earnest committed perjury in the grand jury, would he be committing perjury on behalf of the bank or behalf of himself?

A That's a legal question I just don't have a factual answer

for.

Q Are you aware of the fact that Mr. Earnest has been charged for perjury in this case?

A I am not.

Q Okay. Have you read the superseding indictment?

A I have not read the superseding indictment in its entirety, no.

Q And so you're not -- are you aware of whether he's been charged in his individual capacity or in his capacity as an officer of the bank?

A I am not.

Q Have you ever heard anybody being indicted as a corporate officer and not as an individual?

A No.

Q Does that concept exist in criminal law?

A Not that I'm aware of.

Q Okay. And so when someone is testifying in the grand jury, their exposure to criminal charges is an individual exposure, is it not?

A That is correct.

Q Do you have any reason to believe that there's anything contrary to that that happened in this case?

A I was not involved. I do not know.

Q And the Court asked you to -- what authority exists that corporate counsel can advise a witness during grand jury

proceeding.

A He asked me that, yes.

Q Okay. Are you familiar with the Department of Justice grand jury manual?

A I am.

Q Okay. And are you familiar with the provision that allows a witness in the grand jury to have retained counsel outside of the grand jury room?

A I am.

Q And that would apply if a person had individual retained counsel, correct?

A Yes.

Q Okay. There is no authority that would allow a corporate counsel, somebody who is not representing an individual, to be sitting outside the grand jury room, be privy to what's going on in the grand jury room by virtue of what the witness tells them, and advise them on questions, is there?

MR. CHUT: Objection.

THE COURT: Well, he can answer if he knows. You might restate that question. It got a little confusing.

MS. BARBIER: Sorry, Your Honor.

BY MS. BARBIER:

Q Are you aware of any authority that allows a corporate counsel to sit outside of the grand jury room and advise an employee as to legal issues that are arising during a grand

jury proceeding?

A I'm not aware of any authority. I have explained in response to His Honor's hypothetical question how I would proceed and have provided in the past. How I have proceeded in the past has changed significantly over the last three to five years. But, no, in answer to your question.

Q Are you familiar with Rule 6(e) that governs the secrecy of grand jury proceedings?

A I am.

Q And are you aware of the fact that grand jury proceedings are secret?

MR. CHUT: Objection, Your Honor.

A I'm aware that grand jury proceedings are secret, but that a witness may come out of the grand jury and may say anything it wants to to the press or anybody else.

Q Okay. But the grand jurors aren't allowed to leave and discuss the grand jury testimony, are they?

A That is correct.

MR. CHUT: Objection, Your Honor.

THE COURT: It's all part of the rules. Overruled. He said that's correct. Next question.

MS. BARBIER: I'm sorry, Your Honor. I didn't hear the answer.

BY MS. BARBIER:

Q So, Mr. Petersen, going back to the Court's question, you

don't have any authority that exists that you could cite to today either in the grand jury manual or the US Attorney's manual that allows a corporate counsel to advise a witness that they don't represent outside the grand jury room, do you?

MR. CHUT: Objection, Your Honor.

THE COURT: As to those two -- as to those two manuals, if he knows, he can answer. The question was limited to -- I don't even know what a grand jury manual is, but the US Attorney's manual. As to those two manuals, are you aware of any authority?

THE WITNESS: Your Honor, I'm aware there's a US Attorney's manual. I have read most of it over the years. I have not memorized it, and I do not know a specific provision in that manual.

THE COURT: All right. Next question.

MS. BARBIER: That's it. Thank you, Your Honor.

THE COURT: Anything in response to that?

MS. RAUSCHER: Just a couple questions.

RECROSS-EXAMINATION

BY MS. RAUSCHER:

Q Mr. Petersen, you've obviously represented many people in front of the grand jury and read grand jury transcripts, correct?

A I have.

Q And one of the questions usually the assistant US Attorney

inside the grand jury asks is, are you represented by counsel? Are you aware of that?

A I am.

Q And in this case, were you aware that Shannon Drake both times she was before the grand jury was asked that question by Mr. Chut?

A I am not.

Q So you're not aware of the fact that she said that she was represented by either Mr. Medford or you or Laura Dildine?

A I am not.

MS. RAUSCHER: No further questions, Your Honor.

THE COURT: Mr. Chut, anything?

MR. CHUT: No, Your Honor.

THE COURT: All right. Thank you, Mr. Petersen.

THE WITNESS: Thank you, Your Honor.

THE COURT: You may step down.

(At 5:49 p.m., witness excused.)

MR. BERKELHAMMER: Your Honor, can he be excused?

THE COURT: It's all right by me, but you might need to check with counsel.

MS. BARBIER: Your Honor, we have no objection to him being excused at this time.

MR. CHUT: Nor does the United States. We also subpoenaed him.

THE COURT: All right. So where do we go from here?

There's still a lot of -- I think the first thing I want to get figured out, as I sat up here and thought some about these issues, is back to the question of ex parte -- I understand that a motion was filed late asking that ex parte in camera -- that this matter be handled ex parte in camera, but there's never any guarantee that a motion is going to be granted, and I'm not -- I'm not generally inclined to give a second bite at the apple when I haven't been persuaded on the first go around.

But I will acknowledge that with Mr. Medford's medical condition and the testimony heard today, it has been a little bit unusual in the sense -- well, that's not quite fair. Some unforeseen circumstances likely arose with respect to specifically Mr. Medford's health issues, which would have changed the factual landscape. But I'm not going to give Mr. Earnest long to file a brief explaining what authority exists, if any, to support a federal court conducting an in-camera ex parte examination of documents and evidence for the purpose of determining whether or not an attorney-client relationship exists.

I'm inclined to say seven days, and then give the Government seven days to respond if they want to. The Government has already -- Seventh Circuit precedent is not binding, but it certainly has some persuasive authority to it, and that, plus the absence of what I've seen in the Fourth Circuit, gives me significant concern.

Do you want to be heard on that, Mr. Chut?

MR. CHUT: No, Your Honor. We filed our brief, and I think the Court understands our position.

THE COURT: Do you want to be heard on that?

MS. BARBIER: No, Your Honor. We'll brief the issue within seven days, and we'll argue it then.

THE COURT: Well, I'm going to decide when you come back.

Then step two is -- I don't know any way around it. I think a privilege log's got to be prepared as to the documents that have been previously turned over in discovery. I think it's fair, given the Government's representation, for the defendants to assume that all records received from Nexsen Pruet at this point have been provided in discovery, regardless of what cover letters may show with respect to the number of the document production. So I need to know specifically which documents -- for which documents is it asserted a privilege applies. At this point, I don't even know what the documents are, whether they're bank records or memorandums of interview or third-party records. I have no idea. So we've got to have something prepared.

How long is it going to take to do that with respect to the records already provided and discovered?

MS. BARBIER: Your Honor, I think that can be done within three weeks. I don't think it's a large number of

documents that we're going to be claiming were privileged. We have found some emails between Smith Moore and Mr. Earnest that I believe are privileged, but there's not a large volume of that.

THE COURT: All right.

MS. BARBIER: I do want to be thorough, though, and have the people who reviewed it review it again so there are no mistakes made in that respect.

THE COURT: All right.

MS. RAUSCHER: Your Honor, can I interject one quick note? At our last hearing in front of Judge Tilley, when this issue was raised before the Court, my understanding, and I could be wrong -- if I'm wrong, Mr. Chut, correct me -- but an issue was raised to stop the production of some documents that apparently the agent had said that he had gotten from Nexsen Pruet, and so there may be some documents in the Government's possession that have not been disclosed. I think they were stopped. At least that was my recollection that we were told at the time.

MR. CHUT: We put a stop, Your Honor, to the internal investigation documents be provided to the United States.

THE COURT: So where are they now?

MR. CHUT: They're with Nexsen Pruet.

MS. RAUSCHER: So they haven't been provided.

MR. CHUT: No, ma'am.

THE COURT: So we'll get to the Nexsen Pruet documents next. So three weeks. I'm just going to put the privilege log has got to be filed on the same date as the pretrial motions, whatever that date was. December 13? Is that what I said? All right. What are we going to do with the Nexsen Pruet documents? Any suggestions?

MR. BOYCE: We could describe to you what has been gathered and how it's been compiled in general terms if the Court would like us to briefly do that.

THE COURT: Yeah, just tell me generally right now, but make it very brief.

MR. MATHIAS: It's my understanding we have -- I have 29 boxes, banker's boxes or larger, 11 of which have been in my possession since July of last year. Some of the documents in those boxes are part of what have already been produced to the Government.

In the last month, I've gotten two separate shipments of nine boxes from Smith Moore that were discovered or uncovered in the last 60 days. None of that has been produced to the Government.

I've also gotten six CDs with electronic emails and files. I'm not a savvy person, but when I asked for that to be uploaded into our Relativity system, it took longer than anything I've dealt with. So it's a lot.

THE COURT: Sorry. I'm just horrified to hear you

say that.

MR. MATHIAS: So -- and it consists of emails probably a lot of duplication of what I have in paper. It's not very well organized, so I don't know --

THE COURT: How did this stuff come to the surface? I mean, were those records subpoenaed, or how -- where did this come from?

MR. MATHIAS: No, we asked for the file in July --

THE COURT: No, in terms of turning it over to the Government, how did this issue arise?

MR. MATHIAS: The issue arose, I think, when Mr. Chut asked us to turn over the internal investigation, which we were willing to do under certain parameters, but then the issue of --

THE COURT: When was that request made?

MR. MATHIAS: July of this year.

THE COURT: Oh, so this has been going on since July of 2017?

MR. MATHIAS: Right, and we were going back and forth with the Government about how to do it without, you know, putting the bank in jeopardy, and I think we were getting close when the joint privilege issue arose, and then it was stopped. So that's where we are.

MR. MOORE: And the only thing I would add to that, Your Honor, is because this joint privilege issue arose, we

went back to Smith Moore and said we need to make sure we have your entire file, okay, and it took some time to get what we were told was the entire file, and it was not exactly organized in a traditional manner.

THE COURT: Has anybody done an inventory of the file, by chance?

MR. MOORE: Have we done --

THE COURT: Any kind of inventory?

MR. MOORE: -- what I would call a full inventory?

THE COURT: Um-hum.

MR. MOORE: No, sir, Your Honor. We have -- Mr. Mathias and I have gone through the file. We have made notations and pulled out documents that we thought were sort of important to these issues. There's a lot of duplication in it. What we haven't done -- and I haven't talked to Mr. Chut about this. What we haven't done is we haven't gone back and said is there anything in this file that we recently got that's responsive to outstanding -- that was responsive to Government requests that were made before the internal investigation. We haven't done that. So I think we have to do that. I think if we did that and we cataloged the internal investigation documents, maybe that's what --

THE COURT: Is it a possibility to actually catalog those internal investigations?

MR. MOORE: Yes, sir. We had started down the road

of getting our production ready, and then this issue arose. So we're well on our way on that one.

THE COURT: Why don't we make --

MR. MOORE: But as Mr. Mathias just pointed out to me, there's also the issue of emails that bear on the issue. We've done a quick look at these emails, but -- and we've done some, you know, keyword searches, but we cannot assure ourselves or the Court or the Government at this point that by no means has that search been exhaustive. We have to do that.

THE COURT: Yeah. How long do you think it will take to finish the inventory and then maybe do some more work on the searching through the emails? I mean, you all are going to have to do this anyway if you produce it for the Government?

MR. MOORE: Yes, sir. When you say inventory, are you requesting us to inventory the entire file, or the file that's responsive to the Government's request?

THE COURT: File that's responsive to the Government's request.

MR. MOORE: Because that's a lot easier than the latter. If you'll give me a moment. We think three weeks.

THE COURT: Is there any reason we need to mess around with stuff not responsive to the Government's request at this point?

MS. BARBIER: Your Honor, based on what's transpired today and the testimony that has been made on the issue of what

transpired during Mr. Earnest's grand jury preparation and his debriefing afterwards, I would ask that we be given copies of any notes of that -- of those meetings. I think that is very critical to the issue --

THE COURT: Well, what authority do I have to order that at this point?

MS. BARBIER: We'll file a motion on it, Your Honor.

THE COURT: They're a third party. Don't you have to subpoena those records?

MS. BARBIER: I do believe we would need to subpoena them, and we would intend to do that. It's a subset obviously, but we've already moved to compel. We did move to compel the legal file of Smith Moore. That would obviously include notes that --

THE COURT: I mean, at this point in time, neither Smith Moore nor Nexsen Pruet are parties before the Court. So I don't know that I have jurisdiction to enter an order as to those third parties. Right? I mean, you may disagree with me on that. I'm asking.

MS. BARBIER: I think I need to subpoena them, Your Honor. I can subpoena them to the next hearing. I can talk to the attorneys for the bank about that. I know that Ms. Drake's attorneys have been provided with similar notes. We would just ask -- and so I'll talk to them about providing us the same courtesy.

THE COURT: All right. I'm going to leave it with you as to what you want to subpoena from third parties with respect to records; and then to the extent a motion to compel's required, then I think I get involved at that point. But at this point, they're third parties, and I think it's -- you all need to consult and see what you can work out and issue your subpoenas. But the first step, I want to get that cataloging done as best you can.

MR. MOORE: Yes, sir.

THE COURT: And then if they send a subpoena, you can figure out whether you need to plow through other records.

MR. MOORE: I think, just out of an abundance of caution and thinking about this hearing, that we've probably done most of what she's talking about as well.

THE COURT: Okay. Just include that --

MR. MOORE: We got suggestions from Smith Moore as to documents that they believed were -- should go to Ms. Barbier if you found joint privilege, should go to Ms. Rauscher if you found joint privilege, and we look to see if we find others -- we've identified a few others. But we can do that one pretty easily.

The issue for us, Judge, is until and unless there's a determination that there's a joint privilege, if I give them documents, I'm waiving privilege, and it puts me in a horrible position, and you understand that.

THE COURT: Well, yeah, and -- yeah, and we're going to sort through, I think, hopefully relatively quickly what evidence is -- and how to take it with respect to the issue of attorney-client privilege to begin with.

MR. MOORE: Yes, sir.

THE COURT: Or attorney-client relationship. Figure that out. And we may just come back and have another hearing on that, finish that up whatever way is required. If we get into this and they're entitled to other records, we may have to get into something a little before then, but let me see where we end up on -- in terms of legal authority. Either way, you've got an obligation to the Government at some point to produce something, and we might as well get a catalog ready, and then we'll be ready to proceed.

That's the best I've got at this point. Mr. Chut, anything else at this point?

MR. CHUT: Not at this point, Your Honor.

THE COURT: Ms. Barbier?

MS. BARBIER: Your Honor, may I have a moment to confer with the bank's attorneys?

MR. MOORE: One of the things that -- and we'll need to talk to the Government after this hearing, Your Honor, just to make sure that we and the Government are on the same pages of what they've requested. They previously made a number of requests. We gave them everything that was in our possession

that was responsive to those requests. As I understand it, we've got to go back and see if anything from the new Smith Moore files is further responsive to those requests, and that's what we have to catalog. We also have to catalog the internal investigation. And as I understand it, that's where our cataloging duties end.

THE COURT: Why don't we just shoot for December 13 for you to finish up that cataloging?

MR. MOORE: That will be fine, Judge. The other point, and I know it also sort of relates to Your Honor's question -- Your Honor's sort of wrestling with this idea of may a privilege document be used to cross-examine someone --

THE COURT: I was waiting to see how you delicately phrased what you were about to say.

MR. MOORE: Because we are concerned -- you know, we want to make sure that our duty of candor to the Court is upheld, and our concern is if we know that there's a document, and there's testimony, and we know that there's a document that indicates some sort of inconsistency or -- I'll use the word inconsistency -- what duty do we have to notify the Court and the parties that there's a document that we have that might bear on the issue and might be privileged.

THE COURT: Well, in my mind, you're not law enforcement. You're not Government. It's not *Brady* material with respect to you until it gets turned over to the United

States. And if it's in line to be turned over to the United States at some point, then it would become *Brady* material, and that cataloging will help because I would hope that if you had those types of documents, you could point them out to the United States pretty quick so they don't get lost in the shuffle somewhere.

MR. MOORE: Understood.

THE COURT: The second point is I -- we just have to resolve this question of what evidence can I consider in terms of establishing the existence of the relationship, and if I say -- if I conclude ultimately that it may -- well, let me say, it just may be necessary that we come back and start addressing your documents to see if there's anything that needs to be turned over in response to either a subpoena from the defendants or a subpoena from the Government before the hearing and some determination made with respect to those documents. Does that make any sense?

MR. MOORE: It does, and I think I understand, but -- and I hate to raise this issue again, because we have lots of issues. The Government also subpoenaed these invoices from us. We told the Government that we saw privilege issues, we intended to bring them to the Court in camera, and the Government didn't say, okay, well I'm going to force you to bring them in. So I thought we were able to resolve that issue with the Government. I'm assuming right now we don't have to

do anything with the invoices, or do we? Because if we do --

THE COURT: Everybody wants to hand me invoices. Before I start taking invoices, I'm going to -- we need to figure out whether they're confidential -- I mean, whether they're protected by the privilege, and that's really separate and apart. I read to everyone, gave them the cases. These items are not protected under the attorney-client privilege. These are the cases that I'm relying on. Nobody has cited authority to the contrary.

I know I looked at them, and they're pretty extensive in terms of the information contained therein, but at this point in time I am -- this runs contrary to my comments earlier, but at this point in time I'm not persuaded the invoices are protected even if the attorney-client relationship exists.

MR. MOORE: And I understand Your Honor raised, I thought, a very -- an interesting point that we had not thought of about the transmittal of those invoices through a billing department. We're obviously going to have to look at that issue.

So I take it what I'm required to do, since the Government did subpoena those records for this hearing, is that I'm required to look at the law, go through those invoices again, and if I think that there's any privileged information, then I have to redact that --

THE COURT: If you think there's privileged information, you have to redact that and be prepared to explain --

MR. MOORE: And give a priv log.

THE COURT: Prepare the log. Regardless of Earnest's status. Yours is to -- is it GrandSouth?

MR. MOORE: GrandSouth, yes.

THE COURT: Your duty is to GrandSouth Bank. So that's what I would expect from you in that circumstance.

MR. MOORE: We will have that done by that hearing as well. So I think the Government will get a lot of stuff in response to their subpoena that we did not bring this morning.

THE COURT: So I think within seven days -- I know we're going to address this question of how to conduct the hearing in terms of ex parte and in camera. You've heard my position on invoices. I've given you my cases. If you think you have authority which would lead to a different conclusion, you better get that in sooner rather than later because that's my current position. So I would suggest seven days.

MR. MOORE: I assume that we produce these documents prior to the next hearing with the priv log, unless Your Honor rules otherwise.

THE COURT: I'm going to continue this hearing, but I'm not going to set a new date yet. I need to start looking at some of this stuff. I'm inclined at this point to set the

hearing -- do I need to do it before December 13? That's what's been troubling me a little bit.

MS. RAUSCHER: Your Honor, depending on the outcome of the hearing, whatever you rule, I think -- they always impact our pretrial motions. So --

THE COURT: Well, I mean, yeah, I understand. You may -- I mean, there's no reason you can't make the motion subject to a later ruling, and a lot of motion -- I'm assuming the motions to dismiss on statute of limitations grounds will be coming back, and that's independent of any ruling. So I'll do the best I can, but I'm not going to promise you I'm going to come in here and make a final decision. But my ultimate conclusion with respect to the confidentiality of evidence submitted in support of the hearing and those related issues will take us, I think, a long ways toward where we're going to end up.

MS. RAUSCHER: Your Honor, and seeing that now we'll be able to review the sealed pleadings that we hadn't seen before, you know, there may be some joining of motions and a little bit of change in that just to let you know.

THE COURT: Well, that's another thing I was going to mention, and that is I understand the problem with the sealed pleadings. I'm not entirely pleased with the way it worked out in terms of joining motions in terms of the objection to the disclosure of confidential information, because I didn't have

any idea Ms. Drake was asserting privilege until I walked in here today, and that's not a satisfactory way.

So I think -- the rules allow parties to join codefendants' motions, but I think there has to be a clear and specific statement explaining how the codefendant's motion applies to the joining codefendant's case, if that makes -- and what I mean by that is if there's a statute of limitations defense, you at least have to explain why that same defense would apply in your case. If there's a privilege defense, there has to be some explanation as to why that occurs, because Mr. Earnest's privilege wouldn't necessarily cover Ms. Drake's privilege if she had one. So they need to be a little clearer to the extent there's a joinder.

All right. I'm sure that I've messed something up in explaining all this, and there'll be some confusion. But we've got our pretrial deadlines. Seven days for the issue of how the hearing should be conducted and in camera and ex parte issues. Privilege log on or before the December 13 pretrial motions date. Is that right? Yeah, I think that's what I did. And then the privilege log identification of documents that the parties contend are privilege on that pretrial motions date. And similarly for the third parties subpoenaed here, Nexsen Pruet and the bank, some preparation of a catalog of documents that will be turned over in connection with the Government's request.

Mr. Chut, do me a favor. Get a subpoena out there to them so we don't get confused over what's --

MR. CHUT: To GrandSouth Bank? Yes, Your Honor.

MR. MOORE: Your Honor, we had told Mr. Chut previously that any subpoenaed documents, all he needs -- he can send us a letter requesting it pursuant to our agreement.

THE COURT: Anything in writing so there's no confusion later.

MR. MOORE: Right. It doesn't have to be a subpoena. It can be a request, and we'll get it to him.

THE COURT: Okay. And I assume you'll extend that same courtesy if you can to the defendants in lieu of a subpoena?

MR. MOORE: If I can. I have an agreement with the Government --

THE COURT: Oh, okay.

MR. MOORE: -- that deals with privilege and privilege waiver, et cetera. So I think the Government's on a little different footing. I probably would want a subpoena from the defendants.

THE COURT: All right. Well, everybody knows where they stand at this point then.

All right. So the one thing, I came into court this morning thinking March was way too far out for trial of this case, and I'm leaving this hearing going I don't know if we're

going to make it by March 5. All right. Unless somebody has a better idea, that's the best I've got to resolve these issues today. Anything further?

MR. CHUT: No, Your Honor. Thank you, Your Honor.

THE COURT: All right.

MS. BARBIER: Thank you, Your Honor.

MS. RAUSCHER: Thank you.

MR. O'ROURKE: Thank you, Your Honor.

MR. BOYCE: None from us. Thank you, Your Honor.

THE COURT: All right. Mr. Berkelhammer, at this point the motions to quash and modify have kind of been addressed, and now they're dependent on whether anybody is recalled later, right?

MR. BERKELHAMMER: I think so, Your Honor.

THE COURT: I guess we had Ms. Hawkins who was not called today, so hers is still outstanding.

MR. BERKELHAMMER: Correct.

THE COURT: And I'm going to continue this hearing to a later date to be set by the Court. We'll stand adjourned.

(At 6:15 p.m., proceedings concluded.)

* * * * *

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the proceedings in the above-entitled matter.

Date: 11/16/2017

Joseph B. Armstrong, FCRR
United States Court Reporter
324 W. Market Street
Greensboro, NC 27401

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO: 1:16-CR-205**

| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**SHANNON MICHELLE DRAKE *et al.*** | **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO JOIN DEFENDANT EARNEST'S MOTION FOR *EX PARTE* HEARING (DOCKET NOS. 115 AND 116) AND TO PARTICIPATE IN THE HEARING** |
|---|---|

Joining in the motion of Defendant Ronald Earnest for an *ex parte* hearing to assess his assertion of attorney-client privilege (Doc. Nos. 115 and 116), Defendant Shannon Drake filed a motion also requesting such *ex parte* hearing and asserting her own claim of attorney-client privilege (Doc. Nos. 122 and 123). Now, as requested by this Court during the subsequent hearing on November 9, 2017, through undersigned counsel, Ms. Drake submits this supplemental memorandum in support of the motion, and states the following:

1. In her prior motion, Ms. Drake asserted that the law firm Smith Moore Leatherwood LLP ("Smith Moore"), by engagement and in actual fact, was *jointly* representing GrandSouth Bank and Ms. Drake – and possibly others – with regard to the Government's federal Grand Jury investigation leading to the indictment of Douglas Courier and Ms. Drake. As shown in the letter attached as Exhibit A, Smith Moore expressly stated to the Government in September 2012 that the firm was representing both GrandSouth Bank and Ms. Drake with regard to the ongoing Grand Jury investigation. Furthermore, during the hearing on November 9, 2017,

this Court heard testimony that Smith Moore attorneys met with and provided legal counsel to Ms. Drake prior to both of her Grand Jury appearances in September 2012 and May 2013, waited outside the Grand Jury room in the event that Ms. Drake desired further legal advice during the course of her testimony, and accompanied Ms. Drake during a separate interview of her by Government attorneys.

2. In his motion and accompanying affidavit, Mr. Earnest asserted that he too was jointly represented by Smith Moore – in addition to the bank and Ms. Drake – with regard to the ongoing Grand Jury investigation. At the hearing on November 9, 2017, counsel for Mr. Earnest made reference to documents from Smith Moore's file from that joint representation which would help to prove the existence of Mr. Earnest's attorney-client relationship with Smith Moore. Accordingly, and in order to avoid any waiver of the privilege, Mr. Earnest requested the *ex parte* hearing in order to present such evidence to the Court along with witness testimony about it.

3. Ms. Drake believes that the aforementioned documents would also help to prove her own attorney-client relationship with Smith Moore as part of the same joint representation with GrandSouth Bank. In addition, but for fear of waiving the privilege, counsel for Ms. Drake could present other evidence not mentioned above that would further prove her joint representation by Smith

Moore. Thus, Ms. Drake requested that she participate in that *ex parte* hearing along with Mr. Earnest in order to protect her legitimate interests concerning the privileged material to be discussed, and to be able to present evidence about her attorney-client relationship without having to waive the privilege in the process.

4. In support of her attorney-client privilege and request for the *ex parte* hearing, Ms. Drake cited the Rules of Professional Conduct of the North Carolina State Bar.[1] In regard to the necessity for an *ex parte* hearing, Rule 1.6(c) provides that "[a] lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client," and Comment 15 specifically states that "[i]f the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or

[1] In regard to the operation of the attorney-client privilege in the context of joint representation, Comments 30 to 31 to Rule 1.7 of the Rules of Professional Conduct of the North Carolina State Bar explain as follows:

> [30] A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege. With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.
>
> [31] As to the duty of confidentiality, continued common representation will almost certainly be inadequate if one client asks the lawyer not to disclose to the other client information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect that client's interests ….

*See also* Rule 1.7, Comments 30-31, American Bar Association Model Rules of Professional Conduct (same). Furthermore, as explained by the North Carolina State Bar in its formal ethics opinion RPC 245, "[w]hen there is joint representation of parties in a particular matter, each party is entitled to access to the legal file after the representation ends." Similarly, as explained in formal ethics opinion RPC 153, such a person "is entitled to immediate possession of all information in the joint representation file or files of [counsel] accumulated to the date of termination of representation that would or could be of some value to her in protecting her interests."

other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable." *See also* Rule 1.6(c), Comment 16, American Bar Association Model Rules of Professional Conduct (same).

5. During the hearing on November 9, 2017, the Court inquired of counsel how the Rules of Professional Conduct of the North Carolina State Bar were applicable and whether there may be relevant federal case law. In regard to the first question, those rules of professional conduct have been expressly incorporated by the Local Criminal Rules for this Court. Local Criminal Rule 57.1 adopts various Local Civil Rules, including Local Civil Rule 83.10e which states as follows:

> Acts or omissions by an attorney practicing before this Court which violate the Code of Professional Responsibility adopted by this Court shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship. The Code of Professional Responsibility adopted by this Court is the Code of Professional Responsibility adopted by the Supreme Court of North Carolina, as amended from time to time by that state court, except as otherwise provided by a specific rule of this Court.

LR83.10e (Standards for Professional Conduct), United States District Court for the Middle District of North Carolina.

6. Furthermore, counsel for Ms. Drake has identified several cases in which the Fifth, Eleventh, and D.C. Circuits had no objection to the district court

hearing evidence *ex parte* to determine the existence of an attorney-client privilege that was being asserted against the Government in a criminal case. *See In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena and John Doe*, 926 F.2d 1423, 1425 (5th Cir. 1991) ("[T]he district court provided [attorney] DeGeurin and Intervenor with their requested *in camera*, *ex parte* hearing, and concluded that the documents submitted under seal revealed the existence of an attorney/client relationship ...."); *In re Grand Jury Matter*, 735 F.2d 1330, 1330-31 (11th Cir. 1984) ("In support of their motions ... they presented to the court at an *ex parte* hearing, through their attorneys, letters and other evidence of their identity and their attorney-client relationship with Mr. Gwinn."); *United States v. Shelly Singhal*, 800 F.2d 1, 7 (D.C. Cir. 2011) ("Singhal filed his Motion *ex parte*. Thus, portions of the document were redacted so that only the Court could review them."). Indeed, the *Singhal* court also proceeded *ex parte* on appeal to assess the materials asserted to be privileged. *Singhal*, 800 F.2d at 7 ("Discussion of exhibits related to this redacted *ex parte* material will be filed in a separate, sealed, *ex parte* appendix to this Opinion.").

7.      Reflecting on the nuanced interplay between the attorney-client privilege and a federal Grand Jury investigation, the Fifth Circuit took pains to underscore the importance of protecting the privilege:

> The purpose of the attorney/client privilege is "to encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425

> U.S. 391, 403 (1976). An attorney could not expect a client to fully disclose the nature of his difficulties in such circumstances if the attorney may have to reveal the client's identity to a grand jury. At times, this privilege may prevent the Government from obtaining useful information, but "this is the price we pay for a system that encourages individuals to seek legal advice and to make full disclosure to the attorney so that the attorney can render informed advice." *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 569 (7th Cir.1990).
>
> * * *
>
> The Government would place chilling consequences on the very act of obtaining legal advice. We acknowledge the importance of the Government's need to obtain information. Our precedent in this circuit, however, and apparently every other circuit, counterbalances the Government's legitimate need for information with the equally important need to encourage full and frank disclosure to attorneys.

*In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena and John Doe*, 926 F.2d at 1431-32.

8. Accordingly, for all of the foregoing reasons, this Court should conduct part of the continued motion hearing *ex parte*, without the Government's and others' presence, in order to safeguard the attorney-client privilege shared by Mr. Earnest and Ms. Drake from their joint representation by Smith Moore – along with GrandSouth Bank – and Ms. Drake should be allowed to participate in the *ex parte* hearing.

Respectfully submitted this the 16th day of November, 2017.

*/s/ Claire J. Rauscher*
Claire J. Rauscher
Allen T. O'Rourke
T. Russell Ferguson, III

Womble Bond Dickinson (US) LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, NC 28202-6037
Telephone: (704) 331-4900
Fax: (704) 338-7811
crauscher@wbd-us.com
aorourke@wbd-us.com
rferguson@wbd-us.com

*Counsel for Defendant Shannon Michelle Drake*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of November, 2017, a copy of the foregoing **Supplemental Memorandum in Support of Motion to Join Defendant Earnest's Motion for Ex Parte Hearing (Docket Nos. 115 and 116) and to Participate in the Hearing** was filed with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Nathan P. Brooks
U. S. Department of Justice
601 D St., N.W., 7th Floor
Washington, DC 20004
Email: nathan.p.brooks@usdoj.gov

Joshua B. Howard
Gammon, Howard & Zeszotarski, PLLC
115 ½ West Morgan Street
Raleigh, NC 27601
Email: jhoward@ghz-law.com

Frank Joseph Chut, Jr.
U. S. Attorney's Office
101 S. Edgeworth St., 4th Floor
Greensboro, N.C. 27401
Email: frank.chut@usdoj.gov

Edward T. Hinson, Jr.
J. Alexander Heroy
James McElroy & Diehl, P.A.
600 S. College St., Ste. 3000
Charlotte, NC 28202
Email: ehinson@jmdlaw.com
Email: aheroy@jmdlaw.com

Jeffrey A. McLellan
U. S. Dept. of Justice
Trial Attorney, Tax Division
P.O. Box 972
Washington, D.C. 20044
Email: jeffrey.a.mclellan@usdoj.gov

Deborah B. Barbier
Deborah B. Barbier, LLC
1811 Pickens Street
Columbia, SC 29201
Email: dbb@deborahbarbier.com

Wes J. Camden
Ward and Smith, PA
PO Box 33009
Raleigh, NC 27636-3009
wjcamden@wardandsmith.com

*/s/ Claire J. Rauscher*
*Counsel for Defendant Shannon Michelle Drake*

# Exhibit A



September 18, 2012

Via Facsimile

Frank Joseph Chut, Jr.
Assistant United States Attorney
United States Department of Justice
Middle District of North Carolina
PO Box 1858
Greensboro, NC 27401

Re: Subpoena to GrandSouth Bank
Subpoena to Shannon Drake

Dear Frank:

This confirms our telephone conversation last week, as well as my voice messages left at your office this week. As you know, our firm represents GrandSouth Bank. Jim Medford, one of my partners, will also be involved in representing GrandSouth Bank, and will primarily be dealing with this matter if it moves forward in a substantial way.

You recently issued a document subpoena to GrandSouth Bank. Last week during our discussion, you indicated that you would not mind GrandSouth Bank taking additional time past the September 24, 2012 production date set forth in the subpoena if additional time is required to properly respond to the subpoena. Based upon the efforts made to date, it is clear that GrandSouth Bank will not be able to fully and properly respond to the subpoena by September 24, 2012, and we will take you up on your courteous offer to provide additional time to respond. We hope that a two week extension of the deadline will provide us sufficient time to produce the requested documents, and we will aim to have these documents to you in the requested form by October 8, 2012. If we see that additional time will be necessary beyond October 8, 2012, we will be back in touch with you before that time.

Also, as I indicated in my voice messages this week, we will be representing Shannon Drake, the GrandSouth Bank employee who recently received a witness subpoena from your office. Please contact us when you would like Ms. Drake to appear. In this regard, please keep in mind that Ms. Drake is based in the Greenville, South Carolina area, and at least two business days' notice would be very much appreciated.

Direct (336) 378-5321 | Fax (336) 378-5400 | bruce.ashley@smithmoorelaw.com
Smith Moore Leatherwood LLP • Attorneys at Law • www.smithmoorelaw.com
300 North Greene Street Suite 1400 PO Box 21927 (27420) Greensboro, NC 27401 • 336.378.5200
Atlanta, GA • Charleston, SC • Charlotte, NC • Greensboro, NC • Greenville, SC • Raleigh, NC • Wilmington, NC

Finally, Jim Medford and I would like to meet with you at some point in the next few days to get a better handle on this situation. Please let me know when you can make some time for us. Thank you in advance for your cooperation in this regard.

If you have any questions, please do not hesitate to contact us.

Sincerely,

Bruce P. Ashley

BPA/kf

cc: James A. Medford, Esq.

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO: 1:16-CR-205**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**SHANNON MICHELLE DRAKE,**

**Defendants.**

**SHANNON DRAKE'S MOTION TO DISMISS FOR INSUFFICIENT ALLEGATIONS AND DUPLICITOUS AND MULTIPLICITOUS CHARGES**

NOW COMES Defendant Shannon Michelle Drake, through undersigned counsel, pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, and moves this Honorable Court to dismiss the Third Superseding Indictment (Doc. No. 85). In support thereof, Defendant Drake files contemporaneously hereto a memorandum of law.

**WHEREFORE**, Defendant respectfully requests that this Court dismiss the Third Superseding Indictment against Shannon Michelle Drake.

Respectfully submitted this the 13th day of December, 2017,

WOMBLE BOND DICKINSON (US) LLP

*/s/ Claire J. Rauscher*
Claire J. Rauscher, N.C. Bar No. 21500
Allen T. O'Rourke, N.C. Bar No. 38404
301 S. College Street, Suite 3500
Charlotte, NC 28202
(704) 331-4900
Fax: (704) 338-7811
claire.rauscher@wbd-us.com
allen.orourke@wbd-us.com

*Counsel for Defendant Shannon Drake*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2017, I served a copy of the foregoing **Motion to Dismiss for Insufficient Allegations and Duplicitous and Multiplicitous Charges** through the electronic service function of the Court's electronic filing system, as follows:

Frank Joseph Chut, Jr.
Assistant United States Attorney
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Frank.Chut@usdoj.gov
*Counsel for Plaintiff USA*

Wes J. Camden
Caitlin M. Poe
Ward and Smith, P.A.
POB 33009
Raleigh, NC 27636-3009
Wjcamden@wardandsmith.com
Cmpoe@wardandsmith.com
*Counsel for Defendant Robert Thomas Taylor*

Nathan P. Brooks
US Department of Justice
601 D St., NW, 7th Floor
Washington, DC 20004
Nathan.P.Brooks@usdoj.gov
*Counsel for Plaintiff USA*

James W. Bannister
Bannister, Wyatt & Stalvey, LLC
Post Office Box 10007
Greenville, SC 29603
Jbannister@bannisterwyatt.com
*Counsel for Defendant Robert Thomas Taylor*

Jeffrey A. McLellan
US Department of Justice
Trial Attorney, Tax Division
POB 972
Washington, DC 20044
Jeffrey.A.Mclellan@usdoj.gov
*Counsel for Plaintiff USA*

Joshua Brian Howard
Gammon, Howard & Zeszotarski, PLLC
115 ½ W. Morgan Street
Raleigh, NC 27601
Jhoward@ghz-law.com
*Counsel for Defendant Ronald Keith Earnest*

Sandra J. Hairston
US Attorney's Office
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Sandra.Hairston@usdoj.gov
*Counsel for Plaintiff USA*

Deborah B. Barbier
Deborah B. Barbier, LLC
1811 Pickens Street
Columbia, SC 29201
dbb@deborahbarbier.com
*Counsel for Defendant Ronald Keith Earnest*

*/s/ Claire J. Rauscher*
Claire J. Rauscher
*Counsel for Defendant Shannon Drake*

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO: 1:16-CR-205**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**SHANNON MICHELLE DRAKE,**

**Defendant.**

**REPLY TO GOVERNMENT'S RESPONSE TO SHANNON DRAKE'S MOTION TO DISMISS FOR INSUFFICIENT ALLEGATIONS AND DUPLICITOUS AND MULTIPLICITOUS CHARGES**

COMES NOW Defendant Shannon Michelle Drake ("Drake"), through undersigned counsel, and submits this Reply to the Government's Response (Doc. No. 177) to her Motion to Dismiss for Insufficient Allegations and Duplicitous and Multiplicitous Charges (Doc. Nos. 161 and 162).

The Government claims that, unlike Federal Rule of Civil Procedure 12(b)(6)'s process to challenge complaints for "failure to state a claim upon which relief can be granted," Fed. R. Civ. Pro. 12(b)(6), Drake has "no legal authority" for "testing the face sufficiency of the Superseding Indictment" (Doc. No. 177 at 1-2). That is plainly incorrect. Federal Rule of Criminal Procedure 12(b)(3) expressly provides for pretrial challenges to indictments for "lack of specificity" or "failure to state an offense," among other facial defects and insufficiency. Fed. R. Crim. Pro. 12(b)(3)(B)(iii), (v).

While indictments need not be overly detailed, Federal Rule of Criminal Procedure 7(c) does require "a plain, concise, and definite written statement of the essential facts constituting the offense charged …." Fed. R. Crim. Pro. 7(c)(1); *see* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right … to

be informed of the nature and cause of the accusation ….").[1] Of course, this means that the "essential facts" stated in the indictment must in fact "constitut[e] the offense charged." Fed. R. Crim. Pro. 7(c)(1). As the Supreme Court observed, "an important corollary purpose to be served by the requirement that an indictment set out the specific offence … is to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *Russell v. United States*, 369 U.S. 749, 768 (1962) (internal quotations omitted).

The essential facts alleged in the indictment for this case create a troubling puzzle which the Government once again fails to address. According to the indictment, Bruce Gregory Harrison ("Harrison") and Douglas Corriher ("Corriher") embarked upon a complex scheme to defraud SC Bank and misapply bank funds using a series of fraudulent loan agreements entered into on July 29, 2008. What made these "Nominee Company" agreements fraudulent is that they were predicated on fake company information that was engineered by Harrison and Corriher to deceive SC Bank and circumvent restrictions. These were factoring loan agreements that obligated SC Bank to operate lines of credit whereby funds would be advanced in exchange for receivables – known as "factoring receivables." The bank even had a separate factoring department with employees whose job was to handle the factoring of receivables pursuant to such

[1] Furthermore, the Fourth Circuit has explained that, "[t]o pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges; and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense," and that "'[o]ne of the principal purposes of an indictment is to apprise the accused of the charge or charges against him so he can prepare his defense.'" *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998) (quoting *United States v. Fogel*, 901 F.2d 23, 25 (4th Cir. 1990)).

agreements entered into by SC Bank. As alleged by the indictment, Corriher was the person "in charge of the factoring department at SC Bank." (Doc. No. 85 at 9 ¶ 39.) This means that, just as he held authority to obligate SC Bank by entering into loan agreements, Corriher also wielded authority to direct employees of the factoring department to administer those loan agreements and operate their lines of credit.

According to the Government's theory, this is precisely how Drake got implicated. Long after the Nominee Company agreements had been executed and Corriher had made special arrangements for the factoring of receivables, the indictment alleges that, "[o]n or about January 16, 2009, Douglas Alan Corriher appointed SHANNON MICHELLE DRAKE as the account executive responsible for the factoring of the receivables for each of the accounts of the Nominee Companies." (Doc. No. 85 at 22 ¶ 95.) This type of assignment was a regular part of her job where Corriher could direct her work, since "SHANNON MICHELLE DRAKE worked at SC Bank in the factoring department under the direct supervision of Douglas Alan Corriher." (Doc. No. 85 at 9 ¶ 40.) *See United States v. Barbato*, 471 F.2d 918, 921 (1st Cir. 1973) ("Indictments 'must be read to include facts which are necessarily implied by the specific allegations made.'" (quoting *United States v. Silverman*, 430 F.2d 106, 111-12 (2d Cir. 1970)).

The implications for the current prosecution of Drake are manifold. As carefully detailed in the underlying motion to dismiss (*see* Doc. No. 162 at 9-12), these and other allegations cast fatal uncertainty over whether Drake really joined in the criminal activity, and they render the Government's theory unclear on the face of the indictment. How

could she "scheme" to do something her job already required?[2] How could she "conspire" or "agree" with Corriher to do something when he was her supervisor directing her to perform her job? *See* Restatement (Third) of Agency § 7.07 (2006) ("[A]n employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work.") Having an employee's duty of loyalty, was Drake not required to rely upon and defer to Corriher's decisions and the terms of the executed factoring agreements? *See Porter v. Pepsi-Cola Bottling Co. of Columbia*, 147 S.E.2d 620, 622 (S.C. 1966) ("Among the fundamental duties of the employee is the obligation to yield obedience to all reasonable rules, orders, and instructions of the employer …." (internal quotations omitted)). With that being the case, absent further allegations, how could she be held responsible for the underlying fraud which Harrison and Corriher orchestrated by negotiating and executing the Nominee Company factoring agreements?

Accordingly, given how the essential facts alleged in the indictment create so many legal issues without an answer and undermine the general accusation of criminal intent, the indictment's allegations are insufficient to "constitut[e] the offense charged." Fed. R. Crim. Pro. 7(c)(1). In other words, even supposing for argument's sake that

---

[2] Time and again, the indictment words allegations of criminal conduct to state that "Douglas Alan Corriher, SHANNON MICHELLE DRAKE, RONALD KEITH EARNEST, ROBERT THOMAS TAYLOR, B.G.H., and diverse other persons" collectively did one thing or another, such as committing fraud "by causing SC Bank to enter into factoring agreements with the Nominee Companies under … materially false pretenses." (Doc. No. 85 at 27-28 ¶ 2.) What could such allegations of collective activity even mean for Drake since the Government also alleges that she was acting as an employee under the direction of Corriher and Earnest? (*See* Doc. No. 85 at 9 ¶¶ 40, 42.)

every specific factual allegation about Drake were true, the Government would still have failed to meet its burden to prove her guilt beyond a reasonable doubt. Similarly, the indictment fails "to apprise [Drake] of the charge or charges against [her] so [she] can prepare [her] defense."[3] *Williams*, 152 F.3d at 299 (internal quotations omitted). The charges brought against Drake should therefore be dismissed for fatal "lack of specificity" and "failure to state an offense." Fed. R. Crim. Pro. 12(b)(3)(B)(iii), (v).[4]

Respectfully submitted this the 2nd day of February, 2018.

WOMBLE BOND DICKINSON (US) LLP

*/s/ Claire J. Rauscher*

Claire J. Rauscher, N.C. Bar No. 21500
Allen T. O'Rourke, N.C. Bar No. 38404
301 S. College Street, Ste. 3500
Charlotte, NC 28202
(704) 331-4900
Fax: (704) 338-7811
claire.rauscher@wbd-us.com
allen.orourke@wbd-us.com

*Counsel for Shannon M. Drake*

[3] For instance, when was Drake even alleged to have intentionally joined the charged conspiracy? The indictment merely states that on January 16, 2009, Corriher assigned her to become the account executive responsible for the factoring agreements.

[4] The Government's arguments about multiplicity are equally unpersuasive. This Court does not need to conduct a trial to see that the exact same 12 wire transfers charged as separate bank fraud offenses in Counts 3 to 14 are also being alleged as acts in furtherance of the bank fraud scheme charged in Count 2. Regardless, seeing as the Government concedes that the indictment's allegations are too vague for the Court to ascertain whether counts are multiplicitous of each other, those counts must be dismissed anyway for unconstitutional "lack of specificity." Fed. R. Crim. Pro. 12(b)(3)(B)(iii); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (requiring that an indictment must be specific enough to enable the defendant to raise the defense of double jeopardy).

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2018, I served a copy of the foregoing **Reply to the Government's Response to Shannon Drake's Motion to Dismiss for Insufficient Allegations and Duplicitous and Multiplicitous Charges** through the electronic service function of the Court's electronic filing system, as follows:

Frank Joseph Chut, Jr.
Assistant United States Attorney
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Frank.Chut@usdoj.gov
*Counsel for Plaintiff USA*

Nathan P. Brooks
US Department of Justice
601 D St., NW, 7th Floor
Washington, DC 20004
Nathan.P.Brooks@usdoj.gov
*Counsel for Plaintiff USA*

Jeffrey A. McLellan
US Department of Justice
Trial Attorney, Tax Division
POB 972
Washington, DC 20044
Jeffrey.A.Mclellan@usdoj.gov
*Counsel for Plaintiff USA*

Sandra J. Hairston
US Attorney's Office
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Sandra.Hairston@usdoj.gov
*Counsel for Plaintiff USA*

Wes J. Camden
Caitlin M. Poe
Ward and Smith, P.A.
POB 33009
Raleigh, NC 27636-3009
Wjcamden@wardandsmith.com
Cmpoe@wardandsmith.com
*Counsel for Defendant Robert Thomas Taylor*

James W. Bannister
Bannister, Wyatt & Stalvey, LLC
Post Office Box 10007
Greenville, SC 29603
Jbannister@bannisterwyatt.com
*Counsel for Defendant Robert Thomas Taylor*

Joshua Brian Howard
Gammon, Howard & Zeszotarski, PLLC
115 ½ W. Morgan Street
Raleigh, NC 27601
Jhoward@ghz-law.com
*Counsel for Defendant Ronald Keith Earnest*

Deborah B. Barbier
Deborah B. Barbier, LLC
1811 Pickens Street
Columbia, SC 29201
dbb@deborahbarbier.com
*Counsel for Defendant Ronald Keith Earnest*

*/s/ Claire J. Rauscher*
Claire J. Rauscher
*Counsel for Shannon M. Drake*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO: 1:16-CR-205**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**SHANNON MICHELLE DRAKE.** | **CERTIFICATION OF WORD COUNT** |

I, Claire J. Rauscher, hereby certify that the word count for the **Reply to the Government's Response to Shannon Drake's Motion to Dismiss for Insufficient Allegations and Duplicitous and Multiplicitous Charges** is 1329 words according to the word count feature in Microsoft Word processing software.

*s/ Claire J. Rauscher*

Claire J. Rauscher

*Date: February 2, 2018*

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO: 1:16-CR-205**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**SHANNON MICHELLE DRAKE**

**Defendant.**

**REPLY TO THE GOVERNMENT'S RESPONSE TO SHANNON DRAKE'S MOTION TO DISMISS AND SUPPRESS GRAND JURY TESTIMONY**

COMES NOW Defendant Shannon Michelle Drake ("Drake"), through undersigned counsel, and submits this Reply to the Government's Response (Doc. No. 178) to Shannon Drake's Motion to Dismiss and Suppress Grand Jury Testimony (Doc. Nos. 163 and 166).

The instant case involves unique circumstances which are quite different from the *United States v. Washington*, 431 U.S. 181 (1977), decision cited by the Government. First, here the prosecutor did not merely omit target or subject warnings, but rather he affirmatively and repeatedly told Drake incorrect information about her status. Second, unlike the motorcycle theft investigated in *Washington*, here the grand jury testimony was later used against Drake for complex charges under an unusual theory of criminal liability that someone like her who does not practice criminal law could easily misunderstand or fail to appreciate. Indeed, the prosecutor's eager assurance that Drake was not under any investigation despite being questioned about her work at the bank for Douglas Corriher ("Corriher") clearly would suggest to her that the prosecutor saw

nothing unlawful in what she had done. Finally, unbeknownst to Drake but plain for the prosecutor to see, her attorney had a significant conflict of interest (also representing the bank) which was likely to compromise his ability to advise her properly about the Grand Jury testimony. For this reason, the prosecutor's repeated misrepresentations about Drake's status not only deceived her about the investigation and her scope of possible liability – thus impairing her ability to assert her Fifth Amendment privilege – they also helped to further entrench that conflict of interest which undermined her right to counsel.[1]

The Government's response explains that "[t]he purpose of a grand jury investigation is to uncover criminal wrongdoing" and "additional targets are identified as evidence is obtained and analyzed." (Doc. No. 178 at 5.) This remark underscores just how seriously Drake was being deceived. After telling her incorrectly, [redacted][2] (Drake G.J. Testimony Sep. 25, 2012, Tr. 3:19-22.) He took this even further the next time, telling Drake: "[redacted]

---

[1] Contrary to the Government's argument in its response, and indeed as already pointed out (*see* Doc. No. 64 at 14-15), although the Sixth Amendment did not guarantee appointed counsel or having counsel in the grand jury room, Drake most certainly had the right to consult with conflict-free counsel prior to and during her testimony.

[2] That is nowhere close to how "target" and "subject" are actually defined. *See* United States Attorneys' Manual § 9-11.151; *see also United States v. Crocker*, 568 F.2d 1049, 1054 (3d Cir. 1977) ("[T]he test as to whether a witness is a target of a grand jury investigation cannot be whether he 'necessarily' will be indicted, but whether according to an objective standard he could be indicted.").

[redacted].”[3] (Drake G.J. Testimony May 29, 2013, Tr. 2:23-4:3.) Considering that the Government now freely acknowledges how Drake's grand jury testimony would be analyzed to uncover criminal wrongdoing and how additional targets may be identified, why on Earth did the prosecutor wrongly state to Drake that the Grand Jury would not look at her conduct to see whether she violated federal law?

The Government's response does not even attempt to explain those misleading statements. Instead, the Government focuses on denying that Drake should have been treated as a target or subject of the grand jury investigation into Corriher's fraudulent scheme using the Nominee Company factoring agreements. But that simply is not credible – considering how much the Government already knew about Drake administering those factoring agreements at Corriher's direction (*e.g.*, from the prosecution of Bruce Harrison), and how that alone appears to have been enough to charge Drake under the Government's unusual theory in the indictment. Under these circumstances, upon Drake coming to the Grand Jury, the Government already had "substantial evidence linking [her]" to the Nominee Company factoring agreements, making her a target, and clearly the work she performed to administer those agreements was well "within the scope of the grand jury's investigation," making her a subject. United States Attorneys' Manual § 9-11.151.

---

[3] The prosecutor also re-emphasized Drake's purely "fact witness" status to soften his advice of rights: "[redacted]…." (Drake G.J. Testimony Sep. 25, 2012, Tr. 3:25-4:3 (emphasis added).)

Instead, the Government proffers that reviewing "some records" and hearing "grand jury testimony by witnesses Yolanda Mantese Simpson and Cheryl Anne Gustavson who gave inculpatory evidence" are what provided that smoking gun which transformed Drake from a purely factual witness (to copy the prosecutor's term) into a full-fledged target of the investigation who was soon indicted. Upon reading this argument, one eagerly flips the pages to Attachments A and B to the Government's response, expecting to read some shocking new evidence that uncovered Drake's long-hidden criminal involvement. But, there is nothing like that. At most, Simpson spoke of Corriher having meetings with Drake outside the office, and Gustavson recounted how Corriher made Drake shred file boxes apparently relevant to Harrison's investigation. However, Drake's conduct here was described not like a knowing co-conspirator but rather like an overworked employee exploited by Corriher. Gustavson stated that Drake "[redacted]." (Gustavson G.J. Testimony Dec. 14, 2015, Tr. 41:16-18 and 42:22-24.) Surely, such testimony cannot be what explains why the Government, according to its proffer, finally determined Drake to be a target or subject of the investigation who would be indicted. The truth is that she was all along.

Finally, the Government asserts that "the defendant here does not claim that the grand jury's decision to indict her was substantially influenced by her testimony" and "the defendant has made no showing that such testimony led to or in any way caused her

indictment."[4] (Doc. No. 178 at 8-9.) To be clear, Drake's grand jury testimony about the work she performed for Corriher in the bank's factoring department was central to her subsequent indictment. The essential facts alleged for Drake's charges were nearly all stated to the Government in Drake's own grand jury testimony. The Court should not allow Drake to suffer so gravely because of her reliance on the prosecutor's repeated misleading statements to her and her attorney.

Respectfully submitted this the 2nd day of February, 2018.

WOMBLE BOND DICKINSON (US) LLP

*/s/ Claire J. Rauscher*
Claire J. Rauscher, N.C. Bar No. 21500
Allen T. O'Rourke, N.C. Bar No. 38404
301 S. College Street, Ste. 3500
Charlotte, NC 28202
(704) 331-4900
Fax: (704) 338-7811
claire.rauscher@wbd-us.com
allen.orourke@wbd-us.com

*Counsel for Shannon M. Drake*

[4] To further show what caused her indictment, Drake must be able to review the prosecutor's legal instructions and arguments to the Grand Jury throughout this investigation. However, the Government has so far refused to disclose these records.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2018, I served a copy of the foregoing **Reply to the Government's Response to Shannon Drake's Motion to Dismiss and Suppress Grand Jury Testimony** through the electronic service function of the Court's electronic filing system, as follows:

Frank Joseph Chut, Jr.
Assistant United States Attorney
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Frank.Chut@usdoj.gov
*Counsel for Plaintiff USA*

Wes J. Camden
Caitlin M. Poe
Ward and Smith, P.A.
POB 33009
Raleigh, NC 27636-3009
Wjcamden@wardandsmith.com
Cmpoe@wardandsmith.com
*Counsel for Defendant Robert Thomas Taylor*

Nathan P. Brooks
US Department of Justice
601 D St., NW, 7th Floor
Washington, DC 20004
Nathan.P.Brooks@usdoj.gov
*Counsel for Plaintiff USA*

James W. Bannister
Bannister, Wyatt & Stalvey, LLC
Post Office Box 10007
Greenville, SC 29603
Jbannister@bannisterwyatt.com
*Counsel for Defendant Robert Thomas Taylor*

Jeffrey A. McLellan
US Department of Justice
Trial Attorney, Tax Division
POB 972
Washington, DC 20044
Jeffrey.A.Mclellan@usdoj.gov
*Counsel for Plaintiff USA*

Joshua Brian Howard
Gammon, Howard & Zeszotarski, PLLC
115 ½ W. Morgan Street
Raleigh, NC 27601
Jhoward@ghz-law.com
*Counsel for Defendant Ronald Keith Earnest*

Sandra J. Hairston
US Attorney's Office
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Sandra.Hairston@usdoj.gov
*Counsel for Plaintiff USA*

Deborah B. Barbier
Deborah B. Barbier, LLC
1811 Pickens Street
Columbia, SC 29201
dbb@deborahbarbier.com
*Counsel for Defendant Ronald Keith Earnest*

*/s/ Claire J. Rauscher*
Claire J. Rauscher
*Counsel for Shannon M. Drake*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO: 1:16-CR-205**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**SHANNON MICHELLE DRAKE.** | **CERTIFICATION OF WORD COUNT** |

I, Claire J. Rauscher, hereby certify that the word count for the **Reply to the Government's Response to Shannon Drake's Motion to Dismiss and Suppress Grand Jury Testimony** is 1380 words according to the word count feature in Microsoft Word processing software.

*s/ Claire J. Rauscher*

Claire J. Rauscher

*Date: February 2, 2018*